**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
In re: :
: **Chapter 11**
: 
**LYONDELL CHEMICAL COMPANY, et al.,** : **Case No. 09-10023 (REG)**
: 
: **Jointly Administered**
Debtors. :
: 
------------------------------------------------------------x

### FINAL ORDER AUTHORIZING DEBTORS TO (I) PAY PREPETITION CLAIMS OF CRITICAL VENDORS AND CERTAIN ADMINISTRATIVE CLAIMHOLDERS AND (II) AUTHORIZE FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Upon consideration of the motion (the "Motion") of Lyondell Chemical Company and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors" and each, a "Debtor"), for interim and final orders (the "Final Order") pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), for authority to pay in the ordinary course of business prepetition claims of critical vendors (the "Critical Vendors"), as more fully described in the Motion; and upon consideration of the Affidavit of Alan S. Bigman Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York, sworn to on January 6, 2009; and the Court having jurisdiction to consider the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion and having heard the

USActive 14995063.2

statement in support of the relief requested therein at the hearings before the Court (the "Hearings"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearings establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is

**ORDERED** that the Motion is granted as set forth herein; and it is further

**ORDERED** that pursuant to sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, the Debtors are authorized to the extent consistent with the DIP Documents (as defined in the final order approving postpetition financing (the "Final DIP Order")), but not directed, in the reasonable exercise of their business judgment, to pay some or all of the prepetition claims of those Critical Vendors (the "Vendor Claims"), who agree to continue to supply goods or services to the Debtors on such Critical Vendor's "Customary Trade Terms" for a period following the date of the agreement and on other such terms and conditions as are acceptable to the Debtors. As used herein, "Customary Trade Terms" means, with respect to a Critical Vendor: (i) the normal and customary trade terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability and other applicable terms and programs), that were most favorable to the Debtors and in effect between such Critical Vendor and the Debtors prior to the Petition Date; or (ii) such other trade terms as agreed by the Debtors and such Critical Vendor; provided, that the Critical Vendor extends trade credit to the Debtors; and it is further

**ORDERED** that after the date hereof, the Debtors shall determine, in the ordinary course of business, who is a Critical Vendor by considering, among other things: (i) which suppliers were sole source or limited source suppliers, without whom the Debtors could not

continue to operate without disruption; (ii) which suppliers would be prohibitively expensive to replace; (iii) which suppliers present an unacceptable risk should they cease the provision of truly essential services or supplies; and (iv) which suppliers are obligated by contract to continue performance; and it is further

**ORDERED** that the Debtors shall maintain a matrix summarizing: (i) the name of each Critical Vendor paid on account of Vendor Claims; (ii) the amount paid to each Critical Vendor on account of its Vendor Claim; and (iii) the goods or services provided by such Critical Vendor. This matrix will be provided to: (a) the United States Trustee; (b) counsel for the official committee of unsecured creditors appointed in these cases, if any (the "Committee"); and (c) counsel for the Debtors' postpetition credit facilities (collectively, the "DIP Agents"); provided, however, that counsel for the Committee and the DIP Agents shall keep the matrix confidential (with respect to the DIP Agents, in accordance with the confidentiality provisions of the applicable credit agreements to which the Debtors are party); and it is further

**ORDERED** that the Debtors shall provide to counsel for the Committee and the DIP Agents bi-weekly written reports of all payments made hereunder, and reasonable and timely access to information sufficient to enable such parties to monitor payments made, obligations satisfied, and other actions taken pursuant to this Final Order; and it is further

**ORDERED** that the Debtors shall undertake all appropriate efforts to cause Critical Vendors to enter into an agreement (the "Vendor Agreement") including provisions substantially in the form attached to the Motion as Exhibit A; and it is further

**ORDERED** that the Debtors are authorized, but not required, to enter into Vendor Agreements when the Debtors determine, in the exercise of their reasonable business judgment, that it is appropriate to do so. However, the Debtors' inability to enter into a Vendor Agreement shall not preclude them from paying a Vendor Claim when, in the exercise of their

reasonable business judgment, such payment is necessary to the Debtors operations; and it is further

**ORDERED** that if the Debtors, in their discretion, determine that a Critical Vendor has not complied with the terms and provisions of the Vendor Agreement or has failed to continue to provide Customary Trade Terms following the date of the agreement, or on such terms as were individually agreed to between the Debtors and such Critical Vendor, the Debtors may terminate a Vendor Agreement, together with the other benefits to the Critical Vendor as contained in this Final Order, <u>provided</u>, <u>however</u>, that the Vendor Agreement may be reinstated if: (i) such determination is subsequently reversed by the Court for good cause after it is shown that the determination was materially incorrect after notice and a hearing following a motion from the Critical Vendor; (ii) the underlying default under the Vendor Agreement is fully cured by the Critical Vendor not later than five business days after the date the initial default occurred; or (iii) the Debtors, in their sole and absolute discretion, reach a subsequent agreement with the Critical Vendor; and it is further

**ORDERED** that if a Vendor Agreement is terminated as set forth above, or if a Critical Vendor that has received payment of a prepetition claim later refuses to continue to supply goods or services for the applicable period in compliance with the Vendor Agreement or this Final Order, then: (i) the Debtors may, in their discretion, declare the payment of the creditor's Vendor Claim a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash or in goods from such Critical Vendor; (ii) the creditor shall immediately return such payments in respect of a Vendor Claim to the extent the aggregate amount of such payments exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever; and (iii) the applicable Vendor Claim shall be reinstated in such

an amount so as to restore the Debtors and the Critical Vendor to their original positions as if the Vendor Agreement had never been entered into and no payment of Vendor Claim had been made; and it is further

**ORDERED** that all Vendor Agreements shall be deemed to have terminated, together with the other benefits to Critical Vendors as contained in this Final Order, upon entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; and it is further

**ORDERED** that the Debtors are authorized to the extent consistent with the DIP Documents (as defined in the Final DIP Order), but not required, in the exercise of their business judgment, to pay claims of any creditors or claimants entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code (the "Twenty-Day Administrative Claims") in the ordinary course of the Debtors' businesses and on such terms as the Debtors deem appropriate; and it is further

**ORDERED** that payments on account of any Twenty-Day Administrative Claims shall not count against the Vendor Claims Cap; and it is further

**ORDERED** that the Debtors' payment of the Vendors Claims shall not exceed the Vendors Claims Cap unless otherwise: (i) ordered by the Court, after notice and a hearing, or (ii) upon prior written approval of the DIP Agents and the Committee; and it is further

**ORDERED** that each of the banks and financial institutions at which the Debtors maintain their accounts relating to the payment of the claims the Debtors request authority to pay in the Motion are authorized to: (i) receive, process, honor and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent sufficient funds are on deposit in those accounts; and (ii) rely on the Debtors' designation of any

particular check as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions; and it is further

**ORDERED** that nothing contained in this Final Order shall be deemed to constitute an assumption of any executory contract or to require the Debtors to make any of the payments or to post any of the deposits authorized herein; and it is further

**ORDERED** that to the extent there may be any inconsistency between the terms of the interim order approving postpetition financing (the "Interim DIP Order") or the Final DIP Order, if and when entered, and this Final Order, the terms of the Interim DIP Order or Final DIP Order, as applicable, shall govern; and it is further

**ORDERED** that notwithstanding Bankruptcy Rule 6003 and the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

Dated:    New York, New York
          January **23**, 2009

                                        *S/ Robert E. Gerber*
                                        UNITED STATES BANKRUPTCY JUDGE