**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
(212) 309-6000
*Attorneys for Wachovia Bank, National Association*
Richard S. Toder, Esq.,
Andrew D. Gottfried, Esq.
Matthew W. Olsen, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> **LYONDELL CHEMICAL COMPANY,** <u>et</u> <u>al.</u>, <br><br> Debtors, | **Chapter 11** <br> **Case No. 09-10023 (REG)** <br><br> **Jointly Administered** |
| **LYONDELL CHEMICAL COMPANY,** <u>et</u> <u>al.</u>, <br><br> Plaintiffs, <br><br> v. <br><br> **CENTERPOINT ENERGY SERVICES INC.; COKINOS NATURAL GAS COMPANY; CONOCOPHILLIPS COMPANY; THE DOW CHEMICAL COMPANY; MARATHON PETROLEUM COMPANY; NALCO COMPANY; SARACEN ENERGY PARTNERS; SUNCOR ENERGY MARKETING INC.; WACHOVIA BANK, N.A.,** <br><br> Defendants. | **Adv. Pro. No.: 09-01038 (REG)** |

**MEMORANDUM OF LAW OF WACHOVIA BANK, NATIONAL ASSOCIATION IN OPPOSITION TO DEBTORS' MOTION FOR A PRELIMINARY INJUNCTION AND A <u>TEMPORARY RESTRAINING ORDER AND/OR TO EXTEND THE AUTOMATIC STAY</u>**

Wachovia Bank, National Association ("Wachovia"), through its undersigned counsel

submits this memorandum of law in opposition to the motion (the "Motion") of Lyondell

Chemical Company ("Lyondell Chemical") and certain of its subsidiaries and affiliates (collectively, the "Debtors") for an order prohibiting the Defendants, all other persons or entities acting in concert with any of them, and any other creditors of the Debtors from pursuing remedies against non-debtor LyondellBasell Industries AF S.C.A. ("LBIAF") and its non-debtor affiliates, (including LBIAF, collectively, the "Non-Debtors") on account of any guaranty or similar assurances of performance by the Non-Debtors of the Debtors' obligations.  In support of its opposition, Wachovia respectfully represents as follows:

## PRELIMINARY STATEMENT

Cutting through their rank speculation, the Debtors fail to establish any basis to grant the requested preliminary injunction.  The Debtors set forth a litany of negative consequences that they assert "would" or "could" or "might" befall them if the guaranty claims are permitted to proceed against the Non-Debtors, including, among others, the following:

- Lacking liquid assets, LBIAF would be unable to fund its own defense or pay the guaranty claims, forcing the Debtors to provide funding;

- The commencement of involuntary insolvency proceedings against LBIAF constitutes a default under the Debtors' post-petition financing agreement, which could result in a loss of funding, as well as a breach of various forebearance agreements;

- Involuntary proceedings against LBIAF may force it as well as the other Non-Debtors to liquidate.

- The Debtors' senior management would be distracted from the reorganization efforts; and

- The Debtors will be prejudiced by the collateral estoppel effect of a judgment against LBIAF and the estates will be diminished by the resulting indemnity claim of LBIAF.

At the outset, it is important to note that Debtors' assertions are nothing more than that. In no way do they constitute evidence. Furthermore, under scrutiny, these asserted concerns either entirely lack merit or are wildly overblown. The Debtors have no obligation to fund LBIAF's defense of the guaranty claims. An event of default under the post-petition financing agreement can easily be waived and not result in a cessation of funding. Similarly, the Debtors have assumed, without basis, that pursuit of the guaranty claims will result in liquidation of the Non-Debtors, including LBIAF. In fact, should insolvency proceedings be needed at all, reorganization is likely available. The Debtors fail to identify a single employee, essential to their reorganization, who would be unduly distracted by the guaranty claims. Additionally, the Debtors' arguments concerning collateral estoppel and LBIAF's potential indemnity claim are plainly wrong as a matter of law.

Finally, even were the Debtors to demonstrate – as distinguished from merely claiming – that their reorganization was likely to be adversely impacted by denial of the injunction, they are still not entitled to the requested relief. That is because they totally ignore the far more certain damage that it would create for creditors such as Wachovia. Both as a jurisdictional and practical matter, the injunction will only bind <u>domestic</u> creditors of the Debtors who have guaranty claims against the Non-Debtors, including LBIAF; it will have no effect on foreign creditors of the Non-Debtors – whether they hold guaranty or other claims. Such creditors will undoubtedly pursue their contractual rights and dissipate the assets of LBIAF and the other Non-Debtors -- all to the detriment of Wachovia and the other Defendants.

