Hearing Date: February 25, 2009 at 10:30 a.m. (prevailing Eastern Time)

Marshall S. Huebner
Elliot Moskowitz
Jane H. Yoon
Darren S. Klein
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile:  (212) 607-7998
*lyondellco.routing@dpw.com*

Counsel for Citibank, N.A.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In Re:                                             )
                                                   ) Chapter 11
LYONDELL CHEMICAL COMPANY, *et al.*,               )
                                                   ) Case No. 09-10023 (REG)
                        Debtors.                   )
                                                   ) (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY OF THE AGENT FOR THE POST-PETITION ABL DIP LENDERS TO THE OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE LIMITED OBJECTIONS OF SHRIEVE CHEMICAL COMPANY AND TEXAS SAMPLING, INC. TO THE DEBTORS' REQUEST FOR ENTRY OF PROPOSED FINAL ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e), (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (C) TO PURCHASE CERTAIN ASSETS PURSUANT TO 11 U.S.C. § 363 AND (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED <u>PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364</u>**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................ 5

    I.     The Maturity Date is Entirely Appropriate and the ABL DIP Credit
         Agreement Was Negotiated in Good Faith ................................................. 5

    II.    The DIP Lenders Are Fully Entitled to Liens and Claims on the
         Proceeds of  Avoidance Actions ................................................................. 9

    III.   Section 506(c) May be Waived at the Sole Discretion of the Debtors ..... 12

    IV.   The Proposed Committee Challenge Period and Budget Are
         Appropriate and  Granting the Committee Standing is Premature ........... 15

    V.    The Reclamation Objections Are Untimely and Without Merit ............... 20

CONCLUSION ............................................................................................................ 22

APPENDIX OF ORDERS (in Alphabetical Order) ........................................................ 23

## TABLE OF AUTHORITIES

PAGE

### Cases

*Bear Stearns Sec. Corp. v. Gredd*, 275 B.R. 190 (S.D.N.Y. 2002) ................................. 11

*Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1 (2000) ................... 12

*In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG) (Bankr. S.D.N.Y. Aug. 23, 2002) (Docket No. 525) ................................................................................ 10, 13, 19

*In re Ames Dep't Stores*, 115 B.R. 34 (Bankr. S.D.N.Y. 1990 ....................................... 18

*In re Arlco*, 239 B.R. 261 (Bankr. S.D.N.Y. 1999) ....................................................... 21

*In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 30, 2006) (Docket No. 664) ............................................................................................... 13

*In re Child World*, 145 B.R. 5 (Bankr. S.D.N.Y. 1992) ................................................. 21

*In re Citation Corp.*, No. 04-08130 (TOM) (N.D. Ala. Oct. 19, 2004) (Docket No. 348) ........................................................................................................... 13, 17

*In re Commodore Int'l Ltd.*, 262 F.3d 96 (2d Cir. 2001) .............................................. 19

*In re Crown Vantage Inc.*, No. 00-41584 (RJN) (N.D. Cal. Apr. 18, 2000) (Docket No. 93) ................................................................................................ 14, 16

*In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128 (Bankr. S.D.N.Y. 2003) ......... 21

*In re Dana Corp.*, 367 B.R. 409 (Bankr. S.D.N.Y. 2007) .............................................. 21

*In re Delphi Corp.*, No. 05-44481 (RDD) (Bankr. S.D.N.Y. Oct. 28, 2005) (Docket No. 797) ............................................................................................... 13

*In re Delta Air Lines, Inc.*, No. 05-17923 (ASH) (Bankr. S.D.N.Y. Oct. 6, 2005) (Docket No. 652) ............................................................................................... 13

*In re EDC Holding Co.*, 676 F.2d 945 (7th Cir. 1982) .................................................. 8

*In re Ellingsen MacLean Oil Co.*, 834 F.2d 599 (6th Cir. 1987) .................................... 7

*In re Enron Corp.*, No. 01-16034 (AJG) (Bankr. S.D.N.Y. July 2, 2002) (Docket No. 4888) ......................................................................................................... 10, 13

*In re Farmland Indus., Inc.*, 294 B.R. 855 (Bankr. W.D. Mo. 2003) ............................... 7

*In re Fed. Mogul*, No. 01-10578 (JKF) (Bankr. D. Del. Nov. 21, 2001) (Docket No. 370) ................................................................................................ 13-14

*In re Frontier Airlines Holdings, Inc.*, No. 08-11298 (RDD) (Bankr. S.D.N.Y. Sept. 3, 2008) (Docket No. 490) .......................................................... 10, 13

*In re Integrated Testing Prods. Corp.*, 69 B.R. 901 (D.N.J. 1987) ........................... 11-12

*In re Maxxim*, No. 03-10438 (PJW) (Bankr. D. Del. Mar. 19, 2003) (Docket No. 134) ......................................................................................................... 13, 16

*In re Meridian Auto. Sys. – Composites Operations, Inc.*, No. 05-11168 (MFW) (Bankr. D. Del. June 30, 2005) (Docket No. 339) ................................. 13, 16

*In re Missouri River Sand & Gravel, Inc.*, 88 B.R. 1006 (Bankr. D.N.D. 1988) ............. 18

*In re Pester Refining Co.*, 964 F.2d 842 (8th Cir. 1992) ................................................20

*In re Pittsburgh-Canfield Corp.*, 309 B.R. 277 (B.A.P. 6th Cir. 2004)............................20

*In re Polaroid Corp.*, No. 01-10864 (PJW) (Bankr. D. Del. Nov. 5, 2001) (Docket No. 130) ......................................................................................................... 10

*In re River Ctr. Holdings, LLC*, 394 B.R. 704 (S.D.N.Y. 2008) ...................................... 13

*In re Samuels & Co.*, 526 F.2d 1238 (5th Cir. 1976) (en banc), *cert. denied*, 429 U.S. 834 (1976)........................................................................................20

*In re Silver Cinemas Int'l, Inc.*, No. 00-01978 (PJW) (Bankr. D. Del. June 14, 2000) (Docket No. 157) ................................................................................ 10

*In re Smart World Techs., LLC*, 423 F.3d 166 (2d Cir. 2005).......................................... 12

*In re STN Enters.*, 779 F.2d 901 (2d Cir. 1985), *modified on other grounds by In re Dur Jac Ltd.*, 254 B.R. 279 (Bankr. M.D. Ala. 2000)...................................... 18, 19

*In re Suchy*, 786 F.2d 900 (9th Cir. 1985) .......................................................................... 7

*In re Sweetwater*, 884 F.2d 1323 (10th Cir. 1989) .......................................................... 11

*In re The Colad Group, Inc.*, 324 B.R. 208 (Bankr. W.D.N.Y. 2005) ........................ 8, 14

*In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 Bankr. LEXIS 76 (Bankr. D. Del. Jan. 26, 2001) (Docket No. 252) ...................................... 11

*In re Tronox, Inc.*, No. 09-10156 (ALG) (Bankr. S.D.N.Y. Feb. 9, 2009) (Docket No. 151) ......................................................................................................... 6, 16

*In re V. Savino Oil & Heating Co., Inc.*, 91 B.R. 655 (Bankr. E.D.N.Y. 1988)............... 18

*In re Victory Mkts.*, 212 B.R. 738 (Bankr. N.D.N.Y. 1997) ...............................................21

*In re Visual Indus., Inc.*, 57 F.3d 321 (3d Cir. 1995) ...................................................... 14

*In re WCI Cmtys., Inc.*, No. 08-11643 (KJC) (Bankr. D. Del. Sept. 23, 2008)
    (Docket No. 409) ................................................................................................ 13, 16

*Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R.
    416 (S.D.N.Y. 2006) ................................................................................................ 19

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re
    Cybergenics Corp.)*, 226 F.3d 237 (3d. Cir. 2000) .................................................. 12

