UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re: :
 : **Chapter 11**
 :
**LYONDELL CHEMICAL COMPANY, et al.**, : Case No. 09-10023 (REG)
 :
 : Jointly Administered
 Debtors. :
------------------------------------------------------------x

# FINAL ORDER AUTHORIZING DEBTORS TO (I) MAINTAIN AND USE EXISTING BANK ACCOUNTS, BOOKS, RECORDS AND BUSINESS FORMS; (II) MAINTAIN AND USE EXISTING CASH MANAGEMENT SYSTEM, AS MODIFIED; AND (III) PROVIDE SUPERPRIORITY STATUS FOR INTERCOMPANY RECEIVABLES

Upon the motion (the "Motion") of Lyondell Chemical Company and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession in the above captioned chapter 11 cases (collectively, the "Debtors"), for interim and final orders and pursuant to sections 105(a) and 364(c)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), (i) authorizing the continued use of existing bank accounts (the "Bank Accounts"), books, records and business forms; (ii) authorizing the continued use of the existing cash management system (the "Cash Management System"), as modified; and (iii) granting superpriority status for intercompany receivables; and upon consideration of the Affidavit of Alan S. Bigman pursuant to rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York, sworn to on January 6, 2009; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the relief being requested being in the best interests of the Debtors and

USActive 15486787.8

their estates and creditors; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor; it is hereby

**ORDERED** that the Motion is granted as set forth herein; and it is further

**ORDERED** that the provisions of this order (the "Final Order") supersede the provisions of the interim order (the "Interim Order") previously entered on the Motion by this Court, and in the event of any irreconcilable inconsistency between this Final Order and the Interim Order, the terms of this Final Order shall govern and control; and it is further

**ORDERED** that except as otherwise set forth below, the provisions of this Final Order shall be effective, nunc pro tunc, to the commencement date of the Debtors' chapter 11 cases (the "Petition Date"); and it is further

**ORDERED** that all objections not previously withdrawn are overruled; and it is further

**ORDERED** that the Debtors are authorized to (i) maintain and continue to use their existing prepetition Bank Accounts, in the names and with the account numbers existing immediately prior to the Petition Date, and treat such Bank Accounts as debtor-in-possession accounts, including foreign Bank Accounts that are required to be maintained by the Debtors to comply with local law and certain lockbox and associated sweep accounts or similar receipt Bank Accounts (the "Collection Accounts"); (ii) close some or all of their prepetition Bank Accounts and open new debtor-in-possession accounts in their sole discretion, provided,

however, that any new account that is a domestic account shall be with a bank insured by the Federal Deposit Insurance Corporation ("FDIC") or the Federal Savings and Loan Insurance Corporation ("FSLIC") and that is organized under the laws of the United States or any State therein, or on the list of authorized bank depositories for the Southern District of New York; and (iii) deposit funds into and withdraw funds from existing prepetition Bank Accounts or accounts opened postpetition by all usual means, including, without limitation, checks, wires, automated clearinghouse transfers (the "ACH Transfers"), and other debits; and it is further

**ORDERED** that notwithstanding anything to the contrary in this Order, in the case of Bank Accounts other than the Collection Accounts that carry a balance exceeding the applicable insurance limitations set by the FDIC or the FSLIC, the Debtors shall use best efforts to reduce such cash balances to levels within the insurance limits (or otherwise take reasonable measures to insure such balances) within 30 days of this Order, subject to extension of time for cause; provided that the liens of the DIP Agents (as defined below) in such Bank Accounts and the contents thereof shall remain properly perfected at all times; and it is further

**ORDERED** that the Debtors shall consult with the statutory committee of unsecured creditors (the "Committee"), the DIP Agents (as defined below) the U.S. Trustee for the Southern District of New York prior to any material change in the Debtors' practice of sweeping the Collection Accounts to maintain cash balances on a daily basis; and it is further

**ORDERED** that the Debtors shall use their best efforts to recover in due course any funds constituting property of the Debtors' estates currently held by or on behalf of The Reserve Fund; and it is further

**ORDERED** that any and all accounts opened by the Debtors on or after the Petition Date at any bank shall, for the purposes of this Order, be deemed a prepetition Bank

Account (as if it had been opened prior to the Petition Date and listed in Exhibit B to the Motion), and any and all banks at which such accounts are opened shall similarly be subject to the rights and obligations of this Order; and it is further

**ORDERED** that nothing contained herein shall prevent the banks at which the Bank Accounts are held (the "<u>Banks</u>") from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services; and it is further

