UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LYONDELL CHEMICAL COMPANY, *et al.*, | ) | Case No 09-10023 (REG) |
|  | ) |  |
|  | ) |  |
| Debtors. | ) | Jointly Administered |

_____)

BENCH DECISION[1] ON MOTIONS TO ENFORCE
THE AUTOMATIC STAY AND FOR RELIEF
FROM THE AUTOMATIC STAY

APPEARANCES:

CADWALADER, WICKERSHAM & TAFT LLP
Attorneys for Debtors
One World Financial Center
New York, NY 10281
By:    Deryck A. Palmer, Esq.
       John J. Rapisardi, Esq.
       Howard R. Hawkins, Jr., Esq. (argued)
       Israel Dahan, Esq.

KIRKLAND & ELLIS LLP
Attorneys for BASF Corporation
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
By:    Jonathan S. Henes
       Michael A. Cohen

655 15th Street, NW
Washington, DC 20005
By:    Eugene F. Assaf, P.C.  (argued)
       Daniel T. Donovan

---

[1]    I use bench decisions to lay out in writing decisions that are too long, or too important, to dictate in open court, but where the circumstances do not permit more leisurely drafting or more extensive or polished discussion. Because they often start as scripts for decisions to be dictated in open court, they typically have less in the way of citations and footnotes, and have a more conversational tone.

ECKERT SEAMANS CHERIN & MELLOTT, LLC
Attorneys for Fidelity and Deposit Company of Maryland and Zurich American
    Insurance Company
10 Bank Street, Suite 1061
White Plains, NY 10606
By:    Steven R. Kramer, Esq.


50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
By:    Karen Lee Turner, Esq. (argued)

BALLARD SPAHR ANDREWS & INGERSOLL, LLP
Attorneys for Westchester Fire Insurance Company
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
By:    Robert McL. Boote, Esq.
       Jeffrey Meyers, Esq.


919 N. Market Street, 12th Floor
Wilmington, DE 19801
By:    Tobey M. Daluz, Esq.
       Joshua Zugerman, Esq.

BROWN RUDNICK LLP
Counsel for the Official Committee of Unsecured Creditors
Seven Times Square
New York, NY 10036
By:    Edward S. Weisfelner


One Financial Center
Boston, MA 02111
By:    Steven D. Pohl (argued)



BEFORE:        ROBERT E. GERBER
               UNITED STATES BANKRUPTCY JUDGE


        In this contested matter in the chapter 11 cases of debtor Lyondell Chemical

Company and its affiliates, Lyondell seeks to "enforce the automatic stay" to block

actions by (1) BASF, which secured a $170 million judgment against Lyondell in an

action in New Jersey's Superior Court for Morris County, enforcement of which was

stayed after Lyondell posted a $200 million supersedeas bond (the "Supersedeas Bond"), and by (2) the New Jersey Appellate Division, before whom Lyondell's appeal of BASF's judgment was pending when these chapter 11 cases were filed. At the same time, BASF seeks relief from the stay to effect the continuation of Lyondell's appeal of BASF's judgment—or alternatively, relief from the stay to permit the Appellate Division to construe, reconsider, and/or modify orders the Appellate Division entered after it learned of the filing of Lyondell's chapter 11 case, and to permit New Jersey's courts to rule on the implications of the Appellate Division's actions.

The first order (the "Dismissal Order"), signed by a clerk in the name of the Appellate Division's Presiding Judge for Administration, dismissed the appeal without prejudice to renewal—in contrast to merely staying it. The second order (the "Reinstatement Order"), entered on a request for emergent relief, temporarily reinstated the appeal; ordered Lyondell to keep the Supersedeas Bond in effect; and enjoined the Sureties from returning the Supersedeas Bond's annual premium, all pending receipt and review of opposition from Lyondell, and until further order of the Appellate Division.

But for the reasons described below, these controversies only in minor part involve technical matters as to what "compliance with the automatic stay" means or should require—or, for that matter, whether I should grant relief from the stay to permit litigation, of one sort or another, in the New Jersey state courts. It takes little in the way of great insight to understand that the most significant issue here is the continuation, or demise, of the $200 million Supersedeas Bond that Lyondell posted, before the beginning of its chapter 11 case—and which ultimately is collateralized by assets of the estate.

If BASF's judgment, or part of it, ultimately is affirmed (that being a matter for the New Jersey courts to decide), or for so long as Lyondell does not prosecute its appeal, BASF will have an allowed claim in this Court for whatever the New Jersey courts have determined, to the extent not already paid. But if it turns out, as a consequence of the first of the two Appellate Divisions orders that are at issue here, that the Supersedeas Bond "self-destructed," BASF may be left with an unsecured claim in this Court for the once-bonded liability.

With that by way of context, Lyondell seeks entry of an order from this Court, as more precisely detailed below, which it describes as "enforcing the automatic stay and the Court's Stay Order." Lyondell asks me to respect the Dismissal Order and to annul the Reinstatement Order. But more importantly, as a practical matter, Lyondell asks me to rule that by reason of the Dismissal Order, the Supersedeas Bond terminated, and that Lyondell needn't maintain the very sizable reserves that must be maintained to collateralize the obligations to indemnify the sureties who issued the Supersedeas Bond should they have to make payment on it. BASF opposes that, and while it asks me to lift the stay to permit the appeal to go forward on the merits, it even more passionately asks me to lift the stay to allow the *New Jersey courts* to determine whether the Supersedeas Bond came to an end.

Though the issues before me include a host of arguments going back and forth with respect to the asserted termination of the Supersedeas Bond, my jurisdiction to address the various issues, and arguments for and against abstention—which I'll address, to the extent necessary, below, including my point by point rulings on the seven separate

elements of the parties' motions before me—my rulings result in three fundamental

conclusions:

(1)  I will indeed enforce the automatic stay, but in accordance with my

views as to what that means, which differ from those of either of the litigants.  I

rule that entry of the Dismissal Order—dismissing the appeal without prejudice to

renewal (an order identical in substance to an order simply staying the

litigation)—was not violative of the automatic stay.  And I rule that entry of the

Reinstatement Order—which was plain in merely reinstating the status quo as it

existed prior to the entry of the of the Dismissal Order, to provide an opportunity

for parties to be heard—was not violative of the automatic stay either.

(2)  BASF's motion for relief from the stay to permit, or require, Lyondell

to proceed with its appeal at this time is denied.  Lyondell is entitled to a

breathing spell in deciding when it should proceed with the appeal, in light of the

burdens of its  reorganization efforts.  And at least for a while, so long as

Lyondell understands (as it has acknowledged) that under the Second Circuit's

decision in *Teachers Insurance & Annuity Association of America v. Butler,*[2]

Lyondell is bound by the Superior Court judgment, unless and until that judgment

is reversed or modified by a higher New Jersey court, Lyondell is entitled to a

breathing spell even to decide *whether* it wishes to appeal.

