UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LYONDELL CHEMICAL COMPANY, *et al.*, | ) | Case No 09-10023 (REG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

DECISION AND ORDER ON MOTION OF BANK
OF NEW YORK MELLON FOR REARGUMENT
OF COURT'S DETERMINATION THAT THE
ARCO AND EQUISTAR NOTEHOLDERS ARE
ADEQUATELY PROTECTED

Bank of New York Mellon ('**BNY"**), as indenture trustee for the Arco and Equistar Noteholders, moves for reargument with respect to the Court's earlier determination that the Arco and Equistar Noteholders would be adequately protected after entry of the Court's order approving the Debtors' DIP financing.

BNY's motion is denied.  However, in the interests of justice, the Court will require the memorializing of a factual predicate for this determination (as suggested by the Creditors' Committee and as agreed to by the DIP Lenders, the Senior Secured Lenders, and the Debtors), to provide (by amendment to the DIP financing order, supplemental consent order, or otherwise) for language of the substance set forth below.

To succeed on a motion for reargument, a litigant must show that the Court "overlooked controlling decisions or factual matters that might materially have influenced its earlier decision…. Alternatively, the movant must demonstrate the need to

correct a clear error or prevent manifest injustice."[1]  "The rule permitting reargument is strictly construed to avoid repetitive arguments on issues that the court has already considered."[2]  And a motion for reargument is not an opportunity to make new arguments, or to submit affidavits or other new material.[3]

The Court agrees with the Debtors and the other objectors that BNY's motion is premised on facts available to BNY prior to the hearing, and in essence represents a rearticulation of arguments that BNY might have made in a different way at the hearing. And assuming, *arguendo*, that lawyers' oral arguments did not make reference to facts (*e.g.*, the equity cushion) as precisely as their briefs had—a situation not unusual in this or any other court—that was of insignificant consequence, since this Court, as parties know (and knew then), personally reads the relevant papers before the hearing, and learns the relevant facts by that means.  For that reason and others, the Court was not under any misapprehension of the facts at that time, and accurately understood the nature of BNY's new liens, and the Senior Secured Lenders' liens.

Finally, even if the Court were free to give BNY another bite at the apple, BNY's supplemental submissions would not cause the Court to change its conclusion.  It continues to believe that BNY is adequately protected.  As all parties agree, BNY's waiver of its right to invoke marshaling applies only to property of the Debtors, and does

---

[1]    *In re Asia Global Crossing, Ltd.,* 332 B.R. 520, 524 (Bankr. S.D.N.Y. 2004) (Bernstein, C.J.) (internal quotations omitted).

[2]    *In re Best Payphones, Inc.,* 2008 WL 2705472 at *3 (Bankr. S.D.N.Y. Jul. 3, 2008) (Bernstein, C.J.).

[3]    *See In re Adelphia Business Solutions, Inc.,* 2002 WL 31557665 at *1 n.1 (S.D.N.Y. Oct. 15, 2002) (Gerber, J.).  For this reason, the Court agrees with the objectors that BNY's submission of a declaration on this motion was inappropriate.

not extend to other assets owned by non-debtor affiliates.[4]  BNY is free to seek to obligate the Senior Secured Lenders to look to the value of their non-DIP collateral first. That marshaling would effectively free up collateral for the Arco and Equistar Noteholders as Senior Secured Lenders satisfied their indebtedness from sources not available to BNY, thereby eliminating a draw, to that extent, on the assets comprising BNY's collateral, and on BNY's equity cushion.

Finally, but importantly, the Court sees nothing in BNY's reargument motion that would cause the Court to conclude that the Arco or Equistar Noteholders should now be entitled to current payment of postpetition interest, as adequate protection or otherwise. BNY's request, once more, for such relief has minimal nexus to the alleged mistake of fact, and is, as the Creditors' Committee argues, a paradigmatic "second bite at the apple."

Notwithstanding the foregoing, the Court concurs with the Creditors' Committee that memorializing the absence of a marshaling waiver as to non-Debtor assets—at least implicit at the original hearing, and now having been stated expressly in the various parties' submissions on BNY's reargument motion, and as noted in the Court's decision, above—is in the interests of justice.  Accordingly, the parties are authorized and directed to submit to this Court for approval, by stipulation, consent order or other appropriate means, written confirmation that BNY's waiver of its right to invoke marshaling applies only to property of the Debtors, and does not extend to other assets owned by non-debtor affiliates.  The Creditors' Committee articulated the concept in words that, subject to parties' rights to be heard or do better, seemed correct to the Court:

---

[4] *See* Final DIP Order ¶ 13(c) ("In no event shall the DIP Agents, the DIP Lenders, the Pre-Petition Agents or the Pre-Petition Secured Lenders be subject to the equitable doctrine of 'marshaling' or any similar doctrine *with respect to the DIP Collateral.*") (emphasis added).

> Nothing contained in the Final DIP Order or the
> DIP Documents is intended to, or shall, in any way
> limit or prohibit any right which the Indenture
> Trustees or any other party in interest may have
> under applicable law to assert the equitable doctrine
> of "marshaling" as against the Pre-Petition Agent or
> Pre-Petition Lenders in respect to any assets owned
> by a direct or indirect subsidiary of Lyondell/Basell
> Industries, ASF which is not a Debtor in these
> Cases or as to any asset which is not DIP Collateral.

If this language is unsatisfactory, and the parties cannot agree on language that does better, the Court will address any remaining differences by conference call.

SO ORDERED.

Dated:  New York, New York                         _s/Robert E. Gerber_
       April **10**, 2009                             United States Bankruptcy Judge