**PRESENTMENT DATE AND TIME:** July 6, 2009 at 12:00 p.m. (prevailing Eastern time)
**OBJECTION DEADLINE:** July 6, 2009 at 11:30 a.m. (prevailing Eastern time)

Deryck A. Palmer, Esq.
John J. Rapisardi, Esq.
George A. Davis, Esq.
Andrew M. Troop, Esq.
Christopher R. Mirick, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

Attorneys for Lyondell Chemical Company, et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x

| | |
|---|---|
| **In re:** : | |
| : | **Chapter 11** |
| : | |
| **LYONDELL CHEMICAL COMPANY, et al.,** : | **Case No. 09-10023 (REG)** |
| : | |
| : | **Jointly Administered** |
| **Debtors.** : | |
| : | |

----------------------------------------------------------x

## DEBTORS' APPLICATION PURSUANT TO SECTIONS 327(a) AND 328(a) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014(a) AUTHORIZING EMPLOYMENT AND RETENTION OF McKINSEY & COMPANY, INC. UNITED STATES AS MANAGEMENT CONSULTANT TO THE DEBTORS

Lyondell Chemical Company and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move for an order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2014-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") authorizing the employment and retention of McKinsey & Company Inc. United States ("McKinsey US"), as management consultant to the Debtors (the "Application"). In support of

this Application, the Debtors rely on the Affidavit of Thomas Hundertmark (the "Hundertmark

Affidavit") attached as Exhibit A, and further respectfully represent as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider this Application pursuant to 28

U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is

proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

2.      By this Application, the Debtors request authorization to employ and

retain McKinsey US to provide necessary consulting services in these chapter 11 cases pursuant

to sections 327(a), 328(a) and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014 on the

terms described below, and in accordance with the engagement letter and consulting agreement

attached as Exhibit B (the "Consulting Services Agreement").

### Scope of Services

3.      The nature and extent of the services for which the Debtors propose to

have McKinsey US retained are more fully set forth in the Consulting Services Agreement,

including attachments thereto, and include, but are not limited to, the following, as requested by

the Debtors and agreed to by McKinsey US:

> (a)      Strengthening the 5-year strategic and operational plan,
> presently being formulated by the Debtors, by identifying potential
> questions and external challenges regarding the 5-year plan;

> (b)      Providing supporting documentation and communication of the
> 5-year plan; and

> (c)      Supporting the assessment of competitive strengths and
> weaknesses and strategic actions.

4.      The services to be provided by McKinsey US to the Debtors will not be

unnecessarily duplicative of those provided by any other of the Debtors' professionals, and

McKinsey US will seek to coordinate any services performed at the Debtors' request with the Debtors' other professionals, including their financial advisors and counsel, as appropriate, to avoid duplication of effort. If the Debtors seek to expand the scope of McKinsey US's retention, a supplemental affidavit will be filed with the Court and served on the United States Trustee for the Southern District of New York (the "U.S. Trustee"), counsel for the committee of unsecured creditors appointed in these cases, and counsel for the agents (the "DIP Agents") to the debtors' post-petition financing agreements.

### Qualifications Of Professionals

5.     McKinsey US is a management consulting firm that helps leading corporations and organizations make distinctive, lasting and substantial improvements in their performance. McKinsey US advises companies on strategic, operational, organizational and technological issues. McKinsey US has extensive experience in all major industry sectors and primary functional areas.

6.     McKinsey US's petrochemical practice includes general consultants, dedicated practice consultants and experts with particularly relevant industry experience and academic backgrounds, including experts in petrochemicals and refining. The practices are backed by research experts who provide insight into industry structure and dynamics, and ensure that teams have access to the latest thinking, approaches and analyses on financial, market, operational and organizational matters for the consulting teams.

7.     The Debtors believe that the services of McKinsey US are necessary to enable the Debtors to maximize the value of their estates and to reorganize successfully. Further, McKinsey US is well qualified and able to represent the Debtors in a cost-effective, efficient and timely manner.

## Basis for Relief

8.      The Debtors seek approval to retain McKinsey US pursuant to section 327(a) of the Bankruptcy Code.  Section 327(a) provides, in relevant part, that the Debtors "with the court's approval, may employ . . . professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in fulfilling its duties under the Bankruptcy Code.

9.      Pursuant to section 328(a) of the Bankruptcy Code, the Debtors may retain McKinsey US on reasonable terms and conditions.  Section 328 of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

## McKinsey US's Disinterestedness

10.      To the best of the Debtors' knowledge, information and belief and based on the Hundertmark Affidavit, neither McKinsey US nor any professional employee of McKinsey US has any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, except as may be set forth in the Hundertmark Affidavit.

