Deryck A. Palmer, Esq.
John J. Rapisardi, Esq.
George A. Davis, Esq.
Andrew M. Troop, Esq.
Christopher R. Mirick, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666

and

David F. Williams, Esq. (admitted pro hac vice)
Jonathan R. Stone, Esq.
Douglas H. Fischer, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                        :
In re:                                  :        Chapter 11
                                        :
LYONDELL CHEMICAL COMPANY, et al.,      :        Case No. 09-10023 (REG)
                                        :
                        Debtors.        :        Jointly Administered
                                        :
------------------------------------------------------------x
```

### MEMORANDUM IN SUPPORT OF DEBTORS' OBJECTIONS PURSUANT TO SECTION 502(E)(1)(B) OF THE BANKRUPTCY CODE TO CERTAIN CREDITORS' PROOFS OF CLAIM

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

JURISDICTION ............................................................................................................. 2

PRELIMINARY STATEMENT ..................................................................................... 2

BACKGROUND ............................................................................................................. 3

ARGUMENT .................................................................................................................. 7

    I.     The Claims Should Be Disallowed Under Section 502(e)(1)(B) ......................... 7

         A.     Element No. 1 – Claim For Reimbursement Or Contribution: ................. 9

             (1)    CERCLA Reimbursement or Contribution ................................... 9

             (2)    Reimbursement or Contribution Under Other Environmental Laws ....................................................................... 11

             (3)    Contractual Indemnification ....................................................... 12

         B.     Element No. 2 – Claimant Is Liable With The Debtor On The Primary Claim: .......................................................................................... 13

         C.     Element No. 3 – Claim Is Contingent: ................................................... 15

    II.    Objections To Specific Claims Based On Section 502(e)(1)(B) ........................ 16

         A.     CERCLA Orders: .................................................................................. 17

         B.     PRP Groups Co-Liable to Government: ................................................. 17

         C.     Individual Claimants Co-Liable to PRP Groups, and Contractual Indemnification: ...................................................................................... 18

CONCLUSION .............................................................................................................. 20

**Cases**

Aetna Cas. and Sur. Co. v. Ga. Tubing Corp. (In re Georgia Tubing Corp.), No. 93-3659, 1995 WL 429018 (S.D.N.Y. July 20, 1995), aff'd, 93 F.3d 56 (2d Cir. 1996)................... 7, 9

Al Tech Specialty Steel Corp. v. Allegheny Int'l, Inc. (In re Allegheny Int'l, Inc.), 126 B.R. 919 (W.D. Pa.), aff'd, 950 F.2d 721 (3d Cir. 1991) ...................................................... 11

Cooper Industries, Inc. v. Avial Servs., 543 U.S. 157 (2004) ...................................................... 10

Fine Organics Corp. v. Hexcel Corp. (In re Hexcel Corp.), 174 B.R. 807 (Bankr. N.D. Cal. 1994)................................................................................................................................ 11, 13

Highland Holdings and Zito I, L.P. v. Century/ML Cable Venture, 06-181, 2007 WL 2405689 (S.D.N.Y. Aug. 24, 2007)........................................................................................ 16

In re Alper Holdings, USA, No. 07-12148, 2008 WL 4186333 (Bankr. S.D.N.Y. Sept. 10, 2008) ...........................................................................................................................9, 12, 16

In re APCO Liquidating Trust, 370 B.R. 625 (Bankr. D. Del. 2007) ................................... 10, 15

In re Baldwin-United Corp., 55 B.R. 885 (Bankr. S.D. Ohio 1985)........................................... 16

In re Cottonwood Canyon Land Co., 146 B.R. 992 (D. Colo. 1992).................................... 10, 11

In re Drexel Burnham Lambert Group, Inc. ("Drexel II"), 148 B.R. 982, 985 (Bankr. S.D.N.Y. 1992)........................................................................................................9, 12, 16

In re Eagle-Picher Indus., Inc., 164 B.R. 265 (S.D. Ohio 1994)............................................. 9, 10

In re Eagle-Picher Indus., Inc., 197 B.R. 260 (Bankr. S.D. Ohio 1996) ..................................... 10

In re GCO Servs., LLC, 324 B.R. 459 (Bankr. S.D.N.Y. 2005)..............................8, 9, 12, 15, 16

In re Pacor, Inc., 110 B.R. 686 (E.D. Pa. 1990).......................................................................... 15

In re Pettibone Corp., 162 B.R. 791 (Bankr. N.D. Ill. 1994)....................................................... 15

In re Regal Cinemas, Inc., 393 F.3d 647 (6th Cir. 2004) ............................................................ 15

In re Wedtech Corp., 85 B.R. 285 (Bankr. S.D.N.Y. 1988) ...............................................8, 12, 15

Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.), 126 B.R. 656 (D. Mass. 1991); aff'd in part, rev'd in part, Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.), 993 F.2d 915, 923 (1st Cir. 1993)............................................................. 13

Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.), 993 F.2d 915 (1st Cir. 1993) ................................................................................................................. 8, 13

Mazzeo v. United States (In re Mazzeo), 131 F.3d 295 (2d Cir. 1997) ...................................... 16

New York v. Shore Realty Corp., 759 F.2d 1032, 1040 (2d Cir. 1985)........................................ 4

Norpak v. Eagle-Pitcher Ind., Inc. (In re Eagle-Picher Indus., Inc.), 131 F.3d 1185 (6th Cir. 1997) ................................................................................................................... 13, 14

Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp., 266 B.R. 575 (S.D.N.Y. 2001)...................... 15

Syntex Corp. v. Charter Co. et al. (In re Charter Co.), 862 F.2d 1500 (11th Cir. 1989)............ 8, 9

United States v. Atlantic Research, 551 U.S. 128 (2007)........................................................... 10

**Statutes**

11 U.S.C. § 502(e)(1)(B) ...................................................................3, 7, 8, 12, 13, 15, 17, 18, 19

42 U.S.C. § 9604 ......................................................................................................................... 5

42 U.S.C. § 9606 ...................................................................................................................... 4, 5

42 U.S.C. § 9607 ................................................................................................................... 4, 5, 9

42 U.S.C. § 9607(a) ..................................................................................................................... 4

42 U.S.C. § 9613(f) ............................................................................................................... 4, 5, 9

42 U.S.C. § 9613(f)(1).................................................................................................................. 6

42 U.S.C. § 9613(f)(3)(B)............................................................................................................. 6

42 U.S.C. § 9622 ......................................................................................................................... 5

42 U.S.C. § 9622(e)...................................................................................................................... 6

**Other Authorities**

H.R. Rep. 1016, 96th Cong., 2nd Sess., pt. 1, at 22, reprinted in 1980 U.S.Code Cong. & Admin. News 6119, 6125 ..................................................................................................... 4

## INTRODUCTION

Lyondell Chemical Company, Lyondell-Equistar Holdings Partners, Equistar Chemicals, LP, Millennium America Inc., Millennium America Holdings Inc., Millennium Chemicals Inc., Millennium Holdings, LLC, Millennium Petrochemicals Inc., Millennium Specialty Chemicals Inc., Millennium Worldwide Holdings I Inc., MHC Inc., and PH Burbank Holdings, Inc., and their affiliated debtors and debtors in possession (collectively, the "Debtors") file this Memorandum in support of their Section 502(e)(1)(B) Objections to the Claims filed by numerous private claimants asserting unsecured Claims for future contingent environmental remediation expenses (collectively, the "Contribution Claims"), which unsecured Claims are also asserted in the Claims filed by federal and state environmental agencies in these proceedings. The Contribution Claims are effectively duplicative of the proofs of claim filed by the federal and state agencies, and pursuant to the Bankruptcy Code must be disallowed, as set forth below.

By this Memorandum and the accompanying Claim Objections, the Debtors seek to disallow all or portions of 76 Claims asserting entitlement to an estimated $1.1 billion in total dollar amount.

The Claims that are the subject of this Memorandum are listed in Schedule 1. Attached as the Appendix to this Memorandum are Claim-specific discussions of the reasons that such Claims must be disallowed. This Memorandum addresses the legal basis for the disallowance of each Claim, which legal basis is common for all Claims.

Each of the Claims subject to this objection was filed by the bar date applicable to a particular debtors. The bar date for filing proofs of claim for non-governmental entities was June 30, 2009 (and July 30, 2009, for claims under section 501(b) of the Bankruptcy Code by guarantors, sureties, indorsers and co-debtors), and the bar date for applicable governmental Claims was July 6, 2009. See Docket No. 1741.

This Memorandum is accompanied and supported by the attached Affidavit of Deborah Kryak ("Kryak Aff.") [Ex.1], the Debtors' Director of Retained Liabilities and Remediation and the executive in charge of the Debtors' environmental compliance and programs.

In support of this Memorandum, the Debtors state as follows:

## JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PRELIMINARY STATEMENT

By the Objections, the Debtors seek orders disallowing numerous private party Claims for the same future environmental remediation costs sought by the Claims of the United States Environmental Protection Agency ("EPA") and certain state environmental agencies. These Claims must be disallowed under section 502(e)(1)(B) of the Bankruptcy Code because they meet the three criteria for disallowance under that statute: (1) they are claims for reimbursement or contribution, (2) the private party creditor is co-liable with one or more of the Debtors to a federal or state environmental agency (or in some cases to another non-governmental creditor), and (3) the creditor's claim is contingent. Disallowance of the Contribution Claims is essential for two reasons. First, the limited assets of the bankruptcy estates in these proceedings must not be exhausted by double-dipping payments to both environmental agencies and to private claimants. Second, expeditious resolution of this issue should facilitate timely approval of a plan of reorganization. The Debtors believe that resolution of these section 502(e)(1)(B) objections in accordance with the relief requested will fully or partially dispose of 76 Claims valued at over $1 billion, which would be extremely valuable in structuring a plan of reorganization and obtaining approval of the plan.

# BACKGROUND

The Debtors are one of the world's largest petrochemical manufacturing enterprises. The operations of the Debtors, their affiliates and their predecessors in the United States are far-flung, diversified, and date back decades. An inevitable consequence of this structure and history is that numerous Claims have been filed by governmental and private creditors in the Debtors' jointly administered bankruptcy proceedings, asserting liabilities for environmental cleanups, many pursuant to the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA," the "Superfund Law"), 42 U.S.C. §§ 9601 et seq. or related or similar state laws. Approximately 250 Claims asserting claims for environmental liability have been filed. Although many of the Claims are contingent and do not state liquidated costs or estimated future costs, the total dollar amount of alleged environmental liability that is specifically alleged in the environmental Claims is approximately $7 billion. Kryak Aff. ¶ 6. Some of these Claims are duplicative or otherwise may be disallowed on grounds not stated in this Memorandum.[1] This Memorandum is directed at contingent environmental Claims asserted by parties that are co-liable with a Debtor on debts allegedly owed to another primary creditor (in most cases government agencies) and that must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code. Based on the Contribution Claims themselves or on the Debtors' estimates of the value of the Claims at issue that do not assert a dollar amount, the Debtors seek disallowance of Contribution Claims that amount to approximately $1.1 billion. Kryak Aff. ¶ 7.

