UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
: 
In re: : Chapter 11
:
LYONDELL CHEMICAL COMPANY, et al., : Case No. 09-10023 (REG)
:
Debtors. : Jointly Administered
:
------------------------------------------------------------x

**ORDER (I) APPROVING THE DISCLOSURE STATEMENT;
(II) ESTABLISHING PLAN SOLICITATION, VOTING AND
TABULATION PROCEDURES;(III) ESTABLISHING PROCEDURES
FOR PARTICIPATION IN RIGHTS OFFERING; AND (IV) SCHEDULING A
HEARING AND ESTABLISHING NOTICE AND OBJECTION PROCEDURES
FOR CONFIRMATION OF THE DEBTORS' PLAN OF REORGANIZATION**

Upon the motion dated September 11, 2009 (the "Motion"),[1] of Lyondell Chemical Company and certain of its subsidiaries and affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), pursuant to sections 105, 1125 and 1126 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and rules 2002, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (the "Order") (i) approving the Debtors' disclosure statement, dated September 11, 2009 (as it may be amended or supplemented,the "Disclosure Statement"), with respect to the *Joint Chapter 11 Plan of Reorganization for the LyondellBasell Debtors*, dated September 11, 2009 (as it may be amended or supplemented, the "Plan"); (ii) establishing solicitation, voting and tabulation procedures with respect to the Plan, including fixing a voting record date, setting a deadline for filing motions to estimate claims for voting purposes, and approving the forms of ballots; (iii) establishing procedures for participation in a rights offering to certain of the Debtors'

---

[1] Capitalized terms not otherwise defined shall have the meaning ascribed to them in the Motion.

creditors and approving a subscription form that creditors participating in the rights offering must use to exercise subscription rights; and (iv) scheduling a hearing and establishing notice and objection procedures for confirmation of the Plan, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no further notice need be provided; and the relief being requested being in the best interest of the Debtors and their estates and creditors; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearing held before the Court on October 14, 2009 (the "Hearing"); and Court having determined the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor; it is hereby

**ORDERED** that the Motion is granted, and any and all objections to the Motion not otherwise settled or withdrawn are hereby overruled; and it is further

**ORDERED** that the Disclosure Statement (as may be amended and/or revised from time to time, including in connection with the Disclosure Statement Hearing) is approved as containing "adequate information" within the meaning of section 1125 of the Bankruptcy Code; and it is further

**ORDERED** that for the purpose of determining (i) the creditors who are entitled to vote on the Plan and (ii) in the case of non-voting classes, the creditors and interest holders who are entitled to receive a Notice of Non-Voting Status, the record date shall be October 14, 2009 (the "Record Date"); and it is further

**ORDERED** that the procedures for solicitation of acceptance or rejection of the Plan, as described in the Motion, are approved; and it is further

**ORDERED** that, subject to the exceptions set forth in the immediately following decretal paragraph, Solicitation Packages shall be mailed no later than October 21, 2009, or as soon as reasonably practicable thereafter (the "Solicitation Date") to (i) all parties having filed proofs of claim, or notices of transfers of claims, in the Debtors' chapter 11 cases prior to the Record Date; (ii) any other known holders of claims against or equity interests in the Debtors as of the Record Date, including all persons or entities listed in the Debtors' schedules of assets and liabilities dated April 6, 2009, or any amendment thereof (the "Schedules"), as holding liquidated, noncontingent and undisputed claims; (iii) the United States Trustee; (iv) the attorneys for the Creditors' Committee; (v) the attorneys for the Debtors' postpetition lenders; (vi) all other parties in interest that have filed a request for notice pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases; (vii) the Securities and Exchange Commission; (viii) the Internal Revenue Service; (ix) the Pension Benefit Guaranty Corporation; (x) the transfer agent(s) and registered holders of any claims against the Debtors arising from public securities;[2] and (xi) all known parties to executory contracts that have not been assumed or rejected; and it is further

**ORDERED** that notwithstanding the immediately foregoing decretal paragraph, (a) holders of claims that were paid pursuant to, or expunged by, prior order of this Court, holders of claims against the Debtors that have not been classified in the Plan pursuant to section

---

[2] The Voting Nominees holding the relevant securities will be provided with copies of, and instructions to serve, the appropriate Solicitation Packages (or notice, as the case may be) on the beneficial holders of such claims and interests and will be reimbursed by the Debtors for reasonable, actual, and necessary expenses incurred in connection with such distribution. The procedure for distribution of the appropriate Solicitation Packages (or notice, as the case may be) to holders of claims is described more fully below.

