**EXHIBIT B**

**Liquidation Analysis**

# LyondellBasell Industries AF S.C.A., et al.
## Hypothetical Liquidation Analysis

*March 6, 2010*

## CONTENTS

Page

A.    Introduction                                                                    1

B.    General Approach and Summary Results of the Liquidation Analysis    2

C.    Obligor Debtors Liquidation Analysis                                       6

D.    Non-Obligor Debtors with Assets                                          12

E.    Non-Obligor Debtors with No Assets                                       14

F.    Summary of Conclusions                                                   14


*Exhibit 1*       Categories of Debtor Entities
*Exhibit 2*       Obligor Debtors Liquidation Analysis
*Exhibit 3*       EAI Entities Liquidation Analysis
*Exhibit 4*       LyondellBasell Advanced Polyolefins USA Inc. Liquidation Analysis
*Exhibit 5*       MHC Inc. Liquidation Analysis
*Exhibit 6*       Millennium Holdings LLC Liquidation Analysis
*Exhibit 7*       Millennium Petrochemicals Inc. (Virginia) Liquidation Analysis
*Exhibit 8*       Millennium Specialty Chemicals Inc. Liquidation Analysis
*Exhibit 9*       Allocation of $450 million Lender Litigation Settlement


*Appendix I*    American Appraisal Inc. Liquidation Appraisal Report

# LyondellBasell Industries AF S.C.A., et al.
## Hypothetical Liquidation Analysis

A.    Introduction

Under the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides each holder of a claim or interest who does not accept the plan, with property of a value (as of the effective date of the Plan) that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. The Debtors believe that the Plan meets the "best interests of creditors" test as set forth in section 1129(a)(7) of the Bankruptcy Code. Classes 3, 4, 5, 7A, 7B, 7C, 7D, 8, 9, 10, 11, 12 and 13 are impaired under the Plan. The Debtors believe that the holders of Allowed Claims in each impaired class will receive at least as much under the Plan as they would if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

To demonstrate that the Plan satisfies the "best interests of creditors" test, the Debtors present the following hypothetical liquidation analysis ("Liquidation Analysis"), based on certain assumptions discussed herein. Capitalized terms not defined herein shall have the meanings ascribed to them in the Disclosure Statement to which this analysis is attached as Exhibit B. The Liquidation Analysis was prepared by AP Services LLC ("APS"), one of the Debtors' professionals, with the assistance of management and other professionals retained by the Debtors. Underlying the Liquidation Analysis are a number of estimates and assumptions that are inherently subject to significant economic, competitive and operational uncertainties and contingencies beyond the control of the Debtors. The Liquidation Analysis assumes that there are no proceeds from the recoveries of any potential preferences, fraudulent conveyances, or other causes of action, and no value was assigned to additional proceeds that might result from the sale of certain items with intangible value. The Debtors believe the Liquidation Analysis and the conclusions set forth herein are fair and accurate, and represent the best judgment of APS and management with regard to the results of a chapter 7 liquidation of the Debtors.

The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good-faith estimate of the proceeds that would be generated if the Debtors were liquidated in accordance with chapter 7 of the Bankruptcy Code, and it is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants.

NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATIONS OR WARRANTY THAT ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS PRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.

The Liquidation Analysis is predicated on conversion of the Debtors' chapter 11 cases to chapter 7 liquidation on April 30, 2010.  The balance sheets of each of the Debtors and their direct and indirect non-Debtor subsidiaries as of December 31, 2009 are used as reasonable proxies for their respective April 30, 2010 balance sheets.

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of Claims listed on the Debtors' Schedules and Proofs of Claim filed to date.  In addition, the Liquidation Analysis includes estimates for Claims not currently asserted in these Chapter 11 Cases, but which could be asserted and Allowed in the future or asserted and Allowed in a chapter 7 liquidation, including Administrative Expenses, wind-down costs, trustee fees, and tax liabilities.

B.      General Approach and Summary Results

The Plan constitutes 94 distinct chapter 11 plans, one for each Debtor.  Although each of the 94 Debtors was individually analyzed for purposes of this Liquidation Analysis, they have been placed into categories in order to simplify presentation.  The chart below presents the categories and the number of Debtors within each.[1]

| Category | 7-A | 7-B | 7-C | 7-D | Total |
|---|---|---|---|---|---|
| Obligor Debtors | 31 | 0 | 0 | 6 | 37 |
| Non-Obligor Debtors with Assets | 0 | 6 | 2 | 0 | 8 |
| Non-Obligor Debtors with No Assets[2] | 0 | 48 | 1 | 0 | 49 |
| Total | 31 | 54 | 3 | 6 | 94 |

*7-A – Non-Schedule III Obligor Debtors*
*7-B – Non-Obligor Debtors*
*7-C – MSC, MPI and MPCO*
*7-D – Schedule III Obligor Debtors*

The proceeds from the hypothetical liquidation of all assets of the 37 Obligor Debtors and the eight Non-Obligor Debtors with Assets were estimated based on the assumptions discussed below, and then applied to the estimated values of Claims against such Debtors to determine liquidation recovery estimates for each Class of Claims and Interests under the Plan.  These liquidation recovery estimates were compared to the estimated chapter 11 recoveries under the Plan.  As shown in the table below, for each Class of Claims or Interests, liquidation under chapter 7 of the Bankruptcy Code would yield recoveries that

---

[1] Exhibit 1 lists all 94 Debtors, by category.

[2] Certain of these entities have relatively few assets, but either no Claims against them have been scheduled or filed, or if Claims have been filed, such Claims are not expected to be Allowed, or the assets are so minimal that the result would be a 0% recovery when applied to the Claim population.

are no better than—and, in many cases, worse than—the recoveries available under the chapter 11 Plan.

| Class | Description | Estimated Recovery | |
|---|---|---|---|
| | | Ch. 11 Plan (%)* | Liquidation (%) |
| -- | Administrative Expenses | 100.0 | 0.0 |
| -- | DIP New Money Claims and DIP ABL Claims | 100.0 | 100.0 |
| -- | Priority Tax Claims | 100.0 | 0.0 |
| 1 | Priority Non-Tax Claims | 100.0 | 0.0 |
| 2 | Secured Tax Claims | 100.0 | 0.0 |
| 3 | DIP Roll-Up Claims | 100.0 | 41.0 |
| 4 | Senior Secured Claims | 66.1 - 77.2[3] | 8.0 |
| 5 | Bridge Loan Claims | 6.3 | 0.0 |
| 6 | Other Secured Claims | 100.0 | 0.0 |
| 7-A | General Unsecured Claims Against the Non-Schedule III Obligor Debtors[4] | 16.8 | 16.8 |
| 7-B | General Unsecured Claims Against Non-Obligor Debtors | | |
| | Basell Capital Corporation | N/A | 0.0 |
| | Basell Impact Holding Company | N/A | 0.0 |
| | Circle Steel Corporation | N/A | 0.0 |
| | Duke City Lumber Company, Inc. | 0.0 | 0.0 |
| | Equistar Bayport, LLC | 0.0 | 0.0 |
| | Equistar Funding Corporation | N/A | 0.0 |
| | Equistar Polypropylene, LLC | N/A | 0.0 |
| | Equistar Transportation Company, LLC | N/A | 0.0 |
| | Glidco Leasing, Inc. | N/A | 0.0 |
| | Glidden Latin America Holdings Inc. | N/A | 0.0 |
| | HOISU Ltd. | 0.0 | 0.0 |
| | HPT 28 Inc. | N/A | 0.0 |
| | HPT 29 Inc. | N/A | 0.0 |
| | HW Loud Company | N/A | 0.0 |
| | IMWA Equities II, Co., L.P. | N/A | 0.0 |
| | ISB Liquidating Company | N/A | 0.0 |
| | LeMean Property Holdings Corporation | N/A | 0.0 |
| | LPC Partners Inc. | N/A | 0.0 |
| | Lyondell Asia Pacific, Ltd. | 0.0 | 0.0 |
| | LyondellBasell Advanced Polyolefins USA Inc. | 100.0 | 38.0 |
| | LyondellBasell AF GP S.à.r.l. | 100.0 | 0.0 |

---

* N/A indicates that no Claims have been scheduled or filed, or if filed, are expected to be Allowed.  Recoveries were determined on a post-Rights Offering basis.

[3] The holders of Senior Secured Facility Claims will receive a recovery of 66.1% due to the portion of their recovery allocated to the Settlement Consideration and Class 5.

[4] Claims in Classes 7-A, 7-C, 7-D and 8 will receive $450 million in the hypothetical liquidation analysis pursuant to the Lender Litigation Settlement, which is not conditioned upon the confirmation of the chapter 11 Plan.  For purposes of the Liquidation Analysis, the $450 million is paid out of the cash collateral or total recovery estimated for the holders of Senior Secured Facility Claims and Bridge Loan Claims.

| Class | Description | Estimated Recovery | |
|---|---|---|---|
| | | Ch. 11 Plan (%)* | Liquidation (%) |
| | Lyondell Bayport, LLC | N/A | 0.0 |
| | Lyondell Chemical Holding Company | N/A | 0.0 |
| | Lyondell Chemical International Company | N/A | 0.0 |
| | Lyondell Chemical Properties, L.P. | N/A | 0.0 |
| | Lyondell Chemical Wilmington, Inc. | N/A | 0.0 |
| | Lyondell General Methanol Company | N/A | 0.0 |
| | Lyondell Greater China, Ltd. | 100.0 | 100.0 |
| | Lyondell Intermediate Holding Company | N/A | 0.0 |
| | MHC Inc. | 1.07 | 0.0 |
| | Millennium Holdings, LLC | 0.36 | 0.2 |
| | Millennium Petrochemicals LP LLC | N/A | 0.0 |
| | Millennium Realty Inc. | 0.0 | 0.0 |
| | MWH South America LLC | N/A | 0.0 |
| | National Distillers & Chemical Corporation | 0.0 | 0.0 |
| | NDCC International II | N/A | 0.0 |
| | Penn Export Company, Inc. | N/A | 0.0 |
| | Penn Navigation Company | N/A | 0.0 |
| | Penn Shipping Company, Inc. | 0.0 | 0.0 |
| | Penntrans Company | N/A | 0.0 |
| | PH Burbank Holdings, Inc. | 0.0 | 0.0 |
| | Power Liquidating Company, Inc. | N/A | 0.0 |
| | Quantum Acceptance Corp. | N/A | 0.0 |
| | Quantum Pipeline Company | 0.0 | 0.0 |
| | SCM Chemicals Inc. | N/A | 0.0 |
| | SCM Plants, Inc. | 0.0 | 0.0 |
| | Suburban Propane GP, Inc. | 0.0 | 0.0 |
| | Tiona, Ltd. | 0.0 | 0.0 |
| | UAR Liquidating Inc. | N/A | 0.0 |
| | USI Chemicals International Inc. | N/A | 0.0 |
| | USI Credit Corp. | N/A | 0.0 |
| | USI Puerto Rico Properties, Inc. | N/A | 0.0 |
| | Walter Kidde & Company, Inc. | N/A | 0.0 |
| | Wyatt Industries, Inc. | 0.0 | 0.0 |
| 7-C | General Unsecured Claims Against MSC, MPI and MPCO | | |
| | Millennium Specialty Chemicals Inc. | 39.3 | 18.3* |

16.8 percentage points of this recovery is on account of the Settlement Consideration, and accordingly, the holders of Senior/Bridge Guarantee Claims at this Class do not participate in that portion of the recovery, but share pro rata in any recovery in excess of the proceeds from the Settlement Consideration (and in any Excess Recoveries).

** 16.8 percentage points of this recovery is on account of the Settlement Consideration, and accordingly, the holders of Senior/Bridge Guarantee Claims at this Class do not participate in that portion of the recovery, but share pro rata in any recovery in excess of the proceeds from the Settlement Consideration (and in any Excess Recoveries).  As set forth in Section 4.10 of the Plan, holders of General Unsecured Claims and Senior/Bridge Deficiency Claims against each Schedule III Obligor Debtor (other than MCI) will also be entitled to receive a contractual right from the applicable MCI

| | | | |
|---|---|---|---|
| | Millennium Petrochemicals Inc. | 80.2* | 23.8* |
| | Millennium US Op Co LLC | 16.8* | 16.8* |
| 7-D | General Unsecured Claims Against Schedule III Obligor Debtors | | |
| | Millennium America Holdings Inc. | 16.8** | 16.8** |
| | Millennium America Inc. | 16.8[5] ** | 16.8** |
| | Millennium Chemicals Inc. | 16.8** | 16.8** |
| | Millennium Petrochemicals GP LLC | 16.8** | 16.8** |
| | Millennium Petrochemicals Partners, LP | 16.8** | 16.8** |
| | Millennium Worldwide Holdings I Inc. | 16.8** | 16.8** |
| 8 | 2015 Notes Claims | 0-15.7 | 0-15.7 |
| 9 | Securities Claims | N/A | N/A |
| 10 | Subordinated Claims | N/A | N/A |
| 11 | Equity Interests in LBFC | N/A | N/A |
| 12 | Equity Interests in LBAFGP and LBIAF | N/A | N/A |
| 13 | Equity Interests in Schedule III Debtors | N/A | N/A |
| 14 | Equity Interests in Debtors (other than LBFC, LBAFGP, LBIAF and Schedule III Debtors) | N/A | N/A |

As the chart above demonstrates, the DIP New Money Claims and DIP ABL Claims are estimated to receive 100% recoveries both under the Plan and in any hypothetical liquidation scenario. The DIP Roll-Up Claims and Senior Secured Claims are expected to receive more under the Plan than in a liquidation. Aside from the $450 million recovery to holders of General Unsecured Claims against the Obligor Debtors, MSC, MPI and MPCO, and holders of 2015 Notes pursuant to the Lender Litigation Settlement, no recoveries should be expected for Claims other than DIP loans and Senior Secured Claims in a liquidation of the Obligor Debtors. Certain of the Non-Obligor Debtors are expected to provide recoveries to certain other creditors, but in no event could such creditors expect to receive more in a chapter 7 liquidation than under the Plan.

Liquidation proceeds are distributed to creditors pursuant to the DIP Order and in accordance with absolute priority. As such, liquidation proceeds from U.S. Debtors first go to satisfy the carved-out professional fees and DIP New Money Claims, with any excess being distributed to the DIP Roll-Up Claims and then Senior Secured Claims. Liquidation proceeds from EAI entities are distributed pro rata to the DIP Roll-Up and Senior Secured Claims. The first $450 million of proceeds distributable to the holders of Senior Secured Facility Claims and Bridge Loan Claims will be transferred to the chapter 7 trustee to be distributed on a Pro Rata basis to the holders of General Unsecured Claims against the Obligor Debtors, MSC, MPI and MPCO, and the holders 2015 Notes pursuant to the Lender Litigation Settlement. See Exhibit 2 for the allocation of the $450 million Settlement Consideration. To the extent the DIP Roll-Up Claims are not paid in full from

Subsidiary. In addition, holders of General Unsecured Claims and Senior/Bridge Deficiency Claims against MCI will be entitled to receive a beneficial trust interest in the Millennium Custodial Trust.
[5] If the Millennium Notes Plan Conditions are satisfied, holders of Millennium Notes Claims will receive additional value as part of the Lender Litigation Settlement as set forth in Section 4.10 of the Plan.

the EAI liquidation proceeds, the remaining liquidation proceeds from the U.S. Debtors (after paying carved-out professional fees and DIP New Money Claims) are used to satisfy the DIP Roll-Up Claims before the Senior Secured Claims.

> Carved-out professional fees and DIP New Money Claims get paid in full from U.S. Debtor liquidation proceeds;

> DIP Roll-Up and Senior Secured Claims share *pari passu* in EAI liquidation proceeds;

> First $450 million of proceeds distributable to the holders of Senior Secured Facility Claims and Bridge Loan Claims are used to pay the holders of General Unsecured Claims against the Obligor Debtors, MSC, MPI and MPCO, and the holders of 2015 Notes pursuant to the Lender Litigation Settlement;

> Remaining proceeds from Obligor Debtors pay DIP Roll-Up Claims, but not in full;

> DIP Roll-Up Claims midpoint recovery = 41%

> Senior Secured Claims midpoint recovery = 8%

The eight Non-Obligor Debtors with Assets have been evaluated on a case-by-case basis, as set forth below. The Liquidation Analysis for five of these entities has been performed in detail, while a high-level review reveals that the results for the three other entities would be essentially equivalent to the Plan (either full recoveries or no recoveries).

Lastly, by definition, the 49 Non-Obligor Debtors with No Assets have no assets. Therefore, there are equally no recoveries available to any creditors of these entities either under the Plan or in a chapter 7 liquidation.


C.    Liquidation Analysis for Obligor Debtors

Exhibit 2 presents a summary of the Liquidation Analysis results for the Obligor Debtors. The assumptions used to estimate net proceeds in a chapter 7 liquidation are presented below. Exhibit 3 presents a summary of the Liquidation Analysis results for the EAI entities, and the estimated net proceeds from the EAI assets are included in Exhibit 2 and factored into the distributions to creditors of the Obligor Debtors. The liquidation recovery rate assumptions provided below are the same for the assets of both the Obligor Debtors and the EAI entities, except where noted.

*Book Values*
> Unless stated otherwise, the book values used in this Liquidation Analysis are the un-audited net book values of the Debtors as of December 31, 2009 and are assumed to be a proxy for the assets of these entities as of the hypothetical conversion date (April 30, 2010).

The book values have not been subject to any review, compilation or audit by an independent accounting firm.

*Cash and Cash Equivalents and Short-Term Investments*

The Liquidation Analysis assumes that operations during the liquidation period would not generate additional cash available for distribution except for net proceeds from the disposition of non-cash assets.

The liquidation value for all entities is estimated to be approximately 100% of the net book value as of December 31, 2009.

*Trade Accounts Receivable*

The analysis of accounts receivable assumes that a chapter 7 trustee would retain certain existing staff of the Debtors to handle an aggressive collection effort for outstanding trade accounts receivable for the entities undergoing an orderly liquidation.

Collectible accounts receivable are assumed to include all third-party trade accounts receivable.

A range of discount factors based on the January 1, 2010 U.S. asset backed facilities effective advance rates were applied to receivables to estimate liquidation values.

Collections during a liquidation of the Debtors may be further compromised by likely claims for damages for breaches of (or the likely rejection of) customer contracts, and attempts by customers to set off outstanding amounts owed to the Debtors against such claims.

The liquidation values of trade accounts receivable were estimated at 60.0% to 70.0% of the net book value as of December 31, 2009 for purposes of this Liquidation Analysis.

*Other Receivables*

Income Tax Receivable – This account reflects IRS tax receivables with estimated recoveries in the range of 0% to 20% of net book value, per discussion with the Debtors' tax department.

Receivables: Other Miscellaneous – Other miscellaneous receivables accounts include a federal fuels refund, license fees, and the global settlement of Bayer fixed costs (a monthly payment arrangement over three years). The range for recoverability of these assets is 8% to 15% based on the Debtors' knowledge of these assets.

Deferred Tax Assets – Estimated to be 0% of the net book value in a chapter 7 liquidation scenario.

Other receivables are included on balance sheets that do not relate to core businesses and are from a limited number of customers. The range for recoverability of such assets is estimated at 18% to 33% due to collectibility issues and the current bankruptcy status of the Debtors.

Certain of these assets have different percentage assumption differences for EAI assets based on discussions with the Debtors' management.

*Intercompany Receivables*

There are four types of intercompany receivables assets of the Obligor Debtors, listed below, that are assumed to have no value in a chapter 7 liquidation scenario:

- o Receivables from Obligor Debtor Entities – As explained above, Obligor Debtors provide no recovery to unsecured creditors, which makes these intercompany claims worthless.

- o Receivables from Non-Obligor Debtor Entities – The Obligor Debtors have no intercompany receivables from Non-Obligor Debtor Entities that have asset values.

- o Receivables from North American Non-Debtors – The Obligor Debtors have no intercompany receivables from North American Non-Debtors that have asset values.

- o Receivables from EAI Non-Debtors – As explained above, this Liquidation Analysis assumes that the liquidation asset values of EAI entities are available to the DIP Roll-Up Claims and the Senior Secured Claims. Therefore, there are no asset values from EAI entities remaining for unsecured creditors, which makes these intercompany receivable assets of the Obligor Debtors worthless in a chapter 7 liquidation.

- o It is also assumed that intercompany receivable assets of the EAI entities have no value.

*Inventory*

The Debtors' inventories are comprised of raw materials, work-in-process ("<u>WIP</u>") and finished goods, as well as supplies and materials.

Types of inventory products include polymers (polyethylene and polypropylene), chemicals (ethylene and propylene), and refining products (such as gasoline, diesel, and jet fuel).

The recovery analysis was performed by reviewing the external field examination and bank appraisal by entity for the period ending September 30, 2009, which was in effect at the end of 2009.