The Debtors similarly ignore the far reaching impact of their request upon foreign jurisdictions and the public interest in respecting the unimpaired application of both the Bankruptcy Code to cases pending in the United States as well as the insolvency laws of foreign jurisdictions within their own territory. Fundamental principals of comity require this Court to refrain from acting in derogation of basic rights afforded by the laws of the eight or more European countries in which the Non-Debtors are domiciled.

## **RELEVANT FACTS**

Wachovia and Lyondell Chemical entered into an ISDA 2002 Master Agreement, dated as of June 18, 2008 (the "Agreement") which governs certain currency swap transactions between the parties. LBIAF unconditionally guaranteed Lyondell Chemical's obligations to Wachovia under the Agreement pursuant to a Guaranty, dated as of June 18, 2008 (the "Guaranty").

On January 6, 2009, each of the Debtors filed voluntary petitions in this Court for relief under Chapter 11 of the Bankruptcy Code. The commencement of the Debtors' bankruptcy cases is an event of default under the Agreement. On January 6, 2009, Wachovia provided notice to Lyondell Chemical that all remaining transactions under the agreement were terminated as of January 7, 2009.

On January 8, 2009, Wachovia provided notice to Lyondell Chemical that as a result of the termination of three outstanding swap transactions, the total amount due and payable to Wachovia under the Agreement was $63,445,000. On the same date, Wachovia sent a letter to LBIAF demanding immediate payment as required by the Guaranty. To date, no part of this debt has been paid.

On February 6, 2009, the Debtors filed the Motion on an emergency basis seeking, in the first instance, a temporary restraining order enjoining Wachovia and similarly situated guaranty claimants from pursuing their claims against LBIAF or any of the other Non-Debtors. The Motion is supported by a memorandum of law (the "Debtors' Memorandum") and the Declaration of Alan S. Bigman, the Chief Financial Officer of LBIAF (the "Bigman Declaration"), each dated February 6, 2009. On the same date, the Court entered the temporary restraining order on an *ex parte* basis and scheduled a hearing on February 13, 2009 to consider whether a preliminary injunction should be granted.

The Debtors' request for a preliminary injunction, if granted, would enjoin Wachovia and other creditors of the Debtors from pursuing their claims against the Non-Debtors until such time as a plan of reorganization is confirmed in the Debtors' cases.

## ARGUMENT

**I. THE DEBTORS' REQUEST TO STAY ENFORCEMENT OF GUARANTY CLAIMS AGAINST THE NON-DEBTORS PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE IS UNWARRANTED AND IMPROPER.**

The automatic stay under § 362 of the Bankruptcy Code applies only to debtors and property of the estate and does not apply to stay proceedings against non-debtors. Nevada Power Co. v. Calpine Corp. (In re Calpine), 365 B.R. 401, 408 (S.D.N.Y. 2007). Under limited circumstances, bankruptcy courts have issued injunctions under § 105 of the Code to enjoin a civil proceeding against non-debtors. "Because the issuance of an injunction, which has the effect of barring actions against a non-debtor, has the incidental effect of extending the protection of the automatic stay to that non-debtor, such injunctions should be granted sparingly by the bankruptcy court." In re Carabetta Enters, Inc., 162 B.R. 399, 407 (Bankr. D. Conn. 1993) (citing In re Third Eighty-Ninth Assocs., 138 B.R. 144, 146 (S.D.N.Y. 1992). In considering requests for such an injunction under § 105 of the Code, Courts in this Circuit have

applied a modified version of the preliminary injunction standard consisting of the following four factors: (1) whether there is a likelihood of successful reorganization; (2) whether there is an imminent irreparable harm to the estate in the absence of an injunction; (3) whether the balance of harms tips in favor of the moving party; and (4) whether the public interest weighs in favor of an injunction. In re Calpine Corp., 365 B.R. at 409; Hawaii Structural Ironworkers Pension Trust Fund v. Calpine Corp., Inc., 2006 WL 3755175, at *4 (S.D.N.Y. Dec. 20, 2006)). As discussed below, the last three of these factors weigh in favor of denying the Debtors' request for an injunction under § 105 of the Bankruptcy Code.[1]

### A. The Debtors' Have Failed to Demonstrate That Pursuit of Guaranty Claims Will Irreparably Harm the Debtors' Ability to Reorganize.

In general, to satisfy the irreparable harm requirement, the moving party "must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent." Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d. Cir. 2005) (quotation omitted). "Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction .... Accordingly, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." Id. In the context of a Chapter 11 bankruptcy case, irreparable harm requires a showing that the action to be enjoined is one that threatens the reorganization process, and that threat "must be imminent, substantial and irreparable." In re Calpine Corp., 365 B.R. at 410.