*Official Comm. of Unsecured Creditors of Grand Eagle Cos., Inc. v. ASEA Brown
    Boverie, Inc.*, 313 B.R. 219 (N.D. Ohio 2004) .......................................................... 19

*Official Unsecured Creditors' Comm. v. N. Trust Co. (In re Ellingsen MacLean
    Oil Co.)*, 98 B.R. 284 (Bankr. W.D. Mich. 1989) .................................................... 10

*Pan Am. World Airways v. Care Travel Co.*, No. 91-8319 (LMM), 1992 U.S. Dist.
    LEXIS 8396 (S.D.N.Y. Jun. 17, 1992) .................................................................... 8, 9

*Simon & Schuster, Inc. v. Advanced Mktg. Servs. (In re Advanced Mktg. Servs.)*,
    360 B.R. 421 (Bankr. D. Del. 2007) ........................................................................21

*Trans World Airlines v. Travellers Int'l AG*, 163 B.R. 964 (Bankr. D. Del. 1994).......... 10

*Unsecured Creditors' Comm. v. Jones Truck Lines, Inc.*, 156 B.R. 608 (W.D. Ark.
    1992) ........................................................................................................................ 10

## Statutes and Rules

11 U.S.C. § 364 ..................................................................................................................... 9

11 U.S.C. § 506(c) .............................................................................................. 4, 12, 13, 14, 15

11 U.S.C. § 541(a) ................................................................................................................. 9

11 U.S.C. § 546(c)(1) ......................................................................................................... 21

11 U.S.C. § 548 ...................................................................................................................11

11 U.S.C. § 1103(c)(5).........................................................................................................19

11 U.S.C. § 1109(b) ........................................................................................................12, 19

Uniform Commercial Code § 1-201(19)........................................................................... 7

Uniform Commercial Code § 702...................................................................................20

Local Rule of Bankruptcy Procedure (S.D.N.Y.) 4001-2(f).........................................4, 15

Citibank, N.A. ("**Citi**") acting as Administrative Agent for the ABL DIP Facility[1]

(in such capacity, the "**ABL DIP Agent**") for itself and the syndicate of financial

institutions who are lenders under the ABL DIP Facility (together with Citi, the "**ABL**

**DIP Lenders**"), hereby files this Reply to the Objection of the Official Committee of

Unsecured Creditors (the "**Committee**," and, with respect to the Objection, the

"**Committee Objection**") and the Limited Objections of Shrieve Chemical Company and

Texas Sampling, Inc. to the Debtors' request for entry of a final order authorizing the

Debtors to obtain post-petition financing, granting adequate protection to the Pre-Petition

Secured Lenders and authorizing the Debtors to use cash collateral (the "**Final DIP**

**Order**") pursuant to chapter 11 of title 11 of the United States Code (as amended, the

"**Bankruptcy Code**" or "**Code**").

## INTRODUCTION

1.        Although one might not know it from the Committee Objection, the

proposed final DIP financing before the Court involves two separate facilities:  a Term

DIP Facility and an ABL DIP Facility.  The Committee Objection primarily attacks the

provisions of the Term DIP Facility, not the ABL DIP Facility.  While the Reply of the

Agent for the Post-Petition Term Facility addresses (and dispenses with) the primary

arguments of the Committee, it is important to clarify at the outset that the ABL DIP

Facility is not controversial.[2]

---

[1] Capitalized terms used and not defined herein have the meaning ascribed to them in the proposed
Final DIP Order.

[2] This dichotomy has been recognized by several objectors to the Term DIP Facility.  *See, e.g.,*
Limited Objection of ABN Amro Bank N.V. (Docket No. 887) ¶ 3 ("ABN, which committed to fund up to
approximately $326 million of the ABL DIP Financing, has no objection to the proposed ABL DIP Credit
Agreement which is substantially consistent with the DIP Term Sheet.")

2.      The proposed final DIP financing (which will be referred to as such despite it being two separate facilities) is reportedly the largest DIP financing in U.S. history.  That this financing is even possible in this extraordinary macroeconomic environment – in which the credit markets have virtually dried up – is a testament to the intense good faith efforts all sides have made to negotiate and finalize the agreements at issue.  Indeed, the ratio of hyperbolic and offensive adjectives in the Committee's Objection to the actual facts supporting them approaches an all time high.[3]  Despite tens of thousands of pages of discovery and multiple depositions, they cite not one word of a deposition nor any documents in support of their insidious and unsupported criticisms of bad faith and diabolical illegality.  At the end of the day, looking past the cacophonous sound and fury, they wish the facility was a bit longer and a bit cheaper.  But that is not what the market is willing to provide, and is certainly no basis for denying a DIP that is the only thing standing between these Debtors and liquidation.

3.      Since this Court approved the Interim DIP Order on January 8, 2009, the ABL DIP Lenders have engaged in extensive negotiations in order to reach agreement on the terms of the Final DIP Order and the DIP Facilities.  The DIP Lenders and their professionals have spent numerous hours virtually every day negotiating with, among others, representatives of the Debtors, the Committee and various objectors.  Indeed, the parties have made substantial changes to the proposed order and credit documents in order to satisfy the concerns of various constituencies.  The DIP Facilities that resulted

---

[3] The DIP financing is, among other things, "confiscatory," "exorbitant," "improper," "unfair," "a usurpation," "eggregious," "draconian," "avaricious," "illegal," "arbitrary," "onerous" and "a subterfuge." And, if more need be said, its "economically draconian and outcome-determinative provisions represent lender overreaching at its most eggregious."  (Comm. Obj. ¶ 31.)

from this lengthy process were negotiated in good faith, are fair and reasonable and will benefit the estates as well as the other parties in interest.

4.      While the parties were able to resolve many of the concerns raised by the Committee during the negotiating process, a limited number of issues remain.  Four of these issues, which are relevant to both DIP facilities, are addressed in this Reply.  The remaining issues are addressed in the Reply submitted on behalf of the Term DIP Lenders.  The four issues that are the subject of this Reply, and which are addressed in detail below, are as follows:

A.      <u>Maturity Date</u>.  The Committee has objected to the maturity date of December 15, 2009.  While this issue is addressed more fully in the Reply of the Agent for the Post-Petition Term Facility and in the Debtors' papers, a maturity date of this duration is entirely appropriate given the state of the credit markets and world economy, the inability of the Debtors to furnish reliable long-term performance forecasts, and the sheer size of the proposed facilities.  Moreover, all borrowers wish they had a longer – or cheaper – loan.  But a 12 month term certainly does not warrant denial of the requested relief.  Nor has any court ever so held.

B.      <u>Avoidance Actions</u>.  The Committee has objected to the granting of liens and superpriority claims on proceeds of avoidance actions.  But there is no basis for any objection.  This carefully tailored provision grants such relief only as to the *proceeds* of avoidance actions, and not on avoidance actions themselves.  In addition, the provision as drafted prohibits a lender from having any diminution claim from a successful avoidance action against it.  The proposed language has strong support in the case law and precedent, and of course avoidance proceeds are property of the estate that must be paid to creditors in accordance with statutory priorities.

3

C.      Section 506(c) Waiver.  The Committee has objected to the Debtors' agreement to waive claims under section 506(c) of the Bankruptcy Code.  But courts in this District have repeatedly authorized such waivers, and, in any event, section 506(c) is intended to prevent the estate from spending *unencumbered* assets for the sole benefit of secured lenders.  Here, where there may be no unencumbered assets to spend (the lenders have liens on substantially all of the Debtors' assets), a waiver of section 506(c) is particularly appropriate.  Indeed, if the lenders are under-secured, unsecured creditors deserve no distribution, and the tens of millions of dollars spent pursuant to the DIP budget will, in effect, already have been a massive section 506(c) waiver.