**ORDERED** that the Banks are authorized to continue to treat, service, and administer such Bank Accounts as accounts of the Debtors as debtors-in-possession without interruption and in the usual and ordinary course and to receive, process and honor and pay any and all postpetition checks, drafts, wires, or ACH Transfers drawn on the Bank Accounts by the holders or makers thereof to the extent the Debtors have good funds standing to their credit with such Bank, as the case may be; and it is further

**ORDERED** that, notwithstanding anything to the contrary in any other order of this Court, the Banks (i) are authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH Transfers should be honored or dishonored, consistent with any order(s) of this Court and governing law, whether such checks, drafts, wires, or ACH Transfers are dated prior to, on, or subsequent to the Petition Date, and whether the Banks believe the payment is or is not authorized by an order of this Court; (ii) have no duty to inquire as to whether such payments are authorized by an order of this Court; and (iii) have no duty to make such payments unless the Debtors have good funds standing to their credit with such Bank; and it is further

**ORDERED** that the Banks shall not be liable to any party on account of (i) following the Debtors' instructions or representations as to any order of this Court; (ii) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) an innocent mistake made despite implementation of reasonable item handling procedures; and it is further

**ORDERED** that, in accordance with current practice and the agreement governing the Bank Accounts, the Banks are authorized to "charge back" to the Debtors' accounts any amounts incurred by the Banks resulting from returned checks or other returned items, and the Debtors are authorized to pay any fees and expenses owed to the Banks, in each case regardless of whether such items were deposited prepetition or postpetition or relate to prepetition or postpetition items; and it is further

**ORDERED** that any payment from a Bank Account at the request of the Debtors made by a Bank prior to the Petition Date (including any ACH Transfer that such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition; and it is further

**ORDERED** that the Debtors are authorized to maintain and continue to use their checks and any and all other business forms substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors-in-possession; and it is further

**ORDERED** that the Debtors are authorized to maintain and continue to use their purchasing card programs consistent with the terms of such programs, including the payment of any obligations and the posting of any collateral in connection therewith; and it is further

**ORDERED** that the Debtors and their duly appointed agents and custodians are authorized and empowered to (i) continue to manage the Debtors' cash pursuant to the Cash Management System maintained by the Debtors and their non-debtor affiliates prior to the Petition Date, as modified to effectuate removal of Basell USA, Inc. ("Basell USA") and Lyondell Chemical Delaware Company ("LCDC") from the Notional Pool (as defined in the Motion) and, if necessary, to effectuate removal of any other Debtors (whether their Chapter 11 petitions were filed on the Petition Date or thereafter) from the Notional Pool;[1] (ii) continue to perform their obligations under the agreements governing such system, including paying all prepetition and postpetition fees and expenses incurred in connection therewith; (iii) continue to perform their obligations in a manner consistent with the investment guidelines authorized by this Court's interim order pursuant to sections 105(a), 345, 363(c) and 364(c) of the Bankruptcy Code or any superseding order as may be entered contemporaneously herewith; and (iv) transfer funds by and among the Debtors, and by and among their respective Bank Accounts and other accounts maintained with or by their duly appointed agents and custodians, as and when needed and in the amounts necessary or appropriate to maintain their operations and facilitate the orderly operation of their estates or businesses; and it is further

**ORDERED** that the Debtors shall put in place accounting procedures to identify and distinguish between prepetition and postpetition intercompany transactions and to track postpetition intercompany transactions and provide reasonable and timely access to the same to

---

[1] In connection with the removal of Basell USA and LCDC and any other Debtors from the Notional Pool, Citibank, N.A. or any of its affiliates (collectively, with Citibank, N.A., "Citibank") shall be authorized to take any and all actions to effectuate such removals and to effectuate any setoffs, enforce any indemnities, or exercise any other rights permitted under the appropriate agreements to the extent necessary to make Citibank whole or to the extent it could suffer any losses or incur any fees, expenses, or charges in connection with the Notional Pool, without the necessity for Citibank to seek any relief from the Court in connection therewith.

the Committee and the DIP Agents (as defined in the interim or final order (the "Interim DIP Order" or the "Final DIP Order," respectively, and together the "DIP Orders") approving postpetition debtor-in-possession financing); and it is further

**ORDERED** that all intercompany claims arising from a postpetition intercompany loan or transfer of property (including cash) made by a Debtor ("Adequately Protected Debtor") to or for the benefit of any other Debtor ("Beneficiary Debtor") and incurred in the ordinary course of business shall be allowed claims against the Beneficiary Debtor for the fair value of the property (including cash) (net of any reasonable expenses for overhead or other services reasonably allocated or reasonably charged to the Adequately Protected Debtor) under sections 364(c)(1) and 507(b) of the Bankruptcy Code ("Debtor Reimbursement Claims") and shall be accorded superpriority status with priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code; and it is further