(3)  I will, however, grant relief from the stay to the extent necessary for

the New Jersey courts to construe and determine the continuing viability of the

Supersedeas Bond—since Lyondell has made clear that it now wishes to press its

---

[2]        803 F.2d 61 (2d Cir. 1986) ("*TIAA-Circuit*").

points in that regard.  I will not rule on the issues involving the asserted

termination of the Supersedeas Bond myself.  While each of the parties contends

that the Supersedeas Bond is unambiguous (in its favor, of course), I could not

disagree more.  To the contrary, I find the Supersedeas Bond to be

anachronistically and inartfully drafted, and ultimately as ambiguous a contractual

instrument as I have seen in a long time.  While I, like other federal judges,

determine issues under state law on a regular basis, I believe that the New Jersey

courts are materially better equipped to construe the Supersedeas Bond than I am,

and have a greater interest in doing so.  Thus I will exercise my powers of

discretionary abstention under 28 U.S.C. § 1334(c), and grant BASF limited relief

from the stay to obtain rulings from the New Jersey courts as to the continuing

viability of the Supersedeas Bond in light of the Appellate Division's orders.

My Findings of Fact, Conclusions of Law, and bases for the exercise of my

discretion in connection with these determinations follow.

<u>Facts</u>

*1. The Underlying Lawsuit*

In April 2005, BASF filed suit against Lyondell in New Jersey's Superior Court

(Law Division, Morris County), alleging breaches by Lyondell of a contract they had

entered into under which Lyondell would process BASF's base chemical, propylene, into

propylene oxide, at a "most favored nation" price.  In August 2007, after a trial, the jury

rendered a verdict in favor of BASF and against Lyondell for approximately

$170 million, and interest on the verdict increased BASF's entitlement by an additional

$36 million.  It resulted in the entry of an August 2007 judgment awarding the first sum,

and an October 2007 order awarding the second.

Contending that this substantial jury verdict was the result of multiple legal errors by the trial judge,[3] Lyondell took an appeal to the Appellate Division. To stay execution on the judgment, Lyondell secured the Supersedeas Bond, bonding payment of $200 million exactly, from three insurance companies as sureties (the "Sureties").[4]

2. *The Supersedeas Bond*

The form of the bond was negotiated by counsel for Lyondell and BASF. BASF asserts that counsel did so in the context of the requirements of New Jersey law for a supersedeas bond sufficient in form and substance to provide a basis for the stay of the judgment creditor's rights, in the absence of a bond, to execute on its judgment. I find that to be true, but otherwise make no determinations as to the extent to which the substance of the negotiations between counsel, the requirements of New Jersey law, practice in the New Jersey legal community, or other kinds of parol evidence would be relevant (or admissible) with respect to construction of the Supersedeas Bond.

Although the Supersedeas Bond here is at least similar to other bonds that I've seen, its language is astoundingly Byzantine by the standards of contractual documents in the 21st Century, or even the 20th. The Supersedeas Bond did not, by way of example, simply say, on behalf of the Sureties, that "we promise to pay the judgment creditor [BASF] the amount (up to the $200 million limit) finally determined to be due, if the

---

[3]     There's no need for me to address them or even list them. As large as the judgment is, determinations as to its propriety or amount are matters for the New Jersey courts.

[4]     After the Supersedeas Bond was posted, the trial court in Morris County entered a consent order staying execution on the judgment. The consent order additionally provided that upon resolution of Lyondell's appeal in the Appellate Division, the consent order would be vacatable upon further application by BASF, and that if Lyondell were to further appeal, Lyondell would seek a (presumably new) supersedeas bond for a continued stay as required by the Rules of Court.

judgment debtor [Lyondell] doesn't pay it"—and that this obligation could be enforced

on motion, without the need to bring an independent action.[5]

Instead it led off with 25 lines of single spaced type in a single paragraph, which

even after substantial pruning for readability and deletion of duplicate matter, said:

> KNOW ALL MEN BY THESE PRESENTS, that
> we LYONDELL CHEMICAL COMPANY as
> Principal and [the Sureties] as Sureties … are held
> and firmly bound unto BASF CORPORATION in
> the penal sum of TWO HUNDRED MILLION
> AND NO/100 DOLLARS ($200,000,000) … for
> the payment of which we firmly bind ourselves, our
> successors and assigns, and that we [the Sureties]
> … irrevocably agree that our liability may be
> enforced in Said Court on motion …
>
> …
>
> UPON THE CONDITION, however,[6] that
> whereas BASF CORPORATION has recovered a
> judgment against LYONDELL CHEMICAL
> COMPANY in the amount of  … $169,932,670.00
> …, an award of Prejudgment Interest in the amount
> of … $36,475,248 … and LYONDELL
> CHEMICAL COMPANY intends to take an appeal
> to the SUPERIOR COURT OF NEW JERSEY,
> APPELLATE DIVISION.
>
> …
>
> NOW, THEREFORE, if the said LYONDELL
> CHEMICAL COMPANY shall satisfy the said
> judgment together with interest and costs thereon,
> or if for any reason the said appeal is dismissed, or
> the judgment is affirmed and Lyondell satisfies in

---

[5]    Obviously it would need to say a little more than that.  But anything else could have likewise been stated in either plain English or the style of English that's used in modern contractual instruments, even sophisticated ones.

[6]    I note that the condition is not stated anywhere else in that sentence, or the following sentence, which appears in a new paragraph, and which merely repeats the cap on the exposure of the Sureties.  What amounts to a condition, notwithstanding the language which seems to refer to a condition in this sentence, appears two paragraphs later, at the end of the language beginning "NOW, THEREFORE….".

full any modification of said judgment and such
costs, interest and damages as any Appellate Court
may adjudge and award, then this obligation shall
be null and void; otherwise it shall remain in full
force and effect.

*3. Effects on Lyondell of the Supersedeas Bond*

If the Sureties had to make payment on the Supersedeas Bond, they'd of course be entitled to reimbursement for any sums they laid out. The obligation to reimburse them was secured pre-petition—*i.e.*, before the filing of the Lyondell chapter 11 cases—by a letter of credit issued by Lyondell's lenders under Lyondell's pre-petition senior secured inventory-based revolving credit facility.[7] Since the lenders' ability to be repaid (not just on borrowings, but also for amounts they might have to advance on the Debtors' behalf, such as by payments on letters of credit) was secured by the Debtors' assets, the economic effect of the chain of obligations can fairly be summarized by saying that the Supersedeas Bond is ultimately secured by assets of Lyondell and its affiliates.

As revolvers typically do, Lyondell's revolver required a "reserve against availability" (a specified limit on the amounts that could be borrowed under the facility) for amounts the lenders might be required to advance if they were called upon to honor their letters of credit. As a practical matter, this means that with Lyondell's lenders having exercised their customary right to protect themselves in the event they might have to pay out on their $200 million letter of credit securing the reimbursement obligation to the Sureties on the $200 million Supersedeas Bond, Lyondell's ability to borrow under its revolver was reduced by the corresponding $200 million amount. The Debtors' post-petition financing provides for a maximum of $600 million in letters of credit to be issued

---

[7]     The pre-petition revolver was replaced by a similar post-petition revolver, which was one of the financing arrangements I recently approved in the Lyondell chapter 11 cases.

by its lenders, and the $200 million of credit backing up the duty to reimburse the

Sureties if they ultimately make payment on the Supersedeas Bond uses 1/3 of the

capacity under that facility.