11.      Based upon the Hundertmark Affidavit, the Debtors submit that McKinsey US is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and is otherwise eligible to be retained in these cases pursuant to section 327(a) of the Bankruptcy Code.  The Debtors have been informed that McKinsey US will conduct an ongoing review of its files to ensure that no

disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, McKinsey US will supplement its disclosure to the Court.

### Indemnification and Confidentiality, Termination

12.     Pursuant to the Consulting Services Agreement , the Debtors have agreed to indemnify and hold harmless McKinsey US from and against all claims, liabilities, losses, damages, and expenses as incurred (including reasonable attorney fees and the costs of McKinsey US professional time), relating to or arising out of the Services.  The Debtors shall not, however, be liable under the foregoing indemnity agreement to the extent that any such losses resulted primarily from the gross negligence or willful misconduct of McKinsey US in the performance of the services hereunder.  The Debtors' obligations under this paragraph shall survive the termination of this Agreement.

13.     The Debtors also have agreed that **they remain solely liable** for any losses suffered by the Debtors or any such other person relating to or arising out of the service hereunder and further agrees that McKinsey US shall be reimbursed for any expenses as incurred relating to the foregoing (including reasonable attorney fees and the costs of McKinsey US professional time), except to the extent that any such losses resulted primarily from the gross negligence or willful misconduct of McKinsey US in the performance of the services hereunder.

14.     The Parties acknowledge and agree that liability for losses other than those defined in section 6 of the Consulting Services Agreement shall be apportioned according to state law.  The Parties acknowledge and agree that the obligations hereunder shall be in addition to any rights or remedies that they may have at law or otherwise.

15.     Neither Party will be liable for, and each Party waives and releases any claims against the other Party for any special, incidental, or consequential damages, including,

- 5 -

without limitation, lost revenues, lost profit, or loss of prospective economic advantage, resulting from performance or failure to perform under this agreement.

16.     A full statement of the scope of the Debtors' indemnification obligations is set forth in the Consulting Services Agreement.  McKinsey US and the Debtors believe that such provisions are customary and reasonable.

17.     As more fully set forth in the Consulting Services Agreement, McKinsey US has agreed to preserve the confidentiality of Confidential Information provided by the Debtors, and the Debtors have agreed to preserve the confidentiality of and restrict the distribution of work products and deliverables provided to it by McKinsey US.   Counsel, accountants and investment bankers for the Debtors may have access to the Confidential Information, work products and deliverables on the same confidential terms as the Debtors. Confidential Information may be shared with counsel and members of any official committee that is appointed in these cases and the DIP Agents and their counsel, provided that such members and professionals have entered into confidentiality agreements acceptable to both the Debtors and McKinsey US.

18.     McKinsey US and the Debtors have agreed as more fully set forth in the Consulting Services Agreement that either party may terminate the Consulting Relationship effective on written notice to the other, following which termination the Debtors shall be liable for all fees and expenses incurred through the effective date of termination.

**Professional Compensation**

19.     Pursuant to the terms and conditions of the engagement letter dated April 29, 2009, and subject to the Court's approval, McKinsey US intends to charge the Debtors a monthly fee of $687,000 for the provision of a mid-sized management consulting team.  In the

event that there is an increase in the scope of activities or a need to accelerate the timing of key deliverables, it may be necessary to change the McKinsey US consulting team from a mid-sized to a large team. The monthly fees for this large team, in the event it becomes necessary, will be $843,500. The Debtors have agreed to pay an additional 15% of the monthly fee to cover all out-of-pocket expenses, including travel, legal services, and other support services. For purposes of this engagement, McKinsey US will provide a brief description of the services provided hereunder on a monthly basis, including a description of those professionals performing such services. McKinsey US also will maintain records of its outside counsel fees.

20.     The compensation structure described above is consistent with McKinsey US's normal and customary billing practices for engagements of this size and complexity, and reflects the difficulty of the extensive assignments McKinsey US expects to undertake. The Debtors believe that the foregoing compensation arrangement is (a) reasonable, (b) market-based and (c) merited by McKinsey US's extensive knowledge and experience, and its successful provision of consulting services to other troubled companies.

21.     In this case, McKinsey US will provide time records in summary hourly increments.

22.     Except as set forth in the Hundertmark Affidavit, McKinsey US has not shared or agreed to share any of its compensation in connection with this matter with any other person, as permitted by section 504 of the Bankruptcy Code.