---

[1] By filing these Objections and this Memorandum, Debtors do not waive, and hereby expressly preserve, their rights to supplement or amend the Objections, or to file further objections, to assert other grounds for objecting to the Claims that are the subject of these Objections, including but not limited to the grounds that the Claim was filed against a Debtor entity that is not liable to claimant. Further, Debtors do not waive the right to file objections to other claims on any grounds.

A significant portion of the Debtors' environmental liability exposure arises under the federal CERCLA or related or similar state laws. CERCLA imposes liability for environmental cleanup costs, natural resource damages and certain other categories of recovery on four types of potentially responsible parties ("PRPs"): (a) the current "owner or operator" of a site contaminated with hazardous substances (present owner/operator liability), (b) any person who previously owned or operated a contaminated site (past owner/operator liability), (c) any person who arranged for disposal of any hazardous substances at a contaminated site (generator liability), and (d) any person who transported any hazardous substances to a contaminated site (transporter liability). See CERCLA § 107(a), 42 U.S.C. § 9607(a). PRPs can be liable to federal or state governmental entities, as well as to private parties for cost recovery and contribution claims. Id. §§ 9607(a) , 9613(f).

Congress enacted CERCLA to address the consequences of uncontrolled and unregulated historic hazardous waste disposal practices. Consequently, the statute creates a cleanup and liability regime for historic conduct dating back decades or even longer. See, e.g., New York v. Shore Realty Corp., 759 F.2d 1032, 1040 (2d Cir. 1985) (CERCLA applies "primarily to the cleanup of leaking inactive or abandoned sites and to emergency responses to spills.") (internal quotation omitted); H.R. Rep. 1016, 96th Cong., 2nd Sess., pt. 1, at 22, reprinted in 1980 U.S. Code Cong. & Admin. News 6119, 6125 (Legislative history indicating that the purpose of CERCLA was to "initiate and establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites.")

CERCLA provides the federal government with both monetary remedies (cleanup cost reimbursement and natural resource damages) under section 107, 42 U.S.C. § 9607, and injunctive relief remedies under section 106, 42 U.S.C. § 9606. The United States

Environmental Protection Agency ("EPA") is the federal agency empowered to seek cost reimbursement and injunctive relief, while various other federal agencies such as the Department of the Interior can pursue natural resource damages. EPA can pursue its cost reimbursement and injunctive relief remedies in the alternative, or in conjunction with each other. More specifically, CERCLA provides three avenues for EPA to act. EPA can issue an administrative order directing a PRP or group of PRPs to take appropriate actions; EPA can request the Department of Justice to institute a civil action to obtain a judicial order against the PRP(s); and EPA can arrange to take cleanup actions itself, drawing on monies from the federal Superfund, and can sue the liable PRP or PRPs for reimbursement of its cleanup costs. CERCLA §§ 104, 106, 107, 42 U.S.C. §§ 9604, 9606, 9607. CERCLA also permits private parties (both PRPs and so-called "innocent" parties) to voluntarily take cleanup actions. CERCLA §§ 106(a), 104(a)(1), 42 U.S.C. §§ 9606(a) , 9604(a)(1) , 9606.[2]

CERCLA, and EPA implementing regulations and policies, contain extensive mechanisms designed to encourage PRPs to settle their liability through judicial consent decrees, administrative settlements issued by EPA and similar mechanisms. See generally, CERCLA § 122, 42 U.S.C. § 9622; Interim CERCLA Settlement Policy (Dec. 5, 1984). CERCLA expressly authorizes parties that have settled their liability to the government to sue other parties for contribution, and provides such settling parties with contribution protection. Id. § 9613(f) .

PRPs that fund response actions can seek CERCLA section 113(f) contribution from other PRPs "during or following any civil action" that had been instituted under CERCLA

---

[2] A complex process is followed to investigate physical conditions at a contaminated site, characterize the risks to humans, and develop and implement a cleanup plan. A civil action for recovery of removal costs can be commenced "after completion of the removal action" and for remedial costs "after initiation of physical on-site construction of the remedial action . . . ." Id. at § 113(g)(2); 42 U.S.C. § 9613(g)(2).

sections 106 or 107 (see CERCLA § 113(f)(1)), as well as PRPs that settle their liability to EPA or a state in an administrative or judicially approved settlement (see CERCLA § 113(f)(3)(B)). 42 U.S.C. §§ 9613(f)(1), 9613(f)(3)(B).

Following site discovery, EPA initiates a preliminary search for PRPs. For the short term, EPA may order PRPs to conduct a removal action. EPA may send General Notice Letters to PRPs notifying them of their status as PRPs, the status of site investigations, and as appropriate requesting information about the site. See USEPA, Memorandum on Transmittal of Notice Letter Guidance (Oct. 19, 1987) and attached Interim Guidance on Notice Letters, Negotiations, and Information Exchange. Pursuant to CERCLA section 122(e), 42 U.S.C. § 9622(e), EPA may also distribute Special Notice Letters to PRPs to facilitate settlement negotiations with PRPs by providing to them factual information to assess the extent of their and other PRPs' liabilities and to impose an enforcement moratorium.

When EPA identifies multiple PRPs, the practical effect is often that most but not necessarily all of the PRPs form "PRP Groups" to negotiate with EPA for the form and cost of a remedial action and to enter an administrative settlement. PRP Groups may assess their members over time for costs incurred and paid out either to private contractors that are performing the remediation, or to EPA. PRPs that do not join such groups will have conflicting interests and may eventually be sued by the PRP Groups for cost reimbursement and contribution. Kryak Aff. ¶ 8.

The Debtors over the years have been active settling members at scores of CERCLA sites around the United States. Id. ¶ 9. However, as a result of their petitions for bankruptcy, the Debtors have stopped paying into and otherwise participating in PRP Groups for sites that they do not own or lease. Id. As a consequence, PRPs and PRP Groups have filed CERCLA cost reimbursement and contribution Claims against the Debtors for the same cleanup liability for

which EPA and state environmental agencies have filed Claims. Exhibit 2 hereto lists, alphabetically by site name, all contingent co-liable ("secondary") Claims which the Debtors seek partial or complete disallowance of pursuant to section 502(e)(1)(B). Exhibit 3 references the secondary claims to the corresponding primary Claims of governmental environmental agencies or in some instances other private creditors. [Ex.2; Ex.3]

The Debtors currently are actively negotiating with the United States government in an effort to settle all environmental Claims asserted on behalf of EPA. The Debtors' current intention is to attempt to resolve — either consensually or through claims objection and estimation proceedings before this Court — the EPA's Claim in advance of confirmation of the plan of reorganization. The Debtors believe that it is important to resolve both the EPA's Claim and the section 502(e)(1)(B) issue relating to the 75 Contribution Claims in the near term, in order to avoid potential delays in confirming or consummating the plan.

## ARGUMENT

### I.     The Claims Should Be Disallowed Under Section 502(e)(1)(B)

Section 502(e)(1)(B) of the Bankruptcy Code provides:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor to the extent that –
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution . . . .

11 U.S.C. § 502(e)(1)(B). Congress enacted this provision for two principal reasons. Aetna Cas. and Sur. Co. v. Ga. Tubing Corp. (In re Georgia Tubing Corp.), No. 93-3659, 1995 WL 429018 (S.D.N.Y. July 20, 1995), aff'd, 93 F.3d 56 (2d Cir. 1996). First, Congress sought to prevent competition between a primary and a secondary creditor for the "limited proceeds in the estate." In re Wedtech Corp., 85 B.R. 285, 289 n.4 (Bankr. S.D.N.Y. 1988) (quoting H.R. Rep. No. 95-

595, 95th Cong., 1st Sess. 354 (1977)).  Second, Congress sought "to prevent contingent, unresolved indemnification or contribution claims from delaying the consummation of a plan of reorganization or a final distribution in a liquidating case."  In re GCO Servs., LLC, 324 B.R. 459, 466-67 (Bankr. S.D.N.Y. 2005); accord Syntex Corp. v. Charter Co. et al. (In re Charter Co.), 862 F.2d 1500, 1502 (11th Cir. 1989) ("debtor should be expeditiously rehabilitated and reorganized").  Without these protections, debtors such as the Debtors in these cases would not be able to conserve the assets required to reorganize and would not be able to emerge expeditiously from bankruptcy protection, without having to create massive reserves for contingent claims that may take years to resolve in litigation.  This problem is especially acute in multi-party environmental disputes where private claimants assert claims for the same cleanup liabilities that governmental agencies assert, and where layer upon layer of contingency is created by uncertainties of what cleanup remedies will be required of whom and to what extent and on what timetable, and for how long.

Courts have recognized that another benefit of section 502(e)(1)(B) is that the threat of disallowing contingent private claims for environmental remediation costs furthers the purposes of CERCLA by providing an incentive for parties to conduct prompt cleanups.  A private claimant has an incentive to incur cleanup expenses (thus removing the "contingent" feature of its claim) and thereby avoid disallowance of its claim before the bankruptcy proceedings progress to the allowance / disallowance stage.  See Charter, 862 F.2d at 1503; see also Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.), 993 F.2d 915, 927 (1st Cir. 1993) (section 502(e)(1)(B) threat of disallowance encourages "targeted PRPs to initiate cleanup efforts as expeditiously as practicable in the expectation that their contingent claims may become 'fixed' in time for allowance against the debtor estate").

Courts have applied a three-part test to determine disallowance under section 502(e)(1)(B): (1) "the claim must be for reimbursement or contribution;" (2) "the party asserting the claim must be 'liable with the debtor' on the claim;" and (3) "the claim must be contingent at the time of its allowance or disallowance." In re Alper Holdings, USA, No. 07-12148, 2008 WL 4186333, at *5 (Bankr. S.D.N.Y. Sept. 10, 2008) (quoting GCO Servs., 324 B.R. at 465 and In re Drexel Burnham Lambert Group, Inc. ("Drexel II"), 148 B.R. 982, 985 (Bankr. S.D.N.Y. 1992)). The Debtors address each of these three elements in greater detail below.