1123(a)(1) of the Bankruptcy Code, and holders of claims listed in the Schedules as contingent, unliquidated, or disputed for which a proof of claim was not filed by the applicable bar date for the filing of proofs of claim established by the Court shall receive only the Confirmation Hearing Notice; and (b) members of Classes 1, 2, 6, 9, 10, 11, 12, 13, and 14, which are classified under the Plan as unimpaired or receiving no distribution, shall receive only a Notice of Non-Voting Status and the Confirmation Hearing Notice; and it is further

**ORDERED** that the Debtors are excused from mailing Solicitation Packages, Notices of Non-Voting Status, Confirmation Hearing Notices or any other materials (as applicable) that would otherwise be distributed to those entities listed at addresses from which Disclosure Statement Notices were returned as undeliverable by the United States Postal Service, unless the Debtors are provided with accurate addresses for such entities before the Solicitation Date; and any failure to mail Solicitation Packages and/or Notices of Non-Voting Status and the Confirmation Hearing Notice (as applicable) to such entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline, or a violation of Bankruptcy Rule 3017(d); and it is further

**ORDERED** that the forms of Ballots, substantially in the forms annexed as Exhibit D to the Motion, are sufficiently consistent with Bankruptcy Rule 3017(d) and Official Form No. 14 and are approved, and the Debtors are authorized to use such Ballots in soliciting votes on the Plan; and it is further

**ORDERED** that Ballots are to be distributed to holders of claims in Classes 3, 4, 5, 7-A, 7-B, 7-C, 7-D, 7-E and 8 (the "<u>Voting Classes</u>"), and such classes are entitled to vote to accept or reject the Plan; and it is further

**ORDERED** that all Ballots (or Master Ballots in the case of votes cast by a Voting Nominee) must be properly delivered to the Debtors' ballot solicitation and tabulation

agent, Epiq Financial Balloting Group LLC ("Epiq" or the "Voting Agent"), by (i) first-class mail, either in the return envelope provided with each Ballot, or to the address indicated, (ii) overnight courier, or (iii) personal delivery so that they are received by the Voting Agent no later than 4:00 p.m. (prevailing Eastern time), on November 23, 2009 (the "Voting Deadline"); and it is further

**ORDERED** that with respect to those member of the Voting Classes who are holders of public securities of the Debtors (collectively, the "Beneficial Holders") and who are entitled to vote (the "Voting Securities"), the Debtors shall deliver Solicitation Packages, including beneficial ballots to record holders of such claims, including, without limitation, brokers, banks, dealers or other agents or nominees (collectively, the "Voting Nominees") to distribute to Beneficial Holders of the claims on behalf of which the Voting Nominee acts. Master Ballots will be delivered to Voting Nominees after the Solicitation Packages have been distributed to the Voting Nominees. The Debtors shall be responsible for each such Voting Nominee's reasonable and customary out-of-pocket expenses associated with (i) distribution of the Beneficial Ballots and Solicitation Packages to the Beneficial Holders; (ii) tabulation of the Beneficial Ballots; and (iii) completion of Master Ballots; and it is further

**ORDERED** that Voting Nominees, with respect to any Voting Securities, are ordered to do the following within five (5) business dates of the receipt of the Solicitation Packages:

(a) Forward a Solicitation Package (including a Beneficial Ballot) to each Beneficial Holder as of the Record Date and include a return envelope provided by and addressed to the Voting Nominee so that the Beneficial Holder can return the completed Beneficial Ballot directly to the Voting Nominee. The Voting Nominee should advise the Beneficial Holders to return their Beneficial Ballots to the Voting Nominee by a date calculated by the Voting

        Nominee to allow it to prepare and return the Master Ballot to Epiq by the Voting Deadline (as defined below). After Beneficial Ballots are returned, the Voting Nominee will summarize on the appropriate Master Ballot the votes and other Beneficial Ballot information of its respective Beneficial Holders as reflected in all properly completed and signed Beneficial Ballots, and then return the Master Ballot to the Voting Agent by the Voting Deadline; or

(b)    Distribute pre-validated Ballots pursuant to the following procedures:

    (i)    The Voting Nominee shall forward to each Beneficial Holder as of the Record Date the Solicitation Package or copies thereof (including (A) the Disclosure Statement; (B) an individual Beneficial Ballot that has been pre-validated, as indicated in paragraph (ii) below; and (C) a return envelope provided by and addressed to the Voting Agent);