The September 30, 2009 gross recovery advance rates for raw materials, WIP and finished goods were discounted by approximately 7% for ineligibles to reflect the recovery ranges for each entity whose inventory secures bank financing.

The "supplies and materials" component of inventory is assumed to have a recovery range of 50% to 75% for all entities.

The recovery ranges vary by entity and type of inventory, as presented in the table below.

The products produced in EAI are primarily polymers and chemicals, and the inventory liquidation assumptions for EAI approximate those of Basell USA Inc.

|  | Lyondell Chemical Company | Basell USA Inc. | Equistar Chemicals, LP | Houston Refining LP | Millennium Petrochemicals, Inc. (Virginia) |
|---|---|---|---|---|---|
| Raw Materials | 68.7% - 78.7% | 60.9% - 70.9% | 69.9% - 79.9% | 71.6% - 81.6% | 57.3% - 67.3% |
| Work-In-Process | 54.5% - 64.5% | 68.7% - 78.7% | 64.7% - 74.7% | 67.6% - 77.6% | 57.3% - 67.3% |
| Finished Goods | 67.3% - 77.3% | 68.7% - 78.7% | 79.6% - 89.6% | 67.6% - 77.6% | 73.2% - 83.2% |

*Prepaids and Other Current Assets*

Prepaid expenses and other current assets include prepaid taxes, prepaid insurance, prepaid rents and leases, and other current assets.

Prepaid expenses and other current assets are estimated to have no value in a liquidation scenario.

*Property, Plant, and Equipment ("PP&E")*

PP&E includes all owned land, land improvements and buildings, battery limit process units, off sites, support assets and construction in progress.

Appendix I is a report prepared by American Appraisal Associates, Inc. that includes projected liquidation values of PP&E as of April 1, 2010 that were used for this Liquidation Analysis.

*Investments and Long-Term Receivables*

Investments and long-term receivables are comprised of a VAT refund, an investment in an insurance company, and a long-term note receivable pertaining to a tax sharing agreement.

The VAT receivable is considered to be a likely collection and is assumed to have a recovery range of 80% to 100%.

The long-term tax sharing receivable is assumed to have a recovery range of 0% to 10%, because the Debtors have no control over collection inasmuch as the timing of monetizing the receivable is at the discretion of a third party that may or may not decide to monetize its tax attributes.

Certain of these assets have different percentage assumption differences for EAI assets based on discussions with the Debtors' management.

EAI equity investments in joint ventures are shown on the balance sheet at the cost of the original investment adjusted for dividends received. The liquidation value for these investments in joint ventures has been estimated by applying an equity and liquidation discount rate to the forecasted dividends from 2010 to 2025 in addition to an estimated terminal value.

*Intercompany Investments*

As explained in the summary above, values for investments associated with all EAI entities have been included in this Liquidation Analysis at estimated liquidation values.

There are 21 Non-Debtor entities and one Non-Obligor Debtor entities (Lyondell Greater China, Ltd.) with estimated aggregate values in the range of $336 million to $373 million. The intercompany investment values of the Obligor Debtors are listed below. All other Non-Debtor entities are valued at $0.

9

**Obligor Debtor North American Non-Debtor**
**Intercompany Investments Summary**
($ millions)

| | Low | High |
|---|---|---|
| Basell Mexico, S. de R.L. de C.V. | $1.1 | $1.1 |
| Baselltech USA Inc. | 0.0 | 0.0 |
| Lyondell Advanced Polyolefins USA Inc. | 0.0 | 0.0 |
| Lyondell Asia Holdings Limited (Hong Kong) | 0.0 | 0.0 |
| Lyondell Centennial Corp. | 27.5 | 35.4 |
| Lyondell Chemical Italia S.r.l.(Italy) | 0.0 | 0.0 |
| Lyondell Chimie France SAS (France) | 0.0 | 0.6 |
| Lyondell Chimie TDI SCA (France) | 7.5 | 7.6 |
| Lyondell China Holdings Limited (Hong Kong) | 0.2 | 0.2 |
| Lyondell France Holdings SAS (France) | 55.4 | 69.2 |
| Lyondell Greater China, Ltd. | 83.5 | 94.5 |
| Lyondell Greater China Holdings Ltd. Hong Kong Corp | 0.1 | 0.1 |
| Lyondell Greater China Trading Limited (PRC) | 1.9 | 2.1 |
| Lyondell POJV GP, LLC | 0.0 | 0.0 |
| Lyondell POTech GP, Inc. | 0.1 | 0.1 |
| Lyondell POTech LP, Inc. | 0.1 | 0.1 |
| Olefins JV LPC | 93.8 | 95.5 |
| PO JV, LP | 41.0 | 41.0 |
| PO Offtake, LP | 0.0 | 0.0 |
| POSM Delaware, Inc. | 0.0 | 0.0 |
| POSM II Limited Partnership, L.P. | 23.9 | 25.4 |
| POSM II Properties Partnership, L.P. | 0.0 | 0.0 |
| Smith Corona Marchant Finance A.G. Swiss Corp | 0.1 | 0.1 |
| | $336.1 | $373.1 |

*Equity amounts presented in the table above are inclusive of ownership percentages.*

*Intangible Assets*

Intangible assets are comprised primarily of patents, technology related to licensing revenue and catalysts, emission rights, and unamortized debt financing costs.

Appendix I is a report prepared by American Appraisal Associates, Inc. that includes liquidation values of intangible assets that were used for this Liquidation Analysis.

Included in intangible assets are unamortized debt issuance/financing costs, which are assumed to have a $0 liquidation value.

*Insurance Proceeds*

Insurance proceeds related to business disruption and property damage claims from hurricane Ike have been estimated by legal entity.

*Other Long-Term Assets*

Other long-term assets include pension assets, cash value of life insurance policies, precious metals, non-current restricted cash and non-current assets held for sale.

Pension Assets – MHC Inc. holds pension assets that in the course of a liquidation scenario would be turned over to the Pension Benefit Guaranty Corporation (explained further below).

Cash Surrender Value of Life Insurance – Life insurance is held on the books at cash surrender value, which is assumed to be 100% recoverable.

Precious Metals – Millennium Petrochemicals, Inc. (Virginia) holds precious metals (rhodium, gold, and silver). These metals are assumed to generate a recovery rate of 85% to 95% based on a recent analysis performed by the Debtors.

Other Non-Current Assets – Included in this account is additional cash surrender value of life insurance valued at 100%, deferred railcar charges (similar to a prepaid asset) valued at 0%, and an R&D facility in Maryland that is held for sale and expected to have limited value based on how difficult it has been to sell it.

*Costs Associated with Liquidation*

Payroll/Overhead – Wind-down costs include the costs to retain certain key employees and maintain critical corporate operations during wind–down, and are estimated at 2% of gross asset proceeds.

Liquidation Costs of PP&E – Liquidation costs are based on historical experience in other chapter 7 cases and are calculated at 10% of the gross PP&E proceeds.

Chapter 7 Trustee Fees – Trustee fees are estimated based on historical experience in other chapter 7 cases and are calculated at 3% of the gross asset proceeds. The same percentage assumption is used for Insolvency Practitioner fees of European insolvencies of the EAI assets.

Chapter 7 Professional Fees – The professional fees include the cost of attorneys, (including specialized environmental counsel), financial advisors, accountants, brokers and other professionals retained by a chapter 7 trustee. It is assumed that professional fees would be 1.5% of gross asset proceeds.

EAI claims are deducted against proceeds available from EAI assets, and the net proceeds are added to the Obligor Debtors' proceeds in the Liquidation Analysis. The EAI claim reductions are based on approximate December 31, 2009 balance sheet amounts for those EAI entities that have positive equity values.

Additional redundancy costs have been added to the liquidation assumptions of the EAI entities as follows:

- o   EAI redundancy costs were estimated by legal entity based on an assessment of the following jurisdictions: Benelux, Germany, Spain, France, Great Britain, Italy and The Netherlands.

- o   An estimated factor was developed for each jurisdiction indicating severance pay relative to the salary and tenure of the respective employees as of September 2009. The estimated factor considers union influences as well as the impact of a large case and associated publicity.

11

o  Redundancy costs per employee were calculated by multiplying the average monthly salary per employee, assuming 13 periods per year, times the average years of service times the estimated factor.

o  Headcounts by legal entity were provided as of September 2009 in order to develop redundancy costs by legal entity.


D.    <u>Liquidation Analysis for Non-Obligor Debtors with Assets</u>

Exhibits 4 through 8 present the results for the Liquidation Analysis for the five Non-Obligor Debtors explained in detail below.  As noted above, the eight Debtors in this category include five entities that have been evaluated on a case-by-case basis and three entities for which even a high-level review reveals recoveries that would be essentially equivalent to those under the Plan (either 100% recoveries or none at all).

*LyondellBasell Advanced Polyolefins USA Inc.*

The liquidation value is based on the independent appraisals of PP&E and the asset recovery assumptions above, resulting in a midpoint estimate of approximately $11.4 million.

The costs associated with liquidation represent the same percentage of asset value assumptions as used for the Obligor Debtors, as explained above.

The midpoint estimate for total claims against this entity approximates $13.5 million, which results in a 100% recovery for secured, priority and administrative creditors and a 38% recovery for general unsecured creditors.

The Plan provides for an estimated full recovery for all creditors of this entity and, therefore, creditors would receive less in a chapter 7 liquidation than they will receive under the Plan.

*MHC Inc.*

The only valuable assets of this entity include pension plan assets of approximately $16.8 million.

Pension plan assets are fully offset by pension liabilities.

No other assets are available for distribution, resulting in a 0% recovery for all other creditors.

*Millennium Holdings LLC*

The only valuable asset of this entity is cash of $8.5 million.

Costs of liquidation are assumed to be $0 with the exception of chapter 7 trustee fees of 3% of gross asset proceeds.

The estimated midpoint liquidation recovery for general unsecured creditors is approximately 0.2%, which is less than the recovery for general unsecured creditors of this entity under the Plan.

*Millennium Petrochemicals Inc. (Virginia)*

The liquidation value is based on the independent appraisals of PP&E and the asset recovery assumptions above, resulting in a midpoint estimate of approximately $162 million.

The costs associated with liquidation represent the same percentage of asset value assumptions as used for the Obligor Debtors, as explained above.

There are sufficient assets proceeds to satisfy all estimated secured, administrative and priority claims.

General unsecured claims are $439 million, because this entity is an unsecured guarantor of the Senior Facilities Agreement and Bridge Facilities Agreement, resulting in an estimated midpoint liquidation recovery for general unsecured creditors of approximately 23.5%, which is less than the recovery for general unsecured creditors of this entity under the Plan.

*Millennium Specialty Chemicals Inc.*

The liquidation value is based on the independent appraisals of PP&E and the asset recovery assumptions above, resulting in a midpoint estimate of approximately $51 million.

The costs associated with liquidation represent the same percentage of asset value assumptions as used for the Obligor Debtors, as explained above.

There are sufficient assets proceeds to satisfy all estimated secured, administrative and priority claims.

General unsecured claims are $369 million, because this entity is an unsecured guarantor of the Senior Facilities Agreement and Bridge Facilities Agreement, resulting in an estimated midpoint liquidation recovery for general unsecured creditors of approximately 18.0%, which is less than the recovery for general unsecured creditors of this entity under the Plan.

*Other Non-Obligor Debtors with Assets*

There are three other Debtors in this category, the creditors of which would receive no more under a chapter 7 liquidation than they will receive under the Plan.

*Lyondell Greater China, Ltd.* – All creditors of this Debtor will be satisfied in full under the Plan. Therefore, it is not possible for creditors to receive more in a chapter 7 liquidation.

*Lyondell Chemical International Co.* – The only asset of this Debtor is its equity in Lyondell Greater China, Ltd., listed immediately above. The Debtors do not believe this Debtor has any creditors. Therefore, any equity value that may be realized from Lyondell Greater China, Ltd. would stream up to this entity's direct parent, Lyondell Chemical Company (an Obligor Debtor). The equity value of Lyondell Greater China, Ltd. is included above in the intercompany investments values for the Obligor Debtors.

*Lyondell Asia Pacific, Ltd.* – The only valuable asset of this Debtor is cash of $0.5 million. This entity has administrative claims of $1.2 million and therefore, there are no recoveries to unsecured creditors under the Plan or a chapter 7 liquidation.

E.    Liquidation Analysis for Non-Obligor Debtors with No Assets

The 49 Debtors in this category have no assets.  Therefore, no recoveries would be available to any creditors that may exist at these entities.

F.    Summary of Conclusions

In summary, chapter 7 liquidation would provide, for each Class of creditors and with respect to all Debtors, recoveries less than or equal to the recoveries under the Plan, or no recovery at all.

For the 37 Obligor Debtors, comparisons of recoveries in a chapter 7 liquidation to recoveries under the Plan appear to be most relevant with respect to DIP Roll-UP Claims and Senior Secured Claims.  The midpoint estimate of proceeds available for distribution from the Obligor Debtors is $4.5 billion.  It is estimated that the $3.6 billion in carved-out professional fees, DIP New Money Claims and DIP ABL Claims would receive recoveries in full under both a liquidation and the Plan.  Next, DIP Roll-Up Claims of $3.2 billion would receive $1.3 billion ($0.9 billion from U.S. Debtors and $0.4 billion from EAI entities), or a 41% recovery under a liquidation compared to a 100% recovery under the Plan.  Holders of General Unsecured Claims against the Obligor Debtors, MSC, MPI and MPCO, and holders of 2015 Notes will receive $450 million pursuant to the Lender Litigation Settlement, which is not conditioned upon the Confirmation of the Chapter 11 plan.  The recoveries to these creditors under the Plan would be equivalent to the recoveries under a hypothetical liquidation scenario.  Senior Secured Claims of approximately $9.5 billion would be next in line to receive $0.7 billion from EAI entities, or a 8% recovery under a liquidation, which is significantly less than the recovery under the Plan.  No proceeds would remain to satisfy other secured, priority and unsecured creditors of these entities in a chapter 7 liquidation.  Moreover, the proceeds that could be realized from liquidation of Obligor Debtors' assets would not exceed their going concern values, and the DIP Roll-Up Claims and Senior Secured Claims would receive substantially less in a chapter 7 liquidation than under the Plan.

For the eight Non-Obligor Debtors with Assets, each analysis shows that recoveries would be no greater in a chapter 7 liquidation than under the Plan.

For the remaining 49 Debtors, which have no assets, no recoveries would be available to any creditors in a chapter 7 liquidation.

**OBLIGOR DEBTORS**

| | |
|---|---|
| 7 - A | Basell Finance USA Inc. |
| 7 - A | Basell Germany Holdings GmbH |
| 7 - A | Basell North America Inc. |
| 7 - A | Basell USA Inc. |
| 7 - A | Equistar Chemicals, LP |
| 7 - A | Houston Refining LP |
| 7 - A | LBI Acquisition LLC |
| 7 - A | LBIH LLC |
| 7 - A | Lyondell (Pelican) Petrochemical L.P. 1, Inc. |
| 7 - A | Lyondell Chemical Company |
| 7 - A | Lyondell Chemical Delaware Company |
| 7 - A | Lyondell Chemical Espana Co. |
| 7 - A | Lyondell Chemical Europe, Inc. |
| 7 - A | Lyondell Chemical Nederland, Ltd. |
| 7 - A | Lyondell Chemical Products Europe, LLC |
| 7 - A | Lyondell Chemical Technology 1, Inc. |
| 7 - A | Lyondell Chemical Technology Management, Inc. |
| 7 - A | Lyondell Chemical Technology, L.P. |
| 7 - A | Lyondell Chimie France LLC |
| 7 - A | Lyondell Equistar Holdings Partners |
| 7 - A | Lyondell Europe Holdings Inc. |
| 7 - A | Lyondell Houston Refinery Inc. |
| 7 - A | Lyondell LP3 GP, LLC |
| 7 - A | Lyondell LP3 Partners, LP |
| 7 - A | Lyondell LP4 Inc. |
| 7 - A | Lyondell Petrochemical L.P. Inc. |
| 7 - A | Lyondell Refining Company LLC |
| 7 - A | Lyondell Refining I, LLC |
| 7 - A | LyondellBasell Finance Company |
| 7 - A | LyondellBasell Industries AF S.C.A. |
| 7 - D | Millennium America Holdings Inc. |
| 7 - D | Millennium America Inc. |
| 7 - D | Millennium Chemicals Inc. |
| 7 - D | Millennium Petrochemicals GP LLC |
| 7 - D | Millennium Petrochemicals Partners, LP |
| 7 - D | Millennium Worldwide Holdings I Inc. |
| 7 - A | Nell Acquisition (US) LLC |

**NON- OBLIGOR DEBTORS WITH ASSETS**

| | |
|---|---|
| 7 - B | Lyondell Asia Pacific, Ltd. |
| 7 - B | Lyondell Chemical International Co. |
| 7 - B | Lyondell Greater China, Ltd. |
| 7 - B | LyondellBasell Advanced Polyolefins USA Inc. |
| 7 - B | MHC Inc. |
| 7 - B | Millennium Holdings, LLC |
| 7 - C | Millennium Petrochemicals Inc.(Virginia) |
| 7 - C | Millennium Specialty Chemicals Inc. |
| 7 - C | Millennium US Op Co LLC |

**NON- OBLIGOR DEBTORS WITH NO ASSETS**

| | |
|---|---|
| 7 - B | Basell Capital Corporation |
| 7 - B | Basell Impact Holding Company |
| 7 - B | Equistar Bayport, LLC |
| 7 - B | Lyondell Bayport, LLC |
| 7 - B | Lyondell Chemical Holding Company |
| 7 - B | Lyondell Chemical Properties, L.P. |
| 7 - B | Lyondell Chemical Wilmington, Inc |
| 7 - B | Lyondell General Methanol Company |
| 7 - B | Lyondell Intermediate Holding Company |
| 7 - B | LyondellBasell AFGP S.à r.l. |
| 7 - B | Circle Steel Corporation |
| 7 - B | Duke City Lumber Co. |
| 7 - B | Equistar Funding Corporation |
| 7 - B | Equistar Polypropylene, LLC |
| 7 - B | Equistar Transportation Company, LLC |
| 7 - B | Glidco Leasing Inc. |
| 7 - B | Glidden Latin America Holdings |
| 7 - B | HOISU Ltd. |
| 7 - B | HPT 28 Inc. |
| 7 - B | HPT 29 Inc. |
| 7 - B | HW Loud Company |
| 7 - B | IMWA Equities II, Co., L.P. |
| 7 - B | ISB Liquidating Company |
| 7 - B | LeMean Property Holdings Corp. |
| 7 - B | LPC Partners Inc. |
| 7 - B | Millennium Petrochemicals LP LLC |
| 7 - B | Millennium Realty Inc. |
| 7 - B | MWH South America LLC |
| 7 - B | National Distillers & Chemical Corporation |
| 7 - B | NDCC International II |
| 7 - B | Penn Export Company, Inc. |
| 7 - B | Penn Navigation Company |
| 7 - B | Penn Shipping Company Inc. |
| 7 - B | Penntrans Company |
| 7 - B | PH Burbank Holdings, Inc. |
| 7 - B | Power Liquidating Company, Inc. |
| 7 - B | Quantum Acceptance Corp |
| 7 - B | Quantum Pipeline Company |
| 7 - B | SCM Chemicals Inc. |
| 7 - B | SCM Plants Inc. |
| 7 - B | Suburban Propane GP, Inc. |
| 7 - B | Tiona, Ltd. |
| 7 - B | UAR Liquidating Inc. |
| 7 - B | USI Chemicals International Inc. |
| 7 - B | USI Credit Corp. |
| 7 - B | USI Puerto Rico Properties, Inc. |
| 7 - B | Walter Kidde & Company, Inc. |
| 7 - B | Wyatt Industries, Inc. |