In the Debtors' Memorandum and the Bigman Declaration, the Debtors attempt to set forth a parade of horribles that would befall them should Wachovia and others be permitted to

---

[1] As for the remaining factor -- a likelihood of a successful reorganization -- there is patently no basis on the first days of these cases to make any judgment as to the outcome. Therefore, the Debtors, as moving parties seeking an injunction, fail this portion of the test as well.

pursue their guaranty claims against the Non-Debtors. However, Debtors' concerns are entirely speculative, lack factual and/or legal support and cannot support a finding of irreparable harm.

In the first place, the Debtors allege that LBIAF, as the ultimate parent of the Debtors and the other Non-Debtors, is a holding company with limited assets other than the stock of its subsidiaries. (See Bigman Declaration ¶ 5.) The Debtors contend LBIAF would be unable to fund its defense of the Guaranty claims or to satisfy such claims and, therefore, "[t]he defense costs and, if appropriate, claim payments would have to be funded by the Debtors." (Debtors' Memorandum, at 1).

Putting aside the fact that LBIAF may be entitled to receive cash dividends from its non-debtor subsidiaries, the Debtors' concern is wrong as a matter of law. The Debtors would be under no obligation to fund the defense costs of LBIAF and, in fact, would need to obtain the Court's permission to do so under § 363(b) of the Code. Similarly, it would be wholly improper for the Debtors to fund the payment of any judgments entered against LBIAF. In addition, rather than expend funds in defense of actions brought by creditors, the Non-Debtors may choose to commence their own reorganization proceedings in Luxembourg or elsewhere, thereby staying creditor claims under the law of such jurisdiction. Indeed, the attempt by Debtors to immunize the Non-Debtors from their obligations to creditors -- through the use of an injunction from this Court -- is blatantly wrongful and should be summarily denied.

The Debtors next note that one creditor has "indicated a willingness to commence an involuntary insolvency proceeding against LBIAF in either Luxembourg or the Netherlands." (Debtors' Memorandum, at 1-2.) Such a proceeding would allegedly cause a default under the Debtors' post-petition financing agreement (the "DIP") resulting in a loss of funding to the Debtors and the Non-Debtors. (Bigman Declaration ¶ 21.) Of course, since this provision was

agreed to by the Debtors (and an interim order approving the DIP has been entered by this Court), it ill behooves the Debtors to now seek to use it offensively as a basis to demonstrate irreparable harm. Importantly, the occurrence of an event of default will not necessarily (or even likely) lead to the termination of the Debtors' funding under the DIP. It is common for secured lenders to waive such a default and the Debtors' DIP lenders may well choose to do so here in order to preserve the value of their collateral. Therefore, the Debtors' concern is speculative, at best, and clearly does not rise to the level of imminent and irreparable harm.

In a related concern, the Debtors' allege that an event of default under the DIP would trigger a default in the Debtors' forbearance agreement with their pre-petition secured lenders. Such a default under the forbearance agreement would then permit the pre-petition lenders to pursue guaranty claims against the Non-Debtors. (Bigman Declaration ¶ 22.) From this, the Debtors further speculate that the Non-Debtors may end up in insolvency proceedings in their respective European jurisdictions, "many of which provide for liquidation rather than reorganization of debtors." (Debtors' Memorandum, at 2.)

Respectfully, a preliminary injunction -- especially where, as here, the breadth and scope of same is so extraordinary -- requires satisfaction of a heavy burden of proofs, not mere ipse dixit statements and speculations by a party or its counsel. First, the solvency of the Non-Debtors and their ability to satisfy guaranty claims is nowhere discussed. Second, the Debtors provide absolutely no detail as to where the Non-Debtors other than LBIAF are domiciled, the nature of the insolvency laws in such jurisdictions or any support whatsoever for the notion that the laws of these unnamed European countries do not provide for the reorganization of a debtor. On this latter point, the sole reference is the statement of Alan S. Bigman, the Chief Financial Officer of LBIAF -- who does not purport to be a lawyer in any jurisdiction, European or

otherwise -- that he "understands that a European insolvency proceeding is unlikely to involve a process of reorganization or restructuring as in the United States and could cause a fast liquidation of LBIAF." (Bigman Declaration ¶ 20.) This statement is entitled to no weight at all. In fact, as set forth in the Declaration of Alain Rukavina, an avocat à la Cour in Luxembourg, submitted herewith, the law of Luxembourg, in which LBIAF is incorporated, does provide for the reorganization of a debtor under its insolvency laws.