D.      Committee Challenge Period and Expenses.  Although the DIP Lenders have proposed a Committee challenge period that expires on June 1, 2009 (and may be extended under certain circumstances) and a reasonable budget of $250,000, the Committee is dissatisfied.  But the proposed challenge period and budget are in line with (or exceed) the provisions typically approved in large bankruptcy cases.  Under Local Rule 4001-2(f), and as courts in this District have often required, the challenge period is ordinarily 60 days from the date of entry of the final order authorizing post-petition financing and use of cash collateral, or such longer period as the court orders for cause shown prior to the expiration of the 60-day period.  In this case, the proposed Final Order contemplates a challenge period of approximately 135 days from the appointment of Committee Counsel, *plus* an extension of time upon either lender consent or upon a showing that the Debtors have not reasonably cooperated in providing reasonably and timely requested information.  This proposal is eminently reasonable, and should be approved.  It is likewise entirely premature to grant the Committee blanket standing at this early stage, as it has requested.

4

5.      In addition, we note that although the Committee Objection includes an attack on the so-called "Citibank Release Provision" (Comm. Obj. ¶70(d)), that issue was consensually resolved prior to the filing of the Committee Objection and was inadvertently included in the Committee's brief.[4]  Accordingly, the issue is no longer before the Court.

6.      Finally, this Reply also addresses the Limited Objections to the ABL DIP Facility and Term DIP Facility filed by Shrieve Chemical Company ("**Shrieve**") and Texas Sampling, Inc. ("**TSI**") in connection with their reclamation rights (collectively, "**the Reclamation Objections**").  As set forth more fully below, the Reclamation Objections should be overruled as untimely and without merit.

## ARGUMENT

**I.      The Maturity Date is Entirely Appropriate and the ABL DIP Credit Agreement Was Negotiated in Good Faith**

7.      The ABL DIP Credit Agreement, like the Term DIP Credit Agreement, has a maturity date of December 15, 2009.[5]  This provision was negotiated in good faith by all parties to the agreement, under extremely difficult circumstances, and is entirely appropriate.  As set forth in the Declaration of David Jaffe in Support of this Reply, the lenders believe that a maturity date of this length is "a reasonable market term" (to the extent there is a DIP market any longer), and a longer term would not have been feasible

---

[4] We brought this to the attention of the Committee on Sunday, February 22, 2009, shortly after the Committee Objection was filed.

[5] Both the Term DIP Credit Agreement and the ABL DIP Credit Agreement contain provisions to extend the maturity date of the facilities.  *See* Term DIP Credit Agreement § 2.05 and ABL DIP Credit Agreement § 10.02(b).  The Committee Objection incorrectly characterizes the extension of the maturity date of the Term DIP Credit Agreement as requiring "100% consent of the lenders providing the new money in their sole discretion."  (Comm. Obj. at ¶ 32 n.3.)  In fact, both DIP Credit Agreements contain provisions that would allow the extension of the maturity date with less than unanimous consent, provided that the consenting lenders, in the case of the Term DIP Credit Agreement, or the ABL DIP Agent or its transferee, in the case of the ABL DIP Credit Agreement, purchase the loans held by the non-consenting lenders.  *See* Term DIP Credit Agreement § 3.07 and ABL DIP Credit Agreement § 10.02(e).

given the lack of "long-term visibility" into the company's financial performance.  (*See*

Declaration of David Jaffe dated February 22, 2009 ("Jaffe Decl.") ¶¶ 4-9.)

8.      In addition, the agreement was negotiated under difficult conditions,

involving round the clock negotiations to rescue a failing company by raising $3 billion

in frozen credit markets – all between Christmas and New Year's.  (*Id.* ¶¶ 4, 13.)  Under

these circumstances, this was the only maturity date acceptable to the lending institutions

participating in the two DIP facilities.  (*Id.* ¶ 7.)  As Mr. Jaffe stated, had the Debtors

insisted on a longer maturity date, "I do not think it would have been approved."  (*Id.*)

9.      Moreover, a review of the maturity dates for DIP facilities in recent

bankruptcy cases reveals that a one-year term is not atypical.  For example, earlier this

month, Judge Gropper approved a DIP facility (involving another large chemical

company) with a maturity date of one year.  *See* Corrected Final DIP Order, *In re Tronox,*

*Inc.,* No. 09-10156 (ALG) (Bankr. S.D.N.Y. Feb. 9, 2009) (Docket No. 151) (approving

credit agreement filed at Docket No. 4 on January 12, 2009).[6]  Likewise, in December

2008, Pilgrim's Pride Corporation entered into a DIP facility with a maturity date of one

year, extendable for 6 months only upon the consent of all lenders.  (*See* Pilgrim's Pride

Corp., Form 8-K filed on Dec. 4, 2008, item 1.03.)  And in June 2008, Linens N Things

entered into a DIP facility with a term of one year, with any changes to the maturity date

requiring the consent of all lenders affected thereby.  (*See* Linens N Things Inc., Form 8-

K filed on Jun. 2, 2008, at 162.)

10.     The rationale for the maturity date in the DIP Facilities is discussed in

greater detail in the briefs submitted on behalf of the Debtors and UBS, but it is enough

---

[6] Pursuant to this Court's Case Management Order, details concerning all of the precedent orders cited in this brief are catalogued in the Appendix, and the orders themselves are attached as exhibits (as well as indexed in the Appendix).

to say for now that the maturity date in the ABL DIP Credit Agreement was negotiated in good faith and is no basis for denying approval.

11.    In particular, the standard set forth in *In re Farmland Indus., Inc.*, 294 B.R. 855, 879 (Bankr. W.D. Mo. 2003), the decision the Court cited when it permitted limited discovery of the Agents for the two DIP facilities, has clearly been satisfied.  In addition to describing a four-factor test for courts to consider in evaluating a motion to approve post-petition financing (that test is addressed in detail in the Debtors' papers and is conceded, *sub silentio*, by the Committee's failure to address it), the *Farmland* decision notes that a bankruptcy court should consider whether a proposed "financing agreement was negotiated in good faith and at arm's length between the Debtors, on the one hand, and the Agents and the Lenders, on the other hand."  *See Farmland*, 294 B.R. at 881, 886, 889 (concluding that agreement was negotiated in good faith, noting "[i]t is not impermissible for a bank to use its superior bargaining power to obtain creditor-favorable terms in a financing agreement").  Although "[t]he Bankruptcy Code does not provide a definition of good faith," *In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985), the term has been defined to mean "honesty in fact in the conduct or transaction concerned."  *In re Ellingsen MacLean Oil Co.*, 834 F.2d 599, 605 (6th Cir. 1987) (quoting the Uniform Commercial Code at section 1-201(19)).

12.    By any reasonable definition, the proposed ABL DIP Facility was entered into in "good faith."  With respect to the maturity date, as noted above, the lenders believed that such a date was appropriate under the circumstances and constituted "a reasonable market" term.  (*See* Jaffe Decl. ¶ 4.)  With respect to the financial covenants set forth in the ABL DIP Facility agreement, which the Committee charges are "egregious" (Comm. Obj. ¶ 31), Mr. Jaffe stated that "the provisions were negotiated in

7

connection with the Term DIP Facility Credit Agreement, and then imported into the

ABL DIP Facility Credit Agreement." (*Id.* ¶ 10.) At the same time, Mr. Jaffe expressly

testified that the provisions were not designed to cause a default by the Debtors, and he

does not believe the covenants will lead to that outcome. (*Id.* ¶ 13.) Indeed, Mr. Jaffe

observed that the Debtors were at all times trying to drive as hard a bargain as possible,

and that it took "a herculean effort" from all parties to save the company under these

trying circumstances. (*Id.*) Accordingly, a finding of "good faith" is plainly warranted

under the *Farmland* standard.