**ORDERED** that, pursuant to sections 364(c)(3) and 364(d) of Bankruptcy Code, all Debtor Reimbursement Claims shall be secured by a lien on all assets of a Beneficiary Debtor; provided, however, that both the Debtor Reimbursement Claims and the liens securing the Debtor Reimbursement Claims shall be junior, subject and subordinate to and only to (i) any and all liens, superpriority claims, adequate protection obligations, and replacement liens granted to the DIP Agents (as defined in the DIP Orders) or the DIP Lenders (as defined in the DIP Orders) in accordance with the DIP Orders and (ii) any claims against such Beneficiary Debtor that are expressly senior to, *pari passu* with, or carved out from, such liens or claims of the DIP Agents and the DIP Lenders (including the Carve-Out as defined in and established under the DIP Orders); and it is further

**ORDERED** that the Adequately Protected Debtor shall forbear from exercising, and shall not be entitled to exercise, any right or remedy relating to any Debtor Reimbursement Claims including, without limitation, seeking relief from the automatic stay, or seeking any sale, foreclosure, realization upon, repossession or liquidation of any property of another Debtor, or taking any position with respect to any disposition of the property, business operations, or the reorganization of another Debtor, absent further order of this Court. To the extent set forth in the DIP Documents (as defined in the DIP Orders), the DIP Agents shall have the right to manage, perform and enforce all such rights and remedies described in the preceding sentence; and it is further

**ORDERED** that no provision of this Order shall supersede or alter the rights of the DIP Agents, the DIP Lenders, the Committee or the Adequate Protection Parties under the DIP Orders.

**ORDERED** that, without limiting in any way, and subject to, the rights of lenders providing debtor-in-possession financing (the "DIP Facility") pursuant to the DIP Orders, if any, the Debtors may engage in intercompany transactions with other Debtors (the "Debtor Intercompany Transfers") and in intercompany transactions (the "Non-Debtor Intercompany Transfers") with their non-debtor affiliates (collectively, the "Non-Debtor Affiliates") consistent with prepetition practice, provided, however, that each Debtor making Non-Debtor Intercompany Transfers to a Non-Debtor Affiliate shall have claims for contribution, indemnification, reimbursement, subrogation and/or otherwise for the fair value of the property (including cash) against such Non-Debtor Affiliate to which the Non-Debtor Intercompany Transfers were made (the "Debtor Contribution Claims"). Furthermore, to the extent that any such Non-Debtor Affiliate shall have granted a properly perfected lien on or security interest in

its property to secure obligations of the Debtors to the DIP Lenders in respect of the DIP Facility, the Debtors shall use diligent efforts to obtain a properly perfected lien on or security interest in the same property to secure the Debtor Contribution Claims; provided that (i) any such lien is not prohibited by any of the Non-Debtor Affiliates' existing secured credit facilities, and (ii) any such lien is junior, subject and subordinate to (x) any and all liens, superpriority claims, adequate protection obligations, and replacement liens granted to the DIP Agents or the DIP Lenders in accordance with the DIP Orders and (y) any claims against such Non-Debtor Affiliate that are expressly senior to, *pari passu* with, or carved out from, such liens or claims of the DIP Agents and the DIP Lenders; and it is further

**ORDERED** that all obligations of the Debtors and any of their non-debtor subsidiaries or affiliates incurred to Citibank before or after the Petition Date that result from ordinary course transactions under the Cash Management System shall continue to be secured by any cash collateral to the extent provided for in any applicable account agreements between the Debtors or their non-debtor subsidiaries or affiliates and Citibank; and it is further

**ORDERED** that to the extent that there is any inconsistency between this Order and the terms of any DIP Facility or the DIP Orders, the DIP Facility and the DIP Orders approving the same shall control; and it is further

**ORDERED** that nothing contained in this Order or the Motion shall constitute a rejection or assumption by any of the Debtors of any executory contract or unexpired lease by virtue of reference to any such contract or lease in the Motion; and it is further

**ORDERED** that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors, and notwithstanding rule 6003 and 6004(h) of

the Federal Rules of Bankruptcy Procedure, the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

Dated:   New York, New York
         **_March 12, 2009_**

                                                        **_S/ Robert E. Gerber_**
                                                    UNITED STATES BANKRUPTCY JUDGE