*4. Proceedings in Appellate Division*

In July 2008, Lyondell filed its opening brief in the Appellate Division on its

appeal, and in November 2008, BASF filed its opposition brief.  Lyondell was scheduled

to file its reply brief in February 2009.  But before that happened, on January 6, 2009,

Lyondell and many Lyondell affiliates filed chapter 11 petitions in this Court.

Under familiar principles, the filing of Lyondell's bankruptcy petition resulted,

under section 362 of the Bankruptcy Code, in a stay of prepetition proceedings against

the Debtor[8] and claims and judgments that arose before the filing.[9]  On January 7, 2009,

I entered a comfort order to further ensure compliance with the requirements of section

362.

Two days later, on January 9, 2009, appellate counsel advised BASF and the

Appellate Division of Lyondell's chapter 11 filing, of the application of the automatic

stay, and the entry of my comfort order.  In response, by letter dated January 16, 2009, a

staff attorney for the Appellate Division advised BASF and Lyondell, after quoting

section 362 and noting its provisions that the filing of a bankruptcy petition operates as a

stay of the continuation of a judicial proceeding against the debtor:

> In appeals where the Court is advised that a
> bankruptcy petition has been filed by the defendant
> debtor and there is no statutory exception to the
> automatic stay, the Clerk's policy is to dismiss the

---

[8]    The continuation of an appeal prosecuted by the debtor when the debtor was the defendant below
is regarded as a proceeding against the debtor.  *See TIAA-Circuit,* 803 F.2d at 64-65.

[9]    *See* Bankruptcy Code sections 362(a)(1), (2) and (6), 11 U.S.C. §§ 362(a)(1), (2) and (6).

> appeal without prejudice to reinstatement upon
> conclusion of the bankruptcy proceedings.

She continued that "[i]n light of the January 7, 2009, order of the Bankruptcy Court restating the automatic stay provisions, the appeal has been slated for dismissal."

Later that same day (by an order issued in the name of the Presiding Judge for Administration of the Appellate Division, and signed by the Clerk of the Appellate Division), the Appellate Division entered an order dismissing the appeal, without prejudice. It ordered that "upon the completion of the bankruptcy proceedings," any party could move before the Appellate Division to reinstate the appeal, or "prior to the completion of the bankruptcy proceedings," any party could move before the Appellate Division to reinstate the appeal.[10]

Four days later, on January 20, New Jersey counsel for Lyondell wrote the Sureties, enclosing a copy of the Appellate Division's order dismissing the appeal, and asking the Sureties for a pro-rata refund of the annual Supersedeas Bond premium. Implicit in this, of course, was the premise that the Supersedeas Bond had come to an end. The next day, January 21, counsel for BASF wrote the Sureties, stating that Lyondell's request was improper and should not be honored. He asked that the refund not be issued, and (more importantly) that the Sureties not modify the Supersedeas Bond in any way.

On that same day, January 21, counsel for BASF executed an Application for Emergent Relief, with respect to the Appellate Division's January 16 order dismissing the appeal without prejudice. The application stated that "BASF will suffer immediate and

---

[10]    It is true, as BASF observes (BASF Obj. 1), that the Appellate Division's action in dismissing the appeal, even without prejudice, went beyond the parties' requests.

irreparable harm unless the "Order Dismissing Appeal" is vacated pending an

opportunity, within 30 days, to brief and address the issues in the Bankruptcy Court and

the Appellate Division."

The next day, January 22, the Appellate Division entered an "Order on Emergent

Application." It provided, in its most significant part:

> Pending receipt and review of opposition from
> appellant Lyondell Chemical Company to the
> motion of respondent BASF Corp. and further order
> of this court, the appeal is temporarily reinstated
> and appellant Lyondell Chemical Company is
> hereby ORDERED to maintain the supersedeas
> bonds in full force and effect….

*5. Proceedings Here*

Thereafter, Lyondell and BASF exchanged contentions as to whether the

Appellate Division's actions were violative of the automatic stay, and as to whether

BASF's communications to the Appellate Division to deal with the situation were

themselves violative of the stay. When Lyondell sought emergency relief from me with

respect to the events that had transpired, I scheduled a conference call with the parties. It

led to a consensual standstill permitting the various contentions to be heard before me on

an agreed-on briefing schedule, bringing on the motions described above.

*6. The Prayers for Relief*

With that by way of background, Lyondell asks me to enter an order:

(i) enforcing the Bankruptcy Code's automatic stay and the

Court's January 7, 2009, order "[e]nforcing and [r]estating" the stay and

ipso facto provisions;

(ii) directing BASF to withdraw its state court Application for

Emergent Relief and its Motion to Reinstate;

(iii) directing BASF to withdraw its instruction to the Sureties not

to refund Lyondell the pro-rata amounts of the annual Appeal Bond

premiums;

(iv) finding that the Dismissal Order was not a violation of the

automatic stay;

(v) finding that, as a result of the Dismissal Order, the Appeal

Bond has been terminated by its own terms and the assets backing the

Appeal Bond are property of the estate free of any lien of the Sureties; and

(vi) "for such other and further relief as the Court deems just and

proper."

At the same time, BASF seeks entry of an order:

(vii) lifting the Automatic Stay to allow the Appellate Division to

resolve state law issues regarding its order; and

(viii) lifting the automatic stay to permit Lyondell's appeal to

continue to completion.

<u>Discussion</u>

<u>I.</u>

<u>Lyondell Request to "Enforce the Automatic Stay"</u>

In the first of its several requests, Lyondell asks me to enforce the automatic stay.

Of course, bankruptcy courts always do that when asked, if there is a need.  And it is true,

as both sides recognize, that orders entered in violation of the stay are void,[11] and that

---

[11]     *See*, *e.g.*, *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 527 (2d Cir. 1994); *In re Best Payphones, Inc.*, 279 B.R. 92, 97 (Bankr. S.D.N.Y. 2002) (Bernstein, C.J.); *In re Braught*, 307 B.R. 399, 401 (Bankr. S.D.N.Y. 2004) (Morris, J.).

"[t]his includes most post-petition judicial action."[12]  But the real issue here, of course, is

what "enforcing the automatic stay" means under the facts presented here.  That issue

devolves into the more specific issues I must decide:  whether the Appellate Division

violated the automatic stay when it issued the Dismissal Order or the Reinstatement

Order—and though the matter is of lesser importance, whether BASF violated the stay

when it tried to get the Appellate Division to get back to the *status quo ante* before the

Appellate Division acted.

Analysis of all three issues starts with the language of the Bankruptcy Code itself,

with which I normally begin in any matter of statutory interpretation or application.

Section 362(a) of the Code provides, in relevant part:

> … [A] petition filed under section 301 … operates
> as a stay, applicable to all entities, of—
>
> > (1) the … continuation … of a
> > judicial, … action or proceeding against the
> > debtor that was … commenced before the
> > commencement of the case under this title
> > ….