### Fee Applications

23.     McKinsey will file interim and final fee applications for allowance of its compensation and expenses, with respect to its Services, and McKinsey will seek compensation and reimbursement of expenses, as specified in the Consulting Services Agreement, with the

payment of such fees and expenses to be approved in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, local rules and orders of the Court, guidelines established by the U.S. Trustee, and such other procedures as may be fixed by order of this Court, including but not limited to the Court's Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, dated January 23, 2009.

### Notice

24.     No trustee or examiner has been appointed in these cases. Notice of this Motion has been given in accordance with this Court's Order Establishing Notice Procedures and a Master Service List, dated January 7, 2009. In light of the relief requested, the Debtors submit that no other or further notice need be provided.

### No Prior Application

25.     No previous request for the relief sought herein has been made to this or to any other court.

**WHEREFORE**, the Debtors respectfully request that this Court enter an order, substantially in the form attached as Exhibit C hereto, (i) authorizing the employment and retention of McKinsey as management consultants to the Debtors and (ii) granting the Debtors such other relief as is just and proper.

Dated: New York, New York
         June 26, 2009

LYONDELL CHEMICAL COMPANY and certain
of its affiliates and subsidiaries

/s/ Gerald A. O'Brien
Gerald A. O'Brien
Vice-President

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                          :
In re:                                    :
                                          :          Chapter 11
                                          :
LYONDELL CHEMICAL COMPANY, et al., :                 Case No. 09-10023
                                          :
                                          :          Jointly Administered
                             Debtors.     :
                                          :
-----------------------------------------------------------x

### AFFIDAVIT OF THOMAS HUNDERTMARK IN SUPPORT OF DEBTORS' APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a) AND 328(a) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014(a) AUTHORIZING EMPLOYMENT AND RETENTION OF McKINSEY & COMPANY, INC. UNITED STATES AS MANAGEMENT CONSULTANTS TO THE DEBTORS

THOMAS HUNDERTMARK declares as follows:

      1.    I am a partner in the professional services firm of McKinsey & Company, Inc. United States ("McKinsey US"), which maintains an office at, among other places, Five Houston Center, 1401 McKinney, Suite 2600, Houston, Texas, and am duly authorized to make this Affidavit on behalf of McKinsey US. I submit this Affidavit in support of the application (the "Application")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order authorizing the employment and retention of McKinsey US as management consultants to the Debtors *nunc pro tunc* to May 11, 2009, for the purpose of providing management consulting services to the Debtors during these

---

[1]   Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Application.

chapter 11 cases. Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.[2]

## QUALIFICATIONS OF McKINSEY US

2.    McKinsey US is a management consulting firm that helps leading corporations and organizations make distinctive, lasting and substantial improvements in their performance. McKinsey US advises companies on strategic, operational, organizational and technological issues. McKinsey US has extensive experience in all major industry sectors and primary functional areas.

3.    McKinsey US's petrochemical practice includes general consultants, dedicated practice consultants and experts with particularly relevant industry experience and academic backgrounds, including experts in petrochemicals and refining. The practices are backed by research experts who provide insight into industry structure and dynamics, and ensure that teams have access to the latest thinking, approaches and analyses on financial, market, operational and organizational matters for the consulting teams.

### Services To Be Rendered

4.    The nature and extent of the services for which the Debtors propose to have McKinsey US retained are more fully set forth in the Consulting Services Agreement, including attachments thereto (the "Consulting Services Agreement"), attached as Exhibit B to the Application, and include, but are not limited to, the following, as requested by the Debtors and agreed to by McKinsey US:

> (a)    Strengthening the 5-year strategic and operational plan, presently being formulated by the Debtors, by identifying potential questions and external challenges regarding the 5-year plan;

---

[2]    Certain of the disclosures herein relate to matters within the knowledge of other professionals at McKinsey US and are based on information provided by them.

    (b)      Providing supporting documentation and communication of the 5-year plan; and

    (c)      Supporting the assessment of competitive strengths and weaknesses and strategic actions.

5.    McKinsey US will endeavor not to duplicate the services performed by the Debtors' financial advisors, investment bankers, accountants, and auditors.

### Disinterestedness of Professionals

6.    None of the partners of McKinsey US and none of the other consultants who will work on this engagement are related or connected to the presiding judge of the United States Bankruptcy Court for the Southern District of New York for this case or the United States Trustee for the Southern District of New York or to any employee in the office thereof.

7.    To the best of my knowledge and information, after reasonable inquiry, except as set forth herein, the partners of McKinsey US and other consultants who will work on this engagement (i) do not have any connection with the Debtors or their affiliates, their creditors, or any other party-in-interest, or their respective attorneys and accountants except as described herein[3] or in connection with consulting services provided to any such party on matters unrelated to these proceedings, (ii) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, and (iii) do not hold or represent any interest adverse to the estate.