**A.      Element No. 1 – Claim For Reimbursement Or Contribution:**

"Reimbursement or contribution" is a broad term intended to sweep in any contingently duplicative claim that would result in double payment by the bankruptcy estate if the claim is not disallowed. See Aetna Cas. and Sur. Co. v. Ga. Tubing Corp. (In re Georgia Tubing Corp.), No. 93-3659, 1995 WL 429018, at *3 (S.D.N.Y. July 20, 1995), aff'd, 93 F.3d 56 (2d Cir. 1996). ("Regardless of what Aetna chooses to call its claim, Aetna's claim clearly falls within the ambit of § 502(e)(1)(B).").

**(1)      CERCLA Reimbursement or Contribution**

CERCLA claims for statutory cost reimbursement or contribution brought by PRPs that are or were themselves subject to CERCLA civil actions for remediation cost recovery, or that have entered judicial or administrative settlements either for cost recovery or agreeing to perform response actions, meet the reimbursement or contribution element of section 502(e)(1)(B). This is the case irrespective of whether those claims are styled as "cost recovery" claims under CERCLA or "contribution" claims under CERCLA section 113. 42 U.S.C. §§ 9607, 9613 . See, e.g., Syntex Corp. v. Charter Co. et al. (In re Charter Co.), 862 F.2d 1500, 1503 (11th Cir. 1989) (claimants in ongoing civil actions); In re Eagle-Picher Indus., Inc., 164 B.R. 265 (S.D. Ohio 1994) (claimants that had entered EPA consent decree and other claimants that had entered EPA

administrative order had CERCLA section 113 contribution claims that satisfied the reimbursement or contribution element of section 502(e)(1)(B)); In re Eagle-Picher Indus., Inc., 197 B.R. 260, 274-75 (Bankr. S.D. Ohio 1996) (PRP claims for contingent costs that might arise in complying with Cherokee Sites consent decree are in essence contribution claims despite assertion of CERCLA section 107 basis and are disallowed). Claims for future cost recovery for claimants' liabilities under consent decrees cannot be styled as CERCLA section 107 claims in order to avoid identifying them as contribution claims subject to disallowance under section 502(e)(1)(B). Id.; cf. In re APCO Liquidating Trust, 370 B.R. 625 (Bankr. D. Del. 2007) (claim for payment on judgment that had been entered on CERCLA section 113 contribution action meets "contribution" element for section 502(e)(1)(B), despite recent Supreme Court ruling barring section 113 actions by PRPs that had not themselves been sued by EPA).[3]

---

[3]  Although not directly implicated in these section 502(e)(1)(B) claims objections, the Court should be aware of developments at the Supreme Court level concerning differences between CERCLA section 107 actions for cost recovery and CERCLA section 113(f)(1) contribution actions for cost recovery. See United States v. Atlantic Research, 551 U.S. 128, 132 (2007); Cooper Industries, Inc. v. Avial Servs., 543 U.S. 157, 161 (2004). Combined, these rulings provide that a CERCLA PRP that has remediated a site and has not itself been subject to a civil action for CERCLA cost recovery (i.e., a "voluntary" cleanup by a PRP to avoid anticipated government or private civil action) cannot bring a CERCLA section 113(f)(1) contribution action against another PRP, but can bring a CERCLA section 107 action against another PRP for cost recovery. This distinction is important outside of the context of section 502(e)(1)(B) of the Bankruptcy Code because, inter alia, different statutory statutes of limitations apply to actions under the two different sections, and CERCLA section 113 actions involve potential apportionment of liabilities while section 107 actions are for strict, joint and several liability. However, the distinctions between section 107 and section 113 claims should be meaningless in the context of section 502(e)(1)(B) where duplicate claims by EPA and a PRP exist for remediating the same site. See In re Cottonwood Canyon Land Co., 146 B.R. 992, 996 (D. Colo. 1992). The claim at issue for section 502(e)(1)(B) in Cottonwood was asserted as a § 107 direct claim, and the claimant argued that it was not a claim for contribution. Nevertheless, the court ruled that the claim met the "reimbursement or contribution" element because the claim essentially was "to recover costs incurred by reason of [the claimant's] liability for cleanup as the 'owner' of the site, which is the same liability [the debtor] has for cleanup as the party which deposited the hazardous substances . . . ." Id. Cottonwood's reasoning comports with the purposes of section 502(e)(1)(B), since regardless of whether contribution is involved, even a voluntary cleanup is performed only because the PRP is convinced of its liability and is seeking reimbursement from the debtor. The Cottonwood court, as well as one of the Eagle Picher courts, In re Eagle-Picher Indus., Inc., 164 B.R. 265, 271 (S.D. Ohio 1994) , criticized as erroneous and opposite result in Al Tech Specialty Steel Corp. v. Allegheny Int'l, Inc. (In re Allegheny Int'l, Inc.), 126 B.R. 919 (W.D. Pa.), aff'd, 950 F.2d 721 (3d Cir.

## (2) Reimbursement or Contribution Under Other Environmental Laws

The first element for section 502(e)(1)(B) is met not just in the CERCLA context as discussed above, but in any situation in which contingent liabilities under any federal or state environmental laws expose the debtor's estate to duplicative claims.  See Fine Organics Corp. v. Hexcel Corp. (In re Hexcel Corp.), 174 B.R. 807 (Bankr. N.D. Cal. 1994) (applying section 502(e)(1)(B) to environmental claims arising under New Jersey law).  In Hexcel, Fine Organics purchased contaminated property in New Jersey from the future debtor, Hexcel.  New Jersey law requires that before contaminated property is transferred the seller must either remediate it or enter a binding agreement with the state to ensure that it will be remediated. Hexcel therefore entered into an Administrative Consent Order  ("ACO") with the State of New Jersey acknowledging its obligation to fund remediation of the property.  Fine Organics did not join in the ACO, but the asset purchase agreement between Hexcel and Fine Organics required Hexcel to perform on the ACO.  During Hexcel's bankruptcy proceedings, Fine Organics alleged that Hexcel had failed to perform its remediation obligations and sought damages.  The court agreed that no contribution claim existed because Fine Organics was not jointly liable with Hexcel for remediation under the ACO.  Nevertheless, the court held that Fine Organics' claim was for reimbursement because Fine Organics might at some future time be required to fund the

---

1991) (unpublished table decision).  Allegheny had ruled that a claim for voluntary response costs under CERCLA section 107 for costs to be incurred by claimant Al Tech would be based on direct liability, not contribution per CERCLA section 113, and therefore denied a section 502(e)(1)(B) objection based on a lack of co-liability.  The Allegheny debtor had argued the possibility that Al Tech might never be required to expend any funds if EPA were subsequently to order the debtor to perform the remediation.  The court reasoned that double liability could be avoided by paying Al Tech's claim into a remediation trust.  The Cottonwood court stated that Allegheny's error was belied by the very need for a trust, which despite the fact that it was based on CERCLA section 107 established that "the clear character of the claim" was that "debtor was not being asked to satisfy a [direct] claim for injury to the claimant's property" but rather that both debtor and the claimant shared the same contingent liability to EPA.  Cottonwood, 146 BR at 996.

remediation as the current property owner re-selling to yet another buyer, and disallowed the contingent part of Fine Organic's claim pursuant to section 502(e)(1)(B).

The Aetna case (supra, page 8) is instructive in this regard. Aetna was surety for hazardous waste storage bonds for the future debtor, Georgia Tubing, in favor of the State of Georgia. During the bankruptcy, Aetna filed a protective proof of claim on behalf of the State. In an attempt to side-step section 502(e)(1)(B), Aetna also filed its own proof of claim on the basis that Aetna would be subrogated to the State. The court noted that Aetna's assertion of subrogation was a "creative" attempt to avoid the undeniable fact that Aetna was contingently liable to the State for the same obligation as was Georgia Tubing and that Aetna was in reality seeking reimbursement for a possible payment that it anticipated making to the State. Aetna, 1995 WL 429018 at *3 (affirming disallowance).

### (3) Contractual Indemnification

A number of the private Claims assert that they are based on contractual indemnification rights against the Debtors for environmental liabilities such as CERCLA response costs. Indemnification claims arising from agreements in contracts constitute claims for reimbursement or contribution within the meaning of section 502(e)(1)(B) . See In re Alper Holdings, USA, No. 07-12148, 2008 WL 4186333, at *5 (Bankr. S.D.N.Y. Sept. 10, 2008); see also In re Wedtech Corp., 85 B.R. 285, 289 (Bankr. S.D.N.Y. 1988); In re GCO Servs., LLC, 324 B.R. 459, 465 (Bankr. S.D.N.Y. 2005) ("Because 'the concept of reimbursement includes indemnity,' any claims for indemnification also fall within the scope of the first prong of 502(e)(1)(B)"); In re Drexel Burnham Lambert Group, Inc. ("Drexel II"), 148 B.R. 982, 985 (Bankr. S.D.N.Y. 1992) (section 502(e)(1)(B) "applies to claims other than contractual claims, and clearly applies to contractual claims for indemnification").

**B.  Element No. 2 – Claimant Is Liable With The Debtor On The Primary Claim:**

Co-liability for purposes of section 502(e)(1)(B) exists if by paying the primary creditor, the debtor would be eliminating a contingent requirement for the secondary claimant to make the same payment.  This is a broad principle and does not require that the secondary claimant and the debtor are both subject to a common civil proceeding or agency enforcement action.  See Fine Organics Corp. v. Hexcel Corp. (In re Hexcel Corp.), 174 B.R. 807 (Bankr. N.D. Cal. 1994), discussed supra at pages 13-14; see also Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.), 126 B.R. 656 (D. Mass. 1991) (aff'd in part, rev'd in part, Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.), 993 F.2d 915, 923 (1st Cir. 1993)); Norpak v. Eagle-Pitcher Ind., Inc. (In re Eagle-Picher Indus., Inc.), 131 F.3d 1185 (6th Cir. 1997).  In Hexcel, the court held that the co-liability element of section 502(e)(1)(B) existed because at some future date Fine Organics might re-sell the property and therefore itself become subject to the State of New Jersey's requirement for remediation upon a property transfer.  The court stated:

> While Fine Organics' liability is subject to a few more contingencies than a typical guarantor's claim, the purpose of the statute is equally served by disallowance of Fine Organics' claims. If Fine Organics' claim were allowed to stand, it would compete with and duplicate the claim of the NJDEPE.  Both claims are directed to the same need to remediate the Real Property.

Hexcel, 174 B.R. at 812 (emphasis added).

It is not necessary for the debtor to be party to the administrative or civil remediation order that is the basis for the claimant's co-liability.  See Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.), 993 F.2d 915, 925-28 (1st Cir. 1993).  In Hemingway, the claimant had been issued an EPA administrative order to perform a CERCLA removal action, while the debtor had only received a pre-petition PRP notice letter notifying it of its potential liability.  EPA did not file a claim for CERCLA liability in the bankruptcy proceedings, opting to first

proceed against the claimant. Nevertheless, the Court of Appeals ruled that the debtor and

claimant would be co-liable on a debt to EPA if a surrogate claim were to be filed on behalf of

EPA in order to ensure a single — but not double — payment from the debtor's estate. See id. at

925-28 (remanding for opportunity to file surrogate claim).