    (ii)    To pre-validate a ballot, the Voting Nominee should complete the first item only and execute the Beneficial Ballot and indicate on the Beneficial Ballot the name of the Voting Nominee, the amount of securities held by the Voting Nominee for the Beneficial Holder and the account number(s) for the account(s) in which such securities are held by the Voting Nominee; and

    (iii)    The Beneficial Holder shall return the pre-validated Ballot to the Voting Agent by the Voting Deadline; and it is further

**ORDERED** that the Voting Nominees shall be required to keep the original Beneficial Ballots received from Beneficial Holders, or, in the case of pre-validated ballots, a list of Beneficial Holders to whom pre-validated Beneficial Ballots were sent for a period of at least one (1) year after the Voting Deadline; and it is further

**ORDERED** that transmittal of Solicitation Packages to any holders of securities held exclusively through Euroclear Bank ("Euroclear") and Clearstream Bank ("Clearstream")

shall be deemed good, adequate and sufficient notice if it is delivered by electronic mail on or before the Solicitation Date to Euroclear and Clearstream, respectively; and it is further

**ORDERED** that, solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a claim and without prejudice to the rights of the Debtors in any other context, each holder of a claim within a class of claims entitled to vote to accept or reject the Plan shall be entitled to vote the amount of such claim as set forth in a timely filed proof of claim, or, if no proof of claim was filed, the amount of such claim as set forth in the Schedules, provided that:

(a) If a claim is deemed allowed in accordance with the Plan, such claim is allowed for voting purposes in the deemed allowed amount set forth in the Plan;

(b) If a claim for which a proof of claim has been timely filed is contingent or unliquidated and such claim has not been allowed, such claim will be temporarily allowed, for voting purposes only and not for allowance or distribution, in an amount equal to the greater of (i) $1.00 or (ii) that portion of the claim that is non-contingent or liquidated and as to which the Debtors have not filed an objection;

(c) If a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim is temporarily allowed in the amount so estimated or allowed by the Court for voting purposes;

(d) If the Debtors have served an objection to a claim at least ten (10) days prior to the Voting Deadline and the objection has not been adjudicated or otherwise resolved, such claim will be temporarily allowed, for voting purposes only and not for purposes of allowance or distribution, in the amount of $1.00, except to the extent and in the manner as may be otherwise set forth in the objection or as otherwise ordered by the Court;

(e) If a claim is listed in the Schedules as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the applicable bar date for the filing of proofs of claim established by the Court or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, unless the Debtors have consented otherwise in writing,

USActive 17296605.4                -7-

        such claim will be disallowed for voting purposes pursuant to Bankruptcy Rule 3003(c);

(f)    If a claim arises from or is related to an executory contract or lease that the Debtors have not yet assumed or rejected, such claim is temporarily allowed for voting purposes only and not for allowance or distribution in the amount of $1.00 or such other amount as the Debtors and the claim holder may agree;

(g)    If a claim is filed in the amount of $0.00, such claim shall not be entitled to vote; and

(h)    If a claim is filed in a currency other than U.S. Dollars, such claim shall be entitled to vote in the amount of $1.00; and it is further

**ORDERED** that any creditor seeking to challenge the allowance of is claim for voting purposes in accordance with the procedures set forth in this Order shall serve upon the Debtors and file with the Court (with a copy to chambers) a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such claim in a different amount for purposes of voting to accept or reject the Plan on or before three (3) business days before the Voting Deadline; and it is further

**ORDERED** that the Ballot of any creditor filing a motion pursuant to Bankruptcy Rule 3018(a) shall not be counted unless temporarily allowed by the Court for voting purposes, after notice and a hearing, which hearing may be held contemporaneously with the Confirmation Hearing; and it is further

**ORDERED** that with respect to the tabulation of Master Ballots and Ballots cast by Voting Nominees and beneficial owners, for purposes of voting, the amount that will be used to tabulate acceptance or rejection of the Plan will be the principal amount held as of the Record

Date (the "Record Amount").[3]  The following additional rules will apply to the tabulation of Master Ballots and Ballots cast by Voting Nominees and beneficial owners:

  (a)  Votes cast by beneficial owners through a Voting Nominee will be applied against the positions held by such entities in the securities as of the Record Date, as evidenced by the record and depository listings.  Votes submitted by a Voting Nominee, whether pursuant to a Master Ballot or pre-validated Ballots, will not be counted in excess of the Record Amount of such securities held by such Voting Nominee.

  (b)  To the extent that conflicting votes or "overvotes" are submitted by a Voting Nominee, whether pursuant to a Master Ballot or pre-validated Ballots, the Voting Agent will attempt to reconcile discrepancies with the Voting Nominees.