**Obligor Debtors**                                                    *Exhibit 2*
**Liquidation Analysis**

| *(MILLIONS)* | NBV | Low | High | Midpoint |
|---|---|---|---|---|
| Cash & Equivalents & Short Term Investments | $238.1 | $238.1 | $238.1 | $238.1 |
| Trade Accounts Receivable | 1,248.1 | 748.9 | 873.7 | 811.3 |
| Other Receivables | 268.1 | 8.4 | 57.0 | 32.7 |
| Intercompany Receivables | 30,474.1 | 0.0 | 0.0 | 0.0 |
| Inventory | 1,872.5 | 1,295.9 | 1,511.0 | 1,403.5 |
| Prepaids and Other Current Assets | 305.4 | 0.0 | 0.0 | 0.0 |
| Property, Plant & Equipment, net | 9,366.5 | 1,577.4 | 1,577.4 | 1,577.4 |
| Investments and Long-Term Receivables | 27.5 | 0.2 | 1.8 | 1.0 |
| Intercompany Investments | 43,823.1 | 336.1 | 373.1 | 354.6 |
| Intangible Assets, net | 1,254.1 | 427.6 | 427.6 | 427.6 |
| Insurance Proceeds | 0.0 | 0.0 | 229.6 | 114.8 |
| Other Long-Term Assets | 72.2 | 61.6 | 63.6 | 62.6 |
| Gross Proceeds | $88,949.4 | $4,694.2 | $5,352.9 | $5,023.5 |
| Costs Associated with Liquidation: | | | | |
| Payroll/Overhead | | (93.9) | (107.1) | (100.5) |
| Liquidation Costs of PP&E | | (157.7) | (157.7) | (157.7) |
| Chapter 7 Trustee Fees | | (140.8) | (160.6) | (150.7) |
| Chapter 7 Professional Fees | | (70.4) | (80.3) | (75.4) |
| Net Estimated Proceeds before EAI Assets | | $4,231.3 | $4,847.2 | $4,539.2 |
| EAI Net Estimated Proceeds *(See Exhibit 3)* | | 1,366.1 | 1,767.5 | 1,566.8 |
| DIP Roll-Up Claims | | (349.1) | (451.7) | (400.4) |
| Senior Secured Claims | | (566.9) | (865.8) | (716.3) |
| Settlement Agreement | | (450.0) | (450.0) | (450.0) |
| | | 0.0 | 0.0 | 0.0 |
| Remaining Proceeds Available for Distribution | | $4,231.3 | $4,847.2 | $4,539.2 |
| Waterfall of Available Proceeds: | | | | |
| Professional Fee Carve Out | | 25.0 | 25.0 | 25.0 |
| DIP New Money / ABL Revolver/ DIP Fees / Standby LCs | | 3,578.9 | 3,578.9 | 3,578.9 |
| DIP Roll-Up Claims | | 627.4 | 1,243.3 | 935.4 |
| Senior Secured Claims | | 0.0 | 0.0 | (0.0) |
| | | $4,231.3 | $4,847.2 | $4,539.2 |
| Non Obligor Estimated Proceeds *(See Exhibits 7 & 8)* | | 17.0 | 43.0 | 29.4 |
| Senior Secured Claims | | (17.0) | (43.0) | (29.4) |
| DIP Roll Up Claims Beginning Balance | | $3,244.6 | $3,244.6 | $3,244.6 |
| DIP Roll Up Claims Recovery percentage | | 30% | 52% | 41% |
| Senior Secured Claims Beginning Balance | | $9,450.8 | $9,450.8 | $9,450.8 |
| Senior Secured Claims Recovery percentage | | 6% | 10% | 8% |
| Proceeds Available After Senior Secured Claims | | $0.0 | $0.0 | $0.0 |
| Claims Receiving No Distribution: *(Excluding Distribution from the $450M Lender Litigation Settlement)* | | | | |
| Secured Tax Claims | | 16.2 | 10.5 | 13.4 |
| Bridge Loan Claims | | 8,297.5 | 8,297.5 | 8,297.5 |
| Other Secured Claims | | 319.0 | 232.0 | 275.5 |
| Administrative Expenses (less carve out) | | 2,138.6 | 2,067.8 | 2,103.2 |
| Priority Tax Claims | | 14.4 | 4.1 | 9.3 |
| Priority Non-Tax Claims | | 0.8 | 0.3 | 0.5 |
| General Unsecured Claims | | 1,688.7 | 1,226.2 | 1,457.4 |
| 2015 Note Claims | | 1,351.7 | 1,351.7 | 1,351.7 |
| | | $13,826.8 | $13,190.1 | $13,508.4 |

**EAI Entities**
*Exhibit 3*
**Liquidation Analysis**

| *(MILLIONS)* | NBV | Low | High | Midpoint |
|---|---|---|---|---|
| Cash & Equivalents & Short Term Investments | $271.0 | $271.0 | $271.0 | $271.0 |
| Trade Accounts Receivable | 1,858.7 | 392.0 | 457.3 | 424.7 |
| Other Receivables | 146.0 | 10.4 | 17.7 | 14.1 |
| Intercompany Receivables | 14,111.2 | 0.0 | 0.0 | 0.0 |
| Inventory | 1,302.9 | 398.9 | 463.3 | 431.1 |
| Prepaids and Other Current Assets | 119.6 | 0.0 | 0.0 | 0.0 |
| Property, Plant & Equipment, net | 4,867.6 | 473.4 | 473.4 | 473.4 |
| Investments and Long-Term Receivables | 1,166.4 | 453.0 | 819.5 | 636.3 |
| Intercompany Investments | 13,123.6 | 0.0 | 0.0 | 0.0 |
| Intangible Assets, net | 305.0 | 6.0 | 6.0 | 6.0 |
| Other Long-Term Assets | 24.0 | 0.3 | (0.0) | 0.2 |
| Gross Proceeds | $37,296.0 | $2,005.0 | $2,508.2 | $2,256.6 |
| Costs Associated with Liquidation: | | | | |
| Redundancy Costs | | (47.6) | (116.8) | (82.2) |
| Payroll/Overhead | | (40.1) | (50.2) | (45.1) |
| Liquidation Costs of PP&E | | (47.3) | (47.3) | (47.3) |
| Insolvency Practitioner | | (60.1) | (75.2) | (67.7) |
| Professional Fees | | (30.1) | (37.6) | (33.8) |
| Net Estimated Proceeds Available for EAI Claims | | $1,779.7 | $2,181.1 | $1,980.4 |
| Less EAI Claims: | | | | |
| Approximate 12/31 Balance Sheet Obligations | | (413.6) | (413.6) | (413.6) |
| Net Estimated EAI Proceeds for Secured Debt | | $1,366.1 | $1,767.5 | $1,566.8 |

**LyondellBasell Advanced Polyolefins USA Inc.**                    *Exhibit 4*
**Liquidation Analysis**

| (MILLIONS) | NBV | Low | High | MidPoint |
|---|---|---|---|---|
| Cash & Equivalents & Short Term Investments | $0.0 | $0.0 | $0.0 | $0.0 |
| Trade Accounts Receivable | 0.4 | 0.2 | 0.3 | 0.2 |
| Other Receivables | 0.1 | 0.1 | 0.1 | 0.1 |
| Intercompany Receivables | 41.1 | 0.0 | 0.0 | 0.0 |
| Inventory | 0.2 | 0.1 | 0.1 | 0.1 |
| Prepaids and Other Current Assets | 0.1 | 0.0 | 0.0 | 0.0 |
| Property, Plant & Equipment, net | 23.1 | 9.4 | 9.4 | 9.4 |
| Investments and Long-Term Receivables | 0.0 | 0.0 | 0.0 | 0.0 |
| Intangible Assets, net | 16.0 | 0.0 | 0.0 | 0.0 |
| Other Long-Term Assets | 2.9 | 1.4 | 1.7 | 1.6 |
| Gross Proceeds | $83.9 | $11.2 | $11.6 | $11.4 |
| | | | | |
| Costs Associated with Liquidation: | | | | |
| Payroll/Overhead | | (0.2) | (0.2) | (0.2) |
| Liquidation Costs of PP&E | | (0.9) | (0.9) | (0.9) |
| Chapter 7 Trustee Fees | | (0.3) | (0.3) | (0.3) |
| Chapter 7 Professional Fees | | (0.2) | (0.2) | (0.2) |
| | | | | |
| Net Estimated Proceeds Available for Distribution | | $9.6 | $9.9 | $9.7 |
| | | | | |
| Total Estimated Claims: | | | | |
| Secured Claims | | $0.0 | $0.0 | 0.0 |
| Administrative Expenses | | 7.4 | 7.4 | 7.4 |
| Priority Claims | | 0.0 | 0.0 | 0.0 |
| General Unsecured Claims | | 6.2 | 6.0 | 6.1 |
| | | $13.6 | $13.4 | $13.5 |
| | | | | |
| Recovery % for Secured Claims | | 100% | 100% | 100% |
| Recovery % for Administrative Claims | | 100% | 100% | 100% |
| Recovery % for Priority Claims | | 100% | 100% | 100% |
| Recovery % for General Unsecured Claims | | 35% | 42% | 38% |
| | | | | |
| Proceeds Remaining as Equity Value | | $0.0 | $0.0 | $0.0 |

**MHC Inc.**                                                                                              *Exhibit 5*
**Liquidation Analysis**

| (MILLIONS) | NBV | Low | High | Midpoint |
|---|---|---|---|---|
| Cash & Equivalents & Short Term Investments | $0.0 | $0.0 | $0.0 | $0.0 |
| Trade Accounts Receivable | 0.0 | 0.0 | 0.0 | 0.0 |
| Other Receivables | 0.0 | 0.0 | 0.0 | 0.0 |
| Intercompany Receivables | 7.7 | 0.0 | 0.0 | 0.0 |
| Inventory | 0.0 | 0.0 | 0.0 | 0.0 |
| Prepaids and Other Current Assets | 0.0 | 0.0 | 0.0 | 0.0 |
| Property, Plant & Equipment, net | 0.0 | 0.0 | 0.0 | 0.0 |
| Investments and Long-Term Receivables | 0.0 | 0.0 | 0.0 | 0.0 |
| Intangible Assets, net | 0.0 | 0.0 | 0.0 | 0.0 |
| Other Long-Term Assets | 16.8 | 16.8 | 16.8 | 16.8 |
| Gross Proceeds | $24.5 | $16.8 | $16.8 | $16.8 |
| | | | | |
| Claims Designated for Specific Creditors: | | | | |
| Pension Claims | | (16.8) | (16.8) | (16.8) |
| | | (16.8) | (16.8) | (16.8) |
| | | | | |
| Net Estimated Proceeds Available for Distribution | | $0.0 | $0.0 | $0.0 |
| | | | | |
| Claims Receiving No Distribution: | | | | |
| Administrative Expenses | | 0.0 | 0.0 | 0.0 |
| Priority Claims | | 0.0 | 0.0 | 0.0 |
| General Unsecured Claims | | 114.6 | 73.1 | 93.9 |
| | | $114.6 | $73.1 | $93.9 |
| | | | | |
| Recovery % for All Creditor Classes | | 0% | 0% | 0% |

**Millennium Holdings LLC**
*Exhibit 6*
**Liquidation Analysis**

| (MILLIONS) | NBV | Low | High | Midpoint |
|---|---|---|---|---|
| Cash & Equivalents & Short Term Investments | $8.5 | $8.5 | $8.5 | $8.5 |
| Trade Accounts Receivable | 0.0 | 0.0 | 0.0 | 0.0 |
| Other Receivables | 0.0 | 0.0 | 0.0 | 0.0 |
| Intercompany Receivables | 74.1 | 0.0 | 0.0 | 0.0 |
| Inventory | 0.0 | 0.0 | 0.0 | 0.0 |
| Prepaids and Other Current Assets | 0.0 | 0.0 | 0.0 | 0.0 |
| Property, Plant & Equipment, net | 1.1 | 0.0 | 0.0 | 0.0 |
| Investments and Long-Term Receivables | 0.0 | 0.0 | 0.0 | 0.0 |
| Intangible Assets, net | 0.0 | 0.0 | 0.0 | 0.0 |
| Other Long-Term Assets | 0.0 | 0.0 | 0.0 | 0.0 |
| Gross Proceeds | $83.7 | $8.5 | $8.5 | $8.5 |
| Costs Associated with Liquidation: | | | | |
| Payroll/Overhead | | 0.0 | 0.0 | 0.0 |
| Liquidation Costs of PP&E | | 0.0 | 0.0 | 0.0 |
| Chapter 7 Trustee Fees | | (0.3) | (0.3) | (0.3) |
| Chapter 7 Professional Fees | | 0.0 | 0.0 | 0.0 |
| Net Estimated Proceeds Available for Distribution | | $8.3 | $8.3 | $8.3 |
| Less Secured and Administrative Claims: | | | | |
| Secured Claims | | 0.0 | 0.0 | 0.0 |
| Administrative Expenses | | 5.2 | 5.2 | 5.2 |
| Priority Claims | | 0.0 | 0.0 | 0.0 |
| | | 5.2 | 5.2 | 5.2 |
| Proceeds Available after Secured/Admin Claims | | $3.0 | $3.0 | $3.0 |
| General Unsecured Claims | | $1,408.0 | $1,018.4 | $1,213.2 |
| General Unsecured Claims Estimated Recovery % | | 0.2% | 0.3% | 0.2% |

## Millennium Petrochemicals Inc. (Virginia)
### Liquidation Analysis

*Exhibit 7*

| (MILLIONS) | NBV | Low | High | Midpoint |
|---|---|---|---|---|
| Cash & Equivalents & Short Term Investments | $3.0 | $3.0 | $3.0 | $3.0 |
| Trade Accounts Receivable | 36.3 | 21.8 | 25.4 | 23.6 |
| Other Receivables | 2.0 | 1.1 | 1.3 | 1.2 |
| Intercompany Receivables | 8,023.9 | 0.0 | 0.0 | 0.0 |
| Inventory | 26.1 | 17.6 | 21.1 | 19.4 |
| Prepaids and Other Current Assets | 11.2 | 0.0 | 0.0 | 0.0 |
| Property, Plant & Equipment, net | 189.5 | 31.8 | 31.8 | 31.8 |
| Investments and Long-Term Receivables | 0.0 | 0.0 | 0.0 | 0.0 |
| Intangible Assets, net | 45.5 | 0.0 | 0.0 | 0.0 |
| Insurance Proceeds | 0.0 | 0.0 | 3.6 | 1.8 |
| Other Long-Term Assets | 91.9 | 76.9 | 85.9 | 81.4 |
| Gross Proceeds | $8,429.4 | $152.2 | $172.2 | $162.2 |
| Costs Associated with Liquidation: | | | | |
| Payroll/Overhead | | (3.0) | (3.4) | (3.2) |
| Liquidation Costs of PP&E | | (3.2) | (3.2) | (3.2) |
| Chapter 7 Trustee Fees | | (4.6) | (5.2) | (4.9) |
| Chapter 7 Professional Fees | | (2.3) | (2.6) | (2.4) |
| Net Estimated Proceeds Available for Distribution | | $139.1 | $157.8 | $148.5 |
| Less Secured, Admin and Priority Claims: | | | | |
| Secured Claims | | 1.0 | 0.8 | 0.9 |
| Administrative Expenses | | 118.5 | 115.1 | 116.8 |
| Priority Claims | | 0.4 | 0.4 | 0.4 |
| | | 119.9 | 116.3 | 118.1 |
| Proceeds Available after Secured/Admin/Priority Claims | | $19.2 | $41.6 | $30.4 |
| Guarantees / General Unsecured Claims: | | | | |
| Senior Secured Loan Guarantees | | 350.0 | 350.0 | 350.0 |
| Other General Unsecured Claims | | 114.0 | 64.5 | 89.3 |
| | | $464.0 | $414.5 | $439.3 |
| Recoveries: | | | | |
| Senior Secured | | 14.5 | 35.1 | 24.2 |
| Estimated Senior Secured Loan Recovery % | | 4.1% | 10.0% | 6.9% |
| Other General Unsecured Claims - Liquidation | | 4.7 | 6.5 | 6.2 |
| Other General Unsecured Claims - Lender Litigation Settlement | | 17.5 | 12.0 | 15.0 |
| | | $22.2 | $18.5 | $21.2 |
| General Unsecured Claims Estimated Recovery % | | 19.5% | 28.7% | 23.8% |

### Millennium Specialty Chemicals Inc.
### Liquidation Analysis

*Exhibit 8*

| (MILLIONS) | NBV | Low | High | Midpoint |
|---|---|---|---|---|
| Cash & Equivalents & Short Term Investments | $0.5 | $0.5 | $0.5 | $0.5 |
| Trade Accounts Receivable | 18.5 | 11.1 | 12.9 | 12.0 |
| Other Receivables | 0.9 | 0.9 | 0.9 | 0.9 |
| Intercompany Receivables | 310.4 | 0.0 | 0.0 | 0.0 |
| Inventory | 33.8 | 22.5 | 26.2 | 24.4 |
| Prepaids and Other Current Assets | 2.0 | 0.0 | 0.0 | 0.0 |
| Property, Plant & Equipment, net | 67.7 | 13.5 | 13.5 | 13.5 |
| Investments and Long-Term Receivables | 0.0 | 0.0 | 0.0 | 0.0 |
| Intangible Assets, net | 0.3 | 0.0 | 0.0 | 0.0 |
| Other Long-Term Assets | 0.0 | 0.0 | 0.0 | 0.0 |
| Gross Proceeds | $434.0 | $48.4 | $53.9 | $51.2 |
| Costs Associated with Liquidation: | | | | |
| Payroll/Overhead | | (1.0) | (1.1) | (1.0) |
| Liquidation Costs of PP&E | | (1.3) | (1.3) | (1.3) |
| Chapter 7 Trustee Fees | | (1.5) | (1.6) | (1.5) |
| Chapter 7 Professional Fees | | (0.7) | (0.8) | (0.8) |
| Net Estimated Proceeds Available for Distribution | | $43.9 | $49.1 | $46.5 |
| Less Secured, Admin and Priority Claims: | | | | |
| Secured Claims | | 0.0 | 0.0 | 0.0 |
| Administrative Expenses | | 41.2 | 40.8 | 41.0 |
| Priority Claims | | 0.0 | 0.0 | 0.0 |
| | | 41.2 | 40.8 | 41.0 |
| Proceeds Available after Secured/Admin/Priority Claims | | $2.7 | $8.2 | $5.5 |
| Guarantees / General Unsecured Claims: | | | | |
| Senior Secured Loan Guarantees | | 350.0 | 350.0 | 350.0 |
| Other General Unsecured Claims | | 24.2 | 14.2 | 19.2 |
| | | $374.2 | $364.2 | $369.2 |
| Recoveries: | | | | |
| Senior Secured | | 2.5 | 7.9 | 5.2 |
| Estimated Senior Secured Loan Recovery % | | 0.7% | 2.3% | 1.5% |
| Other General Unsecured Claims - Liquidation | | 0.2 | 0.3 | 0.3 |
| Other General Unsecured Claims - Lender Litigation Settlement | | 3.7 | 2.7 | 3.2 |
| | | $3.9 | $3.0 | $3.5 |
| General Unsecured Claims Estimated Recovery % | | 16.1% | 20.9% | 18.3% |

**Allocation of $450 Million Lender Litigation Settlement by Debtor**                    *Exhibit 9*

| Debtor Entity | High | Mid | Low |
|---|---|---|---|
| Lyondell Chemical Company | $65,109,941 | $60,565,061 | $55,036,201 |
| Basell Germany Holdings GmbH | $0 | $0 | $0 |
| Basell North America Inc. | $211,773 | $212,458 | $213,290 |
| Basell USA Inc. | $21,515,703 | $21,794,926 | $22,134,602 |
| Equistar Chemicals, LP | $57,148,522 | $46,037,061 | $32,519,938 |
| Houston Refining LP | $24,428,051 | $22,447,410 | $20,037,955 |
| LBI Acquisition LLC | $0 | $0 | $0 |
| LBIH LLC | $0 | $0 | $0 |
| Basell Finance USA Inc. | $0 | $0 | $0 |
| Lyondell Chemical Delaware Company | $0 | $0 | $0 |
| Lyondell Chemical Espana Co. | $0 | $0 | $0 |
| Lyondell Chemical Europe, Inc. | $924,464 | $1,012,331 | $1,119,221 |
| Lyondell Chemical Nederland, Ltd. | $0 | $0 | $0 |
| Lyondell Chemical Products Europe, LLC | $16,988 | $18,648 | $20,667 |
| Lyondell Chemical Technology Management, Inc. | $445 | $488 | $541 |
| Lyondell Chemical Technology 1 Inc. | $0 | $0 | $0 |
| Lyondell Chemical Technology, L.P. | $5,783 | $6,348 | $7,035 |
| Lyondell Chimie France LLC | $0 | $0 | $0 |
| Lyondell-Equistar Holdings Partners | $0 | $0 | $0 |
| Lyondell Europe Holdings Inc. | $0 | $0 | $0 |
| Lyondell Houston Refinery Inc. | $0 | $0 | $0 |
| Lyondell LP3 GP, LLC | $0 | $0 | $0 |
| Lyondell LP3 Partners, LP | $0 | $0 | $0 |
| Lyondell LP4 Inc. | $2 | $3 | $3 |
| Lyondell (Pelican) Petrochemical L.P. 1, Inc. | $13 | $15 | $16 |
| Lyondell Petrochemical L.P. Inc. | $90 | $91 | $93 |
| Lyondell Refining Company LLC | $0 | $0 | $0 |
| Lyondell Refining I LLC | $0 | $0 | $0 |
| LyondellBasell Finance Company | $0 | $0 | $0 |
| Nell Acquisition (US) LLC | $0 | $0 | $0 |
| LyondellBasell Industries AF S.C.A. | $160,922 | $175,699 | $193,675 |
| Millennium America Holdings Inc. | $49,539 | $54,377 | $60,264 |
| Millennium America Inc. | $38,010,473 | $41,714,456 | $46,220,361 |
| Millennium Chemicals Inc. | $6,537,393 | $4,592,845 | $2,227,297 |
| Millennium Petrochemicals GP LLC | $24,001 | $13,499 | $722 |
| Millennium Petrochemicals Partners, LP | $1,988 | $1,120 | $66 |
| Millennium Worldwide Holdings I Inc. | $0 | $0 | $0 |
| Millennium Petrochemicals Inc. | $17,494,483 | $15,035,110 | $12,043,275 |
| Millennium Specialty Chemicals Inc. | $3,716,915 | $3,235,954 | $2,650,863 |
| Millennium US Op Co LLC | $7,257,320 | $5,440,014 | $3,229,255 |
| 2015 Note Claims | $207,385,190 | $227,642,087 | $252,284,658 |
| **TOTAL** | **$450,000,000** | **$450,000,000** | **$450,000,000** |

# Appendix I



# LYONDELLBASELL INDUSTRIES AF S.C.A.
Designated Assets

Liquidation Value in Place
As of April 1, 2010

Summary Appraisal Report

*Prepared for*

LyondellBasell Industries AF S.C.A.