It is far from clear whether LBIAF and the other Non-Debtors would need to resort to insolvency proceedings if the guaranty claims were pursued, but even if in some case that occurred, there is no basis to conclude that any such insolvency proceeding would result in the cessation of the Non-Debtors' operations.

The Debtors further suggest that any proceedings commenced against LBIAF will cause a serious distraction to the Debtors' senior management. (Debtors' Memorandum, at 13.) However, the Debtors fail to identify a single individual in their management team who will be unduly distracted from the Debtors' reorganization in order to participate in LBIAF's potential defense of the guaranty claims. This concern is nowhere even addressed in the Bigman Declaration.

Finally, the Debtors refer to two legal arguments in an effort to establish irreparable harm. First, the Debtors suggest that a finding of liability on the guaranty claims against LBIAF will have a prejudicial collateral estoppel effect upon the Debtors. (Debtors' Memorandum, at 12.) However, the Second Circuit has made clear that the potential offensive use of collateral estoppel against a debtor or the precedential effect of an adverse decision cannot support application of a stay of a proceeding against a non-debtor. Queenie Ltd. v. Nygard International, 321 F.3d 282, 288 (2d Cir. 2003) ("If such apprehension could support application of the stay,

there would be vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants."). In addition, at least one court in this Circuit has rejected this concern altogether. See In re The Metal Center, Inc., 31 B.R. 458, 462 (D. Conn. 1983) (holding that because the automatic stay prevents a debtor from being compelled to appear in a non-bankruptcy court to defend his guarantor's claim, the debtor cannot be bound by any judgment that results from such proceeding.)

In a related point, the Debtors contend that any judgment against LBIAF on a guaranty claim will give rise to a claim for indemnity or contribution against the Debtors, which will diminish the estate. Of course, this ignores the fact that the Debtors are primarily liable to Wachovia. If Wachovia's claim is satisfied by LBIAF, there would simply be a substitution of Wachovia's claim for LBIAF's indemnity claim with no net effect on the Debtors' estate. See In re Old Orchard Investment Co., 31 B.R. 599, 601 (W.D. Mich. 1983) (holding that once the guarantor pays the creditor, the right to demand payment from the debtor passes from the creditor to the guarantor – "it only changes hands"); accord In re Veeco Investment Co., 157 B.R. 452, 454 (Bankr. E.D. Mo. 1993).

In short, Debtors' stated concerns are speculative, illusory and, even if correct, do not support the requisite finding of imminent, substantial and irreparable harm to the Debtors' reorganization.

**B.    The Balance of Hardships Tips in Favor of Wachovia.**

The relief requested by the Debtors is patently discriminatory against Wachovia and the other Defendants holding guaranty claims against LBIAF and the other Non-Debtors. If the requested injunction is granted, only United States creditors of the Debtors who also hold guaranty claims against LBIAF would be adversely affected. The injunction will have no effect upon foreign creditors of the Non-Debtors who are obviously not bound by any injunction issued

by this Court.[2]  See Sinatra v. Gucci (In re Gucci), 309 B.R. 679, 683-84 (Bankr. S.D.N.Y. 2004) (recognizing that extraterritorial effect of automatic stay depends on whether U.S. court has personal jurisdiction over foreign creditor or whether foreign court will choose to enforce U.S. orders).  The practical effect of such an injunction is that while Wachovia and other U.S. creditors of the Debtors would be enjoined indefinitely -- awaiting promulgation, negotiation and perhaps ultimately confirmation of the Debtors' plan of reorganization -- European creditors of the Non-Debtors will be exercising their rights to get paid from the assets of LBIAF and the other Non-Debtors.  Not a single case cited by the Debtors supports the issuance of an injunction under § 105 of the Code that would result in such disparate treatment of creditor classes.

Indeed, this problem highlights the basic inequity of the Debtors' request.  The Debtors seek to have the Non-Debtors unilaterally protected from guaranty claims of creditors of the Debtors without commencing insolvency proceedings or submitting to the jurisdiction of any court.  While Wachovia's claims are enjoined, LBIAF and the Non-Debtors are free to pay whomever they choose -- Wachovia and other creditors will have none of the typical protections afforded under insolvency laws, including a stay against all creditor actions, financial disclosures and an orderly and equitable distribution of assets.