13.    The cases cited by the Committee in support of a different conclusion are

completely inapposite. (*See* Comm. Obj. ¶¶ 29-30.) For example, in *In re EDC Holding*

*Co.*, 676 F.2d 945, 947 (7th Cir. 1982), the Court held that a portion of the "loan" – really

a $77,000 side payment to lawyers – made it "evident from the loan agreement itself that

the transaction has an intended effect that is improper under the Bankruptcy Code." *Id.*

Our situation involves no such illegal payments, and certainly no such intent has been

adduced in the discovery the Committee has taken. Likewise, in *In re The Colad Group,*

*Inc.*, 324 B.R. 208 (Bankr. W.D.N.Y. 2005), the finding of a lack of good faith came in

the context of criminally usurious interest amounting to greater than 100% per annum

when all fees were included. The facts of *Colad* are not even remotely related to the

situation here.

14.    To the extent the Committee is arguing that the lenders are acting in their

own self-interest in making the DIP loan and that somehow that means they are acting in

bad faith – the Committee is wrong. In *Pan Am. World Airways v. Care Travel Co.*, No.

91 Civ. 8319 (LMM), 1992 U.S. Dist. LEXIS 8396 (S.D.N.Y. Jun. 17, 1992), the

plaintiff, a creditor of the debtor, appealed an order allowing Delta Air Lines, pursuant to

section 364 of the Bankruptcy Code, to make three loans to Pan Am.  The plaintiff argued

that Delta was not a good faith lender because it "advanced funds for some ulterior

purpose primarily in furtherance of its own self-interest." *Id*. at *16-17.   The court

acknowledged that Delta made the loan for its own purposes of "wanting [Pan Am]'s

trans-Atlantic routes." *Id*. at *18.  However, the court held that this was not an improper

purpose, noting that Delta "was willing to risk advancing funds to the Debtors in the

effort to get those routes." *Id*.  As such, the court found that the bankruptcy court's

finding that Delta was a good faith lender were not clearly erroneous.

15.     Accordingly, the Committee's objection to the maturity date is without

merit, and a finding of "good faith" in the Final DIP Order is warranted.

## II.     The DIP Lenders Are Fully Entitled to Liens and Claims on the Proceeds of Avoidance Actions

16.     The Committee contends that the DIP Lenders are not entitled to

repayment from the proceeds of avoidance actions.  (Comm. Obj. ¶¶ 59-62.)  First, the

Committee has offered an incomplete description of the proposed final DIP Order –

under the proposed final DIP Order, the DIP Lenders (and Adequate Protection Parties)

would be entitled to payment from the *proceeds* of avoidance actions, if any.  The

proposed final DIP Order expressly provides that the DIP Lenders do not have a lien on

avoidance actions themselves, nor would the Adequate Protection Parties be permitted to

claim adequate protection resulting from any diminution based upon avoidance actions in

which they were defendants.

17.     The Committee's argument that the DIP Lenders are not entitled to

*proceeds* derived from avoidance actions is wrong.  Under the explicit terms of sections

541(a)(3) and (a)(4) of the Bankruptcy Code, avoidance proceeds are property of the estate.

Nothing more and nothing less.  Like all other property of the estate, they may be pledged to secure the claims of senior creditors, and when received, must – by law – be paid to creditors in their statutory order of priority.

18.    The case law strongly supports such a result.  In fact, numerous decisions endorse even stronger relief, inasmuch as they approve the granting of liens on avoidance actions themselves, a broader provision than requested here.  *See, e.g.*, Final DIP Order, *In re Silver Cinemas Int'l, Inc.*, No. 00-01978 (PJW) (Bankr. D. Del. June 14, 2000) (Docket No. 157) (approving the granting of liens on avoidance actions to post-petition lenders); *Trans World Airlines v. Travellers Int'l AG*, 163 B.R. 964 (Bankr. D. Del. 1994) (same); *Unsecured Creditors' Comm. v. Jones Truck Lines, Inc.*, 156 B.R. 608, 614 (W.D. Ark. 1992); *Official Unsecured Creditors' Comm. v. N. Trust Co. (In re Ellingsen MacLean Oil Co.)*, 98 B.R. 284, 291-92 (Bankr. W.D. Mich. 1989).

19.    Moreover, courts within this District, including this Court, have routinely approved the relief requested here.  *See, e.g.*, Final DIP Order, *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG) (Bankr. S.D.N.Y. Aug. 23, 2002) (Docket No. 525) (granting a lien on proceeds of avoidance actions); Final DIP Order, *In re Enron Corp.*, No. 01-16034 (AJG) (Bankr. S.D.N.Y. July 2, 2002) (Docket No. 4888) (same); Final DIP Order, *In re Frontier Airlines Holdings, Inc.*, No. 08-11298 (RDD) (Bankr. S.D.N.Y. Sept. 3, 2008) (Docket No. 490) (same).  And courts in other jurisdictions have reached the same conclusion.  *See, e.g.*, Final DIP Order, *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 Bankr. LEXIS 76 (Bankr. D. Del. Jan. 26, 2001) (Docket No. 252); Final DIP Order, *In re Polaroid Corp.*, No. 01-10864 (PJW) (Bankr. D. Del. Nov. 5, 2001) (Docket No. 130).

20.    Unsurprisingly, none of the cases cited by the Committee support the claim that "liens [in proceeds of avoidance actions] granted to the DIP Lenders is inconsistent with both the intent behind Avoidance Actions and the scope of a debtor-in-possession's avoidance powers," (Comm. Obj. ¶ 60), which flies directly in the face of many provisions of the Bankruptcy Code.  Only one of the cases cited is even relevant to the issue of liens in proceeds of avoidance actions, and that case, *In re Sweetwater*, 884 F.2d 1323 (10th Cir. 1989), strongly *supports* distributing proceeds of avoidance actions according to chapter 11's priorities.  In *Sweetwater*, rather than distribute proceeds of avoidance actions equally among all creditors (or give them the magical "directly to unsecured creditors notwithstanding the Bankruptcy Code" status sought here), the reorganization plan called for giving first priority to administrative claimants.  *See id.* at 1324-25.  The court expressly found that  "preference claims may be a source of future cash that can eventually pay administrative claims . . . . One method of closing the chapter 11 case and financing the reorganization plan is to distribute a share in the recovery from exercising of the avoiding powers."  *See id*. at 1329-1330 & n.6 (citations omitted).

21.    The Committee's other purported citations of case law amount to little more than selective quotes pulled out of context.  For example, *Bear Stearns Sec. Corp. v. Gredd*, 275 B.R. 190 (S.D.N.Y. 2002), is not relevant to the issue of whether liens can be granted in the proceeds of avoidance actions.  Rather, that case stands for a narrow reading of the Trustee's avoidance powers under Section 548 of the Bankruptcy Code. *Id.* at 194 (holding that "whether the goal is to protect some creditors, as in the case of section 547, or all creditors, as in the case of section 548, only asset transfers that may have actually harmed creditors may be avoided").  Similarly, *In re Integrated Testing*

11

*Prods. Corp.*, 69 B.R. 901 (D.N.J. 1987) is not relevant to issues relating to post-petition

liens. That case considers the extent of pre-petition liens. Furthermore, it was decided

under New Jersey state law, not solely under generally applicable provisions of the

Bankruptcy Code. Nor does *Official Comm. of Unsecured Creditors of Cybergenics*

*Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237 (3d. Cir. 2000), support the

claim that Debtors "do not possess the authority to grant security interests in [the

proceeds] of Avoidance Actions" to obtain DIP financing. (Comm. Obj. ¶ 61.) Rather,

that case held that a sale of the Debtors' assets to a third party did not preclude a

creditors' committee from pursuing an avoidance action claim against a defendant

because the sale "was not an assignment of avoidance powers." *Id.* at 245. Accordingly,

the Committee's request is both unlawful and wholly without support.