But ultimately textual analysis is unhelpful because section 362(a) is simply not

that detailed in addressing how courts, and appellate courts in particular, are to

implement the Code's provision that the filing of a bankruptcy petition "operates as a

stay."  Similarly, the answers to these questions aren't driven, in any material way, by the

existing caselaw.  The caselaw is thin in this area—lacking in any earlier decisions as to

the propriety of dismissing appeals, as contrasted to staying them—and except for

guidance on the general approach, it's of very limited assistance.

---

[12]     *Best Payphones,* 279 B.R. at 97.

But the caselaw is helpful in describing the general approach that courts should

utilize in determining whether dismissals of pending litigation should be regarded as

violative of section 362(a).  "[T]he application or non-application of § 362(a) to the

dismissal of an action pending against a debtor should be made consistent with the

purpose of the statute."[13]  Thus I consider whether the challenged actions here squared

with the purposes of 362(a), and whether they led to harms of the type section 362(a) is

intended to avoid.[14]

*A. The Dismissal Order*

Considering first the Appellate Division's entry of the Dismissal Order,

I conclude that it did not constitute violation of the automatic stay.  To be sure, it would

have been sufficient (and better, as a matter of "best practices") for the Appellate

---

[13]    *Indep. Union of Flight Attendants v. Pan American World Airways, Inc.* 966 F.2d 457, 459 (9th
Cir. 1992); *accord Dennis v. A.H. Robins Co.*, 850 F.2d 871, 872 (8th Cir. 1988); *Zelaskowski v.
Johns-Manville, Corp.,* 578 F.Supp. 11, 17 (D.N.J. 1983) (dismissal of debtor defendant permitted
notwithstanding automatic stay where dismissal "will not contravene the purpose of the stay
provision.").

[14]    Both sides devoted a fair amount of time and attention to debating whether the Appellate
Division's actions, in entering the Dismissal Order and, later, the Reinstatement Order, were
"ministerial."  I think that's the wrong inquiry here.  It's true, of course, that "ministerial" acts
would not be barred by the automatic stay, even though adjudicative determinations (and other
non-ministerial acts) at least normally would be.  *See, e.g., Teachers Insurance & Annuity Ass'n of
America* v. *Butler,* 58 B.R. 1019, 1022 (S.D.N.Y. 1986) (Weinfeld, J.) ("*TIAA-District*) *aff'd by
TIAA-Circuit,* 803 F.2d at 67 (filing of signed judgment after issuance of district judge's decision
was "a purely ministerial act" not prohibited by automatic stay); *Rexnord Holdings,* 21 F.3d at 527
(noting and agreeing with Judge Weinfeld's ruling that entry of judgment by the clerk wasn't
violative of the stay); *Best Payphones*, 279 B.R. at 97-98 (noting the distinction and laying out the
relevant law).  But in considering whether or not the dismissal of the appeal, without prejudice,
was proper, I believe that I shouldn't equate an administrative order with a "ministerial" act—an
expression which is more properly used to describe wholly clerical matters, such as the actions of
non-judicial personnel to document the earlier decisions of judicial personnel (such as the entry of
judgment implementing a judicial decision, as in *TIAA-District*), or otherwise to mechanically
follow express dictates of law without exercising discretion.  *See Soares v. Brockton Credit Union
(In re Soares)*, 107 F.3d 969, 974 (1st Cir. 1997) ("[a] ministerial act is one that is essentially
clerical in nature …. Thus, when an official's duty is delineated by, say, a law or a judicial decree
with such crystalline clarity that nothing is left to the exercise of the official's discretion or
judgment, the resultant act is ministerial.").  For determining whether or not actions in the judicial
context violate the stay, I think that looking to the purposes of section 362(a), and avoidance of the
harms section 362(a) is intended to avoid, is the more relevant inquiry.

Division to do exactly what the Code provides—staying the appeal, as contrasted to dismissing it without prejudice to reinstatement.[15]  But though insufficient evidence was before me to make a factual finding in this regard, I believe that the Appellate Division's actions in this regard were hardly unique.  And I suspect that appellate courts not infrequently handle the proceedings before them as the Appellate Division here did, perhaps regarding dismissal without prejudice to renewal as the functional equivalent of a stay, and preferable from a docket management perspective.[16]

But however often or rarely it is done, for whatever reasons appellate courts do it, and however they regard it, I conclude that dismissal of an appeal without prejudice—as contrasted to staying it—was not violative of the automatic stay when dismissal without prejudice was ordered as a means of *attempting to comply* with the need to stay the appeal.[17]  Were it not for the argued collateral damage resulting from entry of the Dismissal Order, strangers to this controversy would wonder why in the world people

---

[15]    *Cf. Hamm v. R.H. Macy & Co.*, No. 93 Civ. 1446 (LAP), 1994 WL 507717, at *2 n.1 (S.D.N.Y. Sept. 13, 1994) (Preska, J.) (when a complaint against a debtor is filed before bankruptcy, "[t]he appropriate action in such cases is to place the matter on the suspense docket until the claim is resolved by the bankruptcy court.  In those cases, even a *sua sponte* dismissal of a case by a district court may violate the stay.") (*dictum*); *Willis v. Gladding Corp.*, 567 F.2d 630, 631 (5th Cir. 1978) (in context of consideration of former Bankruptcy Rule 11-44, applicable in proceedings under the now-repealed Bankruptcy Act, holding that it was error for the trial court to order dismissal of the case without prejudice, and that "[a] stay, backed by the bankruptcy court's contempt power, is adequate."); *Chubb Pacific Indemnity Group v. Twin Lakes Village, Inc.*, 654 P.2d 530, 530 (Nev. 1982) (same).  Of course, none of these cases involved the dismissal of an appeal.

[16]    If they care about how their productivity is perceived, for example, they might prefer not to have their case disposition statistics skewed by appeals that they're not in a position to decide.  Of course, I am *not* holding that considerations of administrative convenience, or the case management preferences of the non-bankruptcy court, by themselves provide satisfactory justification for disregard of the requirements of federal bankruptcy law.

[17]    That was plainly the case here, as evidenced by the unmistakable language in the Appellate Division's staff attorney's letter.  She wrote:

>         In appeals where the Court is advised that a bankruptcy
>         petition has been filed by the defendant debtor and there is no
>         statutory exception to the automatic stay, the Clerk's policy is
>         to dismiss the appeal without prejudice to the reinstatement
>         upon conclusion of the bankruptcy proceedings.

-16-

might care about the distinction.  So long as the appeal can be resumed where it left off

and no further burdens are placed on the debtor, the needs and concerns of the debtor, and

the bankruptcy court, are equally satisfactorily addressed by either means of responding

to the automatic stay.  Dismissal of an appeal without prejudice creates no burdens on the

debtor greater than staying the appeal would, and gives the debtor the same breathing

spell that the debtor would receive if the action were stayed.[18]  And it subjects the debtor

estate to no greater risks that a single advantaged creditor, by continuing its litigation,

would get a leg up on the remaining members of the creditor community.  Thus dismissal

of an appeal without prejudice does not result in the harms that the automatic stay is

intended to avoid—most significantly, those resulting from the burdens on the debtor or

trustee associated with the ongoing conduct of the litigation, and the potential for

interference with the bankruptcy court's management of the *in rem* proceeding before it.