8.    Except as set forth herein, McKinsey US (i) does not hold or represent an interest adverse to the Debtors' estates, (ii) is not and has not been a creditor, an equity security holder or an insider of the Debtors, except that McKinsey US has previously rendered services to

---

[3]   In the course of McKinsey US's inquiry of its partners, one partner disclosed that, in 2001, he was employed as a summer associate by the Skadden, Arps, Slate, Meagher & Flom LLP, counsel to the Access Group. McKinsey US submits that such prior employment does not compromise McKinsey US's disinterestedness.

the Debtors for which it has a claim which will be waived upon the Court's approval of McKinsey US's retention in these proceedings, (iii) is not and has not been an investment banker for any outstanding security of the Debtors, (iv) is not and has not been, within three years before the Petition Date, an investment banker for a security of the Debtors, or an attorney for an investment banker in connection with the offer, sale or issuance of any security of the Debtors, (v) is not and has not been, within two years before the Petition Date, a director, officer or employee of the Debtors or of an investment banker of the Debtors, and (vi) does not have an interest materially adverse to the interests of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or an investment banker specified in the foregoing paragraphs.

9.    McKinsey US may in the past have been retained by, may presently be retained by, and may in the future perform services for, entities that are determined to be creditors, lenders, shareholders, insurers, customers, competitors, vendors, contract counterparties, or otherwise parties-in-interest with respect to the Debtors' bankruptcy estates. To the best of McKinsey US's current knowledge, subject to the caveats in this paragraph 9 and in the following paragraphs, all such services are or will be focused on matters other than existing commercial relationships or transactions between such companies and the Debtors, although McKinsey US does from time to time provide overall strategic analysis and advice to companies that operate in the petrochemical or other fields in which the Debtors operate, which analysis and advice could include review and comment on publicly available information and strategic considerations with respect to the Debtors, as well as other companies. Similarly, apart from consulting services provided through McKinsey US, McKinsey US may have business associations with certain of the Debtors' creditors or other parties-in-interest herein, or interests

- 4 -

adverse to such creditors or parties-in-interest herein, which associations to the best of my knowledge and information have no connection with these proceedings.

10.   McKinsey US has a long-standing policy of serving competing companies and does so in a manner that protects the confidentiality of each client's information.  In fact, McKinsey US's expertise which the Debtors desire to utilize for the purposes described herein derives from its broad-based service to clients in many different aspects of the industries and business sectors in which the Debtors operate.  Because of its practice of serving clients with overlapping or competing interests, McKinsey US does not have in place any centralized conflicts identification process.  McKinsey US maintains a central database of clients and engagements performed for those clients, which is kept principally for record keeping purposes and does not contain detailed confidential descriptions of McKinsey US's support.  Therefore, it is difficult if not impossible in the current time frame for McKinsey US to directly ascertain whether any of its over 1000 current clients are parties-in-interest and whether McKinsey US provides or may have been asked to provide services which focus on a direct commercial relationship or transaction with the Debtors.

11.   However, McKinsey US has completed the following process in order to make the representations contained herein:

(a)     McKinsey US has made inquiry to approximately 100 of its partners in its petroleum, chemicals and private equity practices about whether it currently provides consulting services to other entities that focus on any direct commercial relationship or transaction with the Debtors and determined that it is not currently providing any such services.

(b)     Additionally, McKinsey US compared a list of its clients, during the prior three years, that represented greater than 1% of McKinsey US's revenues in any such year, with the Searched Parties.  Three entities appeared on both lists.  Such inquiry revealed:

     (i)     In 2008, McKinsey US provided services to a bank which is a member of the Debtors' senior lending group and such engagement represented approximately 1.5% of McKinsey US's total revenues for 2008; and

     (ii)    McKinsey US provided services to two commercial entities listed by the Debtors as parties in interest. Such entities are not among the Debtors' top 20 largest unsecured creditors and are not on the Official Committee of Unsecured Creditors. McKinsey US's engagement by one such entity represented approximately 1.7% of McKinsey US's total revenues for 2008, approximately 2.2% of McKinsey US's total revenues for 2007 and approximately 2.7% of McKinsey US's total revenues for 2006. McKinsey US's representation of the other such entity represented approximately 1.2% of McKinsey US's total revenues for 2008.

    (c)     McKinsey US then made inquiry to the partners responsible for those clients appearing on both lists as to whether any services McKinsey US provided or is currently providing to these clients focused or focuses on a direct commercial relationship or transaction with the Debtors. None of these engagements specifically related to matters concerning the Debtors or their estates. None of these engagements specifically related to matters concerning the Debtors or their estates.