Co-liability can be based on two entirely different grounds for liability, as long as the

underlying debt is the same. See Norpak v. Eagle-Pitcher Ind., Inc. (In re Eagle-Picher Indus.,

Inc.), 131 F.3d 1185, 1190 (6th Cir. 1997). The claimant in Norpak believed that at some future

time contamination at a property that it had purchased decades before from the debtor would

cause problems, and that was the basis for filing its claim. The court stated:

> Whether under CERCLA or the Spill Act or some other law,
> Norpak's claims are for environmental cleanup costs associated
> with the Blanchard Street property, the very same costs for which
> Eagle-Picher may turn out to be co-liable. This is precisely the
> kind of contingent co-liability envisioned by § 502(e)(1)(B). If
> Norpak and Eagle- Picher are co-liable, then it is irrelevant that
> Norpak can also concoct an alternative theory on which to premise
> its claim against Eagle-Picher such as diminution of value of the
> property due to Eagle- Picher's contamination of that property.
>
> Even assuming, for the sake of argument, that Eagle-Picher and
> Norpak will not be co-liable under CERCLA or the Spill Act,
> Norpak's ECRA [New Jersey's Environmental Cleanup
> Responsibility Act] claim amounts to nothing more than a thinly
> disguised claim for reimbursement and contribution. Section
> 502(e)(1)(B) applies only to an entity that is liable with the debtor
> on . . . the claim of a creditor. Courts have held that the phrase an
> entity that is liable with the debtor is broad enough to encompass
> any type of liability shared with the debtor, whatever its basis.
> Thus, so long as Norpak and Eagle-Picher are both potentially
> responsible for environmental cleanup costs of the Blanchard
> Street property, the legal theory underpinning that shared
> responsibility is irrelevant.

Norpak, 131 F.3d at 1190 (affirming bankruptcy court's determination that claim was for

reimbursement or contribution for purposes of section 502(e)(1)(B)) (emphasis added) (internal

citations and quotations omitted); accord In re Wedtech Corp., 85 B.R. 285 (Bankr. S.D.N.Y. 1988)(disallowing debtor's officers' contingent indemnity claims).

In Wedtech, the court held that the co-liability requirement of section 502(e)(1)(B) was satisfied even though the debtor and the claimant were not actually alleged to be joint tortfeasors in the underlying actions. See id. at 289-90. Rather, the court determined that, based on the nature of the allegations, if the claimant was found liable, the debtor could be co-liable. Id.

Contractual indemnification or reimbursement claims under purchase agreements for environmental response costs from the owner of a contaminated site to a buyer meet the co-liability element of section 502(e)(1)(B) because indemnification "presupposes co-liability." In re GCO Servs., LLC, 324 B.R. 459, 467 (Bankr. S.D.N.Y. 2005) (disallowing contingent claims by ERISA trustees). "Analytically, indemnity is the same as reimbursement. One contractually provides for the reimbursement of loss incurred by another by indemnifying [the claimant]." In re Pacor, Inc., 110 B.R. 686, 690 (E.D. Pa. 1990) (disallowing contingent asbestos tort claims where Debtor might be jointly and severally liable with claimants); see also In re Pettibone Corp., 162 B.R. 791, 809 (Bankr. N.D. Ill. 1994) ("A claim for indemnification, as well as contribution, has been considered to be for 'reimbursement' within the meaning of § 502(e)(1)(B).") (provisionally disallowing products liability claims until such time as any of them cease to be contingent); In re Regal Cinemas, Inc., 393 F.3d 647 (6th Cir. 2004) (disallowing contractual indemnification claim asserted by commercial lessee).

## C.     Element No. 3 – Claim Is Contingent:

A claim is contingent until liquidated costs are actually incurred. In re APCO Liquidating Trust, 370 B.R. 625, 636 (Bankr. D. Del. 2007) (disallowing CERCLA response costs not yet incurred) . Accord Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp., 266 B.R. 575, 580 (S.D.N.Y. 2001) (A claim is contingent "if the debtor's legal duty to pay does not come into

existence until triggered by the occurrence of a future event.") (citing Mazzeo v. United States (In re Mazzeo), 131 F.3d 295, 303 (2d Cir. 1997)); In re Alper Holdings, USA, No. 07-12148, 2008 WL 4186333, at *5 (Bankr. S.D.N.Y. Sept. 10, 2008) (disallowing future legal defense costs and indemnification for any liability relating to purchased property); Highland Holdings and Zito I, L.P. v. Century/ML Cable Venture, 06-181, 2007 WL 2405689, *5 (S.D.N.Y. Aug. 24, 2007) (disallowing future contractual indemnification obligations). "The determination of whether the claim is contingent is made at the time of the allowance or disallowance of the claim, which courts have established is the date of the ruling." In re Drexel Burnham Lambert Group, Inc. ("Drexel II"), 148 B.R. 982, 985 (Bankr. S.D.N.Y. 1992) (disallowing indemnification of future payments, based on a judgment or settlement, that may be made in pending litigation) ; accord In re Baldwin-United Corp., 55 B.R. 885, 894-95 (Bankr. S.D. Ohio 1985) (disallowing brokers' claims for contribution and indemnity in regard to annuity holders' contingent claims against the brokers); In re GCO Servs., LLC, 324 B.R. 459, 466 (Bankr. S.D.N.Y. 2005). A simple rule of thumb used by this court has been that a claim is contingent if "the amounts and ultimate liability are presently unknown." Alper, 2008 WL 4186333 at *6 (citing Drexel II, 148 B.R. at 986-87, 991) (indemnity claim for future defense costs are contingent and disallowed "to the extent these Defense Costs are not determined and remain unpaid"). Future environmental remediation costs in the current proceedings are highly contingent, and estimation proceedings for even one of these duplicative Claims – let alone scores – would be extremely burdensome on the time and resources of this or any other Court and the bankruptcy estate.

## II. Objections To Specific Claims Based On Section 502(e)(1)(B)

The Debtors' specific objections to proofs of Claim are set forth in the attached Appendix, which is organized by geographic sites and, for each site, by individual Claims. Each

discussion sets forth first the primary Claim to which the secondary contingent claimant(s) and Debtor(s) are co-liable, followed by a description of the secondary Claims to which these objections apply. Examples of typical fact patterns are as follows:

### A. CERCLA Orders:

The Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site (the "Kalamazoo Site") [App. Tab B] is the basis for several private party contingent Claims that duplicate EPA Claims and must be disallowed. EPA estimates future response costs at this site to be approximately $2.7 billion. EPA has filed a Claim against the Debtor Millennium Holdings, Inc. for past and future CERCLA response costs and for natural resource damages. Additionally, the State of Michigan, in its capacity for environmental enforcement, also filed a Claim against Millennium Holdings based on CERCLA and related state law. Thus, two governmental agencies are already competing for the limited assets of the bankruptcy estate, and the State of Michigan can be viewed as an alternative primary claimant to the private parties that have also filed Claims. Georgia-Pacific LLC and Weyerhaeuser Company are two such private claimants. EPA has previously identified Millennium Holdings, Georgia-Pacific, and Weyerhaeuser as PRPs and has issued several Administrative Orders to the parties. Georgia-Pacific and Weyerhaeuser have entered separate consent decrees to implement CERCLA remedies. Georgia-Pacific and Weyerhaeuser both claim, *inter alia*, future response costs and natural resource damages. Both of these private Claims for future costs and damages are for reimbursement or contribution; are contingent; and are based on co-liability to EPA as well as to the State of Michigan. They must therefore be disallowed pursuant to section 502(e)(1)(B) .

### B. PRP Groups Co-Liable to Government:

For the Many Diversified Interests Superfund Site in Texas [App. Tab S], EPA filed a Claim against Lyondell Chemical Company for past and future CERCLA response costs. Past

costs alone are estimated to be at least $4.9 million.  The MDI Site Joint Defense Group filed duplicate Claims against Lyondell and other Debtors for "$5,783,408.73 plus additional costs and damages."   The PRP group's Claims state that EPA has demanded reimbursement of response costs incurred by EPA in that amount and that the MDI Site Joint Defense Group "members anticipate entering into a consent decree with the United States for the payment . . . which will include Debtor's fair share of such response costs."   The PRP group is seeking contribution on behalf of its individual members, for contingent liabilities that the members are co-liable for to EPA, and their Claims must be disallowed pursuant to section 502(e)(1)(B) .

Another example of a PRP group Claim is the one for Jefferson Site PRP Group LLC [App. Tab V].  The Jefferson Site PRP Group characterizes its Claim as breach of contract, but the underlying co-liability is to the California Department of Toxic Substances Control ("California DTSC") pursuant to state law and CERCLA.  Additionally, the Jefferson Site PRP Group attaches a California DTSC consent order to its Claim to which numerous respondents are party.  The Jefferson Site PRP Group's Claim must be disallowed.

**C.    Individual Claimants Co-Liable to PRP Groups, and Contractual Indemnification:**

In regard to the American Chemical Services, Inc. Site in Indiana [App. Tab C], the ACS Site RD/RA Executive Committee and Individual Entities filed a Claim against Debtor asserting CERCLA joint and several liability and contractual liability.  The PRP group Claim involves a PRP funding agreement pursuant to an EPA consent decree signed by the members.  The PRP group Claim further asserts that one of the members is Glidden / Akzo Nobel and that Glidden / Akzo Nobel previously had entered an environmental indemnification agreement with one of the Debtors pursuant to a purchase agreement.  Akzo Nobel filed an individual Claim asserting that debtors are liable pursuant to the indemnification agreement.  In this situation, the PRP Group is

the primary Claimant and Akzo Nobel is the secondary claimant. the Debtors' underlying alleged co-liability is Akzo Nobel's CERCLA share owed to the PRP group. If the PRP group's Claim is satisfied, the Akzo Nobel Claim would be double-dipping. Therefore, Akzo Nobel's individual Claim must be disallowed pursuant to section 502(e)(1)(B) .

The foregoing are provided as examples of the specific discussions set forth in the attached Appendix. The Debtors respectfully refer the Court to the Appendix for a discussion of all the Claims and sites covered by this Memorandum.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court enter an order, substantially in the form annexed as Exhibit A to each Objection, disallowing the Environmental Claims identified in the Objections and listed on Exhibit 2 to this Memorandum, pursuant to section 502(e)(1)(B) of the Bankruptcy Code, and granting such other relief that it deems just and proper.


New York, New York
September 4, 2009

CADWALADER, WICKERSHAM & TAFT LLP

_/s/ Christopher R. Mirick_
Deryck A. Palmer, Esq.