  (c)  To the extent that overvotes on a Master Ballot or pre-validated Ballots are not reconcilable prior to the preparation of the vote certification, the Voting Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Ballots that contained the overvote, but only to the extent of the Voting Nominee's position in the security.

  (d)  For purposes of tabulating votes, each beneficial owner will be deemed to have voted the principal amount relating to such security, although the Voting Agent may be asked to adjust such principal amount to reflect the claim amount, including prepetition interest; and it is further

**ORDERED** that (i) any Ballot that is otherwise properly completed, executed and timely returned to the Voting Agent but does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan, shall be deemed a vote to accept the Plan; (ii) if no votes to accept or reject the Plan are received with respect to a particular class

---

[3] In the case of securities held exclusively through Euroclear and Clearstream, the Voting Agent shall seek to confirm with Euroclear or Clearstream, as applicable, the Record Date position of any Voting Nominee that has cast a Master Ballot.

that is entitled to vote on the Plan, such class shall be deemed to have voted to accept the Plan; (iii) if a creditor casts more than one Ballot voting the same claim before the Voting Deadline, the latest dated, validly executed Ballot received before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede any prior Ballots;[4] (iv) creditors must vote all of their claims within a particular class with respect to each applicable Debtor under the Plan either to accept or reject the Plan, and may not split their votes within a particular class and thus, a Ballot (or a group of Ballots) within a particular class for a particular Debtor received from a single creditor that partially accepts and partially rejects the Plan shall be deemed to have voted to accept the Plan; and (v) except as otherwise provided in the Motion, for purposes of determining whether the numerosity and claim or interest amount requirements of sections 1126(c) and 1126(d) of the Bankruptcy Code have been satisfied, the Debtors will tabulate only those Ballots received by the Voting Deadline; and it is further

**ORDERED** that the following Ballots will not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected: (i) any Ballot received after the Voting Deadline unless the Debtors shall have granted in writing an extension of the Voting Deadline with respect to such Ballot; (ii) any Ballot that is illegible or contains insufficient information to permit the identification of the voter; (iii) any Ballot cast by a person or entity that does not hold a claim or interest in a class that is entitled to vote to accept or reject the Plan; (iv) any unsigned Ballot; and (v) any Ballot transmitted to the Voting Agent by facsimile or other electronic means, unless the Debtors in writing waive this requirement and accept alternate means of transmission or delivery of any Ballot; and it is further

---

[4] Likewise, if a claim holder submits more than one Ballot to a Voting Nominee, (a) the latest dated Ballot received before the submission deadline imposed by the Voting Nominee shall be deemed to supersede any prior Ballots submitted by the claim holder; and (b) the Voting Nominee shall complete the Master Ballot accordingly.

USActive 17296605.4                -10-

**ORDERED** that the Debtors are authorized to distribute the Notices of Non-Voting Status, substantially in the forms annexed as Exhibit E to the Motion, which (i) identify the treatment of the classes designated; (ii) set forth the manner in which a copy of the Plan and Disclosure Statement may be obtained; and (iii) provide notice of the Confirmation Hearing and the time fixed for filing objections to the Plan, as applicable to holders of claims in Classes 1, 2, 6 and 14, which classes are unimpaired and deemed to accept the Plan and thus are not entitled to vote, and to holders of claims and interests in Classes 9, 10, 11, 12 and 13, which classes will not receive any distributions under the Plan and are impaired and deemed to reject the Plan and thus are not entitled to vote; and it is further

**ORDERED** that the Debtors are not required to distribute copies of the Plan and Disclosure Statement to any member of Classes 1, 2, 6, 9, 10, 11, 12, 13, and 14, and notice of Non-Voting Status satisfies the requirements of the Bankruptcy Code and Bankruptcy Rules for notice of the Plan, Disclosure Statement and Confirmation Hearing with respect to members of Classes 1, 2, 6, 9, 10, 11, 12, 13, and 14; and it is further

**ORDERED** that the Rights Offering solicitation may be combined with the solicitation of acceptances for the Plan; and it is further

**ORDERED** that with regard to claims arising under the Senior Secured Credit Agreement and the Bridge Loan Agreement, the Debtors shall either (i) distribute Subscription Forms to the administrative agent(s) under each loan agreement for the agents to transmit to the individual lenders thereunder; or (ii) distribute the Subscription Forms directly to the lenders as of the Record Date as identified by the agents to the Debtors; and it is further