**Leading / Thinking / Performing**



# Table of Contents

EXECUTIVE SUMMARY ..................................................................................................................... 1

INTRODUCTION ............................................................................................................................. 3

    Basis of the Appraisal ........................................................................................................... 3
    Scope of the Work ............................................................................................................... 4

THE PROPERTY APPRAISED ............................................................................................................ 6

EXPOSURE TIME ......................................................................................................................... 7

HIGHEST AND BEST USE ANALYSIS ................................................................................................ 8

VALUATION INTRODUCTION ......................................................................................................... 9

CONCLUSION ............................................................................................................................. 11

# Exhibits

    A    Liquidation Value in Place by Location
    B    Assumptions and Limiting Conditions
    C    Certificates of Appraisers

**American Appraisal Associates, Inc.**
411 East Wisconsin Avenue Milwaukee, WI 53202
tel 414 271 7240



*Leading / Thinking / Performing*

January 25, 2010

LyondellBasell Industries AF S.C.A.
Houston, Texas

# EXECUTIVE SUMMARY

We have completed an appraisal as of April 1, 2010, of the liquidation values of certain assets of LyondellBasell Industries AF S.C.A. ("LyondellBasell") to assist LyondellBasell and its professionals in developing a hypothetical Chapter 7 liquidation analysis of LyondellBasell's assets for use in connection with LyondellBasell's proposed Disclosure Statement and Chapter 11 plan of reorganization.

The standard of value is *liquidation value in place* as defined by the American Society of Appraisers in its textbook, *Valuing Machinery and Equipment: The Fundamentals of Appraising Machinery and Technical Assets* (Copyright 2005, the American Society of Appraisers, Washington, D.C.):

> The estimated gross amount, expressed in terms of money, that could typically be realized from a failed facility, assuming that the entire facility would be sold intact with a limited time to complete the sale, as of a specific date.

*Exposure time* is defined in the Uniform Standards of Professional Appraisal Practice ("USPAP") Statement on Appraisal Standards No. 6 as "the estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal; a retrospective estimate based upon an analysis of past events assuming a competitive and open market."

An opinion of value as of a future date is known as prospective value. An opinion of prospective value is subject to variations in economic conditions and other events, such as changes in supply and demand, which inherently cannot be predicted with a great degree of reliability. Our opinion of prospective value is subject to the analysis of trends, expectations, and forecasts outlined in the body of the appraisal report. We can give no assurances these trends, expectations, and forecasts will, in fact, be realized. Therefore, the actual value that will exist on the future date may be substantially different from the opinion of prospective value provided in this report.

Our opinion is based on perceptions of the market reflecting current economic conditions as they existed on the date of this report. We expect the properties to be maintained as necessary to essentially preserve their present condition. Further, we expect the property to be managed competently.

*Valuation / Transaction Consulting / Real Estate Advisory / Fixed Asset Management*
*CONFIDENTIAL BUSINESS INFORMATION*

*Executive Summary*



Our opinion of the liquidation value in place does not consider any amount for inflation or deflation, and no discount has been taken for the time between the date of this report and the future appraisal date.

Based on the investigation and analysis, it is concluded that, as of April 1, 2010, the liquidation value in place of the LyondellBasell assets is reasonably represented in the amount of $3,695,950,000.

The associated exposure time is estimated to be six months.

The liquidation value in place, as stated above, is not intended to represent the amount that might be realized from piecemeal disposition of individual assets, within a property, in the open market.

We have not investigated the title to or any liabilities against the property appraised.

*CONFIDENTIAL BUSINESS INFORMATION*



## INTRODUCTION

We have made an appraisal of certain property of LyondellBasell Industries AF S.C.A. ("LyondellBasell").

## *Basis of the Appraisal*

### Intended Use

This appraisal is intended to assist LyondellBasell and its professionals in bankruptcy planning.

### Intended Users

The intended users of this report are LyondellBasell and its bankruptcy professionals. American Appraisal is not responsible for the unauthorized use of this report.

### Purpose of the Assignment

The purpose of the appraisal was to express an opinion as of April 1, 2010, of the liquidation value in place of the subject property. We understand that LyondellBasell and its professionals will use our value conclusions and related work product to assist them in developing a hypothetical Chapter 7 liquidation analysis of LyondellBasell's assets for use in connection with LyondellBasell's proposed Disclosure Statement and Chapter 11 plan of reorganization. Our conclusions are not applicable for any other use.

### Definitions

The standard of value is *liquidation value in place* as defined by the American Society of Appraisers in its textbook, *Valuing Machinery and Equipment: The Fundamentals of Appraising Machinery and Technical Assets* (Copyright 2005, the American Society of Appraisers, Washington, D.C.):

> The estimated gross amount, expressed in terms of money, that could typically be realized from a failed facility, assuming that the entire facility would be sold intact with a limited time to complete the sale, as of a specific date.

*Exposure time* is defined in the Uniform Standards of Professional Appraisal Practice ("USPAP") Statement on Appraisal Standards No. 6 as "the estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal; a retrospective estimate based upon an analysis of past events assuming a competitive and open market."

USPAP represents the generally accepted and recognized standards of appraisal practice in the United States.

*CONFIDENTIAL BUSINESS INFORMATION*

An opinion of value as of a future date is known as prospective value.  An opinion of prospective value is subject to variations in economic conditions and other events, such as changes in supply and demand, which inherently cannot be predicted with a great degree of reliability.  Our opinion of prospective value is subject to the analysis of trends, expectations, and forecasts outlined in the body of the appraisal report.  We can give no assurances these trends, expectations, and forecasts will, in fact, be realized.  Therefore, the actual value that will exist on the future date may be substantially different from the opinion of prospective value provided in this report.

Our opinion is based on perceptions of the market reflecting current economic conditions as they existed on the date of this report.  We expect the properties to be maintained as necessary to essentially preserve their present condition.  Further, we expect the property to be managed competently.

Our opinion of the liquidation value in place does not consider any amount for inflation or deflation, and no discount has been taken for the time between the date of this report and the future appraisal date.

## Effective Date of the Assignment

The effective date of the assignment is April 1, 2010.

## *Scope of the Work*

## Description of the Assets Included in the Assignment

The property included in this appraisal is identified as the assets of LyondellBasell.  The designated assets include the real estate, personal property, and intangible property located throughout the world.

## Extent of the Investigation

In order to provide meaningful value conclusions, commonly accepted appraisal procedures and techniques were followed.

Michael J. Remsha, Willem Berdenis van Berlekom, Jozo Omazic, Julia Gaskell, and John Ray II inspected a representative sampling of the designated property in August, September, and October 2009.  In addition, as part of the investigation, the following factors were considered:

- History and nature of the petrochemical and chemical business
- Extent, character, and utility of the property
- Potential use of the property in its present location
- Highest and best use of the property

*CONFIDENTIAL BUSINESS INFORMATION*



**American Appraisal**

- The reproduction cost new, less an allowance for depreciation or loss of value arising from condition, utility, age, wear and tear, and obsolescence

- Capacity of the subject property

- Actual utilization levels and the effect of supply and demand on future operations

- The property is idle; the operating plants are "cold and dark"

- The property will be sold within a six-month period of time

- Any existing contacts, agreements, and workforce will not be included

- General economic trends and specific economic influences affecting the operations under review

Data for the designated assets was analyzed using information collected from the appraisers' inspection and public sources, as well as from information provided by LyondellBasell. Furnished information included operating records, financial and operating projections, facility plans, property plats, property records, and a description of the property. This data has been accepted as factual and accurate and has not been independently verified, although it has been reviewed for reasonableness.

## Extraordinary Assumptions

An extraordinary assumption implies that, if the assumption was found to be false, the opinion of value could be altered. Extraordinary assumptions were not employed in the valuation of the subject.

## Hypothetical Conditions

A hypothetical condition is that which is contrary to what exists but is supposed for the purpose of the analysis. The property was valued in liquidation in place, as if shutdown and idle. Because the property is currently operating, a hypothetical condition exists.

## Jurisdictional Exception

A jurisdictional exception is an assignment condition that voids the force of a part or parts of USPAP when compliance with a part or parts of USPAP is contrary to law or public policy applicable to the assignment. The jurisdictional exception rule was not employed in this analysis.

## Assumptions and Limiting Conditions

The assumptions and limiting conditions for this appraisal are provided in Exhibit B.

*CONFIDENTIAL BUSINESS INFORMATION*

*The Property Appraised*



## THE PROPERTY APPRAISED

This appraisal included the real, personal property, and intangible property of LyondellBasell located throughout the world.  Property included all assets in the chemical, polymers, fuels and technology industries located in the United States, Europe, Asia-Pacific and other areas of the world.  The assets included land, land improvements and buildings, battery limit process units, off sites, support assets, and construction in progress.  In addition, the only intangible assets included were the emission allowances, certain technology licenses, and catalyst contracts.  Other intangible assets, associated with an idle property or shutdown plant, would have little value.

*CONFIDENTIAL BUSINESS INFORMATION*

*Exposure Time*



# EXPOSURE TIME

The owner of the facility or an investment-banking firm generally manages the marketing of a petrochemical or chemical industry property. The marketer generally prepares a sales brochure or package of documents describing the historical and current facility assets and operations. The sales package is usually made available only to likely buyers who are financially capable of purchasing similar facilities.

Exposure time for the subject assets is affected by the demand for property in the petrochemical or chemical industry. Because the subject property is being valued under a liquidation-in-place premise, the exposure time in the market is based on the time to locate a buyer and close a transaction in a short period of time. The exposure time utilized in this appraisal is six months.

*CONFIDENTIAL BUSINESS INFORMATION*



# HIGHEST AND BEST USE ANALYSIS

*Highest and best use* is defined as the reasonably probable and legal use of vacant land or an improved property that is physically possible, appropriately supported, and financially feasible and that results in the highest value.  The four criteria the highest and best use must meet are physical possibility, legal permissibility, financial feasibility, and maximum profitability.

Based on an analysis of the physically possible, legally permissible, financially feasible, and most profitable uses of the subject property as improved, the highest and best use of the subject property is its current use in the petrochemical and chemical industry.

*CONFIDENTIAL BUSINESS INFORMATION*

*Valuation Introduction*



# VALUATION INTRODUCTION

As stated previously, this appraisal was made to express an opinion of the market value of the subject property in liquidation. The premise of value considered in this appraisal assumes that the property has been properly shut down and is "cold and dark" and the property subject to appraisal will remain in place and used by a buyer in the future.

In formulating our opinion of the market value of the subject personal property, discussions were held with management. LyondellBasell management furnished certain operating data and projections; equipment lists; drawings; and other records, estimates, and documents pertaining to the design and operation of the property. This data was analyzed and reviewed with management and accepted, without further independent investigation, as accurate.

Market value is usually determined by considering the three approaches to value: sales comparison, income, and cost. Each method is analyzed to determine its applicability to the property being appraised based on the nature of the property, the nature of the market, and the availability of the data. Even if all approaches are used, more weight may be given to one method if that method is more applicable than the others.

The sales comparison approach develops value through an analysis of recent sales of comparable property. In the analysis, an indication of market value is derived by reviewing the sale prices of properties similar in nature to the subject that have sold in an active open market. Prices are adjusted to reflect differences in size or capacity, market conditions or time, age, and location between the subject and the market comparables.

The income approach measures market value as the present worth of monetary benefits anticipated to be derived in the future from ownership of the asset. These monetary benefits are based on the income stream expected to be available to the owner of the assets. The present worth of the future monetary benefits is measured by taking into account the duration and pattern of the projected income stream and the risk inherent in realizing that income stream. The risk element is recognized by discounting the projected income stream at a rate commensurate with the risk perceived by a prospective investor in the subject compared with other investment opportunities. The discount rate is the result of a prospective investor's evaluation of the relative risk of the investment under review.

The cost approach is used to estimate the market value of property based on the current cost of replacing the subject, less an allowance for existing depreciation or loss in value from physical deterioration, functional obsolescence, and economic obsolescence. In the cost approach, an analysis is made of the property being appraised, its capacity and expected utilization, its physical condition, and its operating characteristics in comparison with a modern structure. This approach also analyzes the economics of the subject. Hence, the appraiser must be familiar not only with the physical attributes of the subject, but also with its capabilities, technical attributes, and economics. The cost approach is an engineering and economic analysis.

*CONFIDENTIAL BUSINESS INFORMATION*

*Valuation Introduction*



In this instance, buyers and sellers would develop the cost approach because they are familiar with the cost of new construction, the physical attributes and condition of the property being reviewed, the operating characteristics of the subject compared to a modern facility, and the economics of ownership.  The appraiser utilizes all of the above engineering and market information to develop a cost indicator of value.  The cost approach is the only indicator of value that identifies and values only the specific tangible assets included in the valuation; it does not include any intangible assets.

In the valuation of a "cold dark" shutdown property, the potential buyer would have to consider the cost to acquire contracts and agreements to operate the facility in addition to hiring and training a workforce and management team, and acquiring the necessary emission allowances, licenses and permits necessary to start up and operate the property.  It is assumed that any license and permit, in addition to technology necessary to operate the property, could be acquired from the market.

All three approaches were considered in the analysis in addition to the appraiser's judgment of the reliance to be placed on each of the valuation indicators.

*CONFIDENTIAL BUSINESS INFORMATION*



## CONCLUSION

The investigation and appraisal included a study of general and local economic conditions affecting the world petrochemical and chemical industry, as well as the physical aspects of the subject property.

An investigation of petrochemical and chemical property transactions in liquidation did not provide meaningful market insight; transactions in these industries are for operating plants or groups of plants and are not reflective of liquidation values. Because the subject property is assumed to sell in the market as "cold and dark" properties, a downward adjustment was made to reflect the "forced" nature of the transaction. Though the sales comparison approach was considered, it was given little weight in the analyses.

The income approach reflects actual investor expectations of the petrochemical and chemical industry. The income indicator of value is based on projecting future throughput and production, revenues, raw material costs, operating expenses, and capital expenditures. This approach is a forward-looking analysis, which reflects the financial rewards of ownership. The income approach was utilized to calculate the present value of lost cash flows during the startup period after acquisition of the properties. The startup period was determined to be about one year. Hence, while it was considered in the analysis, it was only utilized to develop an opinion of the value of the lost cash flows associated with purchasing a shutdown, "cold and dark" property.

The cost approach can be a useful indicator of value for certain types of properties and, in this appraisal, is based on a detailed quantification of all forms of depreciation and obsolescence. This approach reflects the cost of new construction less the deficiencies of the subject compared to a modern plant and current economics. Quantification of accrued depreciation from all causes was based on a complete detailed analysis of the subject facility and the subject industry. The cost indicator of value fluctuates based on many market-derived inputs. The cost approach is considered a reliable indicator of value and was the starting point in the analyses.

The only meaningful intangibles considered in the analysis were the technology licenses, catalyst contracts, and emission allowances. The emission allowances were valued using the sales comparison approach. The sales comparison approach values the allowance based on market transactions. Because of the large amount of the emission allowances owned by LyondellBasell, the value of the emission allowances was adjusted for a potential saturation of the market. This required a downward adjustment to reflect "flooding" the market over a six-month transaction period. Other intangibles were valued on an income approach.

Considering all three approaches to value and the effects of a six-month transaction period reflects all of the influences of the market and allows the appraiser to reflect the market in the final conclusion of value.

*CONFIDENTIAL BUSINESS INFORMATION*

*Conclusion*



**American Appraisal**

Based on the investigation and analysis, it is concluded that, as of April 1, 2010, the liquidation value in place of LyondellBasell's property is reasonably represented in the amount of $3,695,950,000.

The associated exposure time is estimated to be six months.

The liquidation value in place, as stated above, is not intended to represent the amount that might be realized from piecemeal disposition of the property in the open market.

No investigation has been made of the title to or any liabilities against the property appraised.

Respectfully submitted,

*American Appraisal*

No third party shall have the right of reliance on this report and neither receipt nor possession of this report by any third party shall create any express or implied third-party beneficiary rights.

070179

*CONFIDENTIAL BUSINESS INFORMATION*



**American Appraisal**



# Exhibit A

## Liquidation Value in Place by Location



**American Appraisal**

## LYONDELLBASELL INDUSTRIES AF S.C.A.
## SUMMARY OF LIQUIDATION VALUE IN PLACE
## AS OF APRIL 1, 2010
## CURRENCY- USD

**LIQUIDATION VALUE IN PLACE**

| PLANT CODE | PLANT NAME | LOCATION | SEGMENT | GRAND TOTAL |
|---|---|---|---|---|
| **CHEMICALS SEGMENT** | | | | |
| 4102 | BASELL MEXICO | POLYOLEFINAS MEXICO | CHEMICALS | 973,000 |
| 4100 | BASELL MEXICO | BASELL MEXICO | CHEMICALS | 21,000 |
| BCO | BAYPORT EO | PASADENA, TX | CHEMICALS | 23,875,000 |
| BLO | BAYPORT PO @ 17.4% OWNERSHIP | PASADENA, TX | CHEMICALS | 12,388,000 |
| | BERRE | BERRE, FRANCE | CHEMICALS | 24,442,000 |
| RBO | BOTLEK | BOTLEK, NETHERLANDS | CHEMICALS | 138,328,000 |
| CIO | BRUNSWICK | BRUNSWICK, GA | CHEMICALS | 4,415,000 |
| CHO | CHANNELVIEW - NORTH | CHANNELVIEW, TX | CHEMICALS | 155,927,000 |
| CXO | CHANNELVIEW - SOUTH | CHANNELVIEW, TX | CHEMICALS | 18,801,000 |
| CXO | CHANNELVIEW SOUTH- PO/SM 2 | CHANNELVIEW, TX | CHEMICALS | 26,252,000 |
| CVOX | CHANNELVIEW SOUTH- PO/SM 1 @ 17.4% OWNERSHIP | CHANNELVIEW, TX | CHEMICALS | 3,721,000 |
| CXO | CHANNELVIEW SOUTH- BDO | CHANNELVIEW, TX | CHEMICALS | 9,211,000 |
| CLO | CLINTON | CLINTON, IA | CHEMICALS | 41,805,000 |
| FLO | FOS-SUR-MER | FOS-SUR-MER, FRANCE | CHEMICALS | 45,974,000 |
| CCO | CORPUS CHRISTI | CORPUS CHRISTI, TX | CHEMICALS | 88,349,000 |
| 0 | VERENNES | VERENNES | CLOSED | 0 |
| JAX | JACKSONVILLE | JACKSONVILLE, FL | CHEMICALS | 9,067,000 |
| LPO | LA PORTE | LA PORTE, TX | CHEMICALS | 64,340,000 |
| LAO | LA PORTE ACETYLS | LA PORTE, TX | CHEMICALS | 31,798,000 |
| RMO | MAASVLATKTE @ 50% OWNERSHIP | MAASVLATKTE, NETHERLANDS | CHEMICALS | 32,486,000 |
| MIO | MORRIS | MORRIS, IL | CHEMICALS | 24,638,000 |
| 1001 | MUENCHSMUENSTER | MUENCHSMUENSTER, GERMANY | CHEMICALS | 46,524,000 |
| NEO | NEWARK | NEWARK, NJ | CHEMICALS | 336,000 |
| CBP | PIPELINE | MARKHAM-MONT BELVIEU, TX | CHEMICALS | 98,163,000 |
| TCO | TUSCOLA | TUSCOLA, IL | CHEMICALS | 5,296,000 |
| 1001 | WESSELING | KNAPSACK, GERMANY | CHEMICALS | 409,707,000 |
| **TOTAL CHEMICALS SEGMENT** | | | | **1,316,837,000** |
| | | | | |
| **REFINERIES** | | | | |
| HRO | HOUSTON REFINERY | HOUSTON, TX | FUEL | 654,790,000 |
| Berre | BERRE | BERRE, FRANCE | FUEL | 0 |
| **TOTAL REFINERIES** | | | | **654,790,000** |
| | | | | |
| **OXYFUEL SEGMENT- EUROPE** | | | | |
| FLO | FOS-SUR-MER | FOS-SUR-MER, FRANCE | OXYFUEL | 0 |
| RBO | BOTLEK | BOTLEK, NETHERLANDS | OXYFUEL | 0 |
| **TOTAL OXYFUEL SEGMENT- EUROPE** | | | | **0** |
| | | | | |
| **OXYFUEL SEGMENT- US** | | | | |
| CHO | CHANNELVIEW - NORTH | CHANNELVIEW, TX | OXYFUEL | 0 |
| CXO | CHANNELVIEW - SOUTH | CHANNELVIEW, TX | OXYFUEL | 0 |
| **TOTAL OXYFUEL SEGMENT US** | | | | **0** |
| | | | | |
| **TOTAL OXYFUEL SEGMENT** | | | | **0** |
| | | | | |
| **TOTAL FUEL AND OXYFUEL SEQMENTS** | | | | **654,790,000** |

*CONFIDENTIAL BUSINESS INFORMATION*



**American
Appraisal**

## LYONDELLBASELL INDUSTRIES AF S.C.A.
## SUMMARY OF LIQUIDATION VALUE IN PLACE
## AS OF APRIL 1, 2010
## CURRENCY- USD

LIQUIDATION VALUE IN PLACE

| PLANT CODE | PLANT NAME | LOCATION | SEGMENT | GRAND TOTAL |
|---|---|---|---|---|
| **POLYMERS SEGMENT** | | | | |
| | BASELL POLYOLEFINS KOREA | SEOUL, ROK | POLYMERS | 0 |
| BYO | BAYPORT POLYMER | PASADENA, TX | POLYMERS | 36,765,000 |
| 1000 | BAYREUTH | BAYREUTH, GERMANY | POLYMERS | 16,938,000 |
| | BERRE | BERRE, FRANCE | POLYMERS | 110,074,000 |
| 1301 | BRINDISI | BRINDISI, ITALY | POLYMERS | 76,841,000 |
| 1201 | CARRINGTON | CARRINGTON, UK | POLYMERS | 10,848,000 |
| CBO | CHOCOLATE BAYOU POLYMERS | ALVIN, TX | POLYMERS | 28,853,000 |
| CLO | CLINTON | CLINTON, IA | POLYMERS | 96,414,000 |
| 4005 | EDISON | EDISON, NJ | POLYMERS | 8,717,000 |
| FPO | FAIRPORT | FAIRPORT, OH | POLYMERS | 1,714,000 |
| 1300 | FERRARA | FERRARA, ITALY | POLYMERS | 30,654,000 |
| 1001 | FRANKFURT | FRANKFURT, GERMANY | POLYMERS | 16,278,000 |
| 4005 | JACKSON | JACKSON, TN | POLYMERS | 6,398,000 |
| 1001 | KNAPSACK | KNAPSACK, GERMANY | POLYMERS | 44,376,000 |
| LPO | LA PORTE | LA PORTE, TX | POLYMERS | 44,115,000 |
| LKO | LAKE CHARLES POLYMER | LAKE CHARLES, LA | POLYMERS | 43,770,000 |
| 2100 | CLYDE PP | CLYDE, AUSTRALIA | POLYMERS | 8,102,000 |
| 3110 | GEELONG LABORATORY | GEELONG, AUSTRALIA | POLYMERS | 22,000 |
| 3100 | GEELONG PP | GEELONG, AUSTRALIA | POLYMERS | 19,186,000 |
| 3000 | MELBOURNE OFFICE | MELBOURNE, AUSTRALIA | POLYMERS | 282,000 |
| 5000 | PETROKEN | ENSENADA, ARGENTINA | POLYMERS | 13,923,000 |
| 5100 | PINDA | PINDA, BRAZIL | POLYMERS | 343,000 |
| 4014 | MANSFIELD | MANSFIELD, TX | POLYMERS | 9,443,000 |
| MTO | MATAGORDA | MATAGORDA, TX | POLYMERS | 86,656,000 |
| 1201 | MILTON KEYNES | MILTON KEYNES, UK | POLYMERS | 8,532,000 |
| 1400 | MOERDIJK | MOERDIJK, NETHERLANDS | POLYMERS | 38,669,000 |
| MIO | MORRIS | MORRIS, IL | POLYMERS | 74,834,000 |
| 1001 | MUENCHSMUENSTER | MUENCHSMUENSTER, GERMANY | POLYMERS | 112,442,000 |
| 1601 | TARRAGONA | TARRAGONA, SPAIN | POLYMERS | 27,076,000 |
| 1300 | TERNI | TERNI, ITALY | POLYMERS | 37,679,000 |
| VTO | VICTORIA | VICTORIA, TX | POLYMERS | 24,349,000 |
| 8505 | BAP GUANGZHOU | GUANGZHOU, PRC | POLYMERS | 3,027,000 |
| 8503 | BAP SUZHOU | SUZHOU, PRC | POLYMERS | 2,876,000 |
| 8000 | BAP THAILAND | BANGKOK, THAILAND | POLYMERS | 3,777,000 |
| 8500 | BASELL ASIA PACIFIC | HONG KONG, PRC | POLYMERS | 13,000 |
| LJI | LYONDELL JAPAN | TOKYO, JAPAN | POLYMERS | 3,000 |
| SIN | LYONDELL SOUTH ASIA | SINGAPORE | POLYMERS | 1,000 |
| **TOTAL POLYMERS SEGMENT** | | | | **1,043,990,000** |
| | | | | |
| **TECHNOLOGY SEGMENT** | | | | |
| | FERRARA CATALYST | FERRARA, ITALY | TECHNOLOGY | 16,042,000 |
| | FRANKFURT CATALYST | FRANKFURT, GERMANY | TECHNOLOGY | 17,212,000 |
| DE25 | LUDWIGSHAFEN CATALYST | LUDWIGSHAFEN, GERMANY | TECHNOLOGY | 3,613,000 |
| ETC | CINCINNATI TECHNOLOGY CENTER | CINCINNATI, OH | TECHNOLOGY | 28,736,000 |
| NTO | NEWTOWN SQUARE TECHNOLOGY CENTER | NEWTOWN SQUARE, PA | TECHNOLOGY | 11,504,000 |
| 1300 | FERRARA R&D | FERRARA, ITALY | TECHNOLOGY | 3,715,000 |
| **TOTAL TECHNOLOGY SEGMENT** | | | | **80,822,000** |

*CONFIDENTIAL BUSINESS INFORMATION*



**American Appraisal**

**LYONDELLBASELL INDUSTRIES AF S.C.A.**
**SUMMARY OF LIQUIDATION VALUE IN PLACE**
**AS OF APRIL 1, 2010**
**CURRENCY- USD**                                    **LIQUIDATION VALUE IN PLACE**

| PLANT CODE | PLANT NAME | LOCATION | SEGMENT | GRAND TOTAL |
|---|---|---|---|---|
| **SHARED ASSETS** | | | | |
| DDC | DALLAS DATA CENTER | DALLAS, TEXAS | SHARED | 4,000 |
| HDC | HOUSTON DATA CENTER | HOUSTON, TX | SHARED | 14,000 |
| OHC | ONE HOUSTON CENTER | HOUSTON, TX | SHARED | 493,000 |
| **TOTAL SHARED ASSETS** | | | | **511,000** |
| | | | | |
| **CLOSED FACILITIES** | | | | |
| BMO | BEAUMONT | BEAUMONT, TX | CLOSED | 0 |
| CPO | CHOCOLATE BAYOU | ALVIN, TX | CLOSED | 0 |
| LCO | LAKE CHARLES | LAKE CHARLES, LA | CLOSED | 0 |
| LXO | LAKE CHARLES | LAKE CHARLES, LA | CLOSED | 0 |
| PAO | PORT ARTHUR | PORT ARTHUR, TX | CLOSED | 0 |
| | SARNIA | SARNIA, ON | CLOSED | 0 |
| | VERENNES | VERENNES | CLOSED | 0 |
| 1102 | FOS BASELL | FOS-SUR-MER, FRANCE | CLOSED | 0 |
| **TOTAL CLOSED FACILITIES** | | | | **0** |
| | | | | |
| **GRAND TOTAL TANGIBLE ASSETS** | | | | **3,096,950,000** |
| | | | | |
| **INTANGIBLE ASSETS** | | | | |
| **EMISSION ALLOWANCES** | | | | 480,000,000 |
| **TECHNOLOGY LICENSE** | | | | 71,000,000 |
| **CATALYST CONTRACTS** | | | | 48,000,000 |
| **GRAND TOTAL INTANGIBLE ASSETS** | | | | **599,000,000** |
| | | | | |
| **GRAND TOTAL TANGIBLE ASSETS AND INTANGIBLE ASSETS** | | | | **3,695,950,000** |

*CONFIDENTIAL BUSINESS INFORMATION*



# Exhibit B

## Assumptions and Limiting Conditions



## ASSUMPTIONS AND LIMITING CONDITIONS

This service was performed with the following general assumptions and limiting conditions.

To the best of our knowledge, all data, including historical financial data, if any, relied upon in reaching opinions and conclusions or set forth in this report is true and accurate. Although gathered from sources that we believe are reliable, no guarantee is made nor liability assumed for the truth or accuracy of any data, opinions, or estimates furnished by others that have been used in this analysis.

No responsibility is assumed for matters legal in nature. No investigation has been made of the title to or any liabilities against the property appraised. We have assumed that the owner's claim is valid, the property rights are good and marketable, and there are no encumbrances that cannot be cleared through normal processes, unless otherwise stated in the report.

The value or values presented in this report are based upon the premises outlined herein.

The date of value to which the conclusions and opinions expressed apply is set forth in the report. The value opinion presented therein is based on the status of the economy and on the purchasing power of the currency stated in the report as of the date of value.

This report has been made only for the use or uses stated, and it is neither intended nor valid for any other use.

Possession of this report or any copy thereof does not carry with it the right of publication. No portion of this report (especially any conclusion, the identity of any individuals signing or associated with this report or the firms with which they are connected, or any reference to the professional associations or organizations with which they are affiliated or the designations awarded by those organizations) shall be disseminated to third parties through prospectus, advertising, public relations, news, or any other means of communication without the written consent and approval of American Appraisal.

Areas, dimensions, and descriptions of property, if any, used in this analysis have not been verified, unless stated to the contrary in the report. Any areas, dimensions, and descriptions of property included in the report are provided for identification purposes only, and no one should use this information in a conveyance or other legal document. Plats, if any, presented in the report are intended only as aids in visualizing the property and its environment. Although the material was prepared using the best available data, it should not be considered as a survey or scaled for size.

Unless stated to the contrary in the report, no environmental impact study has been ordered or made. Full compliance with all applicable laws and governmental regulations is assumed unless otherwise stated, defined, and considered in the report. We have also assumed responsible

*CONFIDENTIAL BUSINESS INFORMATION*



ownership and that all required licenses, consents, or other legislative or administrative authority from any applicable government or private entity organization either have been or can be obtained or renewed for any use that is relevant to this analysis.

The value estimate contained within the report specifically excludes the impact of substances such as asbestos, urea-formaldehyde foam insulation, other chemicals, toxic wastes, or other potentially hazardous materials or of structural damage or environmental contamination resulting from earthquakes or other causes, unless stated to the contrary in the report. It is recommended that the reader of the report consult a qualified structural engineer and/or industrial hygienist for the evaluation of possible structural/environmental defects, the existence of which could have a material impact on value.

If we made a physical inspection of the property, the inspection was made by individuals generally familiar with real estate and building construction. However, we do not opine on, nor are we responsible for, the structural integrity of the property including its conformity to specific governmental code requirements, such as fire, building and safety, earthquake, and occupancy, or any physical defects that were not readily apparent to the appraisers during their inspection.

*CONFIDENTIAL BUSINESS INFORMATION*





# Exhibit C

## Certificates of Appraisers



## CERTIFICATE OF APPRAISER

I certify that, to the best of my knowledge and belief,

- The statements of fact contained in this report are true and correct. I have not knowingly misrepresented any facts or information that would have an impact on my opinions or conclusions.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and represent my impartial and unbiased professional analyses, opinions, and conclusions and those of American Appraisal.

- American Appraisal and I personally have no present or prospective interest in or bias with respect to the property that is the subject of this report and have no personal interest or bias with respect to the parties involved.

- Neither my nor American Appraisal's engagement in or compensation for this assignment is contingent upon the development or reporting of a predetermined value or direction in value, a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

- The analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice and the Principles of Appraisal Practice and Code of Ethics of the American Society of Appraisers.

- I understand that a false or fraudulent overstatement of the property value as described in this appraisal report may subject me to the penalty under Internal Revenue Code § 6701(a). In addition, I understand that a substantial or gross valuation misstatement resulting from the appraisal of the property that I know, or reasonably should know, would be used in connection with a return or claim for refund may subject me to the penalty under Internal Revenue Code § 6695A.

- I have made an inspection of a representative sample of the property that is the subject of this report.

- John Ray II provided significant appraisal assistance regarding the inspections and analysis.

The American Society of Appraisers has a mandatory recertification program for all of its senior members. I am in compliance with the requirements of that program.

*Michael J Remsha*

Michael J. Remsha, P.E., ASA, CMI
State of Texas Non-Resident Temporary Appraiser, #881201645,
Expires February 26, 2010

CONFIDENTIAL BUSINESS INFORMATION



**American Appraisal**

## CERTIFICATE OF APPRAISER

I certify that, to the best of my knowledge and belief,

- The statements of fact contained in this report are true and correct. I have not knowingly misrepresented any facts or information that would have an impact on my opinions or conclusions.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and represent my impartial and unbiased professional analyses, opinions, and conclusions and those of American Appraisal.

- American Appraisal and I personally have no present or prospective interest in or bias with respect to the property that is the subject of this report and have no personal interest or bias with respect to the parties involved.

- Neither my nor American Appraisal's engagement in or compensation for this assignment is contingent upon the development or reporting of a predetermined value or direction in value, a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

- The analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice and the Principles of Appraisal Practice and Code of Ethics of the American Society of Appraisers.

- I have not made an inspection of the property that is the subject of this report.

- Michael J. Remsha provided significant appraisal assistance by performing the primary analysis.

The American Society of Appraisers has a mandatory recertification program for all of its senior members. I am in compliance with the requirements of that program.

*Lee P Hackett*

**Lee P. Hackett, FASA, FRICS, CRE**

*CONFIDENTIAL BUSINESS INFORMATION*

**EXHIBIT C**

**<u>Projected Financial Information</u>**

# PROJECTIONS

1. <u>Responsibility for and Purpose of the Projections</u>

For the purpose of demonstrating the feasibility of the Plan, the following financial projections for each of the five fiscal years 2010 through 2014 (the "Projections") were prepared by the Debtors, assisted by their professional advisors. The projections reflect the Debtor's most recent estimates of financial position, results of operations and cash flows of Reorganized LyondellBasell. Consequently, the Projections reflect the Debtor's assumptions and judgments as to expectations of market and business conditions, expected future operating performance, and the occurrence or nonoccurrence of certain future events, all of which are subject to change, as discussed below.

The Debtors do not, as a matter of course, publish their projections, strategies, or forward-looking projections of the financial position, results of operations, and cash flows. Accordingly, the Debtors do not anticipate that they will, and disclaim any obligation to, furnish updated projections to the holders of Claims or Equity Interests after the date of this Disclosure Statement, or to include such information in documents required to be filed with the Securities and Exchange Commission ("SEC") or to otherwise make such information public. The assumptions disclosed herein are those that the Debtors believe to be significant to the Projections and are "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.

The projections present, to the best of the Debtors' knowledge and belief, Reorganized LyondellBasell's projected financial position, results of operations, and cash flows for the five fiscal years 2010 through 2014 and reflect the Debtors' assumptions and judgments as of August 31, 2009. Although the Debtors are of the opinion that these assumptions are reasonable under current circumstances, such assumptions are subject to inherent uncertainties, including but not limited to, material changes to the economic environment, underlying commodity prices, transportation fees and spreads, supply and demand of underlying commodities, the competitive environment and other factors affecting the Debtors' businesses. The likelihood, and related financial impact, of a change in any of these factors cannot be predicted with certainty. Consequently, actual financial results could differ materially from the Projections. The Projections assume the Plan will be implemented in accordance with its stated terms and that consummation of the Plan will occur on May 1, 2010. The Projections should be read in conjunction with the assumptions and qualifications contained herein.

**THE PROJECTIONS WERE NOT PREPARED WITH A VIEW TOWARD COMPLIANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES ("GAAP") IN THE U.S. FURTHERMORE, THE PROJECTIONS HAVE NOT BEEN AUDITED OR REVIEWED BY A REGISTERED INDEPENDENT PUBLIC ACCOUNTING FIRM.**

**THE PROJECTIONS, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, ARE BASED UPON A VARIETY OF ESTIMATES AND ASSUMPTIONS WHICH MAY NOT BE REALIZED AND ARE SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC AND COMPETITIVE UNCERTAINTIES AND CONTINGENCIES WHICH ARE BEYOND THE CONTROL OF THE DEBTORS. CONSEQUENTLY, THE PROJECTIONS SHOULD NOT BE REGARDED AS A REPRESENTATION OR WARRANTY BY THE DEBTORS, OR ANY OTHER PERSON, AS TO THE ACCURACY OF THE PROJECTIONS OR THAT THE PROJECTIONS WILL BE REALIZED. ACTUAL RESULTS MAY DIFFER MATERIALLY FROM THOSE PRESENTED IN THE PROJECTIONS. HOLDERS OF CLAIMS OR EQUITY INTERESTS MUST MAKE THEIR OWN DETERMINATIONS AS TO THE REASONABLENESS OF SUCH ASSUMPTIONS AND THE RELIABILITY OF THE PROJECTIONS IN MAKING THEIR DETERMINATION OF WHETHER TO ACCEPT OR REJECT THE PLAN.**

2.    <u>Current Cost Basis and General Assumptions</u>

The Debtors prepared the Projections with the assistance of their professional advisors, including the incorporation of economic data and other input from consultants retained for this purpose.  The Projections represent, to the best of the Debtors' knowledge and belief, the Debtors' projected financial position, results of operations, and cash flows for each of the five fiscal years 2010 through 2014 and reflect the Debtors' assumptions and judgments considering information known as of August 31, 2009.

a.    Current Cost Basis

The projections have been prepared using accounting policies that are materially consistent with those applied in the Debtors' historical financial statements, except as discussed below.  The Projections do not reflect the application of fresh start accounting, which, if required pursuant to U.S. GAAP, is not anticipated to have a material impact on the underlying economics of the Plan.

All financial data in this section is presented on a current cost basis, which differs from the bases used by LyondellBasell for financial reporting purposes.  As such, the current cost basis, as well as EBITDAR,  are "non-GAAP financial measures," which, as defined by the SEC, is a financial measure that is derived on the basis of methodologies other than in accordance with U.S. GAAP.

For financial reporting purposes, LyondellBasell uses both the first-in, first-out ("FIFO") and last-in, first-out ("LIFO") methods of accounting to determine inventory cost.  The LIFO method is used for certain U.S. inventories, representing approximately 55% to 60% of inventories, to maintain consistency with the Company's U.S. federal income tax treatment of those inventories.  For current cost purposes, the U.S. LIFO-basis inventories are first adjusted to a FIFO basis to put Company-wide inventories on a FIFO-basis.  The current cost adjustment then adjusts the Company-wide FIFO-basis inventory to a current cost basis.

LyondellBasell's profit and loss accounts consist of cost of sales at standard, which is the expected current cost for the period, and any actual cost variance from standard, which is the reflection of the actual costs for the period less the expected, or standard, costs already recognized.  The combination of the two accounts in the profit and loss reflects the current costs for the period.  These costs are adjusted to the above-noted FIFO-basis through FIFO inventory adjustments to replace the current costs with the FIFO valuation for the cost of goods sold, which is the basis that LyondellBasell uses for reporting segment results for financial reporting purposes. The adjustment to current cost reverses the FIFO inventory adjustments, thereby reflecting cost of sales at the current cost for the period.  LyondellBasell believes that the current cost basis of accounting for inventory more accurately reflects the effects of current raw material prices.

b.    General Assumptions

*Methodology.*  The projected financial summary reflects management's current estimate of demand for its products and services as well as the achievability of fixed cost savings initiatives.  LyondellBasell's senior management team and business unit managers took into account current and projected macroeconomic and microeconomic analyses prepared by consultants retained for this purpose as well as the Company's own internal estimates of factors that impact supply and demand for Company's products.  Those macroeconomic factors include global and regional GDP growth rates, the price of crude oil, inflation, exchange rates and the price of natural gas. The projections were developed based on a business unit review with the realization of fixed cost savings that will drive improvement in gross profit and EBITDAR margin.

*Tax Structure.*  The Projections for the Reorganized LyondellBasell include the estimated impact of U.S. and non-U.S. taxes. Therefore, certain assumptions have been made with respect to regional and local profits and losses and debt placement.  Certain jurisdictions impose restrictions on the current deductibility of interest

payments.  These restrictions have been factored into the Projections.  Actual cash tax may differ materially based upon varying levels of debt, interest rates, placement of debt, actual results, and income distribution assumptions as well as the final resolution of remaining U.S. tax attributes in the chapter 11 emergence case.

*Plan Consummation Date.*  The Projections assume the Plan will be consummated on May 1, 2010. The Debtors do not believe that a change in the assumed date of the consummation of the Plan by a few months will materially impact the post-confirmation capital structure or underlying economics of the Plan.

3.      <u>Reorganized LyondellBasell's Pro Forma Emergence Consolidated Balance Sheet</u>

Below is a reconciliation of the pre-emergence consolidated balance sheet as of April 30, 2010 to the post-emergence consolidated balance sheet as of May 1, 2010.  The adjustments do not include any effects of fresh start accounting related to the restatement of assets to fair value.

| LyondellBasell Industries AF S.C.A. BALANCE SHEET Current Cost Basis (US $ millions) | 4/30/2010 Pre-Closing (a) | Plan Settlement (b) | New Debt (c ) | Direct Placement & Rights Offering (d) | Cancellation of Debt (e) | 5/1/2010 Pro-Forma |
|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | |
| Cash and cash equivalents | 500 | (4,259) | 3,052 | 2,729 | | 2,022 |
| Short Term Investments | 11 | | | | | 11 |
| Accounts receivable: | 3,373 | | | | | 3,373 |
| Inventories | 3,321 | | | | | 3,321 |
| Income tax receivable | 281 | | | | | 281 |
| Prepaid expenses and other current assets | 832 | | | | | 832 |
| Current deferred income tax assets | 5 | | | | | 5 |
| **Total Current Assets** | 8,323 | (4,259) | 3,052 | 2,729 | - | 9,845 |
| | | | | | | |
| Property, plant and equipment | 19,307 | | | | | 19,307 |
| Less: accumulated depreciation | (4,406) | | | | | (4,406) |
| **Property, plant and equipment, net** | 14,901 | | | | | 14,901 |
| | | | | | | |
| Investments and long-term receivables: | | | | | | |
| *Investment in PO joint ventures* | 922 | | | | | 922 |
| *Equity Investments* | 1,121 | | | | | 1,121 |
| *Other investments and long-term receivable* | 112 | | | | | 112 |
| Noncurrent deferred tax assets | 115 | | | | | 115 |
| Intangible Assets, net | 1,845 | | | 198 | - | 2,043 |
| Other assets, net | 247 | | | | | 247 |
| **TOTAL ASSETS** | $ 27,586 | $ (4,259) | $ 3,250 | $ 2,729 | $ - | $ 29,306 |
| | | | | | | |
| **LIABILITIES** | | | | | | |
| Accounts payable: | 2,561 | (160) | | | | 2,401 |
| Accrued interest | 332 | | | | (312) | 20 |
| Income tax payable | 95 | | | | | 95 |
| Accrued liabilities | 1,068 | (195) | - | | | 873 |
| Current deferred income tax liabilities | 169 | | | | | 169 |
| **Total Current Liabilities** | 4,225 | (355) | - | - | (312) | 3,558 |
| | | | | | | |
| Consolidated Debt | 25,484 | (2,822) | 3,250 | - | (18,722) | 7,190 |
| Liabilities Subject to Compromise | 3,804 | (1,082) | | | (2,722) | - |
| Noncurrent deferred income tax liabilities | 2,192 | | | | 4,075 | 6,267 |
| Other liabilities | 1,363 | | | | | 1,363 |
| **Total Liabilities** | 37,068 | (4,259) | 3,250 | - | (17,681) | 18,378 |
| | | | | | | |
| **STOCKHOLDERS' EQUITY** | | | | | | |
| Stockholders' equity: | | | | | | |
| Issued capital | 60 | | | 2,729 | 7,301 | 10,090 |
| Additional paid-in capital | 563 | | | | | 563 |
| Retained earnings | (9,038) | | | | | (9,038) |
| Net Income | (917) | - | - | - | 10,380 | 9,463 |
| AOCI | (279) | | | | | (279) |
| **LyondellBasell share of stockholder's equity** | (9,611) | - | - | 2,729 | 17,681 | 10,799 |
| Non-controlling interests | 129 | | | | | 129 |
| **TOTAL LIABILITIES AND EQUITY** | $ 27,586 | $ (4,259) | $ 3,250 | $ 2,729 | $ - | $ 29,306 |

(i)     The pre-emergence balance sheet reflects actual results through December 31, 2009 and forecasted results for the four months ending April 30, 2010.

(ii)    Reflects the cash payments required pursuant to the Plan, including payment of administrative claims, amounts drawn under the Debtor-in-Possession financing, secured lender claims and 503(b)(9) claims. Back-to-back letters of credit are assumed to be issued under the new exit financing facility to collateralize existing letters of credit issued under the Debtor-in-Possession financing and outstanding at consummation.  As outstanding undrawn letters of credit are not reflected on the balance sheet, no adjustment is required to the balance sheet to record the issuance of new letters of credit.

(iii)   Reflects the issuance of new term loan and/or New Notes, totaling approximately $3.250 billion, and related fees to the secured lenders pursuant to the Plan

(iv)    Reflects the issuance of equity, net of associated fees, in the Reorganized LyondellBasell under the Rights Offering and direct placement of Class B Shares.

(v)  Reflects exchange of debt for equity and the cancellation of selected remaining external debt, Liabilities Subject to Compromise and other liabilities.

4.    LyondellBasell's Estimated Cash Sources and Uses at Emergence

(US $ millions)

| Cash Sources | | Cash Uses | |
|---|---|---|---|
| Pre-Emergence Cash Balance | $500 | **DIP Claims** | |
| New First Lien Term Loan/Notes | 3,250 | DIP ABL | $655 |
| Rights Offering Proceeds | 2,800 | DIP Term Loan | 2,168 |
| | | Total | $2,823 |
| **Other Debt** | | **Other Claims (Midpoint)(a)** | |
| New Third Lien Notes | $3,245 | Administrative Expenses (Excl. Prof Fees) | $205 |
| Replacement Euro Securitization | 315 | Priority Claims | 10 |
| Total | $3,560 | Secured Tax Claims | 13 |
| **TOTAL** | **$10,110** | Other Secured Claims(b) | 276 |
| | | Lender Litigation Settlement | 300 |
| | | Unsecured Claims - Class 7-B | 8 |
| | | Total | $812 |
| | | **Emergence Cash Outlays** | |
| | | Professional Fees | $160 |
| | | Funding of Litigation Trust | 20 |
| | | Funding of Disbursement Trust | 250 |
| | | DIP Exit Fees | 195 |
| | | Debt Financing Fees, Expenses, OID | 198 |
| | | Rights Offering Fees | 70 |
| | | Total | $893 |
| | | **Other Debt** | |
| | | DIP Roll-up | $3,245 |
| | | Euro Securitization | 315 |
| | | Total | $3,560 |
| | | Post-Emergence Cash Balance | 2,022 |
| | | **TOTAL** | **$10,110** |

(i)  For a description of the expenses and claims, please refer to the definitions in the Plan and the Disclosure Statement.

(ii)  Includes $200 million of BASF litigation claims.  Currently a letter of credit is outstanding until resolution of case.

5.    LyondellBasell's Estimated Total Debt at Emergence

| Estimated Total Debt | |
|---|---|
| (US $ millions) | At Emergence (4/30/10) |
| Funded Euro Securitization | $315 |
| Funded ABL Revolver | 0 |
| First Lien Term Loan/Notes | 3,250 |
| New Third Lien Notes (DIP Roll-up Replacement) | 3,245 |
| 2027 Notes | 300 |
| Other Debt | 80 |
| **Total Debt** | **$7,190** |

6.    <u>Reorganized LyondellBasell Projected Consolidated Balance Sheets (Unaudited)</u>

Below are management's projections of the consolidated financial positions at December 31, 2010 – December 31, 2014.

**LyondellBasell Industries AF S.C.A.**
**BALANCE SHEET**

| Current Cost Basis | 2010 | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|
| *(in US$ Millions)* | | | | | |
| **ASSETS** | | | | | |
| Cash and cash equivalents | $ 2,323 | $ 2,037 | $ 1,386 | $ 2,160 | $ 3,745 |
| Short Term Investments | 11 | 11 | 11 | 11 | 11 |
| Accounts receivable: | 3,317 | 3,892 | 4,360 | 4,712 | 4,919 |
| Inventories | 3,299 | 3,368 | 3,469 | 3,529 | 3,572 |
| Income tax receivable | 113 | 113 | 100 | 100 | 99 |
| Prepaid expenses and other current assets | 846 | 854 | 861 | 868 | 875 |
| Current deferred income tax assets | 5 | 5 | 5 | 5 | 5 |
| **Total Current Assets** | $ 9,914 | $ 10,280 | $ 10,192 | $ 11,385 | $ 13,226 |
| | | | | | |
| Property, plant and equipment | $ 19,938 | $ 21,117 | $ 22,277 | $ 23,200 | $ 24,182 |
| Less: accumulated depreciation | (5,555) | (7,309) | (9,068) | (10,833) | (12,609) |
| **Property, plant and equipment, net** | $ 14,383 | $ 13,808 | $ 13,209 | $ 12,367 | $ 11,573 |
| | | | | | |
| Investments and long-term receivables | 2,161 | 2,161 | 2,161 | 2,161 | 2,161 |
| Noncurrent deferred tax assets | 115 | 115 | 115 | 115 | 115 |
| Intangible Assets, net | 2,008 | 1,956 | 1,904 | 1,852 | 1,790 |
| Other assets, net | 247 | 247 | 247 | 247 | 247 |
| **TOTAL ASSETS** | $ 28,828 | $ 28,567 | $ 27,828 | $ 28,127 | $ 29,112 |
| | | | | | |
| **LIABILITIES** | | | | | |
| Accounts payable: | $ 2,460 | $ 2,804 | $ 3,042 | $ 3,123 | $ 3,319 |
| Accrued interest | 40 | 40 | 40 | 40 | 40 |
| Income tax payable | 30 | 124 | 128 | 149 | 219 |
| Accrued liabilities | 1,018 | 1,040 | 1,072 | 1,096 | 1,115 |
| Current deferred income tax liabilities | 169 | 169 | 169 | 169 | 169 |
| **Total Current Liabilities** | $ 3,717 | $ 4,177 | $ 4,451 | $ 4,577 | $ 4,862 |
| | | | | | |
| Consolidated Debt | 7,182 | 7,172 | 6,481 | 6,190 | 6,190 |
| Noncurrent deferred income tax liabilities | 6,182 | 5,825 | 5,588 | 5,537 | 5,522 |
| Other liabilities | 1,344 | 1,249 | 1,153 | 1,058 | 961 |
| **Total Liabilities** | $ 18,425 | $ 18,423 | $ 17,673 | $ 17,362 | $ 17,535 |
| | | | | | |
| **STOCKHOLDERS' EQUITY** | | | | | |
| Stockholders' equity: | | | | | |
| Issued capital | 10,090 | 10,090 | 10,090 | 10,090 | 10,090 |
| Additional paid-in capital | 563 | 563 | 563 | 563 | 563 |
| Retained earnings | (100) | (359) | (348) | 262 | 1,074 |
| AOCI | (279) | (279) | (279) | (279) | (279) |
| **LyondellBasell share of stockholder's equity** | 10,274 | 10,015 | 10,026 | 10,636 | 11,448 |
| Non-controlling interests | 129 | 129 | 129 | 129 | 129 |
| **Total Equity** | 10,403 | 10,144 | 10,155 | 10,765 | 11,577 |
| **TOTAL LIABILITIES AND EQUITY** | $ 28,828 | $ 28,567 | $ 27,828 | $ 28,127 | $ 29,112 |

7.    Reorganized LyondellBasell's Projected Consolidated Income Statements (unaudited)

Below is management's projection of consolidated income for the fiscal years 2010 – 2014.

| LyondellBasell Industries AF S.C.A. INCOME STATEMENT Current Cost Basis | | 2010 | | | | | | |
|---|---|---|---|---|---|---|---|---|
| (US $ millions) | JAN. - APRIL | MAY - DEC. | TOTAL | 2011 | 2012 | 2013 | 2014 |
| Sales & Other Operating Revenues | $ 12,181 | $ 24,587 | $ 36,768 | $ 33,922 | $ 38,063 | $ 41,597 | $ 43,074 |
| Cost of Sales | (11,855) | (23,966) | (35,821) | (32,617) | (36,398) | (39,074) | (40,305) |
| **Gross Profit** | **326** | **621** | **947** | **1,305** | **1,665** | **2,523** | **2,769** |
| Research & Development Expenses | (51) | (108) | (159) | (169) | (171) | (172) | (177) |
| SG&A Expenses | (297) | (602) | (899) | (920) | (1,007) | (1,034) | (1,070) |
| **Operating Income / (Loss)** | $    (22) | $    (89) | $   (111) | $    216 | $    487 | $  1,317 | $  1,522 |
| Interest Expense | (751) | (502) | (1,253) | (720) | (700) | (667) | (665) |
| Interest Income | 2 | 11 | 13 | 30 | 55 | 62 | 92 |
| Other Income, net | 14,279 | (32) | 14,247 | - | - | - | - |
| Equity Income | 1 | 27 | 28 | 78 | 123 | 145 | 186 |
| **Income / (Loss) from continuing Operations Before Income Taxes** | $ 13,509 | $   (585) | $ 12,924 | $   (396) | $    (35) | $    857 | 1,135 |
| Income Tax (Expense)/Benefit | (4,046) | 60 | (3,986) | 137 | 46 | (247) | (323) |
| **Net Income/(Loss) - Operations** | $  9,463 | $   (525) | $  8,938 | $   (259) | $     11 | $    610 | $    812 |
| Discontinued Operations | - | - | - | - | - | - | - |
| **Net Income/(Loss) - Continuing Operations** | $  9,463 | $   (525) | $  8,938 | $   (259) | $     11 | $    610 | $    812 |
| **Memo: EBITDAR** | $    545 | $  1,061 | $  1,606 | $  1,970 | $  2,245 | $  3,081 | $  3,300 |
| * 2010 projections include four months of operations in Chapter 11 | | | | | | | |

Key Assumptions

(i)    Revenues and Cost of Sales.

Management's current long range plan assumes a global rebound in demand for LyondellBasell's products and services.  Management assumes average annual GDP growth of 2.6% for 2010 through 2014.  This forecasted growth rate is less than the 2001 – 2008 year period when average annual GDP grew 3.1%.  The long range plan also takes into account estimated capacity additions in the Middle East and Asia, reduction of capacity in certain markets, a resumption of global demand for petrochemical and refining products and services, and LyondellBasell's leading capacity ranks.  West Texas Intermediate is forecasted to increase from $73.00 per barrel in 2010 to $80.00 per barrel in 2014.

(ii)    Research and Development Expenses.

Research and Development Expenses include among other things, salaries, wages, benefits, corporate overhead allocation, annual incentive plan, rent, leases, licenses and permits, and office supplies in order for LyondellBasell to maintain its intellectual property leadership.  From 2010 to 2014, Research and Development expenses increase by approximately 2.3% per year due to an assumed increase in employee costs and general inflation.

(iii)  Selling, General and Administrative.

Consolidated selling, general and administrative ("SG&A") expenses include, among other things, salaries, wages, benefits, corporate overhead allocation, annual incentive plan, rent, leases, licenses and permits, and office supplies.  SG&A expenses are forecasted to increase from 2010 to 2014 by approximately 3.8% per year due to an assumed increase in employee costs and general inflation.

(iv)  Other Income and Expense.

Consolidated other income and expense for 2010 includes certain items associated with the reorganization, including professional fees, controllable restructuring costs associated with LyondellBasell's cost savings initiatives and an estimate of the income effect of cancellation of indebtedness.  It does not include the income effect of adjustments related to fresh start reporting, including adjustments recorded at emergence from Chapter 11 as proscribed by FASB ASC 852-10.

(v)  Equity Income.

Consolidated equity income includes projected income from LyondellBasell's joint venture ("JV") investments.  LyondellBasell's JV relationships are an important and increasing component of cash flow from operations.  JV dividends are forecast to grow significantly over the five-year projection period in part due to the ramp-up of certain JV operations.

8.     The Reorganized LyondellBasell Projected Consolidated Statement of Cash Flows (Unaudited)

Below is management's projection of consolidated cash flow for the fiscal years 2010 through 2014.

| LyondellBasell Industries AF S.C.A. STATEMENT OF CASH FLOW Current Cost Basis (in US$ Millions) | JAN. - APRIL | MAY - DEC. | TOTAL | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|---|
| | | 2010 * | | | | | |
| CASH FLOWS FROM OPERATIONS: | | | | | | | |
| EBITDAR | $ 545 | $ 1,061 | $ 1,606 | $ 1,970 | $ 2,245 | $ 3,081 | $ 3,300 |
| Net Change in Working Capital | 111 | 137 | 248 | (299) | (331) | (330) | (55) |
| Dividends from Equity Investments | 1 | 27 | 28 | 78 | 123 | 145 | 186 |
| Net Taxes | (2) | 77 | 75 | (126) | (173) | (276) | (269) |
| Other Liabilities & Prepaid Expenses | (1,834) | 89 | (1,745) | (70) | (59) | (66) | (70) |
| NET CASH PROVIDED BY (USED IN) OPERATIONS | $ (1,179) | $ 1,391 | $ 212 | $ 1,553 | $ 1,805 | $ 2,554 | $ 3,092 |
| CASH FLOWS FROM INVESTING: | | | | | | | |
| Capital Expenditures | $ (316) | $ (631) | $ (947) | $ (1,179) | $ (1,159) | $ (923) | $ (983) |
| Other Investing | (1) | (6) | (7) | - | - | - | - |
| NET CASH PROVIDED BY (USED IN) INVESTING | $ (317) | $ (637) | $ (954) | $ (1,179) | $ (1,159) | $ (923) | $ (983) |
| CASH FLOWS FROM FINANCING: | | | | | | | |
| Debt Borrowing/(Repayment) | $ 660 | $ (8) | $ 652 | $ (10) | $ (691) | $ (291) | $ - |
| Interest Expense | (430) | (445) | (875) | (650) | (606) | (566) | (524) |
| Direct Placement & Rights Offering | 2,730 | - | 2,730 | - | - | - | - |
| NET CASH PROVIDED BY (USED IN) FINANCING | $ 2,960 | $ (453) | $ 2,507 | $ (660) | $ (1,297) | $ (857) | $ (524) |
| NET INCREASE/(DECREASE) IN CASH AND CASH EQUIVALENTS | $ 1,464 | $ 301 | $ 1,765 | $ (286) | $ (651) | $ 774 | $ 1,585 |
| Cash and Cash Equivalents at Beginning of the Period | $ 558 | $ 2,022 | $ 558 | $ 2,323 | $ 2,037 | $ 1,386 | $ 2,160 |
| ENDING CASH AND CASH EQUIVALENTS | $ 2,022 | $ 2,323 | $ 2,323 | $ 2,037 | $ 1,386 | $ 2,160 | $ 3,745 |

*2010 projections include four months of operations in Chapter 11

Key Assumptions

(i)  Working Capital.

Between 2010 and 2014, LyondellBasell estimates an investment of $770 million in working capital due to a forecasted increase in projected oil prices and a rebound in volumes within each segment as LyondellBasell emerges from a cyclical trough.   LyondellBasell has not projected a recovery to normalized payables terms post emergence from chapter 11, although it is anticipated this may occur in due course.

(ii)  Capital Expenditures.

LyondellBasell's capital expenditure plan incorporates increasing outlays for turnarounds between 2010 and 2012 for its Fuels and Chemicals segments along with an increase in base capital spending for each of Fuels, Chemicals and Polymers in 2010 and 2011.

(iii)  Debt.

See Section IV.B.2 of the Disclosure Statement for a description of the Exit Facility.

**EXHIBIT D**

**Disclosure Statement Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                          :

In re:                        :          Chapter 11

                          :

LYONDELL CHEMICAL COMPANY, et al.,  :      Case No. 09-10023 (REG)

                          :

            Debtors.       :        Jointly Administered

-------------------------------------------------------------x

## ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) ESTABLISHING PLAN SOLICITATION, VOTING AND TABULATION PROCEDURES; (III) ESTABLISHING PROCEDURES FOR PARTICIPATION IN RIGHTS OFFERING; AND (IV) SCHEDULING A HEARING AND ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE DEBTORS' PLAN OF REORGANIZATION

Upon the motion dated September 11, 2009 (the "Motion"),[1] of Lyondell Chemical Company and certain of its subsidiaries and affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), pursuant to sections 105, 1125 and 1126 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and rules 2002, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (the "Order") (i) approving the Debtors' Disclosure Statement (as it may be amended or supplemented, the "Disclosure Statement"), with respect to the *Joint Chapter 11 Plan of Reorganization for the LyondellBasell Debtors* (as it may be amended or supplemented, the "Plan"); (ii) establishing solicitation, voting and tabulation procedures with respect to the Plan, including fixing a voting record date, setting a deadline for filing motions to estimate claims for voting purposes, and approving the forms of ballots; (iii) establishing procedures for participation in a rights offering to certain of the Debtors' creditors and approving a subscription form that creditors participating

---

[1] Capitalized terms not otherwise defined shall have the meaning ascribed to them in the Motion.

in the rights offering must use to exercise subscription rights; and (iv) scheduling a hearing and establishing notice and objection procedures for confirmation of the Plan, all as more fully described in the Motion and the Debtors having amended certain of the exhibits to the Motion as set forth in the *Notice of Filing of Amended Exhibits to the Debtors' Motion for an Order (I) Approving the Disclosure Statement; (II) Establishing Plan Solicitation, Voting and Tabulation Procedures; (III) Establishing Procedures for Participation in Rights Offering; and (IV) Scheduling a Hearing and Establishing Notice and Objection Procedures for Confirmation of the Debtors' Plan of Reorganization* filed on January 27, 2010; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no further notice need be provided; and the relief being requested being in the best interest of the Debtors and their estates and creditors; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearing held before the Court on March 11, 2010 (the "Disclosure Statement Hearing"); and the Court having determined the legal and factual bases set forth in the Motion and at the Disclosure Statement Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor; it is hereby

**ORDERED** that the Motion is granted, and any and all objections to the Motion not otherwise settled or withdrawn are hereby overruled; and it is further

**ORDERED** that the Disclosure Statement (as may be amended and/or revised from time to time, including in connection with the Disclosure Statement Hearing) is approved

as containing "adequate information" within the meaning of section 1125 of the Bankruptcy Code; and it is further

**ORDERED** that for the purpose of determining (i) the creditors who are entitled to vote on the Plan and (ii) in the case of non-voting classes, the creditors and interest holders who are entitled to receive a Notice of Non-Voting Status, the record date shall be March 11, 2010 (the "Record Date"); and it is further

**ORDERED** that the procedures for solicitation of acceptance or rejection of the Plan, as set forth herein, are approved; and it is further

**ORDERED** that the Solicitation Packages will include the approved Disclosure Statement (with the Plan appended thereto), in electronic format on a CD-ROM, a copy of this Order (excluding the exhibits thereto), and the plan support letters (further described below); and it is further

**ORDERED** that, subject to and consistent with the Amended and Restated Settlement Agreement Relating to the Committee Litigation, dated as of March 10, 2010 (the "Settlement Agreement"), involving the Official Committee of Unsecured Creditors (the "Creditors' Committee") in these bankruptcy cases, the following parties will provide a plan support letter for inclusion in the Debtors' Solicitation Packages: (i) the Creditors' Committee, whose letter shall also encourage members or constituents to vote to accept the Plan; (ii) the 2015 Notes Trustee (as defined in the Plan); and (iii) the Millennium Notes Trustee (as defined in the Plan); and it is further

**ORDERED** that, subject to the exceptions set forth in the immediately following decretal paragraph, Solicitation Packages shall be mailed no later than March 17, 2010, or as soon as reasonably practicable thereafter (the "Solicitation Date") to (i) all parties having filed proofs of claim, or notices of transfers of claims, in the Debtors' chapter 11 cases prior to the

Record Date; (ii) any other known holders of claims against or equity interests in the Debtors as of the Record Date, including all persons or entities listed in the Debtors' schedules of assets and liabilities dated April 6, 2009, or any amendment thereof (the "Schedules"), as holding liquidated, noncontingent and undisputed claims; (iii) the United States Trustee; (iv) the attorneys for the Creditors' Committee; (v) the attorneys for the Debtors' postpetition lenders; (vi) all other parties in interest that have filed a request for notice pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases; (vii) the Securities and Exchange Commission; (viii) the Internal Revenue Service; (ix) the Pension Benefit Guaranty Corporation; (x) the transfer agent(s) and registered holders of any claims against the Debtors arising from public securities;[2] and (xi) all known parties to executory contracts that have not been assumed or rejected; and it is further

ORDERED that notwithstanding the immediately foregoing decretal paragraph, (a) excluding any withdrawn claims which were filed by Brent Coon & Associates, P.C., holders of claims that were paid pursuant to, or expunged by, prior order of this Court, holders of claims against the Debtors that have not been classified in the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code, and holders of claims listed in the Schedules as contingent, unliquidated, or disputed, or in an amount equal to $0.00, for which a proof of claim was not filed by the applicable bar date for the filing of proofs of claim established by the Court shall receive only the Confirmation Hearing Notice; and (b) all members of Classes 1, 2, 6, 9, 10, 11, 12, 13, and 14, and those members of Class 7-B with claims against Debtors other than MHC Inc. and

---

[2] The Voting Nominees holding the relevant securities will be provided with copies of, and instructions to serve, the appropriate Solicitation Packages (or notice, as the case may be) on the beneficial holders of such claims and interests and will be reimbursed by the Debtors for reasonable, actual, and necessary expenses incurred in connection with such distribution. The procedure for distribution of the appropriate Solicitation Packages (or notice, as the case may be) to holders of claims is described more fully below.

Millennium Holdings LLC, which are classified under the Plan as unimpaired or receiving no distribution, shall receive only a Notice of Non-Voting Status; and it is further

**ORDERED** that the Debtors are excused from mailing Solicitation Packages, Notices of Non-Voting Status, Confirmation Hearing Notices or any other materials (as applicable) that would otherwise be distributed to those entities listed at addresses from which Disclosure Statement Notices were returned as undeliverable by the United States Postal Service, unless the Debtors are provided with accurate addresses for such entities before the Solicitation Date, and to those claimants on whose behalf a claim was filed, and subsequently withdrawn, by Bren Coon & Associates, P.C.; and any failure to mail Solicitation Packages, Notices of Non-Voting Status and the Confirmation Hearing Notice (as applicable) to such entities or parties will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline, or a violation of Bankruptcy Rule 3017(d); and it is further

**ORDERED** that the forms of Ballots, substantially in the forms annexed as Exhibit D to the Motion, as amended, are sufficiently consistent with Bankruptcy Rule 3017(d) and Official Form No. 14 and are approved, and the Debtors are authorized to use such Ballots in soliciting votes on the Plan; and it is further

**ORDERED** that Ballots are to be distributed to all holders of claims in Classes 3, 4, 5, 7-A, 7-C, 7-D and 8 and those holders of claims in Class 7-B against MHC Inc. or Millennium Holdings, LLC (the "Voting Classes"), and such classes are entitled to vote to accept or reject the Plan; and it is further

**ORDERED** that all Ballots (or Master Ballots in the case of votes cast by a Voting Nominee) must be properly delivered to the Debtors' ballot solicitation and tabulation agent, Financial Balloting Group (the "Voting Agent"), by (i) first-class mail, either in the return envelope provided with each Ballot, or to the address indicated, (ii) overnight courier, or

(iii) personal delivery so that they are received by the Voting Agent no later than 4:00 p.m. (prevailing Eastern time), on April 15 , 2010 (the "Voting Deadline"); and it is further

**ORDERED** that holders of claims in Classes 7-A, 7-C, 7-D and 8 will be permitted to express a preference election (the "Preference Election") to elect, by such a date so that the Preference Form (as defined below) is received by the Voting Agent no later than 4:00 p.m. (prevailing Eastern time) on the Voting Deadline, to alter the proportion of cash versus Class A shares comprising their distributions, but only to the extent that such altered proportions are feasible in light of other claim holders' preferences for alteration; provided, further, that the final allocation will be determined solely by the Debtors based on the preferences expressed by claimants (on the Ballots, or in an Election Form as hereinafter provided) and is not subject to challenge; and it is further

**ORDERED** that with respect to the Preference Election, the Ballots for Classes 7-A, 7-C and 7-D (excluding any holders of public securities in this Class) will allow a member of such Voting Class to mark its preference to elect to alter the proportion of  cash versus Class A shares comprising its distribution, but only to the extent that such altered proportions are feasible in light of other claim holders' preferences for alteration; and it is further

**ORDERED** that with respect to the Preference Election for any holders of public securities in Class 7-D and all members of Class 8, (i) the Debtors will mail an election form (the "Election Form"), substantially in the form approved by the Court, to the Voting Nominees (as defined below) holding public securities in Classes 7-D and 8;[3] (ii) holders of notes in Class 7-D

---

[3] Voting Nominees holding notes in Classes 7-D and 8, and, in the case of notes held exclusively through Euroclear and Clearstream, Euroclear and Clearstream are required to forward the Election Form to Beneficial Holders, or account holders, as applicable, of such notes and to effect any Preference Election on their behalf through DTC's Automated Tender Offer Program ("ATOP") system, or, in the case of notes held exclusively through Euroclear or Clearstream, through their customary procedures for

and members of Class 8 may receive their Election Form separately form the balance of the Solicitation Package; (iii) the Voting Nominees shall follow the procedures established by the Voting Agent with respect to the electronic delivery of the Beneficial Holder's (as defined below) underlying position; (iv) the electronic deliveries shall remain in effect until final distributions are made under the Plan; and (v) the Debtors shall deliver Election Forms to Voting Nominees holding notes in Classes 7-D and 8 as of the Record Date; provided, however, that any holder of a note in Classes 7-D and 8 may make the Preference Election prior to the expiration of the Voting Deadline even if such holder was not the holder of such note as of the Record Date; and it is further

**ORDERED** that with respect to the Preference Election for any holders of public securities in Class 7-D and all members of Class 8, any Preference Election must be effected by the Voting Nominee holding the notes tendering them in accordance with the holder's instructions, and the notes so tendered will no longer be able to be traded; and it is further

**ORDERED** that with respect to those members of the Voting Classes who are holders of public securities of the Debtors (collectively, the "Beneficial Holders") and who are entitled to vote (the "Voting Securities"), the Debtors shall deliver Solicitation Packages, including beneficial ballots to record holders of such claims, including, without limitation, brokers, banks, dealers or other agents or nominees (collectively, the "Voting Nominees") to distribute to Beneficial Holders of the claims on behalf of which the Voting Nominee acts. Master Ballots will be delivered to Voting Nominees after the Solicitation Packages have been distributed to the Voting Nominees. The Debtors shall be responsible for each such Voting Nominee's reasonable and customary out-of-pocket expenses associated with (i) distribution of

---

permanent blocking. Election Forms are not required to be included in the Solicitation Packages, but will be delivered to Voting Nominees contemporaneously therewith.

the Beneficial Ballots and Solicitation Packages to the Beneficial Holders; (ii) tabulation of the

Beneficial Ballots; and (iii) completion of Master Ballots; and it is further

**ORDERED** that Voting Nominees, with respect to any Voting Securities, are

ordered to do the following within five (5) business dates of the receipt of the Solicitation

Packages:

(a)    Forward a Solicitation Package (including a Beneficial Ballot) to each Beneficial Holder as of the Record Date and include a return envelope provided by and addressed to the Voting Nominee so that the Beneficial Holder can return the completed Beneficial Ballot directly to the Voting Nominee.  The Voting Nominee should advise the Beneficial Holders to return their Beneficial Ballots to the Voting Nominee by a date calculated by the Voting Nominee to allow it to prepare and return the Master Ballot to the Voting Agent by the Voting Deadline (as defined below).  After Beneficial Ballots are returned, the Voting Nominee will summarize on the appropriate Master Ballot the votes and other Beneficial Ballot information of its respective Beneficial Holders as reflected in all properly completed and signed Beneficial Ballots, and then return the Master Ballot to the Voting Agent by the Voting Deadline; or

(b)    Distribute pre-validated Ballots pursuant to the following procedures:

(i)    The Voting Nominee shall forward to each Beneficial Holder as of the Record Date the Solicitation Package or copies thereof (including (A) the Disclosure Statement; (B) an individual Beneficial Ballot that has been pre-validated, as indicated in paragraph (ii) below; and (C) a return envelope provided by and addressed to the Voting Agent);

(ii)    To pre-validate a ballot, the Voting Nominee should complete the first item only and execute the Beneficial Ballot and indicate on the Beneficial Ballot the name of the Voting Nominee, the amount of securities held by the Voting Nominee for the Beneficial Holder and the account number(s) for the

-8-

account(s) in which such securities are held by the Voting Nominee; and

(iii)    The Beneficial Holder shall return the pre-validated Ballot to the Voting Agent by the Voting Deadline; and it is further

**ORDERED** that the Voting Nominees shall be required to keep the original Beneficial Ballots and Election Forms received from Beneficial Holders, or, in the case of pre-validated ballots, a list of Beneficial Holders to whom pre-validated Beneficial Ballots were sent for a period of at least one (1) year after the Voting Deadline; and it is further

**ORDERED** that transmittal of Solicitation Packages and Election Forms to any holders of securities held exclusively through Euroclear Bank ("Euroclear") and Clearstream Bank ("Clearstream") shall be deemed good, adequate and sufficient notice if it is delivered by electronic mail on or before the Solicitation Date to Euroclear and Clearstream, respectively; and it is further

**ORDERED** that, solely for purpose of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a claim and without prejudice to the rights of the Debtors in any other context, each holder of a claim within a class of claims entitled to vote to accept or reject the Plan shall be entitled to vote the amount of such claim as set forth in a timely filed proof of claim, or, if no proof of claim was filed, the amount of such claim as set forth in the Schedules, provided that:

(a)    If a claim is deemed allowed in accordance with the Plan, such claim is allowed for voting purposes in the deemed allowed amount set forth in the Plan;

(b)    If a claim for which a proof of claim has been timely filed is (i) listed as contingent, unliquidated or disputed on the face of the claim or (ii) determined by the Debtors or their agents after reasonable review of the claim (including any supporting documentation contained therewith), to be a contingent, unliquidated or disputed claim and is not the subject of an objection filed before the Voting Deadline,

such claim shall vote in the amount of $1.00, unless otherwise allowed by Court order after a timely filed motion under Bankruptcy Rule 3018; provided, however, that such claim shall vote the portion of the claim that is non-contingent or liquidated and as to which the Debtors have not filed an objection;

(c)     If a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim is temporarily allowed in the amount so estimated or allowed by the Court for voting purposes;

(d)     If the Debtors have served an objection to a claim at least twenty (20) days prior to the Voting Deadline and the objection has not been adjudicated or otherwise resolved, such claim will be disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be otherwise set forth in the objection or as otherwise ordered by the Court;

(e)     If a claim is listed in the Schedules as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the applicable bar date for the filing of proofs of claim established by the Court or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, unless the Debtors have consented otherwise in writing, such claim will be disallowed for voting purposes pursuant to Bankruptcy Rule 3003(c);

(f)     If a claim arises from or is related to an executory contract or lease that the Debtors have not yet assumed or rejected, a claim is temporarily allowed for each such executory contract or lease against each Debtor party to such executory contract or lease for voting purposes only and not for allowance or distribution, each in the amount of $1.00, or such other amount as the Debtors and the claim holder may agree;

(g)     If a claim is filed in the amount of $0.00, such claim shall not be entitled to vote; and

(h)     If a claim is filed in a currency other than U.S. Dollars, such claim shall be entitled to vote in the amount of $1.00; and it is further

**ORDERED** that notwithstanding the immediately foregoing decretal paragraph, solely for purpose of exercising their Subscription Rights, and not for the purpose of the allowance of, or distribution on account of, a claim and without prejudice to the rights of the

Debtors in any other context, holders of claims arising under the Senior Secured Credit Agreement may include their fees and expenses solely to the extent permitted in the agreement itself for purposes of calculating their Subscription Rights; and it is further

**ORDERED** that any creditor seeking to challenge the allowance of its claim for voting purposes in accordance with the procedures set forth in this Order shall serve upon the Debtors and file with the Court (with a copy to chambers) a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such claim in a different amount for purposes of voting to accept or reject the Plan on or before three (3) business days before the Voting Deadline; and it is further

**ORDERED** that the Ballot of any creditor filing a motion pursuant to Bankruptcy Rule 3018(a) shall not be counted unless temporarily allowed by the Court for voting purposes, after notice and a hearing, which hearing may be held contemporaneously with the Confirmation Hearing; and it is further

**ORDERED** that with respect to the tabulation of Master Ballots and Ballots cast by Voting Nominees and beneficial owners, for purposes of voting, the amount that will be used to tabulate acceptance or rejection of the Plan will be the principal amount held as of the Record Date (the "<u>Record Amount</u>").[4]  The following additional rules will apply to the tabulation of Master Ballots and Ballots cast by Voting Nominees and beneficial owners:

> (a)    Votes cast by beneficial owners through a Voting Nominee will be applied against the positions held by such entities in the securities as of the Record Date, as evidenced by the record and depository listings.  Votes submitted by a Voting Nominee, whether pursuant to a Master Ballot or pre-validated Ballots, will not be counted in excess of the

---

[4] In the case of securities held exclusively through Euroclear and Clearstream, the Voting Agent shall seek to confirm with Euroclear or Clearstream, as applicable, the Record Date position of any Voting Nominee that has cast a Master Ballot.

Record Amount of such securities held by such Voting
Nominee.

(b)    To the extent that conflicting votes or "overvotes" are
submitted by a Voting Nominee, whether pursuant to a
Master Ballot or pre-validated Ballots, the Voting Agent
will attempt to reconcile discrepancies with the Voting
Nominees.

(c)    To the extent that overvotes on a Master Ballot or pre-
validated Ballots are not reconcilable prior to the
preparation of the vote certification, the Voting Agent will
apply the votes to accept and to reject the Plan in the same
proportion as the votes to accept and reject the Plan
submitted on the Master Ballot or pre-validated Ballots that
contained the overvote, but only to the extent of the Voting
Nominee's position in the security.

(d)    For purposes of tabulating votes, each beneficial owner will
be deemed to have voted the principal amount relating to
such security, although the Voting Agent may be asked to
adjust such principal amount to reflect the claim amount,
including prepetition interest; and it is further

**ORDERED** that (i) any Ballot that is otherwise properly completed, executed and

timely returned to the Voting Agent but does not indicate an acceptance or rejection of the Plan

shall be deemed to have voted to accept the Plan; (ii) any Ballot that is otherwise properly

completed, executed and timely returned to the Voting Agent but indicates both an acceptance

and rejection of the Plan, shall not be counted; (iii) if no votes to accept or reject the Plan are

received with respect to a particular class that is entitled to vote on the Plan, such class shall be

deemed to have voted to accept the Plan; (iv) if a creditor casts more than one Ballot voting the

same claim before the Voting Deadline, the latest dated, validly executed Ballot received before

the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede any prior

Ballots;[5] (v) creditors must vote all of their claims within a particular class with respect to each

---

[5] Likewise, if a claim holder submits more than one Ballot to a Voting Nominee, (a) the latest dated
Ballot received before the submission deadline imposed by the Voting Nominee shall be deemed to

applicable Debtor under the Plan either to accept or reject the Plan, and may not split their votes within a particular class and thus, a Ballot (or a group of Ballots) within a particular class for a particular Debtor received from a single creditor that partially accepts and partially rejects the Plan shall not be counted; and (vi) except as otherwise provided in the Motion, for purposes of determining whether the numerosity and claim or interest amount requirements of sections 1126(c) and 1126(d) of the Bankruptcy Code have been satisfied, the Debtors will tabulate only those Ballots received by the Voting Deadline, except as deemed appropriate by the Debtors in their discretion; and it is further

**ORDERED** that the following Ballots will not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected: (i) any Ballot received after the Voting Deadline, unless the Debtors shall have granted in writing an extension of the Voting Deadline with respect to such Ballot; (ii) any Ballot that is illegible or contains insufficient information to permit the identification of the voter; (iii) any Ballot cast by a person or entity that does not hold a claim or interest in a class that is entitled to vote to accept or reject the Plan; (iv) any unsigned Ballot; (v) any Ballot without an original signature; and (vi) any Ballot transmitted to the Voting Agent by facsimile or other electronic means, unless the Debtors in writing waive this requirement and accept alternate means of transmission or delivery of any Ballot; and it is further

**ORDERED** that the Debtors are authorized to distribute the Notices of Non-Voting Status, substantially in the forms annexed as Exhibit E to the Motion, as amended, which (i) identify the treatment of the classes designated; (ii) set forth the manner in which a copy of the Plan and Disclosure Statement may be obtained; and (iii) provide notice of the Confirmation

---

supersede any prior Ballots submitted by the claim holder; and (b) the Voting Nominee shall complete the Master Ballot accordingly.

Hearing and the time fixed for filing objections to the Plan, as applicable to all holders of claims in Classes 1, 2, 6, 14, and certain holders of claims in Class 7-B which classes are unimpaired and deemed to accept the Plan and thus are not entitled to vote, and to all holders of claims and interests in Classes 9, 10, 11, 12, 13, and certain holders of claims in Class 7-B, which classes will not receive any distributions under the Plan and are impaired and deemed to reject the Plan and thus are not entitled to vote; and it is further

ORDERED that the Debtors are not required to distribute copies of the Plan and Disclosure Statement to any member of Classes 1, 2, 6, 9, 10, 11, 12, 13, and 14, and to those members of Class 7-B who have claims against Debtors other than MHC Inc. or Millennium Holdings, LLC, and Notice of Non-Voting Status satisfies the requirements of the Bankruptcy Code and Bankruptcy Rules for notice of the Plan, Disclosure Statement and Confirmation Hearing with respect to members of Classes 1, 2, 6, 9, 10, 11, 12, 13, 14 and certain members of Class 7-B; and it is further

ORDERED that the date of the Confirmation Hearing is the distribution record date (the "Distribution Record Date") for all distributions made pursuant to the Plan, except with respect to securities to be cancelled under the Plan which are governed by Section 7.15 of the Plan; and it is further

ORDERED that with respect to the claims and interests governed by the Distribution Record Date, neither the Debtors, nor any other party authorized to make distributions pursuant to the Plan are required to make any disbursements to parties whose claims or interests were acquired subsequent to the Distribution Record Date, or to parties whose claims were acquired from another party prior to the Distribution Record Date, but which transfer was not properly filed with the Court prior to the Distribution Record Date; and it is further

**ORDERED** that the Rights Offering solicitation shall commence on the Solicitation Date (the "<u>Subscription Commencement Date</u>") and may be combined with the solicitation of acceptances for the Plan; and it is further

**ORDERED** that with regard to claims arising under the Senior Secured Credit Agreement, if the Debtors receive a register from the administrative agent(s) setting forth each of the lenders thereunder as of March 11, 2010 (the "<u>Subscription Rights Record Date</u>") no later than one business day immediately following the Subscription Rights Record Date, the Debtors will distribute the Solicitation Packages and Subscription Forms directly to the lenders, otherwise the Debtors shall distribute Solicitation Packages and Subscription Forms to the administrative agent(s) to transmit to the individual lenders thereunder themselves; and it is further

**ORDERED** that with regard to claims arising under the ARCO Notes and the Equistar Notes held through The Depository Trust Company ("<u>DTC</u>") by a bank or brokerage firm on behalf of beneficial owners, the Debtors shall distribute Subscription Forms to the bank or brokerage firm holding such notes, which bank or brokerage firm shall forward information with respect to the Rights Offering to beneficial owners of those securities and to effect any exercise of Subscription Rights on their behalf through DTC's Automated Subscription Offer Program ("<u>ASOP</u>") system. Such firms may use the Subscription Forms (as applicable) provided or such other form as they may customarily use for the purpose of obtaining instructions with respect to a subscription on account of the beneficial owner's claim. In the event securities held exclusively through Euroclear and Clearstream are entitled to participate in the Rights Offering, the Debtors will distribute Subscription Forms and effect any exercise of Subscription Rights in accordance with the customary procedures of Euroclear and Clearstream, and their respective participants; and it is further

**ORDERED** that the Debtors shall provide the Subscription Form in substantially the form as set forth in <u>Exhibit F</u> to the Motion, as amended, to each Eligible Holder, together with appropriate instructions for the proper completion, due execution and timely delivery of the Subscription Form, as well as instructions for the payment of the applicable purchase price for that portion of the Subscription Rights that such holder may be entitled to acquire, with each Eligible Holder's Solicitation Package (except in the case of claims arising under the ARCO Notes and the Equistar Notes). The Debtors will also send a notice of the commencement of the Rights Offering, substantially in the form as set forth in <u>Exhibit G</u> to the Motion, as amended; and it is further

**ORDERED** that in order to exercise the Subscription Rights, each Eligible Holder must (A) (i) return a duly completed Subscription Form to the Subscription Agent (as defined in the Plan) so that such form is actually received by the Subscription Agent on or before the final date by which an Eligible Holder may elect to subscribe to the Rights Offering (the "<u>Rights Offering Expiration Date</u>") and (ii) pay or arrange for payment to the Subscription Agent on or before the Rights Offering Expiration Date, or by DTC to the Subscription Agent, such holder's purchase price (the "<u>Subscription Purchase Price</u>") in accordance with the wire instructions set forth on the Subscription Form; or (B) in the case of securities held through DTC, send the subscription form to the relevant bank or brokerage firm (or follow such firm's directions with respect to submitting subscription instructions to the firm) with enough time for the bank or brokerage firm to effect the subscription through DTC; or (C) in the case of securities held through Euroclear or Clearstream, follow the established procedures; in each case all on or before the Rights Offering Expiration Date; and it is further

**ORDERED** that if the Subscription Agent for any reason does not receive from an Eligible Holder or DTC both (i) a duly completed Subscription Form or equivalent

-16-

instructions from DTC, or if applicable, instructions in accordance with the rules and procedures of Euroclear or Clearstream, and (ii) immediately available funds in an amount equal to such holder's Subscription Purchase Price or payment by DTC, or, if applicable, in accordance with the rules and procedures of Euroclear or Clearstream, in each case on or prior to the Rights Offering Expiration Date, such holder shall be deemed to have relinquished and irrevocably waived its right to participate in the Rights Offering.  Each Eligible Holder intending to participate in the Rights Offering must affirmatively elect to exercise its Subscription Right(s) on or prior to the Rights Offering Expiration Date; and it is further

**ORDERED** that the Debtors may adopt, as necessary and in consultation with the Rights Offering Sponsor and the Creditors' Committee, any additional detailed procedures consistent with the provisions of the Rights Offering; and it is further

**ORDERED** that the Confirmation Hearing will commence on April 23, 2010 beginning at [9:45 a.m.] (prevailing Eastern time), and if required, will continue on such further date and time as may be announced in Court without any further notice other than such in-Court announcement; and it is further

**ORDERED** that the procedures set forth in the Motion for notice of the Confirmation Hearing, including the Confirmation Hearing Notice substantially in the form annexed to the Motion as <u>Exhibit C</u>, as amended, are approved; and it is further

**ORDERED** that objections to the confirmation or proposed modification of the Plan shall (i) be in writing, (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party, (iii) state with particularity the basis and nature of any objection or proposed modification to the Plan, and (iv) be filed, together with proof of service, with the Court and served so as to be actually received by: (a) the Clerk of the Court, (b) attorneys for the Debtors, (c) attorneys for the Creditors' Committee, (d) attorneys for the

postpetition lenders, and (e) the U.S. Trustee no later than 4:00 p.m. (prevailing Eastern time), on

April 14, 2010; and it is further

      **ORDERED** that in accordance with section 1125(e) of the Bankruptcy Code, to

the fullest extent permitted by law, none of the Debtors, the Creditors' Committee, or any

members thereof, or any of their respective affiliates (including their respective directors,

officers, employees, shareholders, members, partners, agents or representatives (including

attorneys, accountants, and investment bankers)), shall have any liability on account of soliciting

votes on the Plan or participating in such solicitation, for violation of any applicable law, rule, or

regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale

or purchase of securities; and it is further

      **ORDERED** that in accordance with section 1125(e) of the Bankruptcy Code, to

the fullest extent permitted by law, no party that submits a plan support letter shall have any

liability on account of having submitted such plan support letter or on account of the inclusion of

such plan support letter in the Solicitation Packages for violation of any applicable law, rule or

regulation governing solicitation of acceptance or rejection of a plan; and it is further

      **ORDERED** that the Debtors are authorized to make nonsubstantive changes to

the Disclosure Statement, the Plan, and related documents without further order of the Court,

including, without limitation, changes to correct typographical and grammatical errors and to

make conforming changes among the Disclosure Statement, the Plan, and any other materials in

the Solicitation Packages, prior to their mailing; and it is further

**ORDERED** that the Debtors are authorized to take or refrain from taking any

action necessary or appropriate to implement the terms of and the relief granted in this Order

without seeking further order of the Court.

Dated:    *__March 11, 2010__*
New York, New York

*s/ Robert E. Gerber*_____
HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT E**

**North American Restructuring Transactions**

# North American

## (as of September 11, 2009)



Continues on next page

# Corporate Organization



# North American
### (Post Emergence)



Continues on next page



# Corporate Organization



**EXHIBIT F**

**<u>Millennium Custodial Trust and Environmental Custodial Trust Diagram</u>**

# Millennium and Environmental Custodial Trusts



## EXHIBIT G

### New Topco Direct Issuance of Stock

Pursuant to Section 5.4(b) of the Plan of Reorganization, the holders of Senior Secured Facility Claims shall transfer as a contribution to capital their claims against Obligor Non-Debtors and Basell Germany (including guarantee claims, liens rights, and interests under the Senior Secured Credit Agreement) in exchange for all of the outstanding stock of LBHBV. Such creditors shall then transfer all of the stock of LBHBV to New Topco in exchange for Class A shares and any other consideration they are to receive under the Plan other than Subscription Rights.

The amount of the Class A shares to be distributed in exchange for the LBHBV shares is based on the number of such shares allocable to the net value of LBIH and any of its respective direct and indirect subsidiaries (other than LBFC and its direct and indirect subsidiaries). Accordingly, the Debtors estimate that New Topco will issue approximately 158 million Class A shares in exchange for the transfer to it of the LBHBV shares, based on adjusted reorganization equity value attributable to the net value of LBIH and its subsidiaries, less any Class A Shares distributed by Topco directly to holders of Allowed 2015 Claims under the Plan.

| | LBFC[(1)] | LBIH[(2)] | Total |
|---|---|---|---|
| **Imputed Total Enterprise Value** | **$9,200** | **$6,000** | **$15,200** |
| Plus: Intercompany Loans & Projected Cash | $1,102 | ($602) | $500 |
| Less: Estimated Emergence Outlays & Value Deductions | | | |
| Existing Debts Not Compromised | $5,427 | $1,336 | $6,763 |
| Financing & Adminstrative Expenses | 536 | 24 | 560 |
| Trusts Funding | 270 | - | 270 |
| Priority Claims | 10 | - | 10 |
| Secured Claims | 290 | - | 290 |
| Unsecured Claims Cash Recovery | 171 | - | 171 |
| 2015 Note Claims | - | 137 | 137 |
| **Total** | **$6,704** | **$1,497** | **$8,200** |
| Less: Warrants | 101 | - | 101 |
| **Net Value** | **$3,497** | **$3,901** | **$7,399** |

(1) Is described as U.S. Businesses in the Reorganization Valuation Analysis section in the Disclosure Statement

(2) Is described as Non-U.S. Businesses in the Reorganization Valuation Analysis section in the Disclosure Statement

**EXHIBIT H**

**Comparative Analyses**

# Exhibit H

In connection with the hearing to approve the DIP Financing, Duff & Phelps prepared total enterprise valuation analyses for LyondellBasell Industries AF S.C.A. and Certain Subsidiaries on January 6, 2009 (the "D&P Analyses"). The D&P Analyses included a valuation range for LyondellBasell Industries AF S.C.A of $17.6 billion to $20.8 billion with a midpoint of $19.2 billion. A precise comparison of the D&P Analyses and the valuation analyses prepared by Evercore for LyondellBasell as reflected in Section IX Reorganization Valuation Analysis of the Disclosure Statement (the "Evercore Analyses") is challenging due to a number of factors including, but not limited to, different (i) valuation dates, (ii) business plan projection periods, (iii) application of various aspects of the selected peer group public company trading methodology and the discounted cash flow valuation methodology, and (iv) judgments applied to the results of such analyses. Nonetheless, to facilitate a comparison of some of the key factors distinguishing the valuation conclusions reached by Duff & Phelps and Evercore in the analyses referenced above, two comparative analyses (the "Comparative Analyses") have been prepared—(I) a Comparative Selected Peer Group Public Company Trading Methodology Analysis and (II) a Comparative Discounted Cash Flow Methodology Analysis. These analyses illustrate that the primary factor creating the difference between the valuation conclusions of Duff & Phelps and Evercore is the difference in the projected EBITDA (before restructuring costs) and cash flow performance utilized in each firm's respective analyses. The following analyses are subject in their entirety to the same qualifications included in Section IX Reorganization Valuation Analysis of the Disclosure Statement. Please note that the Comparative Analyses do not purport to be an exhaustive comparison of the D&P Analyses and the Evercore Analyses, but rather represent a comparison of an illustrative subset of the work performed by Duff & Phelps and Evercore, respectively. Consequently, the analyses reflected herein do not correspond precisely to the mid-points of their respective valuation conclusions.

# Exhibit H

## Comparative Selected Peer Group Public Company Trading Methodology Analysis    *($ in millions)*

■  The EBITDAR data utilized in the Evercore Analyses is lower than the data utilized in the D&P Analyses as demonstrated by the table below

| | Actual | | | | Projections | | | Average | |
|---|---|---|---|---|---|---|---|---|---|
| | FY2006A | FY2007A | FY2008A | FY2009A | FY2010E | FY2011E | FY2012E | 2006 - 2008 | 2008 - 2012 |
| **EBITDAR** | | | | | | | | | |
| Used by Evercore | NA | NA | NA | NA | $1,606 | $1,970 | $2,245 | NA | NA |
| Used by Duff & Phelps [1] | 4,528 | 5,071 | 3,047 [2] | 2,109 | 2,356 | 3,711 | 4,253 | $4,215 | $3,095 |
| **Difference** | **NA** | **NA** | **NA** | **NA** | **($751)** | **($1,742)** | **($2,008)** | | |
| *% Difference* | *NA* | *NA* | *NA* | *NA* | *(31.9%)* | *(46.9%)* | *(47.2%)* | *NA* | *NA* |

Source: Company filings, management projections received January 19, 2010, Duff & Phelps Valuation 1/6/2009
(1) 2006 and 2007 are on an Adjusted EBITDA basis – See Duff & Phelps Appendix A
(2) Based on estimates on 1/6/09. Actual was $3,297

# Exhibit H

## Comparative Selected Peer Group Public Company Trading Methodology Analysis (cont'd)        *($ in millions)*

- The table below highlights selected key factors causing differences in certain of the key imputed valuation calculations included in the peer group public company trading methodologies applied in the respective D&P Analyses and Evercore Analyses.  Generally, the Evercore Analyses relied upon lower EBITDAR numbers and higher multiples.

| | | | | Evercore | | | |
|---|---|---|---|---|---|---|---|
| | | **D&P** | | **Consolidated** | | **Sum of the Parts** | |
| **EBITDAR Reference Year(s)** [1] | (A) | 2006 - 2008E | (C) | 2011E | (E) | 2011E | |
| | (B) | 2008E - 2012E | (D) | 2012E | | | |
| **Associated EBITDAR** | (A) | $4,215 | (C) | $1,970 | (E) | $1,970 | |
| | (B) | $3,095 | (D) | $2,245 | | | |
| **Associated Multiples** | (A) | 3.75x - 4.25x | (C) | 6.0x - 8.0x | (E) | 5.5x - 7.3x | |
| | (B) | 4.5x - 5.0x | (D) | 5.5x - 6.5x | | | |
| **Imputed Enterprise Values** [2] | (A) | $15,807 - $17,915 | (C) | $11,819 - $15,758 | (E) | $10,751 - $14,450 | |
| | (B) | $13,928 - $15,475 | (D) | $12,349 - $14,594 | | | |
| **Additional Factors** [3] | (A) | $1,411 - $1,729 | (C) | $991 | (E) | $991 | |
| | (B) | $1,411 - $1,729 | (D) | $991 | | | |
| **Total** | (A) | $17,218 - $19,644 | (C) | $12,810 - $16,749 | (E) | $11,742 - $15,441 | |
| | (B) | $15,339 - $17,204 | (D) | $13,340 - $15,585 | | | |

Source: Company filings, management projections received January 19, 2010, Duff & Phelps Valuation 1/6/2009
(1) Evercore also considered additional EBITDAR reference years, but did not rely upon them
(2) Before additional factors
(3) D&P numbers reflect JV Equity Investments, Assets Held for Sale and NOL Benefit
   Evercore numbers reflect JV Equity Investments and Minority Interest.  Performance of assets formerly held for sale reflected in EBITDAR in Evercore analysis

# Exhibit H

## Comparative Discounted Cash Flow Methodology Analysis                    *($ in millions)*

■ The following table illustrates the impact on the total imputed enterprise value of selected factors associated with the discounted cash flow analyses employed by Duff & Phelps and one of the discounted cash flow scenarios employed by Evercore in their respective valuation analyses referenced above



| Evercore Imputed Base Case DCF TEV | Mid Point |
|---|---|
| Imputed DCF Analysis [3] | $13,919 |
| Plus: Imputed value of JVs | 1,738 |
| Less: Imputed minority interest | (129) |
| **Total Imputed Enterprise Value** | **$15,528** |

| Duff & Phelps TEV | Mid Point |
|---|---|
| DCF Analysis | $19,114 |
| Plus: Value of JVs | 1,060 |
| Plus: Assets held for sale [1] | 225 |
| Plus: NOL benefit [1] | 285 |
| **Total Enterprise Value** | **$20,684** |

Source: Company filings, Management Projections received January 19, 2010, Duff & Phelps Valuation 1/6/2009
(1) The imputed values of these items are included in the Evercore DCF
(2) Adjusted from 10-year DCF with valuation date as of 12/31/08 to valuation date as of 4/30/10 with projections through 2025
(3) Includes imputed value of tax attributes and what were previously considered assets held for sale

# Exhibit H

## Comparative Discounted Cash Flow Methodology Analysis (cont'd)    *($ in millions)*

- The lower projections relied upon by Evercore in the immediately prior table more than offset the higher terminal multiples, lower discount rates, and timing differences utilized by Evercore in the calculations in such table.  This is further illustrated by the table below

| | Projections | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 8M 2010E | FY2011E | FY2012E | FY2013E | FY2014E | FY2015E | FY2016E | FY2017E | FY2018E | FY2019E | FY2020E | FY2021E | FY2022E | FY2023E | FY2024E | FY2025E |
| **EBITDA** | | | | | | | | | | | | | | | | |
| Used in Evercore | $1,029 | $1,970 | $2,245 | $3,081 | $3,300 | $3,746 | $3,662 | $3,299 | $2,619 | $2,642 | $3,191 | $3,717 | $4,164 | $4,523 | $4,011 | $3,709 |
| Used in Duff & Phelps [1] | 1,571 | 3,711 | 4,253 | 4,603 | 4,787 | 4,930 | 5,078 | 5,205 | 5,335 | NA | NA | NA | NA | NA | NA | NA |
| Difference | ($542) | ($1,742) | ($2,008) | ($1,523) | ($1,488) | ($1,185) | ($1,416) | ($1,906) | ($2,717) | NA | NA | NA | NA | NA | NA | NA |
| **Unlevered Free Cash Flow** | | | | | | | | | | | | | | | | |
| Used in Evercore | $697 | $289 | $485 | $1,448 | $1,915 | $1,927 | $1,735 | $1,386 | $724 | $766 | $1,353 | $1,778 | $2,105 | $2,418 | $1,907 | $1,634 |
| Used in Duff & Phelps [1] | 736 | 1,840 | 2,203 | 2,522 | 2,306 | 2,377 | 2,449 | 2,511 | 2,573 | NA | NA | NA | NA | NA | NA | NA |
| Difference | ($38) | ($1,552) | ($1,719) | ($1,074) | ($390) | ($450) | ($713) | ($1,125) | ($1,849) | NA | NA | NA | NA | NA | NA | NA |

| **Dicount Rate** | Low | Mid | High |
|---|---|---|---|
| Used in Evercore | 10.75% | 11.25% | 11.75% |
| Used in Duff & Phelps | 12.00% | 13.00% | 14.00% |

| **Terminal Value EBITDA Multiple** | Low | Mid | High |
|---|---|---|---|
| Evercore | 5.0x | 6.0x | 7.0x |
| Duff & Phelps | 4.3x | 4.7x | 5.2x |

Source: Company filings, Management Projections received January 19, 2010, Duff & Phelps Valuation 1/6/2009
(1) 2014E and beyond projected by Duff & Phelps. 8M 2010 numbers calculated using 8/12th of Duff & Phelps respective annual numbers