Contrary to the Debtors' suggestion, Wachovia's guaranty claims against LBIAF have real value regardless of whether LBIAF has substantial liquid assets.  LBIAF may be entitled to receive dividends from solvent Non-Debtors which may be used to satisfy guaranty claims.  In addition, Wachovia may be entitled to a judicial lien upon LBIAF's shares of stock in the other

---

[2]  By supplemental motion, the Debtors also seek to enjoin bondholders of LBIAF from pursing legal action against LBIAF.  Irrespective of whether this Court enjoins such bondholders, if Wachovia were enjoined from taking action against LBIAF, it will be prejudiced by the fact that bondholders, not subject to United States jurisdiction, will pursue claims against LBIAF.  If LBIAF either pays those bondholders or allows liens to attach to its assets, those assets will no longer be available to satisfy Wachovia's claims.  Thus, the requested injunction fosters preferential treatment for those creditors of LBIAF who are either not subject to the injunction or not subject to this Court's jurisdiction.

Non-Debtors, some of whom may be solvent even if the Non-Debtors in the aggregate are not. What is crystal clear is that granting the preliminary injunction will greatly prejudice Wachovia and the Defendants. Under these circumstances, the balance of equities strongly favors Wachovia and similarly situated creditors of LBIAF.

      C.      **The Public Interest Weighs Against Granting the Injunction.**

In preventing the commencement of an insolvency proceeding against LBIAF and the other Non-Debtors, the preliminary injunction would inappropriately interfere with the application of foreign insolvency law. If under the laws of Luxembourg, for example, one or more creditors may commence an involuntary proceeding against LBIAF for failure to pay guaranty claims, the preliminary injunction, if issued by this Court, would prevent the proper application of the law of Luxembourg within its own territory. Were the roles of the European and U.S. courts reversed, the result would be equally untenable. U.S. bankruptcy courts would not appreciate an injunction issued by a European court purporting to enjoin creditors of a U.S. corporation from commencing an involuntary proceeding under the Bankruptcy Code. Any such injunction would likely be ignored. Yet, the situation here is no less egregious. We have a strong public interest in ensuring that application of our bankruptcy laws are not abridged by foreign jurisdictions. The corollary is that there is an equally compelling public interest in respecting the insolvency laws and jurisdiction of foreign countries.

A fundamental tenet of our bankruptcy laws is equality in the treatment of creditors. Indeed, this is a key element in a bankruptcy court's decision whether to apply foreign bankruptcy law in the United States. However, as discussed, the Debtors' proposed injunction unfairly discriminates against creditors of the Debtors who hold guaranty claims against LBIAF, to the advantage of LBIAF's European creditors.

In support of this factor, the Debtors refer solely to the public's interest in achieving a successful reorganization of the Debtors. Although the public may indeed have such an interest, it does not trump other even more important societal concerns. Moreover, the Debtors fail to show why a successful reorganization cannot be achieved if the guaranty claims proceed against LBIAF.

## II. THERE IS NO BASIS TO EXTEND THE AUTOMATIC STAY TO PRECLUDE GUARANTY CLAIMS AGAINST LBIAF.

As the Calpine Court recognized, "various courts within this Circuit have held that section 362 should not be extended to stay non-debtor actions involving sureties or guarantors of the debtor." In re Calpine Corp., 365 B.R. at 408, n.19 (citing Longview Equity Fund, LP v. McAndrew, 2007 WL 186769, at *6 (S.D.N.Y. Jan. 23, 2007) ([A] Section 362 stay is not ordinarily extended to entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor); Am-Haul Carting, Inc. v. Contractors Cas. & Sur. Co., 33 F. Supp. 2d 235, 242 (S.D.N.Y. 1998) ("Section 362(a) does not stay actions against guarantors or sureties."); Federal Deposit Ins. Corp. v. Shea & Gould, 1997 WL 401822, at *12-13 (S.D.N.Y. July 17, 1997) ("It is universally acknowledged that an automatic stay of proceeding accorded by § 362 may not be invoked by [or on behalf of] entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor.")). For this reason, the Capline Court declined to base its holding on § 362 of the Code. 365 B.R. at 409.

In any event, for the same reasons that the Debtors fail to demonstrate irreparable harm to their reorganization efforts, they cannot demonstrate "an immediate adverse economic consequence for the [Debtors'] estate[s]" if the guaranty claims proceed against LBIAF. See

Queenie Ltd. v. Nygard Int'l, 321 F.3d at 287 (2d Cir. 2003) (establishing narrow standard for extension of automatic stay).

## CONCLUSION

For all the foregoing reasons, Wachovia respectfully requests that the Court enter an order denying the Motion.

Dated: New York, New York
       February 12, 2009

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**
Attorneys for Wachovia Bank, National Association

By: /s/ Richard S. Toder
   Richard S. Toder, Esq.,
   Andrew D. Gottfried, Esq.
   Matthew W. Olsen, Esq.

   101 Park Avenue
   New York, New York 10178
   (212) 309-6000