**III.    Section 506(c) May be Waived at the Sole Discretion of the Debtors**

22.    Section 506(c) of the Bankruptcy Code permits the debtor – and no other

party – to recover from property securing an allowed claim the reasonable costs of

preserving such property. The Final DIP Order includes a waiver of section 506(c) by the

Debtors, and the Committee has objected. But it is well established that the Debtors are

vested with the discretion to waive section 506(c).

23.    As a threshold matter, section 506(c) claims are available only to, and an

asset of, the Debtors, and not to any other creditor or party in interest. *See Hartford*

*Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000) ("the trustee is the

only party empowered to invoke" section 506(c)); s*ee also In re Smart World Techs.,*

*LLC*, 423 F.3d 166, 181-82 (2d Cir. 2005) ("Section 506(c) . . . allows only the "trustee,"

or debtor-in-possession, to take advantage of this exception . . . . We read *Hartford*

*Underwriters* to stand for the proposition that § 1109(b) does not entitle parties in

interest, such as Smart World's creditors, to usurp the debtor-in-possession's role as legal representative of the estate."); *In re River Ctr. Holdings, LLC*, 394 B.R. 704, 717 (Bankr. S.D.N.Y. 2008) ("The Supreme Court has made clear that only the trustee has the power, under the plain language of the Code, to assert a section 506(c) claim."). Accordingly, there is no reason whatsoever that these claims cannot be settled or traded for valuable consideration by their sole owner.

24.     Indeed, courts in this District have repeatedly endorsed section 506(c) waivers in Final DIP Orders, using virtually the same formulation that is in the Final DIP Order before the Court. *See, e.g.*, Final DIP Order, *In re Frontier Airlines Holdings, Inc.*, No. 08-11298 (RDD) (Bankr. S.D.N.Y. Sept. 3, 2008) (Docket No. 490); Final DIP Order, *In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 30, 2006) (Docket No. 664); Final DIP Order, *In re Delphi Corp.*, No. 05-44481 (RDD) (Bankr. S.D.N.Y. Oct. 28, 2005) (Docket No. 797); Final DIP Order, *In re Delta Air Lines, Inc.*, No. 05-17923 (ASH) (Bankr. S.D.N.Y. Oct. 6, 2005) (Docket No. 652); Final DIP Order, *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG) (Bankr. S.D.N.Y. Aug. 23, 2002) (Docket No. 525); Final DIP Order, *In re Enron Corp.*, No. 01-16034 (AJG) (Bankr. S.D.N.Y. July 2, 2002) (Docket No. 4888).

25.     Such provisions have regularly been authorized by courts outside this District as well. *See, e.g.*, Final DIP Order, *In re WCI Cmtys., Inc.*, No. 08-11643 (KJC) (Bankr. D. Del. Sept. 23, 2008) (Docket No. 409); Final DIP Order, *In re Meridian Auto. Sys. – Composites Operations, Inc.*, No. 05-11168 (MFW) (Bankr. D. Del. June 30, 2005) (Docket No. 339); Final DIP Order, *In re Citation Corp.*, No. 04-08130 (TOM) (N.D. Ala. Oct. 19, 2004) (Docket No. 348); Final DIP Order, *In re Maxxim*, No. 03-10438 (PJW) (Bankr. D. Del. Mar. 19, 2003) (Docket No. 134); Final DIP Order, *In re Fed.*

13

*Mogul*, No. 01-10578 (JKF) (Bankr. D. Del. Nov. 21, 2001) (Docket No. 370); Final DIP

Order, *In re Crown Vantage Inc.*, No. 00-41584 (RJN) (N. D. Cal. Apr. 18, 2000)

(Docket No. 93).

26.    In addition, the Lenders have liens on substantially all of the Debtors'

assets (including all cash).  Every single dollar that these Debtors spend is a dollar of

collateral dissipated.  The primary rationale of Section 506(c) – that the estate not spend

*unencumbered* funds for the direct and sole benefit of secured parties – is thus

inapplicable in this case.  As the Third Circuit noted in *In re Visual Indus., Inc.*, 57 F.3d

321, 325 (3d Cir. 1995): "The rule understandably shifts to the secured party, who has

benefitted from the claimant's expenditure, the costs of preserving or disposing of the

secured party's collateral, which costs might otherwise be paid from the unencumbered

assets of the bankruptcy estate, providing that such unencumbered assets exist."  It is

possible that no such assets exist in this case.

27.    Finally, the cases cited by the Committee (*see* Comm. Obj. ¶ 64) provide

them no succor.  Three of the four cases cited *pre-date* the United States Supreme Court's

decision in *Hartford Underwriters* (*supra* ¶ 23) and thus cannot be read for the

proposition that section 506(c) rights are not waivable, as the Committee suggests.[7]  The

fourth case, *In re The Colad Group*, is factually inapposite (*see supra* ¶ 13) and states

only that 506(c) waivers are unenforceable to the extent that they alter "the statutory

rights of third parties."  324 B.R. 208, 224 (Bankr. W.D.N.Y. 2005).  Given the express

holding of *Hartford Underwriters* that section 506(c) is a right only of the debtor, the

statutory rights of third parties would not be altered by a section 506(c) waiver.  The

---

[7] These cases are also from outside this jurisdiction, namely, the Western District of Michigan, the
U.S. Court of Appeals for the 8th Circuit, and the Middle District of Tennessee.  (*See* Comm. Obj. ¶ 64.)

Committee's assertion that "courts routinely reject the waiver of surcharge rights under

Section 506(c)," (Comm. Obj. ¶ 64), is plainly wrong.

**IV.    The Proposed Committee Challenge Period and Budget Are Appropriate and
Granting the Committee Standing is Premature**

28.    The Committee also complains that the challenge period and budget cap

contained in the proposed Final DIP Order are inadequate.  (Comm. Obj. ¶¶ 54-58.)  The

proposed Final DIP Order includes a Committee challenge period that expires on June 1,

2009, that can be extended by the Court for cause upon a showing that the Debtors have

not reasonably cooperated in providing reasonably and timely requested information.

The proposed order also provides for a budget of up to $250,000 for the Committee to

investigate potential claims.  These provisions are reasonable and consistent with such

provisions in other large bankruptcy cases.

29.    With respect to the challenge period, the proposed Final DIP Order

reflects a time frame substantially longer than the period contemplated by the applicable

local rule.  Under Local Rule 4001-2(f), and as courts in this District have often required,

the challenge period is ordinarily 60 days from the date of entry of the final order

authorizing post-petition financing and use of cash collateral, or such longer period as the

court orders for cause shown prior to the expiration of the 60-day period.  In this case, the

proposed Final DIP Order contemplates a challenge period of approximately 135 days

when measured from the appointment of Committee Counsel (or 90 days when measured

from the date of the repeatedly adjourned Final DIP hearing), *plus* a further extension of

time upon either lender consent or upon a showing that the Debtors have not reasonably

cooperated in providing reasonably and timely requested information.  Although the

Committee requests that the proposed Final DIP Order permit the challenge period to be

extended simply "for good cause shown," given that the initial challenge period is

significantly longer than the period required by the local rule, and given that the

Committee is already seemingly already proceeding in its investigation (judging by the

fraudulent transfer charges already contained in its preliminary statement; *E.g.* Comm.

Obj. ¶ 9), it is entirely appropriate to include some additional threshold that provides for

more limited circumstances under which the period may be extended.

      30.     Indeed, many bankruptcy courts have approved challenge periods that

square with the June 1, 2009 deadline proposed in the Final DIP Order, which, as noted

above, is approximately 135 days from the selection of Committee counsel. *See, e.g.*,

Final DIP Order, *In re WCI Cmtys., Inc.*, No. 08-11643 (KJC) (Bankr. D. Del. Sept. 23,

2008) (Docket No. 409) (120 days after initial selection of counsel for the official

committee of unsecured creditors); Final DIP Order, *In re Maxxim*, No. 03-10438 (PJW)

(Bankr. D. Del. Mar. 19, 2003) (Docket No. 134) (120 days after initial selection of

counsel for the official committee of unsecured creditors); *see also* Final DIP Order, *In re*

*Meridian Auto. Sys. – Composites Operations, Inc.*, No. 05-11168 (MFW) (Bankr. D.

Del. June 30, 2005) (Docket No. 339) (60 days from the date of the Final DIP Order,

subject to extension under very limited circumstances).

      31.     As for the proposed cap of $250,000, that is likewise fair and strongly

supported by precedent. *See* Final DIP Order, *In re WCI Cmtys., Inc.*, No. 08-11643

(KJC) (Bankr. D. Del. Sept. 23, 2008) (Docket No. 409) (approving a challenge budget

cap of $250,000); Final DIP Order, *In re Crown Vantage Inc.*, No. 00-41584 (RJN) (N.

D. Cal. Apr. 18, 2000) (Docket No. 93) (approving a challenge budget cap of $150,000);

Corrected Final DIP Order, *In re Tronox, Inc.*, No. 09-10156 (ALG) (Bankr. S.D.N.Y.

Feb. 9, 2009) (Docket No. 151) (approving a challenge budget cap of $175,000); Final

DIP Order, *In re Citation Corp.*, No. 04-08130 (TOM) (Bankr. N.D. Ala. Oct. 19, 2004) (Docket No. 348) (approving a challenge budget cap of $75,000 to challenge Pre-Petition liens).

32.    In its Objection, the Committee proposes that there be no cap at all. (Comm. Obj. ¶ 58.)  But, as noted from the precedents listed above, this proposal is out of step with courts in this District.  And for good reason.  Unlimited budgets and extended timelines for challenges to Pre-Petition claims create incentives for Committee Counsel to consume assets of the estate in wasteful litigation, to the detriment of all creditors.  The challenge period and budgetary cap proposed in the Final DIP Order strikes the proper balance between the needs of the Committee to have sufficient time and resources to properly investigate potential claims, and that of the lenders for certainty and finality with respect to this transaction.  It is simply not fair to ask the DIP or Pre-Petition Lenders to continue to lend or allow use of cash collateral, while not even knowing whether they are subject to attack, for a longer period of time.[8]

33.    The Committee also makes a passing request for the Court to grant it standing now, without the need to make a motion.  (Comm. Obj. ¶58.)  But there is no basis for the Committee's request.  Under the law of this Circuit, a court's analysis on whether to grant a creditors' committee standing must be detailed and claim-specific:

> If the committee presents a colorable claim or claims for relief that on appropriate proof would support a recovery, the district (or bankruptcy) court's threshold inquiry will still not be at an end.  In

---

[8] The Committee cites to *In re Ames Dep't Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990), to suggest that the budget and time limitations in the proposed Final DIP Order are "needlessly burdensome" and "fail to preserve the adversary system."  (Comm. Obj. ¶ 54.)  But *Ames* has no application here.  In *Ames*, the proposed order rejected by the court provided for *no* carve out for professional fees at all.  *Id.* at 40.  After the proposal was modified to include a "reasonable" budget for professional fees, the court approved the order.  *Id.* at 40-41.  Here, the proposed cap of $250,000 is reasonable on its face and is likewise strongly supported by precedent.

> order to decide whether the debtor unjustifiably failed to bring suit
> so as to give the creditors' committee standing to bring an action,
> the court must also examine, on affidavit and other submission, by
> evidentiary hearing or otherwise, whether an action asserting such
> claim(s) is likely to benefit the reorganization estate.
>
> The court's inquiries will involve in the first instance not only a
> determination of probabilities of legal success and financial
> recovery in event of success, but also a determination as to whether
> it would be preferable to appoint a trustee in lieu of the creditors'
> committee to bring suit (bearing in mind any fees imposed on the
> estate by such an appointment, the wishes of the parties, and other
> relevant factors) and the terms relative to attorneys' fees on which
> suit might be brought . . .
>
> [I]t should assure itself that there is a sufficient likelihood of
> success to justify the anticipated delay and expense to the
> bankruptcy estate that the initiation and continuation of litigation
> will likely produce.

*In re STN Enters.*, 779 F.2d 901, 905-06 (2d Cir. 1985), *modified on other grounds by In re Dur Jac Ltd.*, 254 B.R. 279 (Bankr. M.D. Ala. 2000). Here, the Committee has not shown the likelihood of success on the merits or the probable value of recovery under any claims it might pursue – indeed, the Committee has not made *any* showing at all as to the claims it might one day bring.

34. Moreover, even when a Committee makes a formal motion for standing, that motion must be scrutinized carefully and is not automatically granted. The Bankruptcy Code contains no explicit authority for creditors' committees to initiate adversary proceedings. *See In re STN Enters.*, 779 F.2d 901, 904 (2d Cir. 1985), *modified on other grounds by In re Dur Jac Ltd.*, 254 B.R. 279 (Bankr. M.D. Ala. 2000). That authority rests with the trustee or debtor-in-possession, who has a fiduciary duty and substantial discretion to determine whether an attempted avoidance is in the interest of the estate. *See In re V. Savino Oil & Heating Co., Inc.*, 91 B.R. 655 (Bankr. E.D.N.Y. 1988); *In re Missouri River Sand & Gravel, Inc.*, 88 B.R. 1006 (Bankr. D.N.D. 1988).

By contrast, a creditors' committee represents a particular subset of creditors, and is under no obligation to act in the interest of the estate as a whole. *See Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R. 416, 423 (S.D.N.Y. 2006) (citing *Official Comm. of Unsecured Creditors of Grand Eagle Cos., Inc. v. ASEA Brown Boverie, Inc.*, 313 B.R. 219, 224 (N.D. Ohio 2004) ("A trustee acts for the benefit of the estate and owes a fiduciary duty to all creditors of the estate. In contrast, a committee of unsecured creditors is a fiduciary only to the creditors it represents . . . . A creditors' committee need not consider the best interests of the estate.")).

35.     The Second Circuit has recognized an "implied, but qualified, right for creditors' committees to initiate adversary proceedings in the name of the debtor in possession under 11 U.S.C. §§ 1103(c)(5) and 1109(b)," *see In re STN Enters.*, 779 F.2d at 904, but under very limited circumstances. "Creditors' committees [may] initiate proceedings only when the trustee or debtor in possession unjustifiably failed to bring suit or abused its discretion in not suing." *Id.*[9]  And in the *In re Adelphia Commc'ns* matter, this Court noted: "I don't want to prejudge matter of who should bring any litigation, a question that has the potential of being a debatable one, but at this juncture, I believe that issue to be premature. I believe that if and when the Creditors' Committee concludes that litigation is warranted, it should comply with *STN* . . . ." (Hr'g Tr. 377:25-378:7, Aug. 22, 2002, attached hereto as Ex. 1.) Thus, it is entirely appropriate for the

---

[9] The Committee also may acquire standing if: (1) the committee has the consent of the debtor in possession or trustee, and (2) the court finds that suit by the committee is in the best interest of the bankruptcy estate, and is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings. *See In re Commodore Int'l Ltd.*, 262 F.3d 96 (2d Cir. 2001). In this case, Debtors have not consented to Committee standing, and no showing regarding the best interest of the estate or necessity for fairness and efficiency have been made.

Final DIP order in this case to require the Committee to demonstrate that it has the requisite standing to pursue claims at a later time, consistent with the law of this Circuit.

**V.    The Reclamation Objections Are Untimely and Without Merit**

36.     Shrieve and TSI object to the extent that the DIP motion seeks to prime their liens and/or reclamation rights.  As an initial matter, the Reclamation Objections are untimely.  Pursuant to the Interim DIP Order, the Reclamation Objections were required to be filed no later than January 27, 2009 at 4:00 p.m. but were not filed until February 20, 2009.  TSI's and Shrieve's only explanation is that counsel was retained after the Debtors' motion for an order authorizing them to obtain post-petition financing was filed, which should not excuse more than three weeks of delay.  Thus, the Reclamation Objections should be dismissed as untimely.

37.     Furthermore, the Reclamation Objections are without merit.  Section 2-702(3) of the Uniform Commercial Code provides that all reclamation rights in section 2-702(2) are "subject to the rights of a buyer in ordinary course or other good faith purchaser."  It is well-settled that a lender or other creditor "with a security interest in after-acquired property who acted in good faith and for value . . . is a good faith purchaser to whose claim that of a reclaiming seller is subject."  *In re Arlco*, 239 B.R. 261, 270-71 (Bankr. S.D.N.Y. 1999) (internal quotation marks omitted); *see also, e.g.*, *In re Pester Refining Co.*, 964 F.2d 842, 844-45 (8th Cir. 1992); *In re Samuels & Co.*, 526 F.2d 1238, 1243, 1247 (5th Cir. 1976) (en banc), *cert. denied*, 429 U.S. 834 (1976);  *In re Pittsburgh-Canfield Corp.*, 309 B.R. 277, 284 (B.A.P. 6th Cir. 2004).  "[A]fter the secured creditors' superior interests have been satisfied or released, the reclaiming seller retains a priority interest in any remaining goods, and in any surplus proceeds from the secured creditors' foreclosure sale . . . where the value of the reclaiming seller's rights is

worthless because of the secured lien, the reclamation request is not denied, but is of no value." *In re Child World*, 145 B.R. 5, 8 (Bankr. S.D.N.Y. 1992); *see also In re Arlco*, 239 B.R. 261, 272-73 (Bankr. S.D.N.Y. 1999); *In re Victory Mkts.*, 212 B.R. 738, 743 (Bankr. N.D.N.Y. 1997).

38.     Upon commencement of a chapter 11 case, reclamation rights are governed by section 546(c) of the Bankruptcy Code, which provides that the right of a seller to reclaim goods is "subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof . . . ." 11 U.S.C. § 546(c)(1); *see In re Dana Corp.*, 367 B.R. 409, 416 (Bankr. S.D.N.Y. 2007).

39.     Here, the Pre-Petition Secured Lenders have prior rights in the property that is the subject of the Reclamation Objections.  Any valid reclamation demands of Shrieve and TSI are subject and subordinate to the such rights of the Pre-Petition Secured Lenders.

40.     Additionally, the ABL Pre-Petition Secured Lenders, who had a first priority lien on the inventory of the Debtors prior to the Petition Date, were refinanced under the ABL DIP Facility.  "The transaction of releasing" the ABL Pre-Petition Secured Lenders lien "and simultaneously granting the lien to" ABL DIP Lenders "must be viewed as an integrated transaction." *In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128, 135 (Bankr. S.D.N.Y. 2003).  As in the *Dairy Mart* case, all of the goods subject to any valid reclamation claim of Shrieve and TSI were used to "pay" the ABL Pre-Petition Secured Lenders.  *Id.* at 136.  Such a transaction "renders all reclamation claims for those goods valueless." *In re Dana Corp.*, 367 B.R. at 419 (citing *In re Dairy Mart* 302 B.R. at 135-36); *see also*, *Simon & Schuster, Inc. v. Advanced Mktg. Servs.* (*In re Advanced Mktg. Servs.*), 360 B.R. 421, 426 (Bankr. D. Del. 2007) (subjecting the

21

goods subject to a reclamation claim to both "pre-petition and post-petition liens").

Accordingly, the Debtors' Motion should be approved notwithstanding the Reclamation

Objections.

## **CONCLUSION**

41.    For the foregoing reasons, the ABL DIP Agent respectfully requests that

the Court enter the Final DIP Order in the form submitted by the Debtors.

Dated:   New York, New York
          February 24, 2009

DAVIS POLK & WARDWELL
Counsel for Citibank, N.A. as Agent


By:    /s/ Marshall S. Huebner
          Marshall S. Huebner
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 450-3800

APPENDIX OF ORDERS (in Alphabetical Order)

| Exhibit | Order and Relevant Details | Reply Brief Citation (¶) |
|---|---|---|
| A. | In re Adelphia Commc'ns Corp., No. 02-41729 (REG) (Bankr. S.D.N.Y. Aug. 23, 2002) (Docket No. 525)<br><br>The Debtor filed a motion to obtain post-petition financing on June 26, 2002 (Docket No. 29).  The Debtor filed a notice of hearing one day later, on June 27, 2002 (Docket No. 35).  Objections were filed on August 2, 2002 (Docket No. 285), August 9, 2002 (Docket No. 363), August 12, 2002 (Docket Nos. 407, 430), and August 16, 2002 (Docket No. 459).  The motion was approved after a hearing on August 23, 2002.  The issues regarding liens on proceeds of avoidance actions were consensually resolved prior to the hearing date.  (See Hrg. Tr. at 20-21.).  The 506(c) waiver does not appear to have been a contested issue. | 19, 24 |
| B. | In re Calpine, No. 05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 26, 2006) (Docket No. 635)<br><br>The Debtor filed a motion to obtain post-petition financing on December 21, 2005 (Docket No. 18).  An Interim Order was signed on December 21, 2005 (Docket No. 38).  Objections were filed on December 21, 2005 (Docket No. 20), January 19, 2006 (Docket Nos. 504, 505, 506, 508, 509, 510, 512, 513, 514, 519, 520, 522, 523, 526, 528 and 532), January 23, 2006 (Docket No. 567), January 24, 2006 (Docket Nos. 571, 576).  The objection at Docket No. 571 was withdrawn on January 24, 2006 (Docket No. 596).  A hearing was scheduled for January 25, 2005 (Docket Nos. 125, 129, 240).  The Final Order was signed on January 26, 2006 (Docket No. 635). | 24 |
| C. | In re Citation Corp., No. 04-08130 (TOM) (Bankr. N.D. Al. Oct. 19, 2004) (Docket No. 348)<br><br>The Debtor filed a motion to obtain post-petition financing on September 18, 2004 (Docket No. 3).  Objections were filed on October 12, 2004 (Docket Nos. 233 and 238) and October 13, 2004 (Docket No. 247).  A hearing was scheduled for October 18, 2004. (Docket Nos. 234, 248).  On October 15, 2004, the objections filed at Docket Nos. 233 and 238 were withdrawn (Docket No. 269).  On October 18, 2004, the objections at Docket Nos. 233 and | 25, 31 |

| Exhibit | Order and Relevant Details | Reply Brief Citation (¶) |
|---|---|---|
| | 238 were withdrawn (Docket No. 283), and the objection at Docket No. 247 was resolved (Docket No. 281). Final order was entered on October 19, 2004 (Docket No. 348). | |
| D. | In re Crown Vantage Inc., No. 00-41584 (RJN) (N.D. Cal. Apr. 18, 2000) (Docket No. 93)<br><br>The Debtor filed a motion to obtain post-petition financing on March 15, 2000 (Docket No. 7).  A hearing was held on March 16, 2000 (Docket No. 13).  An objection was filed on April 14, 2000 (Docket No. 83).  Following a hearing on April 18, 2000 (Docket No. 92), objections were overruled and the Final post-petition financing order was signed by the court on April 18, 2000. (Docket No. 93). | 25 |
| E. | In re Delphi Corp., No. 05-44481 (RDD) (Bankr. S.D.N.Y. Oct. 28, 2005) (Docket No. 797)<br><br>The Debtor filed a motion to obtain post-petition financing on October 8, 2005 (Docket No. 42).  An interim order was signed on October 12, 2005 (Docket No. 164).  Objections were filed on October 10, 20, 24, and 25, 2005 (Docket Nos. 70, 101, 459, 551, 553, 565, 631, and 632). The Debtor filed notice of proposed final DIP order on October 27, 2005 (Docket No. 724).  The final order was signed October 28, 2005 (Docket No. 797). | 24 |
| F. | In re Delta Air Lines, Inc., No. 05-17923 (ASH) (Bankr. S.D.N.Y. Oct. 6, 2005) (Docket No. 652)<br><br>The Debtor filed a motion to obtain post-petition financing on September 15, 2005 (Docket No. 111).  An interim order was signed on September 16, 2005 (Docket No. 135). On October 3, 2005, two objections were filed – Goodrich Corporation (Docket No. 551) and Clayton County, Georgia (Docket No. 565).  Both objections were withdrawn on October 5, 2005 (Goodrich Corp., Docket No. 637), (Clayton County Georgia, Docket No. 623).  The final order was signed on October 6, 2005 (Docket No. 652). | 24 |
| G. | In re Enron Corp., No. 01-16034 (AJG) (Bankr. S.D.N.Y. July 2, 2002) (Docket No. 4888)<br><br>The Debtor filed a motion to obtain post-petition financing on December 4, 2001 (Docket No. 55) and an amended motion on June 17, 2002 (Docket No. 4529).  Objections were filed on February 27, 2002 (Docket Nos. 1733 and | 19, 24 |

| Exhibit | Order and Relevant Details | Reply Brief Citation (¶) |
|---|---|---|
| | 1734), June 27, 2002 (Docket Nos. 4789, 4809 and 4816), and June 29, 2002 (Docket No. 4836).  The amended motion was approved after a hearing on July 2, 2002 (Docket No. 4888). | |
| H. | In re Fed. Mogul, No. 01-10578 (JKF) (Bankr. D. Del. Nov. 21, 2001) (Docket No. 370)<br><br>The Debtor filed a motion to obtain post-petition financing on notice (Docket Nos. 43 and 142) and a hearing was scheduled for November 20, 2001 (Docket No. 482).  Objections were filed on October 15, 2001 (Docket No. 107), October 31, 2001 (Docket No. 262), November 1, 2001 (Docket No. 265), November 2, 2001 (Docket No. 282), November 16, 2001 (Docket Nos. 364, 476).  Final order was entered November 21, 2001 (Docket No. 370). | 25 |
| I. | In re Frontier Airlines Holdings, Inc., No. 08-11298 (RDD) (Bankr. S.D.N.Y. Sept. 3, 2008) (Docket No. 490)<br><br>The Debtor filed a motion to obtain post-petition financing on July 25, 2008 (Docket No. 413).  Objections were filed on August 1 (Docket No. 427) and August 4, 2008 (Docket No. 428).  An interim order was entered on Aug. 5, 2008 (Docket No. 433), and a hearing was scheduled for September 15, 2008.  All contested issues were consensually resolved prior to the hearing and the final order was entered on September 3, 2008 (Docket No. 490). | 24 |
| J. | In re Maxxim, No. 03-10438 (PJW) (Bankr. D. Del. Mar. 19, 2003) (Docket No. 134)<br><br>Debtor filed a motion to obtain post-petition financing on February 11, 2003 (Docket No. 15).  An interim order was entered on February 13, 2003 (Docket No. 34).  There were no objections and the final order was singed on March 19, 2003 (Docket No. 134). | 25, 30 |
| K. | In re Meridian Auto. Sys. – Composites Operations, Inc., No. 05-11168 (MFW) (Bankr. D. Del. June 30, 2005) (Docket No. 339)<br><br>The Debtor filed a motion to obtain post-petition financing on April 26, 2005 (Docket No. 14).  Hearings were scheduled for May 26, 2005 and June 9, 2005.  Objections were filed on May 16, 19 and 24, 2005, June 26, 27 and 29, 2005 (Docket Nos. 118, 135, 141, 151, 152, 287, 299, 300 and  325).  The May 19, 2005 objection (Docket No. 141) | 25, 30 |

| Exhibit | Order and Relevant Details | Reply Brief Citation (¶) |
|---------|---------------------------|--------------------------|
| | was resolved on June 17, 2005 (Docket No. 270). The June 22 objection (Docket No. 287) was withdrawn on June 28, 2005 (Docket No. 314). Final order was entered on June 30, 2005 (Docket No. 339). | |
| L. | In re Polaroid Corp., No. 01-10864 (PJW) (Bankr. D. Del. Nov. 5, 2001) (Docket No. 130) The Debtor filed a motion to obtain post-petition financing on October 12, 2001 (Docket No. 15). An interim order authorizing post-petition financing was entered on October 15, 2001 (Docket No. 27). Notice of hearing was filed on October 17, 2001 (Docket No. 48). A letter of complaint was filed on October 29, 2001 (Docket No. 183) and an objection was filed on October 31, 2001 (Docket No. 106). The DIP financing was approved after a hearing on November 5, 2001 (Docket No. 130). | 19 |
| M. | In re Silver Cinemas Int'l, Inc., No. 00-01978 (PJW) (Bankr. D. Del. June 14, 2000) (Docket No. 157) The Debtor filed a motion to obtain post-petition financing on May 17, 2000 (entered on May 19, 2000) (Docket No. 23) and an interim order was filed and entered on the same dates (Docket No. 24). Several objections were filed between June 7 and June 13, 2000 (Docket Nos. 120, 121, 122, 129, 138, and 142), and the DIP financing was approved on a final order on June 14, 2000 (Docket No. 157). | 18 |
| N. | In re Trans World Airlines, Inc., Case No. 01-0056 (PJW) (Bankr. D. Del. Jan. 26, 2001) (Jan. 29, 2001) (Docket No. 252) The Debtor filed a motion to obtain post-petition financing on January 10, 2001 (Docket No. 41). Several objections were filed on and January 23, 2001 (Docket Nos. 146, 147, 149. 154, 155, 157, 158, 160, and 162). Notice of hearing was filed on January 23, 2001 (Docket No. 165), hearing to be held on January 27, 2001. The DIP financing was entered in a final order on January 29, 2001. | 19 |
| O. | In re Tronox, Inc., No. 09-10156 (ALG) (Bankr. S.D.N.Y. Feb. 9, 2009) (Docket No. 151) (approving credit agreement filed at Docket No. 4 on January 12, 2009) Debtor filed a motion to obtain post-petition financing on January 12, 2009 (Docket No. 4). Objections were filed on | 9, 31 |

| **Exhibit** | **Order and Relevant Details** | **Reply Brief Citation (¶)** |
|---|---|---|
| | February 2, 2009 (Docket No. 113), February 4, 2009 (Docket No. 124), and February 5, 2009 (Docket No. 130). The objection at Docket No. 113 was withdrawn on February 4, 2009 (Docket No. 122).  A hearing was scheduled for February 6, 2009 (Docket No. 147).  A corrected version of the final order was signed on February 9, 2009 (Docket No. 151). | |
| P. | In re WCI Cmtys., Inc., No. 08-11643 (KJC) (Bankr. D. Del. Sept. 23, 2008) (Docket No. 409) <br><br> The Debtor filed a motion to obtain post-petition financing on August 22, 2008, and a hearing was scheduled for September 23, 2008 (Docket No. 185).  Objections were filed on September 15, 2008 (Docket No. 323) and September 19, 2008  (Docket (Docket Nos. 367 and 369). The objection at Docket No. 323 was withdrawn on September 17, 2008 (Docket No. 343).  The final order was approved on September 23 (Docket No. 409). | 25, 30, 31 |