As in *Pan Am*, where the court considered similar factors in determining that a motion to

dismiss an appeal on mootness grounds was not violative of the stay,[19] I rule that under

the facts here, the Appellate Division's Dismissal Order was the functional equivalent of

staying the appeal, and that there was no violation of the stay here.[20]

---

[18]    I regard it as significant that there is no indication of any desire on the part of the Appellate
Division to adjudicate or otherwise affect substantive rights—as a dismissal *with prejudice* would.
That contrasts this case with the Fifth Circuit's decision in *Pope v. Manville Forest Prod. Corp.*,
778 F.2d 238, 238 (5th Cir. 1985) (holding that a district court's *sua sponte* order of dismissal of a
plaintiff's employment discrimination action, *with prejudice*, and on the merits (by reason of *res
judicata*), was violative of the automatic stay).  In the appellate litigation context, the distinction
between dismissal *with* prejudice and *without* prejudice is critical.

[19]    *See* 966 F.2d at 459.

[20]    I expressly do not now decide whether the result would be the same if dismissal without prejudice
to refiling were ordered by a *trial* court, or in any other situation where a dismissal without
prejudice to refiling would have statute of limitations implications.  It is at least strongly arguable
that the result would have to be different.  For the avoidance of doubt, and to avoid potential
serious prejudice to litigants, I think trial courts should do exactly what Judge Preska
recommended in *Hamm*, and what the Code provides—staying the litigation (or doing the

-17-

*B. The Reinstatement Order*

For many of the same reasons, and using the same approach, I determine that

entry of the Reinstatement Order was not a violation of the stay either.  The

Reinstatement Order did not place the appeal back on track for disposition, or subject

Lyondell to the pressures of dealing with the appeal on the merits.  Rather, it provided

only that:

> *Pending receipt and review of opposition* from
> appellant Lyondell Chemical Company to the
> motion of respondent BASF Corp. and further order
> of this court, the appeal is *temporarily reinstated*
> and appellant Lyondell Chemical Company is
> hereby ORDERED to maintain the supersedeas
> bonds in full force and effect….[21]

The conclusion is inescapable that like other judicial responses to requests for

emergent relief, it was entered as a provisional remedy, to avoid possible irreparable

harm until the facts and legal issues could be sorted out.  Significantly, the Reinstatement

Order did not direct Lyondell to proceed with submission of its reply brief, or otherwise

to prosecute the appeal on the merits.  The Reinstatement Order simply restored the

parties back to the *status quo* as it existed before the Appellate Division's staff attorney

acted.  The Appellate Division cannot be faulted for trying to make things right itself, by

taking modest steps to avoid any prejudice to either party.

For reasons I noted above, I don't quite agree that, as Lyondell suggests, the

Appellate Division's Dismissal Order was a purely ministerial action—but if it were, it

would be equally ministerial to keep the appeal on the docket.  Putting it in the terms I'd

---

equivalent, such as putting it on a suspense calendar), as contrasted to dismissing it, even without
prejudice.

[21]    Emphasis added.

prefer, just as the Appellate Division's Dismissal Order was the functional equivalent of a

stay, the Appellate Division's Reinstatement Order was simply a different functional

equivalent of continuing the stay.  It was hardly wrongful for the Appellate Division to

preserve the status quo as of the date of commencement of the Lyondell chapter 11

cases.[22]

Thus I rule that just as entry of the Dismissal Order was not violative of the

automatic stay, entry of the Reinstatement Order—to restore the *status quo ante* prior to

the entry of the of the Dismissal Order, pending an opportunity for parties to be heard—

was not violative of the automatic stay either.

## II.

### BASF Motion for Relief from the Stay
### For Continuation of the Lyondell Appeal

I next consider BASF's motion for relief from the stay, to permit (and presumably

require) Lyondell to proceed with the appeal.  This request must be denied.

While both sides, understandably, rely on the Second Circuit's "*Sonnax* factors"[23]

in addressing whether or not I should grant relief from the stay, and Chief Judge

---

[22]    For the same reason, I find no violation of the stay by BASF in connection with its efforts to
straighten out the situation, nor by BASF in communicating with the Sureties.  I assume it to be
true that Lyondell's contingent right to return of unearned premium was an asset of its estate.  But
BASF didn't interfere with that.  In complaining of BASF's communications, Lyondell assumes
that it had an *existing* right to return of the bond premium, which Lyondell would have only if it
were determined that the Supersedeas Bond had in fact come to an end.  Lyondell now assumes
the fact to be decided.

[23]    *See Sonnax Industries, Inc. v. Tri Component Prods. Corp. (In re Sonnax Industries, Inc.),*
907 F.2d 1280, 1286 (2d Cir. 1990).  These factors are:

(1) whether relief would result in a partial or complete
resolution of the issues; (2) lack of any connection with or
interference with the bankruptcy case; (3) whether the other
proceeding involves the debtor as a fiduciary; (4) whether a
specialized tribunal with the necessary expertise has been
established to hear the cause of action; (5) whether the debtor's
insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;

Bernstein's well-known decision in *Keene*,[24] they fail sufficiently to address the fact that the underlying litigation as to which relief from the stay is desired is an appeal, where the debtor is the appellant—a factual situation neither of those cases addressed.  Matters of that character require consideration, in addition to the *Sonnax* factors, of a Second Circuit case decided before *Sonnax*, *TIAA-Circuit*,[25] which dealt with the special concerns where a debtor wants to stay its own appeal.

In that situation, the proceeding no longer, strictly speaking, is against the debtor, because when the matter is on appeal, the debtor is then, in a very real sense, "going on offense."  But fully recognizing this, the Circuit nevertheless held:

> We recognize that there are compelling policy reasons why an appeal *initiated by the debtor* should not be considered a proceeding "against the debtor" within the meaning of § 362(a); that is, such action can only inure to the benefit of the debtor and the debtor will not be forced to defend frivolous or vexatious lawsuits since the litigation is within its control.  Nonetheless, we conclude that the debtor's status must be determined in accordance with its status at the time of the original proceeding.[26]

---

(7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

[24]    *See In re Keene Corp.,* 171 B.R. 180 (Bankr. S.D.N.Y. 1994) (Bernstein, C.J.).

[25]    *See* n.2 *supra*.

[26]    803 F.2d at 64-65.

And it then continued, in language that partly informs the exercise of my discretion in

deciding whether I should respect Lyondell's desire to refrain from continuing its appeal

at this time:

> The stay is designed to give the debtor time to
> organize its affairs—which includes protection from
> having to defend claims brought against the estate
> as well as continuing to pursue judicial proceedings
> on its own behalf.  While the latter is within the
> debtor's control, it may still distract a debtor's
> attention from its primary goal of reorganizing.[27]

Of course, the *TIAA-Circuit* court made clear that a debtor cannot have it both

ways.  If a debtor wishes to stay its appeal, it has that right, but so long as it does so, the

decision the debtor is appealing from stands, and must be respected in bankruptcy as an

obligation of the debtor that must be satisfied.  But since Lyondell has made it clear in the

proceedings before me that it well understands that principle, and is not asking me to hold

otherwise, there here is no reason to believe that in seeking to keep its appeal stayed at

this time, Lyondell is, in fact trying to have it both ways.  Concerns of that character

which were a major issue in *TIAA-Circuit* are not a matter of concern here.

Now to be clear, the Second Circuit did not, in *TIAA-Circuit*, decide whether or

not relief from the stay to have the appeal proceed was appropriate or not.  That matter,

the Circuit made clear, had to be considered by the bankruptcy court.  So while *TIAA-*

*Circuit* demonstrates a strong sensitivity to the needs and concerns of debtors to avoid

distractions from their primary goal of reorganizing, it does not tell me how to engage in

the consideration of the various factors that any *Sonnax* analysis would entail.[28]  Doing

---

[27]    *Id.* at 65.

[28]    I note that application of the *Sonnax* factors is a matter within the bankruptcy court's discretion,
that not all of the factors are applicable in every case, and that they are not entitled to equal weight
when deciding whether or not to lift the stay. *See, e.g., Mazzeo v. Lenhart (In re Mazzeo),*

the latter, I conclude that while there might be a time, later on, when it would be appropriate for me to grant relief from the stay to allow the appeal to proceed, I should not do so at this time.

Different issues exist with respect to application of the *Sonnax* factors when one considers their application to efforts to resume the appeal process, on the one hand, and efforts to construe the Supersedeas Bond, on the other. Here, with respect to the former matter, I assume that resolution of the appeal would result in a complete resolution of the issues regarding whether or not BASF's judgment should survive (and in what amount). And New Jersey's appellate courts have an expertise in the New Jersey law under which the underlying judgment was entered, even if they don't have the very specialized expertise that an administrative agency would. Those two factors tip in favor of granting relief from the stay. But other factors, to the extent applicable at all, are either in equipoise, inapplicable, or favor allowing continuation of the stay, at least at this time.

More specifically, considerations as to the interests of judicial economy, and expeditious resolution of the litigation, are now in equipoise. Until or unless New Jersey's courts say otherwise, BASF now has a claim in this Court in the amount awarded by the trial court; delay in deciding the appeal will not change that. Similarly, the issue as to whether BASF has rights under the Supersedeas Bond will not be affected by whether or not the appeal goes forward on the merits now. Similarly again, the appeal was partly, but not fully briefed, and it would present no particular difficulties if the parties merely picked up where they left off. While the interests of judicial economy and expeditious resolution of the litigation normally are amongst the most important factors

---

167 F.3d 139, 142-143 (2d Cir. 1999); *In re Enron Corp.*, 306 B.R. 465, 475-476 (Bankr. S.D.N.Y. 2004).

in any *Sonnax* analysis, they do not meaningfully tip in either direction now, and especially do not meaningfully tip in favor of granting relief from the stay.

Likewise, while by reason of the *Rooker-Feldman* doctrine, and common sense, New Jersey's appellate courts are the only entities that can decide the legal issues as to whether the judgment against Lyondell was in accordance with New Jersey law (and if Lyondell wishes to challenge the underlying judgment, I'll sooner or later need to grant relief from the stay to enable them to do so), there is nothing that makes New Jersey's courts any less able to decide those issues some months from now. And other factors that might tip in favor of granting relief from the stay in another case (such as where an insurer has responsibility for defending the claim, or the action primarily involves third parties) are inapplicable here.

But the last factor, the impact on the parties and the balance of harms, is very much applicable in this case, and in my view is the most important here. Lyondell now has many matters on its plate in connection with its reorganization, and there is no good reason to make Lyondell put this matter on its plate as well. Lyondell is in the beginning stages of its reorganization process—one that by reason of financing constraints, Lyondell will have to move on very quickly, to be completed in about a year. Prosecution of the appeal at this time might "still distract a debtor's attention from its primary goal of reorganizing."[29] But a delay of several months, or even more than that, under the facts presented here, will not prejudice BASF in any material way.[30]

---

[29]    *TIAA-Circuit*, 803 F.2d at 65.

[30]    Just as Lyondell assumed facts to be decided as I noted above, BASF does likewise when it argues that "[t]he continuation of the Appeal to fruition offers the only legitimate means by which Lyondell could, if successful, recover its collateral for the bond." (BASF Mot. Seeking Relief from Aut. Stay at 13.). That is a matter yet to be decided. For reasons discussed below, I believe that matter should be decided by the New Jersey courts.

My view might be different six months or a year from now, but as of this time,

Lyondell is entitled to its breathing spell.  Thus BASF's motion for relief from the stay to

permit, or require, Lyondell to proceed with its appeal on the merits at this time is denied.

### III.

### Lyondell Request to Determine Continuing Viability of the Bond

The more significant issue is whether I should determine the issues relating to the

continuing viability of the Supersedeas Bond, or whether these issues are best considered

by the Appellate Division or other New Jersey courts.  For the reasons discussed below, I

believe that these issues present classic matters for discretionary abstention under

28 U.S.C. § 1334, and that I should defer to the New Jersey courts to decide these

issues.[31]  Thus, in the exercise of discretion,[32] I will abstain and grant relief from the stay

to the extent necessary to allow the New Jersey courts to construe the Supersedeas Bond

in light of the Dismissal Order and Reinstatement Order.

In my Findings of Fact above, I discussed the anachronistic and arcane language

of the Supersedeas Bond.  Even assuming that bonds in this form may have been used for

decades (or centuries), I find the Supersedeas Bond astoundingly deficient in simply

expressing the ideas that I would have thought to embody its purpose.  If, as I would have

thought, its purpose was to say, as I noted above, something like "we promise to pay the

---

[31]     Thus, while I have material doubts as to the persuasiveness of other BASF contentions (*e.g.*, that abstention is required by reason of "*Younger* Abstention," or that it is required under the *Rooker-Feldman* Doctrine), I don't need to address BASF's other contentions, as I find that abstention is appropriate under traditional discretionary abstention doctrine.

[32]     I consider discretionary, and not mandatory, abstention, because the issues here invoke "arising in," and not just "related to," jurisdiction, under 28 U.S.C. § 1334.  To the extent that construction of the Supersedeas Bond here is a core matter, it's only because it is "procedurally core" in the sense that Chief Judge Bernstein explained that concept in *In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 182, 203 (Bankr. S.D.N.Y. 2002).  And I note, as I did in *Casual Male*, that whether or not a matter is core is not determinative of decisions as to discretionary remand or discretionary abstention.  *See Longacre Master Fund, Ltd. v. Telecheck Services, Inc. (In re Casual Male Corp.)*, 317 B.R. 472, 479 & n.23 (Bankr. S.D.N.Y. 2004) (Gerber, J.) ("*Casual Male*").

judgment creditor (up to the $200 million limit) the amount finally determined to be due, if the judgment debtor doesn't pay it," it fails dreadfully in accomplishing that purpose. And it's as deficient or more so in the portion that appears to have been custom drafted, describing the circumstances under which a dismissal of the appeal affects the Sureties' duty to pay.

Each of Lyondell and BASF contends that the Supersedeas Bond is unambiguous. But I find it anything but. BASF justifiably criticizes Lyondell for Lyondell's "liberal use of ellipsis"[33] in arguing for the Lyondell-favored construction of the Supersedeas Bond. But BASF then resorts to the very tactics it criticizes when speaking, in very general terms, of Lyondell's ignoring that "the beginning and end of the bond condition any termination of the bond on Lyondell satisfying the judgment"[34]—without addressing the apparent surplusage that flows from that construction, and the odd punctuation if that is the intent. In my view, neither side's position is free from doubt.

This can be seen by taking the language in issue, quoting it in full, but then (in contrast to the single-paragraph mass in which it now appears) re-formatting it (without any change of words or punctuation) consistent with each side's argument.

Lyondell would seemingly argue that the bond condition should be understood as follows:

NOW, THEREFORE,

if the said LYONDELL CHEMICAL
COMPANY shall satisfy the said judgment
together with interest and costs thereon,

---

[33]      BASF Obj. 15, ¶ 29.

[34]      *Id.* at 20, ¶ 37.

> > or if for any reason the said appeal is
> > dismissed,
> >
> > or the judgment is affirmed and Lyondell
> > satisfies in full any modification of said
> > judgment and such costs, interest and
> > damages as any Appellate Court may
> > adjudge and award,
>
> then this obligation shall be null and void; otherwise
> it shall remain in full force and effect.

This construction is at least arguably more consistent with the paragraph's use of punctuation (*i.e.*, the commas), and the paragraph's use in two places of the word "or." But it is at least arguably inconsistent with a supersedeas bond's purpose—suggesting that dismissal results in absolving the Sureties from their duty to pay, when many kinds of dismissal would, at least to the untutored eye, result in exactly the types of circumstances when the Sureties *should* pay.[35] Putting it another way, the Lyondell construction leads to what many might regard as a counterintuitive result, or even an absurdity.

BASF would seemingly argue that it should be understood as follows:

> NOW, THEREFORE,
>
> if the said LYONDELL CHEMICAL COMPANY
> shall satisfy the said judgment together with interest
> and costs thereon,
>
> or if for any reason the said appeal is dismissed, or
> the judgment is affirmed and Lyondell satisfies in
> full any modification of said judgment and such
> costs, interest and damages as any Appellate Court
> may adjudge and award,

---

[35] *E.g.*, where the appeal is dismissed by the appellate court as frivolous or for failure to prosecute, or where the appellant recognizes that the appeal is so lacking in merit that the appeal should no longer be prosecuted.

> then this obligation shall be null and void; otherwise
> it shall remain in full force and effect.

This construction is more consistent with what many might regard as the bond's purpose.  But it is more difficult to reconcile with the bond's punctuation.  One might wonder why there is a comma after "appeal is dismissed" and why there is not a comma after "judgment is affirmed," if in fact the clause "satisfies in full…" is applicable to both of the clauses that precede it, and not just the second of the two.  BASF's construction also gives rise to uncertainties as to what the role of the word "or" is in the two places where it appears, and why, if satisfaction of the judgment is always a condition to the bond's becoming "null and void," it appears twice.[36]

Lyondell's interpretation would cause the bond to self-destruct upon a dismissal of the appeal for any reason, even where the dismissal resulted from the appellant's inaction or a determination that the appeal lacks merit, and where the consequence would be a *de facto* affirmance—exactly the opposite of what I would have thought the purpose of a supersedeas bond to be.  And yet if we believe, as we've been taught, that commas and other punctuation have consequences (and surplusage is to be avoided), BASF's position also has its flaws.

For all of these reasons, I find the Supersedeas Bond to be ambiguous, in stating whether the "appeal is dismissed" language is qualified, or not, by the "satisfies in full" language that appears after "judgment is affirmed" in the later clause.

---

[36]    I can't rule out the possibility that there might be even more interpretations or ways to re-format it consistent with any such interpretations.  To the extent that might be true, it would show how the language is even more ambiguous.  The above discussion is not to suggest that I know at this point how it should be interpreted, or would tell any other court how it should go about doing so.  It is, rather, simply to point out that contentions that the language can easily be interpreted lack merit.

We then must decide whether I should be the one to construe the Supersedeas Bond, or whether I should abstain and grant relief from the stay to have the Appellate Division (or another New Jersey court) do so.  I conclude that New Jersey's courts provide the most appropriate forum for the construction exercise to be undertaken, and that this controversy presents a classic case for discretionary abstention.

The section of the Judicial Code giving me subject matter jurisdiction over this controversy, 28 U.S.C. § 1334, provides, in relevant part:

> (c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Of course, under fundamental principles, the bankruptcy court is an arm of the "district court" which may avail itself of this option.  Section 1334(c)(1) expressly recognizes that discretionary abstention is authorized in proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Code—*i.e.*, even where the federal court would have subject matter jurisdiction to determine the controversy.

The standards for discretionary abstention under section 1334(c) (which are very similar to those applicable to discretionary remand under 28 U.S.C. §1452(b)[37]) have been articulated in slightly different ways in different cases, but generally have involved consideration of:  (1) the effect on the efficient administration of the bankruptcy estate, (2) the extent to which issues of state law predominate, (3) the difficulty or unsettled nature of the applicable state law, (4) comity, (5) the degree of relatedness or remoteness

---

[37] *See, e.g., ML Media Partners, LP v. Century/ML Cable Venture (In re Adelphia Communications Corp.),* 285 B.R. 127, 144 (Bankr. S.D.N.Y. 2002) (Gerber, J.); *Casual Male,* 317 B.R. at 479 & n.26.

of the proceeding to the main bankruptcy case, (6) the existence of the right to a jury trial, and (7) prejudice to the involuntarily removed defendant.[38]

Turning to the first and fifth factors, the resulting weighing comes out essentially as a wash. Here the Debtors' liquidity would be materially enhanced by a decision in Lyondell's favor as to the construction of the Supersedeas Bond, but saying that the estate's liquidity will be enhanced if the Debtors win is not quite the same as saying that such a result equates to the efficient administration of the estate. The same is true with respect to the degree of relatedness or remoteness of the Lyondell-BASF controversies to the main bankruptcy case. Whether BASF ultimately has a claim against Lyondell, and/or for how much, will have to await determination of the ultimate appeal in the New Jersey courts in any event. And Lyondell's bankruptcy case can be administered as efficiently or more so if the New Jersey courts decide the state law issues as to the bond, freeing me to decide the many issues in the Lyondell bankruptcy case that require determinations by the bankruptcy judge in "real time," and/or require expertise in bankruptcy law.

The sixth and seventh factors are simply inapplicable here. But the second, third and fourth factors tip, overwhelmingly, in favor of abstention. Issues as to the interpretation of the Supersedeas Bond involve state law, and do not involve federal law (much less bankruptcy law) in any way.[39]

---

[38]     *See, e.g., Casual Male*, 317 B.R. at 417.

[39]     I've previously observed that bankruptcy judges address issues of state law on a regular basis, and thus that this factor should not sway the balance in favor of remand when other factors that the Court views as more significant weigh in the opposite direction. *See Casual Male*, 317 B.R. at 480 n.30 and cases cited therein. But as I also said in *Casual Male*, wherein I abstained anyway, such a situation is distinct from situations where the other relevant factors also weigh in favor of having the state court decide the controversy. *Id.*

The "unsettled law" factor also favors abstention. We here do not have the luxury, as we so often do, of construing unambiguous contractual documents. As I've noted, the Supersedeas Bond is extraordinarily ambiguous, and it is likely, if not certain, that construction of the bond will require consideration of New Jersey practice and any applicable New Jersey precedent that may bear on its construction. I was surprised to see the dearth of caselaw authority that either Lyondell or BASF put before me that was in any meaningful way relevant to the bond interpretation issues—and given the quality of the counsel on both sides, who likely would have put before me any applicable precedent, that suggests that the issues here may be issues of first impression in New Jersey.

Finally, and perhaps most importantly, I think that interests of comity suggest that I should let the New Jersey courts decide these issues. New Jersey's courts have a strong interest in regulating and interpreting the bonds that secure enforcement of their judgments, and any decision I might issue could have a dramatic effect on New Jersey practice. New Jersey's courts are in the best position to decide the extent, if any, to which their court rules should be relevant to interpreting a contract whose purpose, in material part, was to comply with those rules, and they will be aware, if and to the extent it is relevant, of any rules that require certain language to be used, or set forth ends to be achieved. They will know, better than I would, how the various bond interpretations that have been proffered square with the New Jersey courts' needs and concerns. Putting it another way, while supersedeas bonds are contracts between private parties, they differ from many other contracts between private parties by reason of a greater public interest in the consistency of their interpretation. And it is at least possible, if not likely, that there are many other supersedeas bonds used in New Jersey that have language that may not be

meaningfully different from the language here, and whose enforceability might be affected by any determination in this controversy.

In short, New Jersey's courts—by reason of greater access to the tools of interpretation, greater knowledge of what they want to accomplish, and a greater interest in regulating the area in question—provide the best forum for determining issues of this nature.

The abstention determination that I've just made informs the exercise of my discretion in granting relief from the stay to the extent necessary to permit the New Jersey courts to construe the Supersedeas Bond. Looking again at the *Sonnax* factors— this time as to whether I should grant relief from the stay simply to allow New Jersey's courts to decide the narrower issues as to the continuing validity of the Supersedeas Bond—I find that I should grant relief from the stay, to the extent it's required,[40] to implement the discretionary abstention that I consider appropriate here.

Turning first to several *Sonnax* factors that are usually quite important, I've already discussed the "lack of any connection with or interference with the bankruptcy case," and found that to be a wash. I likewise consider the "impact of the stay on the parties and balance of harms" and "whether litigation in another forum would prejudice the interests of other creditors" to be a wash, as I note that the issues would have to be litigated somewhere, and I consider the New Jersey courts to be no more or less fair in deciding the issues than I would be. With respect to the Supersedeas Bond issues in contrast to the underlying appeal, Lyondell wants them decided notwithstanding any burdens on its reorganization efforts. And while "interests of judicial economy and the

---

[40] This aspect of the controversy is not exactly a proceeding against the debtor, but the spirit of *TIAA-Circuit* might suggest that I look to the origins of the controversy as involving a suit against the debtor. *See* page 20 & n.26 *supra.*

expeditious and economical resolution of litigation" would favor keeping the dispute here

if the language were unambiguous and/or simply raised issues under a commercial

contract of interest to nobody other than the parties to that particular contract, neither of

those premises is applicable here, and thus this factor too turns out to be a wash.

But while most of the other factors[41] are wholly inapplicable, one favors relief

from the stay modestly, and the last favors relief from the stay overwhelmingly. The

New Jersey courts' determination of the Supersedeas Bond issues would result in a

"complete," not "partial," resolution of those important issues. And most importantly,

implementation of the discretionary abstention that I consider to be appropriate and

desirable—grounded on factors very similar, if not quite identical, to "whether a

specialized tribunal with the necessary expertise has been established to hear the cause of

action"—calls for me to grant whatever relief from the stay is necessary to allow New

Jersey courts to decide the issues as to which I conclude I should abstain.

Thus I will abstain with respect to the issues with respect to the continuing

viability of the Bond, and BASF's related motion that I grant relief from the stay to allow

the New Jersey courts to decide those issues is granted.

## Conclusion

For the reasons stated above, the parties' motions are disposed of as follows:

*Lyondell Requests*

> (i) enforcing the Bankruptcy Code's
> automatic stay and the Court's January 7, 2009 order

---

[41]    *See* Factors #2 (whether the other proceeding involves the debtor as a fiduciary); #5 (whether the debtor's insurer has assumed full responsibility for defending it); #6 (whether the action primarily involves other parties); #8 (whether the judgment claim arising from the other action is subject to equitable subordination); #9 (whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor); and #11 (whether the parties are ready for trial in the other proceeding).

"[e]nforcing and [r]estating" the stay and ipso facto
provisions;

Granted, to the extent, and in the manner, described above.

(ii)  directing BASF to withdraw its state
court Application for Emergent Relief and its
Motion to Reinstate;

Denied as moot.

(iii) directing BASF to withdraw its
instruction to the Sureties not to refund Lyondell the
pro-rata amounts of the annual Appeal Bond
premiums;

Court abstains; denied, other than on the merits, and without prejudice to Lyondell's

ability to argue for this, if it is so advised, in the New Jersey courts.

(iv) finding that the Dismissal Order was not
a violation of the automatic stay;

Granted.

(v) finding that, as a result of the Dismissal
Order, the Appeal Bond has been terminated by its
own terms and the assets backing the Appeal Bond
are property of the estate free of any lien of the
Sureties;

Court abstains; denied, other than on the merits, without prejudice to Lyondell's ability to

argue for this, if it is so advised, in the New Jersey courts.

(vi) "for such other and further relief as the
Court deems just and proper."

Granted, to the extent, and in the manner, set forth above.

*BASF Requests*

(vii) lifting the Automatic Stay to allow the
Appellate Division to resolve state law issues
regarding its order;

Granted, to the extent, and in the manner, set forth above.

-33-

    (viii) lifting the automatic stay to permit Lyondell's
    appeal to continue to completion.

Denied.

The parties are to use their best efforts to submit a joint proposed order consistent

with this Decision (without prejudice to either side's rights to appeal).  If, after good faith

efforts to agree on its form, the parties cannot agree on what it takes to reflect my ruling,

either side may settle an order, on no less than three business days' notice by hand, fax,

or e-mail.

Dated: New York, New York                 __*s/Robert E. Gerber*____
       March **18**, 2009                 United States Bankruptcy Judge