12.    Additionally, McKinsey US conducted an inquiry among the leading partners in the relevant practices to determine whether there had been any historic projects that focused on a direct commercial relationship or transaction with the Debtors. This inquiry revealed that McKinsey US previously provided services to parties concerning their commercial relations with the Debtors or possible transactions with certain of the Debtors. Those engagements have concluded and McKinsey US will decline any further requests for such services during its engagement by the Debtors.

13.    Finally, McKinsey US requested that partners immediately inform the office of the general counsel if support for any of their clients focused or in the future focuses on a direct commercial relationship or transaction with the Debtors.

- 6 -

14.    McKinsey US has taken steps so that it will be alerted in the event a request to serve clients described above in paragraphs 11 and 12 focuses on a direct commercial relationship or transaction with the Debtors, and, if there is such a request, McKinsey US will decline such engagement.

15.    Accordingly, I believe McKinsey US is a "disinterested person" as that term is defined in Section 101(14), as modified by Section 1107(b) of the Bankruptcy Code.

16.    McKinsey US will, if it believes it appropriate, file supplemental disclosures should additional information come to its attention concerning disclosable matters.

### Potential Future Conflicts/Disclosure

17.    As stated above, McKinsey US may currently serve clients that are included on the list of parties-in-interest provided by the Debtors, or that may be determined in the future to be parties-in-interest in these cases. Because of its responsibility to maintain strict client confidentiality, McKinsey US cannot disclose the services performed, or even in some instances the fact that services were provided for clients. If such additional disclosure is required of McKinsey US as a condition to its retention by the Debtors, McKinsey US may be required to withdraw from the representation of the Debtors. Additionally, it is possible that one or more of such clients may request that McKinsey US engage in services focusing on direct commercial transactions or relationships with the Debtors. Absent a waiver from the Debtors, McKinsey US will decline such engagement.

### Indemnification and Confidentiality, Termination

18.    Pursuant to the Consulting Services Agreement , the Debtors have agreed to indemnify and hold harmless McKinsey US from and against all loss, liability, damage, cost,

and expenses (including reasonable attorney fees and the costs of McKinsey US professional time), relating to or arising out of the Services. The Debtors shall not, however, be liable under the foregoing indemnity agreement to the extent that any such losses resulted primarily from the gross negligence or willful misconduct of McKinsey US in the performance of the services hereunder. The Debtors' obligations under this paragraph shall survive the termination of the Consulting Services Agreement.

19.    The Debtors also have agreed that they remain solely liable for any losses suffered by the Debtors or any such other person relating to or arising out of the service hereunder and further agrees that McKinsey US shall be reimbursed for any expenses relating to the foregoing (including reasonable attorney fees and the costs of McKinsey US professional time), except to the extent that any such losses resulted primarily from the gross negligence or willful misconduct of McKinsey US toward the Debtors in the performance of the services hereunder.

20.    McKinsey US and the Debtors (each a "Party" and collectively, the "Parties") acknowledge and agree that liability for losses other than those defined in section 6 of the Consulting Services Agreement shall be apportioned according to state law. The Parties acknowledge and agree that the obligations hereunder shall be in addition to any rights or remedies that they may have at law or otherwise.

21.    Neither Party will be liable for, and each Party waives and releases any claims against the other Party for any special, incidental, or consequential damages, including, without limitation, lost revenues, lost profit, or loss of prospective economic advantage, resulting from performance or failure to perform under the Consulting Services Agreement.

- 8 -

22.    A full statement of the scope of the Debtors' indemnification obligations is set forth in the Consulting Services Agreement. McKinsey US and the Debtors believe that such provisions are customary and reasonable.

23.    As more fully set forth in the Consulting Services Agreement, McKinsey US has agreed to preserve the confidentiality of Confidential Information provided by the Debtors, and the Debtors have agreed to preserve the confidentiality of and restrict the distribution of work products and deliverables provided to it by McKinsey US. Counsel, accountants and investment bankers for the Debtors may have access to the Confidential Information, work products and deliverables on the same confidential terms as the Debtors. Confidential Information may be shared with counsel and members of any official committee that is appointed in these cases and the DIP Agents and their counsel, provided that such members and professionals have entered into confidentiality agreements acceptable to both the Debtors and McKinsey US.

24.    McKinsey US and the Debtors have agreed as more fully set forth in the Consulting Services Agreement that either party may terminate the Consulting Relationship effective on written notice to the other, following which termination the Debtors shall be liable for all fees and expenses incurred through the effective date of termination.

**Professional Compensation**

25.    Pursuant to the terms and conditions of the engagement letter dated April 29, 2009, and subject to the Court's approval, McKinsey US intends to charge the Debtors a monthly fee of $687,000 to provide a mid-sized management consulting team. In the event that there is an increase in the scope of activities or a need to accelerate the timing of key

deliverables, it may be necessary to change the McKinsey US consulting team from a mid-sized to a large team. The monthly fees for this large team, in the event necessary, will be $843,500.

26.    In accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the Bankruptcy Court for the Southern District of New York, and all applicable orders of this court, McKinsey US intends to apply to the Court for allowance of compensation for professional services rendered. However, McKinsey US seeks approval of the specific payment and billing terms described herein. In this case, McKinsey US will provide time records in summary hourly increments.

27.    Pursuant to the Consulting Services Agreement, the Debtors have agreed to compensate McKinsey US with monthly professional fees which are exclusive of expenses. The Debtors have agreed to pay an additional 15% of the monthly fee to cover all out-of-pocket expenses, including travel, legal services, and other support services. For purposes of this engagement, McKinsey US will provide a brief description of the services provided hereunder on a monthly basis, including a description of those professionals performing such services. McKinsey US also will maintain records of its outside counsel fees.

28.    No agreement exists, nor will any be made, to share any compensation received by McKinsey US for its services with any other person or firm.

29.    I have read the Application, and, to the best of my knowledge, information and belief, the contents of said Application are true and correct.

McKinsey & Company, Inc. (United States),
for itself and its affiliates

_____
Thomas Hundertmark
Partner

Sworn to and subscribed
before me this ⅃7 day
of June, 2009

_____
(Notary Public)

SYLVIA MEEKS
My Commission Expires
September 5, 2009

- 11 -

**EXHIBIT B**

**Execution Version**

## CONSULTING AGREEMENT

McKinsey & Company, Inc. United States ("McKinsey") and Lyondell Chemical Company (the "Client") hereby agree to the following terms in connection with consulting services that McKinsey has agreed to provide relating to its five year strategic plan and assistance as it emerges from bankruptcy (the "Services"). With respect to either party, the term "affiliates" means any entities that directly or indirectly control, are controlled by, or are under the same control as, such party or any other entities affiliated with such party or entities.

1.   SERVICES. The working arrangements, including scope of the Services, Deliverables (as defined below), team composition and workplan, is described in McKinsey's confirming letter and other writings submitted to the Client and as otherwise agreed by the parties regarding the Services, including the letter dated May 15, 2009 from McKinsey to the Client attached hereto as Exhibit A and the letter from McKinsey to the Client dated April 29, 2009 "Revised Proposal: Strengthening the 5-year plan for LyondellBasell attached hereto as Exhibit B (Exhibits A and B collectively, the "Proposal"). In order to be able to complete the Services within the agreed timeframe and budget and to fulfill its responsibilities on a timely basis, McKinsey will rely on the Client's timely cooperation, including the Client's making available relevant data, information and personnel, performing tasks or responsibilities assigned to the Client and notifying McKinsey of any issues or concerns the Client may have relating to the Services. The parties will meet at mutually agreed times to discuss the progress of the Services and to exchange feedback. During the course of the Services, priorities may shift or unexpected events may occur which may necessitate changes to the Services. In this event, the parties will jointly discuss the anticipated impact on the Services and agree on any appropriate adjustments, including to the scope of work, timeframe and budget.

2.   COMPENSATION. The Client shall compensate McKinsey for its professional fees and expenses ("Fees") in connection with the Services as set forth in the Proposal in accordance with the terms in Exhibit A, under which the Client and McKinsey have agreed to the utilization of a "mid-sized team" (as described in Exhibit A), subject to a switch to a "large team" (as described in Exhibit A) as may be agreed to in writing between the Client and McKinsey. McKinsey will invoice the Client for the Fees in connection with the Services monthly (each "Month" defined as 20 business days). For the period from May 11, 2009 to June 5, 2009, there shall be no Fees charged. For the period from June 8, 2009 through July 17, 2009, the total Fees shall be $1,185,075 ($1,030,500 for professional fees plus $154,575 for expenses), to be reflected as two invoices: The first invoice shall be dated on or about June 8 for 50% of the Fees, $592,537.50 ($515,250 for professional fees and $77,287.50 for expenses); the second invoice shall be dated on or about July 17, 2009 for the other 50% of the Fees, $592,537.50. Any subsequent invoices to be issued for extended Services pursuant to the Proposal and Section 7 of this agreement shall be as follows: The parties shall agree on the timing of the payment for extended Services, or in the absence of such agreement, the initial invoice for extended Services shall be issued at the beginning of the Month for 50% of the Monthly Fees and each subsequent invoice shall be issued at the end of the Month for 100% of the Monthly Fees, with the last 50% being invoiced at the end of the last Month; *provided that* in the event the termination date falls within an invoice period, the Monthly Fees shall be prorated up to the termination date. Invoices shall be dated the beginning of the Month for which Fees are charged and delivered to the Client promptly following the invoice date. Should any invoice remain unpaid for more than 30 days after the invoice date, interest will accrue on the outstanding amount at the rate of 1% per Month, calculated from the 31st day after the invoice date until the date of payment.

3.   CONFIDENTIALITY. McKinsey will keep confidential any confidential information furnished by the Client to McKinsey in connection with the Services in accordance with the Confidential Agreement dated May 8, 2009 between McKinsey and LyondellBasell Industries AF S.C.A., as may be amended, supplemented or otherwise modified from time to time (the "Confidentiality Agreement").

4.   USE OF McKINSEY NAME AND DELIVERABLES. McKinsey's work for the Client is confidential and intended for the Client's internal use only. McKinsey does not make public client names, client materials or reports prepared for clients without their prior written permission. Similarly, the Client agrees that it will not use McKinsey's name, refer to McKinsey's work, or make the Deliverables or the existence of this agreement available to any person other than those within its organization, including directors, officers, employees and contractors, as well as advisors and agents who have a need to know such information without McKinsey's prior written permission.

5.  INTELLECTUAL PROPERTY.  Upon payment in full of McKinsey's fees, the Client will own all deliverables furnished by McKinsey to the Client in connection with the Services (the "Deliverables"), save that McKinsey retains ownership of all concepts, analyses, know-how, tools, frameworks, models and industry perspectives used and/or developed by McKinsey in connection with the Services (the "McKinsey Tools"), it being understood that none of the McKinsey Tools will contain the Client's Confidential Information (as defined in the Confidentiality Agreement). To the extent the Deliverables include any McKinsey Tools, McKinsey hereby grants the Client a non-exclusive, non-transferable, non-sublicenseable, worldwide, royalty-free license to use and copy the McKinsey Tools solely as part of the Deliverables and subject to the above limitations on the use of McKinsey name and Deliverables.

6.  INDEMNIFICATION.  The Deliverables are not intended as a substitute for financial, investment, legal, accounting or other professional advice, and McKinsey does not intend to supplant the Client's management or other decision-making bodies.  The Client remains solely responsible for its decisions, actions, use of the Deliverables and compliance with applicable laws, rules and regulations. McKinsey agrees to indemnify and hold the Client harmless from and against all loss, liability, damage, cost, or expense (including reasonable attorney fees) ("Losses") in the performance of the Services to the extent those Losses resulted from the gross negligence or willful misconduct of McKinsey and, if applicable, its affiliates.  The Client agrees to indemnify and hold McKinsey harmless from any Losses (including the costs of McKinsey's professional time) relating to the Services (including any Losses asserted by the Client, its agents or representatives, or third parties and any Losses sustained by McKinsey when participating in any legal, regulatory, or administrative proceeding relating to the Services), except to the extent those Losses resulted from McKinsey's gross negligence or willful misconduct in the performance of the Services.  Neither party will be liable for any lost profits or other indirect, consequential, incidental, punitive or special damages.

7.  TERM AND TERMINATION.  This agreement takes effect on the date the Services commenced and shall be automatically terminated as set forth in Exhibit A unless the Client requests an extension in writing, in which case this agreement shall be automatically terminated upon the end of the extended period. Either party may terminate the Services at any time effective upon written notice to the other. In the event of any termination, the Client will pay McKinsey's fees and expenses up to the effective date of termination.

8.  MISCELLANEOUS.  This agreement and the Proposals constitute the entire agreement between the parties, and there are no prior or contemporaneous oral or written representations, understandings or agreements relating to this subject matter that are not fully expressed herein or therein.  This agreement and the Proposals shall be governed by and construed in accordance with the laws of the State of New York without regard to conflicts of law principles and shall inure to the benefit of and be binding on the successors and assigns of the Client and McKinsey.  The following Sections shall survive the completion or any termination of the Services:  3 (Confidentiality), 4 (Use of McKinsey Name and Deliverables), 5 (Intellectual Property), 6 (Indemnification), 7 (Term and Termination) and 8 (Miscellaneous) and any other provision, which by law or by its nature should survive. Neither party may assign its rights or obligations under this agreement to any person or entity without the written consent of the other party, not to be unreasonably withheld, provided, however, that either party may assign its rights and obligations under this agreement to its affiliates upon reasonable written notice to the other party but without the written consent of the other party. Assignment shall not relieve either party of its obligations hereunder. McKinsey is an independent contractor and not the Client's agent or fiduciary. Any purchase order, invoice or similar document issued by either party shall be for the issuing party's internal purposes only and, notwithstanding any course of dealings of the parties at any time or any statement to the contrary contained therein, no such purchase order, invoice or other similar document shall be construed to modify the terms of this agreement.  Rights and remedies provided in this agreement are cumulative and not exclusive of any right or remedy provided at law or in equity.

This agreement and the retention of McKinsey is subject to Bankruptcy Court approval.

2

Lyondell Chemical Company

Edward J. Dineen
President and Chief Executive Officer
Date:

EKC

McKinsey & Company, Inc. United States

Name: Thomas Hundertmark
Title: Principal
Date: June 15, 2009

3

**EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                        :
In re:                                  :
                                        :      **Chapter 11**
                                        :
**LYONDELL CHEMICAL COMPANY, et al.,**  :      **Case No. 09-10023**
                                        :
                                        :      **Jointly Administered**
                **Debtors.**            :
                                        :
-----------------------------------------------------------x

## ORDER PURSUANT TO SECTIONS 327(a) AND 1107(b) OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014(a) AUTHORIZING THE EMPLOYMENT AND RETENTION OF McKINSEY & COMPANY, INC. UNITED STATES AS MANAGEMENT CONSULTANTS TO THE DEBTORS

Upon the Application (the "Application") of Lyondell Chemical Company and certain of its subsidiaries and affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors" and each, a "Debtor"), for an order pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code") and rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving the employment and retention of McKinsey & Company, Inc. United States ("McKinsey US") as management consultants to the Debtors; and upon the affidavit of Thomas Hundertmark, sworn to on June 17, 2009 (the "Hundertmark Affidavit"), filed in support of the Application, and the Court being satisfied, based on the representations made in the Application and the Hundertmark Affidavit, that McKinsey US represents no interest adverse to the Debtors or the Debtors' estates with respect to the matters upon which it is to be engaged, under section 327(a) of the Bankruptcy Code as modified by section 1107(b); and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157

and 1334; and consideration of the Application and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been

provided; and it appearing that no other or further notice of the Application need be provided;

and the Court having determined that the relief sought in the Application is in the best interests

of the Debtors, their estates and all parties in interest; and upon all of the proceedings had before

the Court; and after due deliberation and sufficient cause appearing therefor; it is

      **ORDERED** that the Application is granted as set forth herein; and it is further

      **ORDERED** that, in accordance with section 327(a) and 328(a) of the Bankruptcy

Code, the Debtors are authorized to employ and retain McKinsey US as management

consultants, on the terms set forth in the Hundertmark Affidavit and the Application, for the

matters identified in the Application and in accordance with the fee arrangement between the

Debtors and McKinsey US; and it is further

      **ORDERED** that McKinsey US shall be compensated in accordance with the

procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the

Local Rules and the Court's "Order Granting Motion Establishing Procedures for Interim

Compensation and Reimbursements of Expenses for Professionals and Committee Members"

signed on January 23, 2009 [Docket No. 363]; and it is further

      **ORDERED** that, notwithstanding anything contrary to the terms set forth above,

the United States Trustee retains all rights to object to McKinsey US's interim and final fee

applications (including expense reimbursement) on all grounds including but not limited to the

reasonableness standard set forth in section 330 of the Bankruptcy Code; and it is further

**ORDERED** that all requests of McKinsey US for payment of indemnity pursuant to the Consulting Services Agreement Engagement Letters shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Consulting Services Agreement and Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall McKinsey US be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct; and it is further

**ORDERED** that in no event shall McKinsey US be indemnified if the Debtor or a representative of the estate, asserts a claim for, and a court determines by final order that such claim arose out of, McKinsey US's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

**ORDERED** that in the event that McKinsey US seeks reimbursement for attorneys' fees from the Debtors pursuant to the Consulting Services Agreement and Engagement Letter, the invoices and supporting time records from such attorneys shall be included in McKinsey US's own applications (both interim and final) and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of this Court under the standards of §§ 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under § 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and it is further

**ORDERED** that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.  To the extent this Order is inconsistent with the

- 3 -

Consulting Services Agreement, the engagement letter or the Application, this Order shall govern;

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: New York, New York
_____ _____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

- 4 -