John J. Rapisardi, Esq.
George A. Davis, Esq.
Andrew M. Troop, Esq.
Christopher R. Mirick, Esq.
One World Financial Center
New York, New York 10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666
deryck.palmer@cwt.com
john.rapisardi@cwt.com
george.davis@cwt.com
andrew.troop@cwt.com
christopher.mirick@cwt.com

and

David F. Williams, Esq.
Jonathan R. Stone, Esq.
Douglas H. Fischer, Esq.
700 Sixth Street, N.W.
Washington, D.C. 20001
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400
david.williams@cwt.com
jonathan.stone@cwt.com
douglas.fischer@cwt.com

Attorneys for Lyondell Chemical Company, et al.

EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | |
|---|---|
| **In re:** | **Chapter 11** |
| | **Case No. 09-10023 (REG)** |
| **LYONDELL CHEMICAL COMPANY, et al.,** | **Jointly Administered** |
| **Debtors.** | |

------------------------------------------------------------

### AFFIDAVIT OF DEBORAH W. KRYAK

STATE OF TEXAS    )

                          ) ss.:

COUNTY OF HARRIS    )

DEBORAH W. KRYAK, being duly sworn, deposes and says:

1. I am employed by Lyondell Chemical Company ("Lyondell") as Director of Retained
Liabilities and Remediation.  In that capacity I have lead responsibility for overseeing
environmental remediation work on behalf of Lyondell and its affiliates and subsidiaries,
including all of the United States Debtors in these proceedings.  I have held the Director
of Retained Liabilities and Remediation position with Lyondell since 2004.  I joined the
company in May 1990.  Since I joined Lyondell, my titles and responsibilities have
included Environmental Engineer, Environmental Superintendent, Plant Manager,
Director Supply Chain, and Director of Retained Liabilities and Remediation.  I
graduated with a Bachelors of Science in Industrial Hygiene from Central Missouri State
University, and a Masters of Science in Environmental Management from University of

Houston Clear Lake. I am over the age of eighteen and am not a party to the above captioned action.

2. The Retained Liabilities and Remediation Department maintains complete and exclusive responsibility for managing the environmental remediation portfolio of Lyondell and its affiliates and subsidiaries. In my 20 years with the Lyondell companies, I have had countless dealings with EPA, various state agencies, and other PRPs and PRP Groups at many sites around the United States.

3. By virtue of my employment as Director of Retained Liabilities and Remediation for Lyondell, and my extensive knowledge of the Debtors' environmental remediation obligations, I am personally familiar with the operations of Debtors with respect to compliance with their environmental obligations at each of the environmental sites listed in the Proofs of Claim ("Environmental POCs") filed in these proceedings and I have familiarized myself with each of such POCs.

4. Many of the Environmental POCs indicate that at least in part they are for environmental remediation costs that have not yet been incurred ("future costs").

5. Many of the Environmental POCs for future costs that have been filed by private (i.e., non-governmental) parties cover the same future costs for which federal or state agencies have filed Environmental POCs. Similarly, some Environmental POCs for future costs that have been filed by private parties cover the same future costs for which other private parties have filed Environmental POCs. In both cases, I refer to any Environmental POCs that cover same costs as others as "overlapping" Environmental POCs.

6. The total dollar amount of all Environmental POCs can only be approximated because a significant percentage of the claims are listed as contingent and because many of the POCs are vague. However, I roughly estimate that all Environmental POCs would amount to $7 billion.

7. The total dollar amount of the overlapping Environmental POCs can only be approximated because a significant percentage of the claims are listed as contingent and because many of the POCs are vague. However, I roughly estimate that all overlapping Environmental POCs would amount to $1.1 billion.

8. In my experience, when EPA identifies multiple PRPs, the practical effect is often that most but not necessarily all of the PRPs form PRP Groups to negotiate with the EPA for the form and cost of a remedial action and to enter an administrative settlement. PRP Groups may assess their members over time for costs incurred and paid out either to private contractors that are performing the remediation or to the EPA. PRPs that do not join such groups will have conflicting interests and may eventually be sued by the PRP Groups for cost reimbursement and contribution.

9. The Lyondell Debtors over the years have been active settling members at scores of CERCLA sites around the United States. However, as a result of the petitions for bankruptcy, the Lyondell Debtors have stopped paying into and otherwise participating in PRP Groups for sites not owned or leased by the Lyondell Debtors. As a consequence, many PRPs and PRP Groups have filed CERCLA reimbursement and contribution claims against the Lyondell Debtors for the same environmental liabilities for which the EPA and state environmental agencies have filed claims.

10. The Lyondell Debtors currently are actively negotiating with the United States government in an effort to settle all environmental claims asserted on behalf of the EPA and the other federal agencies covered by the U.S. claim. Debtors' current plan is to attempt to resolve – either consensually or through claims objection and estimation proceedings – the U.S. claim in advance of confirmation of the plan of reorganization. Debtors are pursuing a similar course of action with respect to the states that filed proofs of claim. Debtors believe that it is important to resolve both the government claims and the $1.1 billion overlapping Environmental Claims issue in the near term, in order to avoid delays in confirming or consummating the plan.

11. POC 5229, filed by the Los Angeles Unified School District, relates to environmental claims regarding the Jefferson New Middle School No.1 Site in California. I have provided to Debtors' attorneys for use in these proceedings a true and accurate copy of the Jefferson Site PRP Group Participation and Cost Sharing Agreement dated August 23, 2000, among the LA Unified School District, MHC, Inc., and ALCO, which I understand will be used as an exhibit.

12. POC 4699, POC 4700, POC 4701, POC 4702, POC 4703, POC 4704, POC 4705, filed by Weyerhaeuser Company, relates to the Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site in Michigan. Weyerhaeuser entered into a Consent Decree For The Design And Implementation Of Certain Response Actions At Operable Unit #4 And The Plainwell Inc. Mill Property Of The Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site, signed by Weyerhaeuser on November 4, 2004 (United States v. Weyerhaeuser, Civ. No. 1:05CV0003, United States District Court of the Western District of Michigan). I have read the publicly available consent decree, which is not

planned for use as an exhibit because of its size. The consent decree resolves a complaint brought by the EPA pursuant to CERCLA. The consent decree requires Weyerhaeuser to make a number of payments to the EPA including for past and future response costs, and Weyerhaeuser is to design and implement CERCLA response actions at the Superfund Site. Paragraph 117 of the consent decree states that by entering the consent decree Weyerhaeuser is entitled to protection from contribution protection pursuant to CERCLA section 113(f)(2).

13. POCs 4664 and 4665, filed by Hamilton Beach Brands, Inc., relate to the Southern Pines Site in North Carolina and the Hartford Site (a.k.a. My Sister's Place) in Connecticut. Hamilton's claims reference a "certain Settlement and Release Agreement, effective as of December 10, 2003 by and among Hamilton Beach, Millennium Holdings and Millennium America, as guarantor." (Hamilton POC ¶ 1) I have provided a true and complete copy of this agreement to Debtors' attorneys for possible use as an exhibit in these proceedings. Paragraph O of the Settlement and Release Agreement provides that the parties indemnify each other for any "damages, penalties or other liabilities" for a party's failure to comply with applicable law or timely pay Cleanup Costs under the agreement.

14. POC 11513, filed by Atlantic Richfield Co., et al. relates to, among others, the Malone Service Station Superfund Site (a.k.a. Swan Lake) in Texas. I have provided Debtors' attorneys a list of persons that have generated or disposed of waste at the Site for possible use as an exhibit in these proceedings.

15. POC 7986, filed by FLTG, Inc., relates to the French Limited Site in Texas and references a Consent Decree and Trust Agreement to which ARCO (predecessor to Debtors) is a party. I have read the publicly available Consent Decree, as well as the Trust Agreement, which are not planned for use as an exhibit because of their size. The Consent Decree and Trust Agreement both require PRPs to fund the Trust, which will disburse funds for remediation of the Site. Paragraph 2.03 of the Trust Agreement provides that if any Settlor fails to make contributions required by the Trust, all other Settlors are obligated to "make up any deficiency" by "contributing" to the Trust.

16. POC 3221, filed by the LWD PRP Group Coordinator, relates to the LWD Incinerator Site in Kentucky and references a 2007 EPA Consent Order to which Debtors and all "secondary" claimants are parties. I have read the publicly available Consent Order, which is not planned for use as an exhibit because of its size. Section XV of the Consent Order requires all Respondents to pay to EPA the costs of future remediation.

17. POC 2139, filed by Marvin Jonas Transfer Station Site Respondents Group, relates to the Marvin Jonas Transfer Station Site in New Jersey and references a 1990 New Jersey Multi-State Directive. I have read the Directive, which is not planned for use as an exhibit because of its size. The Directive identified Glidden and other Respondents, as parties who are "responsible for the discharge of hazardous substances at, around, and from the Marvin Jonas Transfer Station" and requires the Respondents to remediate the Site. Section II.E of the Directive states, "Pursuant to N.J.S.A. 58:10-23.11g(c), the Jonas Transfer Station Respondents are strictly liable, jointly and severally, without regard to fault, for all costs of cleanup and removal of the hazardous substances discharged..."

18. POC 8265, filed by the W&S Group, and POC 11318, filed by the Dial Corporation, relates to the Passaic River (Diamond Alkali) Superfund Site in New Jersey. Both POCs reference New Jersey litigation in which both Debtors and claimant have been named as third party defendants by Tierra Solutions Inc. and Maxus Energy Corporation. The third-party complaint filed by Tierra and Maxus is not planned for use as an exhibit because of its size. I have read the third-party complaint, which names all members of the W&S Group, as well as the Dial Corporation, as third party defendants.

19. POCs 12892-12894, filed by the Florida Department of Environmental Protection, potentially relate to the Doeboy Dump Site in Florida. Although I have provided Debtors' attorneys with a copy of a Draft Administrative Order on Consent, I believe that such an Administrative Order on Consent may have been entered into between Florida and the City of Jacksonville regarding Doeboy Dump site which is owned and was operated by the City of Jacksonville. Consistent with the response provided to EPA dated November 29, 2000, "Millennium-Jacksonville has no documents that show that any of the company's solid waste, trash, debris, or any hazardous substances were disposed of at the Doeboy Site and has no employee who has personal knowledge or recollection of the use of such site for the disposal of any Millennium-Jacksonville's waste."

20. The content of this Affidavit are true to the best of my knowledge, information and belief.

Deborah W. Kryak

Sworn to me this

3 of September, 2009

Notary Public

KAREN A. McSPADDEN
Notary Public
STATE OF TEXAS
My Comm. Exp. Feb. 8, 2011

EXHIBIT 2

# EXHIBIT 2 - Claims Objections

(Listed Alphabetically by Site Name)

| Claim # | Claimant | Site Listed on Claim | State | Debtor Listed on Claim |
|---|---|---|---|---|
| 7068 | The 68th Street Coalition | 68th Street Superfund Site | MD | Millennium Chemicals, Inc. |
| 11934 | The Procter & Gamble Company | 68th Street Superfund Site | MD | Millennium Chemicals, Inc. |
| 11963 | AK Steel Corporation | 68th Street Superfund Site | MD | Millennium Chemicals, Inc. |
| 11019 | Akzo Nobel Paints LLC | 68th Street Dump | MD | Millennium Holdings, LLC |
| 4699 | Weyerhaeuser Company **(POC #4700-4705 filed against other debtors)** | Allied Paper / Kalamazoo River / Portage Creek | MI | Millennium Holdings, LLC |
| 7070 | Georgia-Pacific LLC | Allied Paper / Kalamazoo River / Portage Creek | MI | Millennium Holdings, LLC |
| 11378 | The National Titanium Dioxide Co., Ltd (Cristal) | Kalamazoo River | OH | Millennium Chemicals Inc. |
| 11379 | Cristal Inorganic Chemicals US Inc. | Kalamazoo River | MI | Millennium Chemicals Inc. |
| 11380 | Cristal Inorganic Chemicals US Inc. | Kalamazoo River | MI | Millennium Holdings, LLC |
| 11019 | Akzo Nobel Paints LLC | American Chemical Service | IN | Millennium Holdings LLC |

# EXHIBIT 2 - Claims Objections

(Listed Alphabetically by Site Name)

| Claim # | Claimant | Site Listed on Claim | State | Debtor Listed on Claim |
|---|---|---|---|---|
| 4982 | Route 21 Associates of Belleville, LLC | Belleville | NJ | Millennium Chemicals Inc. |
| 11019 | Akzo Nobel Paints LLC | Berks Landfill | PA | Millennium Holdings, LLC |
| 11933 | Berk's Landfill Qualified Settlement Trust Fund (c/o Alan Golub) | Berk's Landfill Superfund Site | PA | Lyondell Chemical Company |
| 11019 | Akzo Nobel Paints LLC | Charlotte Plant Site | NC | Millennium Holdings LLC |
| 11019 | Akzo Nobel Paints LLC | Doeboy Dump Site | FL | Millennium Holdings LLC |
| 7133 | Waste Management Inc. of Florida | Doeboy Dump Site | FL | Millennium Specialty Chemicals Inc. |
| 1076 | Henkel Corp./Cognis Corp. | Kellett Site | SC | Millennium Petrochemicals Inc. |
| 11513 | Atlantic Richfield Co., BP West Coast Products LLC, BP Products North America Inc., ARCO Environmental Remediation LLC, and BP Amoco Chemical Company | French Limited | TX | Lyondell Chemical Company |
| 7986 | FLTG, Inc. | French Limited Superfund Site | TX | Lyondell Chemical Company |

EXHIBIT 2 - Claims Objections                    9/4/2009

(Listed Alphabetically by Site Name)

| Claim # | Claimant | Site Listed on Claim | State | Debtor Listed on Claim |
|---|---|---|---|---|
| 12301 | Tierra Solutions, Inc. | French Limited Superfund Site | TX | Lyondell Chemical Company |
| 12303 | Maxus Energy Corporation | French Limited Superfund Site | TX | Lyondell Chemical Company |
| 1746 | GEMS Phase II Trust (on behalf of the State of New Jersey, its Beneficiary) | GEMS Landfill Superfund Site | NJ | Millennium Holdings, LLC |
| 1747 | GEMS Phase II Trust (on behalf of itself and Settlors identified on Exhibit B) | GEMS Landfill Superfund Site | NJ | Millennium Holdings, LLC |
| 11019 | Akzo Nobel Paints LLC | State of NJ Dept. of Env. Protection vs. Gloucester Environmental Mgt. Services (GEMS) | NJ | Millennium Holdings LLC |
| 11019 | Akzo Nobel Paints LLC | Glidden's Huron, OH Facility (Resin Plant) | OH | Millennium Holdings LLC |
| 4694 | Givaudan Flavors Corporation **(POC #4695, 8254-8255 filed against other debtors)** | LWD Incineration | KY | Equistar Chemicals, LP |
| 4696 | Givaudan Flavors Corporation **(POC #4695, 8254-8255 filed against other debtors)** | LWD Incineration | KY | Millennium Petrochemicals, Inc. |
| 3321 | PRP Group Coordinator (LWD) **(POC #3323 filed against other debtor)** | LWD Incineration | KY | Equistar Chemicals, LP |

# EXHIBIT 2 - Claims Objections

9/4/2009

(Listed Alphabetically by Site Name)

| Claim # | Claimant | Site Listed on Claim | State | Debtor Listed on Claim |
|---|---|---|---|---|
| 3322 | PRP Grp Coordinator (LWD) **(POC #3323 filed against other debtor)** | LWD Incineration | KY | Millennium Petrochemicals, Inc. |
| 12770 | Beazer East, Inc. **(no debtor specified) FILED LATE** | LWD Landfill | KY | Unspecified |
| | | | | |
| 7873 | Adams, Tom | Newport Plastics Corporation | VT | Lyondell Chemical Company |
| | | | | |
| 12633 | LPRSA Site Cooperating Parties | Diamond Alkali Superfund Site | NJ | Unspecified |
| 4706 | Givaudan Fragrances Corporation **(POC #4708, 8257 filed against other debtors)** | Lower Passaic River | NJ | Millennium Petrochemicals Inc. |
| 4707 | Givaudan Fragrances Corporation **(POC #4708, 8257 filed against other debtors)** | Lower Passaic River | NJ | Equistar Chemicals, LP |
| 8256 | Givaudan Fragrances Corporation **(POC #4708, 8257 filed against other debtors)** | Lower Passaic River Study Area | NJ | MHC Inc. |
| 8265 | Wolff & Sampson Group/Wolff & Sampson PC | Lower Passaic River Study Area | NJ | MHC Inc., Equistar Chemicals, LP, & Millennium Petrochemicals Inc. |
| 7781 | Non-Public Third Party Joint Defense Group (aka NJ DEP v Occidental Chemical Corp. et al) | Lower Passaic River | NJ | Unspecified |
| 11311 | Ashland, Inc. (ID'd as Day Pitney LLP) **(POC #11314 filed against other debtor)** | LPRSA | NJ | Millennium Petrochemicals Inc. |
| 11312 | Ashland, Inc. (ID'd as Day Pitney) **(POC #11314 filed against other debtor)** | LPRSA | NJ | MHC Inc. |

# EXHIBIT 2 - Claims Objections

(Listed Alphabetically by Site Name)

| Claim # | Claimant | Site Listed on Claim | State | Debtor Listed on Claim |
|---|---|---|---|---|
| 11313 | Ashland, Inc. (ID'd as Day Pitney) **(POC #11314 filed against other debtor)** | LPRSA | NJ | Equistar Chemicals, LP |
| 11315 | The Dial Corporation **(POC #11317 filed against other debtors)** | LPRSA | NJ | MHC Inc. |
| 11316 | The Dial Corporation **(POC #11317 filed against other debtors)** | LPRSA | NJ | Equistar Chemicals, LP |
| 11318 | The Dial Corporation **(POC #11317 filed against other debtors)** | LPRSA | NJ | Millennium Petrochemicals Inc. |
| 11368 | Mallinckrodt, Inc. **(POC #11371 filed against other debtors)** | LPRSA | NJ | Millennium Petrochemicals Inc. |
| 11369 | Mallinckrodt, Inc. **(POC #11371 filed against other debtors)** | LPRSA | NJ | MHC Inc. |
| 11370 | Mallinckrodt, Inc. **(POC #11371 filed against other debtors)** | LPRSA | NJ | Equistar Chemicals, LP |
| 11968 | The Stanley Works **(no debtor specified)** | LPRSA | NJ | Unspecified |
| 12158 | Teval Corp. | LPRSA | NJ | Unspecified |
| 12296 | Maxus Energy Corporation **(POC #12298, 12300,12304 filed against other debtors)** | Passaic River | NJ | MHC Inc. |
| 12306 | Maxus Energy Corporation **(POC #12298, 12300, 12304 filed against other debtors)** | Passaic River | NJ | Millennium Petrochemicals Inc. |

# EXHIBIT 2 - Claims Objections

(Listed Alphabetically by Site Name)

| Claim # | Claimant | Site Listed on Claim | State | Debtor Listed on Claim |
|---|---|---|---|---|
| 12309 | Maxus Energy Corporation **(POC #12298, 12300, 12304 filed against other debtors)** | Passaic River | NJ | Equistar Chemicals, LP |
| 12297 | Tierra Solutions, Inc. **(POC #12299, 12305 filed against other debtors)** | Passaic River | NJ | MHC Inc. |
| 12307 | Tierra Solutions, Inc. **(POC #12299, 12305 filed against other debtors)** | Passaic River | NJ | Millennium Petrochemicals Inc. |
| 12308 | Tierra Solutions, Inc. **(POC #12299, 12305 filed against other debtors)** | Passaic River | NJ | Equistar Chemicals, LP |
| 12744 | LPRSA Small Parties Group **(POC #12743, 12961 filed against other debtors)** | Passaic River | NJ | MHC Inc. |
| 12745 | LPRSA Small Parties Group **(POC #12743, 12961 filed against other debtors)** | Passaic River | NJ | Millennium Petrochemicals, Inc. |
| 12746 | LPRSA Small Parties Group **(POC #12743, 12961 filed against other debtors)** | Passaic River | NJ | Equistar Chemicals, LP |
| 12959 | LPRSA Small Parties Group **(POC #12743, 12961 filed against other debtors)** | Passaic River | NJ | Equistar Chemicals, LP |
| 12960 | LPRSA Small Parties Group **(POC #12743, 12961 filed against other debtors)** | Passaic River | NJ | Millennium Petrochemicals Inc. |
| 12962 | LPRSA Small Parties Group **(POC #12743, 12961 filed against other debtors)** | Passaic River | NJ | MHC Inc. |

# EXHIBIT 2 - Claims Objections

9/4/2009

(Listed Alphabetically by Site Name)

| Claim # | Claimant | Site Listed on Claim | State | Debtor Listed on Claim |
|---|---|---|---|---|
| 12152 | ISP Environmental Services Inc | Newark Bay Complex in N.J. | NJ | Millennium Chemicals Inc., Millennium Petrochemicals, Inc., MHC, Inc., Equistar Chemicals LP |
| 4452 | Malone Cooperating Parties | Malone Service Company Superfund Site | TX | Lyondell Petrochemical Inc |
| 4453 | Malone Cooperating Parties | Malone Service Company Superfund Site | TX | Lyondell Chemical Company |
| 4454 | Malone Cooperating Parties | Malone Service Company Superfund Site | TX | Millennium Petrochemicals Inc. |
| 11513 | Atlantic Richfield Co., BP West Coast Products LLC, BP Products North America Inc., ARCO Environmental Remediation LLC, and BP Amoco Chemical Company | Swan Lake/Malone | TX | Lyondell Chemical Company |
| 11987 | Union Pacific Railroad Company **(POC #11988-11990, 12037-12038, 12040-12046 filed against other debtors)** | Malone Service Company Superfund Site | TX | Millenium Worldwide Holdings I Inc. |
| 12039 | Union Pacific Railroad Company **(POC #11988-11990, 12037-12038, 12040-12046 filed against other debtors)** | Malone Service Company Superfund Site | TX | Millenium Petrochemicals Inc. |
| 12669 | NL Industries | Malone Service Company Superfund Site | TX | Millennium Holdings, LLC |

# EXHIBIT 2 - Claims Objections

9/4/2009

(Listed Alphabetically by Site Name)

| Claim # | Claimant | Site Listed on Claim | State | Debtor Listed on Claim |
|---|---|---|---|---|
| 5270 | MDI Site Joint Defense Group | Many Diversified Interests | TX | Lyondell Chemical Company |
| 6301 | MDI Site Joint Defense Group | Many Diversified Interests | TX | Lyondell Petrochemical Inc. |
| | | | | |
| 4665 | Hamilton Beach Brands, Inc. **(POC #4664 filed against other debtor)** | My Sister's Place (a/k/a Hartford Site) | CT | Millennium Holdings, LLC |
| 12755 | My Sister's Place | My Sister's Place (a/k/a Hartford Site) | CT | Millennium Holdings, LLC |
| | | | | |
| 2847 | Waste Management | Jonas Sewell Transfer Station | NJ | Lyondell-Equistar Holdings Partners |
| 2139 | Marvin Jonas Transfer Station Site Respondents Group | Marvin Jonas Transfer Statiion | NJ | Millennium Holdings, LLC |
| 2848 | Certain Teed Corporation | Marvin Jonas Transfer Statiion | NJ | Millennium Holdings, LLC |
| 2849 | Arkema Incorporated | Marvin Jonas Transfer Station | NJ | Millennium Holdings, LLC |
| 11019 | Akzo Nobel Paints LLC | Jonas Transfer Station | NJ | Millennium Holdings LLC |
| | | | | |
| 4665 | Hamilton Beach Brands, Inc. **(POC #4664 filed against other debtor)** | Mt. Airy | NC | Millennium Holdings, LLC |

# EXHIBIT 2 - Claims Objections

9/4/2009

(Listed Alphabetically by Site Name)

| Claim # | Claimant | Site Listed on Claim | State | Debtor Listed on Claim |
|---|---|---|---|---|
| 4665 | Hamilton Beach Brands, Inc. **(POC #4664 filed against other debtor)** | Southern Pines | NC | Millennium Holdings, LLC |
| 11513 | Atlantic Richfield Co., BP West Coast Products LLC, BP Products North America Inc., ARCO Environmental Remediation LLC, and BP Amoco Chemical Company | Turtle Bayou | TX | Lyondell Chemical Company |
| 4426 | ALCO Capital Group, Inc. | Jefferson New Middle School | CA | MHC Inc. |
| 4056 | Jefferson Site PRP Group LLC | LA Unified School District (Jefferson) | CA | MHC Inc. |
| 5229 | Los Angeles Unified School District | Jefferson New Middle School | CA | MHC Inc. |

EXHIBIT 3

# EXHIBIT 3

## 68th Street Dump Site, MD

| Primary Claimant(s) | | | Secondary Claimant(s) | | |
|---|---|---|---|---|---|
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
| 12972 | U.S. Environmental Protection Agency | Millennium Holdings, LLC | 7068 | The 68th Street Coalition | Millennium Chemicals, Inc. |
| | | | 11934 | The Procter & Gamble Company | Millennium Chemicals, Inc. |
| | | | 11963 | AK Steel Corporation | Millennium Chemicals, Inc. |
| | | | 11019 | Akzo Nobel Paints LLC | Millennium Holdings, LLC |

## Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site, MI

| Primary Claimant(s) | | | Secondary Claimant(s) | | |
|---|---|---|---|---|---|
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
| 12972 | U.S. Environmental Protection Agency | Millennium Holdings, LLC | 4699 | Weyerhaeuser Company (POC #4700-4750 filed against other debtors) | Millennium Holdings, LLC |
| 12843 | Michigan AG, DEQ, DNR | Millennium Holdings, LLC | 7070 | Georgia-Pacific LLC | Millennium Holdings, LLC |
| | | | 11378 | The National Titanium Dioxide Co., Ltd (Cristal) | Millennium Chemicals Inc. |
| | | | 11379 | Cristal Inorganic Chemicals US Inc. | Millennium Chemicals Inc. |
| | | | 11380 | Cristal Inorganic Chemicals US Inc. | Millennium Holdings, LLC |

**EXHIBIT 2**

| American Chemical Services, Inc. Site, IN | | | | | |
|---|---|---|---|---|---|
| **Primary Claimant(s)** | | | **Secondary Claimant(s)** | | |
| **POC#** | **Claimant** | **Debtor Listed in Claim** | **POC#** | **Claimant** | **Debtor Listed in Claim** |
| 1226 | ACS Site RD/RA Executive Committee and Individual Entities | Lyondell Chemical Company and Millennium Chemical Company | 11019 | Akzo Nobel Paints LLC | Millennium Holdings LLC |

| Belleville Facility Site, NJ | | | | | |
|---|---|---|---|---|---|
| **Primary Claimant(s)** | | | **Secondary Claimant(s)** | | |
| **POC#** | **Claimant** | **Debtor Listed in Claim** | **POC#** | **Claimant** | **Debtor Listed in Claim** |
| 7818 | New Jersey Department of Environmental Protection, the Commissioner, NJDEP, and the Administrator of the New Jersey Spill Commission Fund | MHC, Inc. | 4982 | Route 21 Associates of Belleville, LLC | Millennium Chemicals, Inc. |

| Berks Landfill Site, PA | | | | | |
|---|---|---|---|---|---|
| **Primary Claimant(s)** | | | **Secondary Claimant(s)** | | |
| **POC#** | **Claimant** | **Debtor Listed in Claim** | **POC#** | **Claimant** | **Debtor Listed in Claim** |
| 12972 | U.S. Environmental Protection Agency | Millennium Holdings, LLC | 11019 | Akzo Nobel Paints LLC | Millennium Holdings, LLC |

# EXHIBIT 2

| | | 11933 | Berk's Landfill Qualified Settlement Trust Fund (c/o Alan Golub) | Lyondell Chemical Company |
|---|---|---|---|---|

## Charlotte Site, NC

| Primary Claimant(s) | | | Secondary Claimant(s) | | |
|---|---|---|---|---|---|
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
| 4430 | Superfund Section of the North Carolina Division of Waste Management | Millennium Holdings, LLC and all other debtors | 11019 | Akzo Nobel Paints LLC | Millennium Holdings LLC |

## Doeboy Dump Site, FL

| Primary Claimant(s) | | | Secondary Claimant(s) | | |
|---|---|---|---|---|---|
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
| 12892 | Florida Department of Environmental Protection | Millennium Specialty Chemicals Inc. | 11019 | Akzo Nobel Paints LLC | Millennium Holdings LLC |
| | | | 7133 | Waste Management Inc. of Florida | Millennium Specialty Chemicals Inc. |

**EXHIBIT 2**

## French Limited Superfund Site, TX

| Primary Claimant(s) | | | Secondary Claimant(s) | | |
|---|---|---|---|---|---|
| **POC#** | **Claimant** | **Debtor Listed in Claim** | **POC#** | **Claimant** | **Debtor Listed in Claim** |
| 12974 | U.S. Environmental Protection Agency | Lyondell Chemical Company | 11513 | Atlantic Richfield Co., BP West Coast Products LLC, BP Products North America Inc., ARCO Environmental Remediation LLC, and BP Amoco Chemical Company | Lyondell Chemical Company |
| 8182 | Texas Commission on Environmental Quality | Lyondell Chemical Company | 7986 | FLTG, Inc. | Lyondell Chemical Company |
| | | | 12301 | Tierra Solutions, Inc. | Lyondell Chemical Company |
| | | | 12303 | Maxus Energy Corporation | Lyondell Chemical Company |

EXHIBIT 2

## Gloucester Environmental Management Services Landfill Superfund Site, NJ

| Primary Claimant(s) | | | Secondary Claimant(s) | | |
|---|---|---|---|---|---|
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
| 7821 | New Jersey Department of Environmental Protection, the Commissioner, NJDEP, and the Administrator of the New Jersey Spill Commission Fund | Millennium Holdings, LLC | 1746 | GEMS Phase II Trust (on behalf of the State of New Jersey, its Beneficiary) | Millennium Holdings, LLC |
| | | | 1747 | GEMS Phase II Trust (on behalf of itself and Settlors identified on Exhibit B) | Millennium Holdings, LLC |
| | | | 11019 | Akzo Nobel Paints LLC | Millennium Holdings, LLC |

## Hartford Site a.k.a. My Sister's Place, CT

| Primary Claimant(s) | | | Secondary Claimant(s) | | |
|---|---|---|---|---|---|
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
| | | | 4665 | Hamilton Beach Brands, Inc. (POC #4664 filed against other debtor) | Millennium Holdings, LLC |
| | | | 12755 | My Sister's Place | Millennium Holdings, LLC |

EXHIBIT 2

## Huron Site, OH

| Primary Claimant(s) | | | Secondary Claimant(s) | | |
|---|---|---|---|---|---|
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
| 4124 | Ohio Environmental Protection Agency | Lyondell Chemical Company | 11019 | Akzo Nobel Paints LLC | Millennium Holdings, LLC |

## Kellett Site, SC

| Primary Claimant(s) | | | Secondary Claimant(s) | | |
|---|---|---|---|---|---|
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
| 12781 | South Carolina Dept. of Health and Environmental Control | Millennium Petrochemicals, Inc. | 1076 | Henkel Corp./Cognis Corp. | Millennium Petrochemicals Inc. |

## LWD Incineration Facility / Landfill Site, KY

| Primary Claimant(s) | | | Secondary Claimant(s) | | |
|---|---|---|---|---|---|
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
|  |  |  | 4694 | Givaudan Flavors Corporation (POC #4695, 8254-8255 filed against other debtors) | Equistar Chemicals, LP |
|  |  |  | 4696 | Givaudan Flavors Corporation (POC #4695, 8254-8255 filed against other debtors) | Millennium Petrochemicals, Inc. |

## EXHIBIT 2

| | | | POC# | Claimant | Debtor Listed in Claim |
|---|---|---|---|---|---|
| | | | 3321 | PRP Group Coordinator (LWD)<br>(POC #3323 filed against other debtors) | Equistar Chemicals, LP |
| | | | 3322 | PRP Group Coordinator (LWD)<br>(POC #3323 filed against other debtors) | Millennium Petrochemicals, Inc. |
| | | | 12770 | Beazer East, Inc. | Not specified on POC |

## Malone Service Company Superfund Site, TX

| Primary Claimant(s) | | | Secondary Claimant(s) | | |
|---|---|---|---|---|---|
| **POC#** | **Claimant** | **Debtor Listed in Claim** | **POC#** | **Claimant** | **Debtor Listed in Claim** |
| 12971 | U.S. Environmental Protection Agency | Millennium Petrochemicals, Inc. | 4453 | Malone Cooperating Parties | Lyondell Chemical Company |
| | | | 4452 | Malone Cooperating Parties | Lyondell Petrochemical Inc. |
| | | | 4454 | Malone Cooperating Parties | Millennium Petrochemicals Inc. |
| 8184 | Texas Commission on Environmental Quality | Lyondell Chemical Company | 11513 | Atlantic Richfield Co., BP West Coast Products LLC, BP Products North America Inc., ARCO Environmental Remediation LLC, and BP Amoco Chemical Company | Lyondell Chemical Company |
| 12974 | U.S. Environmental Protection Agency | Lyondell Chemical Company | 11987 | Union Pacific Railroad Company<br>(POC #11988-11990, 12037-12038, 12040-12046 filed against other debtors) | Millennium Worldwide Holdings I Inc. |
| | | | 12039 | Union Pacific Railroad | Millennium Petrochemicals Inc. |

EXHIBIT 2

|  |  |  |  | (POC #11988-11990, 12037-12038, 12040-12046 filed against other debtors) |  |
|---|---|---|---|---|---|
|  |  |  | 12669 | NL Industries | Millennium Holdings, LLC |

| Many Diversified Interests, TX | | | | | |
|---|---|---|---|---|---|
| Primary Claimant(s) | | | Secondary Claimant(s) | | |
| POC # | Claimant | Debtor Listed in Claim | POC # | Claimant | Debtor Listed in Claim |
| 12974 | U.S. Environmental Protection Agency | Lyondell Chemical Company | 5270 | MDI Site Joint Defense Group | Lyondell Chemical Company |
| 8181 | Texas Commission on Environmental Quality | Lyondell Chemical Company | 6301 | MDI Site Joint Defense Group | Lyondell Petrochemical Inc. |

| Marvin Jonas Transfer Site, NJ | | | | | |
|---|---|---|---|---|---|
| Primary Claimant(s) | | | Secondary Claimant(s) | | |
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
| 7821 | New Jersey Department of Environmental Protection, the Commissioner, NJDEP, and the Administrator of the New Jersey Spill Commission Fund | Millennium Holdings, LLC | 2847 | Waste Management | Lyondell-Equistar Holdings Partners |
|  |  |  | 2139 | Marvin Jonas Transfer Station | Millennium Holdings, LLC |

EXHIBIT 2

| | | Site Respondents Group | |
|---|---|---|---|
| | 2848 | Certain Teed Corporation | Millennium Holdings, LLC |
| | 2849 | Arkema Incorporated | Millennium Holdings, LLC |
| | 11019 | Akzo Nobel Paints LLC | Millennium Holdings, LLC |

| Mt. Airy Site, NC | | | | | |
|---|---|---|---|---|---|
| Primary Claimant(s) | | | Secondary Claimant(s) | | |
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
| 4429 | Superfund Section of the North Carolina Division of Waste Management | Millennium Holdings, LLC | 4665 | Hamilton Beach Brands, Inc. (POC #4664 filed against another debtor) | Millennium Holdings, LLC |

| Newport Plastics Site, VT | | | | | |
|---|---|---|---|---|---|
| Primary Claimant(s) | | | Secondary Claimant(s) | | |
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
| 12844 | State of Vermont Agency of Natural Resources | Millennium Holdings, LLC | 7873 | Adams, Tom | Lyondell Chemical Company |

EXHIBIT 2

## Passaic River Site, NJ

| Primary Claimant(s) | | | Secondary Claimant(s) | | |
|---|---|---|---|---|---|
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
| 12969 | U.S. Environmental Protection Agency | Walter Kidde & Company, Inc. | 12633 | LPRSA Site Cooperating Parties | Not specified on POC |
| 12971 | U.S. Environmental Protection Agency | Millennium Petrochemicals, Inc. | 4706 | Givaudan Fragrances Corporation (POC #4708, 8257 filed against other debtors) | Millennium Petrochemicals Inc. |
| | | | 4707 | Givaudan Fragrances Corporation (POC #4708, 8257 filed against other debtors) | Equistar Chemicals, LP |
| | | | 8256 | Givaudan Fragrances Corporation (POC #4708, 8257 filed against other debtors) | MHC Inc. |
| 12973 | U.S. Environmental Protection Agency | MHC Inc. | 8265 | Wolff & Sampson Group/Wolff & Sampson PC | Millennium Chemicals Inc. |
| | | | 8265 | Wolff & Sampson Group/Wolff & Sampson PC | Equistar Chemicals, LP |
| 7818 | New Jersey Department of Environmental Protection, the Commissioner, NJDEP, and the Administrator of the New Jersey Spill Commission Fund | MHC Inc. | 7781 | Non-Public Third Party Joint Defense Group (aka NJ DEP v. Occidental Chemical Corp. et al) | Lyondell Chemical Company et al. |
| | | | 11311 | Ashland, Inc. (identified as Day Pitney LLP) | Millennium Petrochemicals Inc. |

**EXHIBIT 2**

| | | (POC # 11314 filed against other debtor) | |
|---|---|---|---|
| | 11312 | Ashland, Inc. (identified as Day Pitney LLP) (POC # 11314 filed against other debtor) | MHC Inc. |
| | 11313 | Ashland, Inc. (identified as Day Pitney LLP) (POC # 11314 filed against other debtor) | Equistar Chemicals, LP |
| | 11315 | The Dial Corporation (POC #11317 filed against other debtor) | MHC Inc. |
| | 11316 | The Dial Corporation (POC #11317 filed against other debtor) | Equistar Chemicals, LP |
| | 11318 | The Dial Corporation (POC #11317 filed against other debtor) | Millennium Petrochemicals Inc. |
| | 11368 | Mallinckrodt, Inc. (POC #11371 filed against other debtor) | Millennium Petrochemicals Inc. |
| | 11369 | Mallinckrodt, Inc. (POC #11371 filed against other debtor) | MHC Inc. |
| | 11370 | Mallinckrodt, Inc. (POC #11371 filed against other debtor) | Equistar Chemicals, LP |
| | 11968 | The Stanley Works | Not Specified on POC |
| | 12158 | Teval Corp. | Lyondell Chemical Company et al. |
| | 12300 | Maxus Energy Corporation | Lyondell Chemical Company |

EXHIBIT 2

| | | | |
|---|---|---|---|
| | | (POC #12298, 12300, 12304 filed against other debtors) | |
| | 12306 | Maxus Energy Corporation<br>(POC #12298, 12300, 12304 filed against other debtors) | Millennium Petrochemicals, Inc. |
| | 12309 | Maxus Energy Corporation<br>(POC #12298, 12300, 12304 filed against other debtors) | Equistar Chemicals, LP |
| | 12307 | Tierra Solutions, Inc.<br>(POC #12299, 12305 filed against other debtors) | Millennium Petrochemicals Inc. |
| | 12297 | Tierra Solutions, Inc.<br>(POC #12299, 12305 filed against other debtors) | MHC Inc. |
| | 12308 | Tierra Solutions, Inc.<br>(POC #12299, 12305 filed against other debtors) | Equistar Chemicals, LP |
| | 12962 | LPRSA Small Parties Group<br>(POC #12743, 12961 filed against other debtors) | MHC Inc. |
| | 12744 | LPRSA Small Parties Group<br>(POC #12743, 12961 filed against other debtors) | MHC Inc. |
| | 12745 | LPRSA Small Parties Group<br>(POC #12743, 12961 filed against other debtors) | Millennium Petrochemicals, Inc. |

**EXHIBIT 2**

| | 12746 | LPRSA Small Parties Group (POC #12743, 12961 filed against other debtors) | Equistar Chemicals, LP |
|---|---|---|---|
| | 12959 | LPRSA Small Parties Group (POC #12743, 12961 filed against other debtors) | Equistar Chemicals, LP |
| | 12960 | LPRSA Small Parties Group (POC #12743, 12961 filed against other debtors) | Millennium Petrochemicals Inc. |
| | 12152 | ISP Environmental Services Inc. | Millennium Chemicals Inc., Millennium Petrochemicals, Inc., MHC, Inc., Equistar Chemicals LP |

## Southern Pines Site, NC

| Primary Claimant(s) | | | Secondary Claimant(s) | | |
|---|---|---|---|---|---|
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
| 4644 | Superfund Section of the North Carolina Division of Waste Management | Millennium America Inc. and all other debtors | 4665 | Hamilton Beach Brands, Inc. (POC #4664 filed against other debtor) | Millennium Holdings, LLC |
| 4431 | Superfund Section of the North Carolina Division of Waste Management | Millennium Holdings, LLC | | | |
| 4643 | North Carolina Department of the Environment | Millennium Holdings, LLC | | | |

## Turtle Bayou, TX

EXHIBIT 2

| Primary Claimant(s) | | | Secondary Claimant(s) | | |
|---|---|---|---|---|---|
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
| 12974 | U.S. Environmental Protection Agency | Lyondell Chemical Company | 11513 | Atlantic Richfield Co., BP West Coast Products LLC, BP Products North America Inc., ARCO Environmental Remediation LLC, and BP Amoco Chemical Company | Lyondell Chemical Company |
| 8183 | Texas Commission on Environmental Quality | Lyondell Chemical Company | | | |

| Weber Show- Jefferson New Middle School Site, CA | | | | | |
|---|---|---|---|---|---|
| Primary Claimant(s) | | | Secondary Claimant(s) | | |
| POC# | Claimant | Debtor Listed in Claim | POC# | Claimant | Debtor Listed in Claim |
| 12866 | CA Dept of Toxic Substances Control (POC #12873 filed against other debtor) | MHC Inc. | 4426 | ALCO Capital Group, Inc. | MHC Inc. |
| | | | 4056 | Jefferson Site PRP Group LLC | MHC Inc. |
| | | | 5229 | Los Angeles Unified School District | MHC Inc. |

**EXHIBIT 2**