**ORDERED** that with regard to claims arising under the ARCO Notes and the Equistar Notes held through The Depository Trust Company ("DTC") by a bank or brokerage firm on behalf of beneficial owners, the Debtors shall distribute Subscription Forms to the bank

or brokerage firm holding such notes, which bank or brokerage firm shall forward information with respect to the Rights Offering to beneficial owners of those securities and to effect any exercise of Subscription Rights on their behalf through DTC's Automated Subscription Offer Program ("ASOP") system. Such firms may use the Subscription Forms (as applicable) provided or such other form as they may customarily use for the purpose of obtaining instructions with respect to a subscription on account of the beneficial owner's claim. In the event securities held exclusively through Euroclear and Clearstream are entitled to participate in the Rights Offering, the Debtors will distribute Subscription Forms and effect any exercise of Subscription Rights in accordance with the customary procedures of Euroclear and Clearstream, and their respective participants; and it is further

**ORDERED** that the Debtors shall provide the Subscription Form in substantially the form as set forth in Exhibit F to the Motion, to each Eligible Holder, together with appropriate instructions for the proper completion, due execution and timely delivery of the Subscription Form, as well as instructions for the payment of the applicable purchase price for that portion of the Subscription Rights that such holder may be entitled to acquire, with each Eligible Holder's Solicitation Package. The Debtors will also send a notice of the commencement of the Rights Offering, substantially in the form as Exhibit G to the Motion; and it is further

**ORDERED** that in order to exercise the Subscription Rights, each Eligible Holder must (A) (i) return a duly completed Subscription Form to the Subscription Agent (as defined in the Plan) so that such form is actually received by the Subscription Agent on or before the Rights Offering Expiration Date and (ii) pay or arrange for payment to the Subscription Agent on or before the Rights Offering Expiration Date, or by DTC to the Subscription Agent, such holder's purchase price (the "Subscription Purchase Price") in accordance with the wire

instructions set forth on the Subscription Form or by certified bank or cashier's check delivered to the Subscription Agent along with the Subscription Form; or (B) in the case of securities held through DTC, send the subscription form to the relevant bank or brokerage firm (or follow such firm's directions with respect to submitting subscription instructions to the firm) with enough time for the bank or brokerage firm to effect the subscription through DTC; or (C) in the case of securities held through Euroclear or Clearstream, follow the established procedures; in each case all on or before the Rights Offering Expiration Date; and it is further

**ORDERED** that if the Subscription Agent for any reason does not receive from an Eligible Holder or DTC both a duly completed Subscription Form or equivalent instructions from DTC on or prior to the Rights Offering Expiration Date and immediately available funds in an amount equal to such holder's Subscription Purchase Price on or prior to the Rights Offering Expiration Date, or payment by DTC, such holder shall be deemed to have relinquished and waived its right to participate in the Rights Offering.  Each Eligible Holder intending to participate in the Rights Offering must affirmatively elect to exercise its Subscription Right(s) on or prior to the Rights Offering Expiration Date; and it is further

**ORDERED** that the Debtors may adopt, as necessary and in consultation with the Rights Offering Sponsor and the Creditors' Committee, any additional detailed procedures consistent with the provisions of the Rights Offering; and it is further

**ORDERED** that the Confirmation Hearing will commence on November 30, 2009 beginning at [__:__ _.m.] (prevailing Eastern time), and if required, will continue on such further date and time as may be announced in Court without any further notice other than such in-Court announcement; and it is further

-14-

**ORDERED** that the procedures set forth in the Motion for notice of the Confirmation Hearing, including the Confirmation Hearing Notice substantially in the form annexed to the Motion as Exhibit C, are approved; and it is further

**ORDERED** that objections to the confirmation or proposed modification of the Plan shall (i) be in writing, (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party, (iii) state with particularity the basis and nature of any objection or proposed modification to the Plan, and (iv) be filed, together with proof of service, with the Court and served so as to be actually received by: (a) the Clerk of the Court, (b) attorneys for the Debtors, (c) attorneys for the Creditors' Committee, (d) attorneys for the postpetition lenders, and (e) the U.S. Trustee no later than 4:00 p.m. (prevailing Eastern time), on the date that is five (5) business days prior to the Confirmation Hearing; and it is further

**ORDERED** that the Debtors are authorized to make nonsubstantive changes to the Disclosure Statement, the Plan, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages, prior to their mailing; and it is further

**ORDERED** that the Debtors are authorized to take or refrain from taking any action necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court.

Dated: _____, 2009
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE