UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

In re:                                                    )    Chapter 11
                                                          )
LYONDELL CHEMICAL COMPANY, *et al.*,   )
                                                          )    Case No. 09-10023 (REG)
                                                          )
                            Debtors.              )    Jointly Administered
                                                          )

------------------------------------------------------------

BENCH DECISION[1] ON LYONDELL'S
MOTION FOR ORDER PURSUANT TO
SECTIONS 105(a) AND 505(a) OF THE
BANKRUPTCY CODE SETTING HEARING TO
DETERMINE PROPERTY TAX LIABILITY
WITH RESPECT TO OIL REFINERY

APPEARANCES:

CADWALADER, WICKERSHAM & TAFT LLP
Attorneys for Debtors
One World Financial Center
New York, New York 10281
By:   Deryck A. Palmer
      John J. Rapisardi
      George A. Davis
      Andrew M. Troop
      Christopher R. Mirick

700 Sixth Street, N.W.
Washington, DC 20001
By:   Mark C. Ellenberg

LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
Attorneys for Harris County
2323 Bryan Street, #1600
Dallas, Texas 75201
By:   Elizabeth Weller

---

[1] I use bench decisions to lay out in writing decisions that are too long, or too important, to dictate in open court, but where the circumstances do not permit more leisurely drafting or more extensive or polished discussion. Because they often start as scripts for decisions to be dictated in open court, they typically have less in the way of citations and footnotes, and have a more conversational tone.

-1-

1301 Travis; Suite 300
Houston, Texas 77002
By:   John P. Dillman
        Tara L. Grundemeier

ROTTENBERG LIPMAN RICH, P.C.
Attorneys for Harris County
369 Lexington Avenue
Sixteenth Floor
New York, New York 10017
By:   Eurydice A. Kelley

COHEN TAUBER SPIEVACK & WAGNER, P.C.
Attorneys for the Harris County Appraisal District
420 Lexington Avenue, Suite 2400
New York, New York 10170
By:   Jay B. Spievack
        Joseph M. Vann
        Ira R. Abel

HOHMANN, TAUBE & SUMMERS, LLP
Attorneys for the Harris County Appraisal District
100 Congress Avenue, Suite 1800
Austin, Texas 78701
By:   Amy Keith
        Mark C. Taylor

BEFORE:   ROBERT E. GERBER
                UNITED STATES BANKRUPTCY JUDGE

       Debtor Houston Refining moves, pursuant to sections 105(a) and 505(a) of the

Bankruptcy Code, for entry of an order:

              (i) setting a hearing for the determination of the property tax that

          would be payable by Houston Refining with respect to an oil refinery that

Houston Refining owns in Harris County, Texas[2] (the "**Tax Determination**");

(ii) establishing a briefing schedule with respect to the Tax Determination; and

(iii) staying the current tax proceedings (the "**Texas Proceedings**") with respect to the refinery in the Texas court system.

Upon consideration of the issues, I necessarily must conclude that Houston Refining—like Harris County, which is doing likewise—is forum shopping. Cutting the other way, I recognize, as Judge Hardin observed in *In re Metromedia Fiber Network*,[3] that a federal court should exercise the jurisdiction conferred upon it absent a compelling reason not to do so. But on balance, after considering those and other factors, I find compelling reasons to abstain from proceedings under which I'd determine Houston Refining's tax liability on the valuation of its oil refinery, and I'm denying Houston Refining's motion by reason of discretionary abstention under section 505(a) of the Bankruptcy Code and § 1334(c)(1) of the Judicial Code.

My Findings of Fact and Conclusions of Law follow.

### Findings of Fact[4]

Houston Refining owns and operates a refinery in Harris County, Texas. Though its exact value is a matter ultimately to be determined, the Refinery appears to have a

---

[2] The taxing and/or valuation authority with respect to the Refinery is apparently divided among more than one different entity. But for brevity and clarity, I'll refer to those authorities collectively as "Harris County," except where a more precise description is required. Likewise, papers on the motion sometimes refer to Debtors other than Houston Refining as having an interest in this controversy, but for brevity and clarity, I'll refer to Debtor Houston Refining alone.

[3] 299 B.R. 251 (Bankr. S.D.N.Y. 2003).

[4] Pursuant to the provisions of Case Management Order #2, all of the facts (but not necessarily arguments and conclusions) in the declarations submitted to me have been taken as true.

value, according to the papers submitted by the parties, somewhere in the range of from $1 billion to $1.4 billion. The Refinery is "designed to run heavy, high sulfur crude oil, and has a processing capacity of approximately 299,000 barrels per stream day."[5] Among other products, the Refinery produces "heating oil, lube oils, carbon black oil, refinery-grade propylene, petrochemical feedstocks, sulfur residual fuel, petroleum coke and aromatics."[6]

Sometime prior to June 22, 2009, Harris County assessed a property tax with respect to the Refinery, which was based on a valuation by the Harris County Appraisal District ("**HCAD**") of the Refinery. Believing the valuation supporting the tax assessment was too high, Houston Refining filed notices of protest with the HCAD. Thereafter, on July 27, 2009, the Appraisal Review Board of the Harris County Appraisal District ("**ARB**") conducted an administrative hearing, which included presentation of evidence. Then, on August 18, 2009, the ARB notified Houston Refining that the ARB had valued the Refinery at $1.343 billion.

Once again unhappy with the valuation of the Refinery, Houston Refining faced two options: to appeal the ARB's valuation to the Harris County District Court (*i.e.* to continue with the Texas Proceedings) or to seek the desired tax determination by me, which would require that I value the Refinery instead. Houston Refining chose the latter, but preserved their rights to be heard in the Texas Proceedings, including on the matter of valuation, if I were to deny its motion.

Other facts that inform the exercise of my discretion on the motion appear in the Discussion that follows.

---

[5] Motion, at 3.

[6] *Id*.

Discussion

Section 505(a) of the Bankruptcy Code provides, in relevant part:

> [T]he court *may* determine the amount or legality of any tax… whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.[7]

Thus section 505(a) *permits* a bankruptcy court to determine the amount of a tax, but *does not require* the bankruptcy court to do so. Likewise, section 1334(c)(1) of the Judicial Code, 28 U.S.C. § 1334(c)(1), provides that with an exception not relevant here:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The section 505(a) proceeding that Houston Refining would want me to conduct would be both "a particular proceeding arising under title 11," and one "arising in or related to a case under title 11."

The parties agree, that in determining whether to exercise my authority under section 505(a) to conduct a Tax Determination, I should consider six basic factors.[8] I also conclude that these same six factors are appropriate to determine whether discretionary abstention under § 1334(c)(1) is appropriate in this situation. Those factors are:

> (1) the complexity of the issues to be decided;

---

[7] Emphasis added.

[8] *See In re ANC Rental Corp.,* 316 B.R. 153, 159 (Bankr. D. Del. 2004) (J. Walrath).

-5-

(2) the need to administer the bankruptcy case in an orderly and efficient manner;

(3) the burden on the court's docket;

(4) the length of time which would be required for trial and decision;

(5) the asset and liability structure of the debtor; and

(6) any prejudice to the debtor and potential prejudice to the taxing authorities.[9]

On balance, the factors weigh in favor of abstention. I will discuss each factor in turn.

*Factor 1: The complexity of the issues to be decided*

The Tax Determination in this case would require valuing an oil refinery in Houston, Texas with a value in the range of $1 billion to $1.4 billion. That is not a simple undertaking. As discussed above, the Refinery is a very major facility, producing many products. Determining the precise value, based on Texas law, of such a refinery would require consideration of a number of complex issues and of Texas law. I, like many bankruptcy judges, have experience valuing businesses and real estate. But on a matter that involves valuation of an oil refinery, knowledge of the refining business is likely to be useful—a matter where I bring nothing to the table, but a Texas court very well might.

Similarly, while I, like other bankruptcy judges, decide matters under the law of other states with a fair degree of frequency, I will be starting from scratch on matters of

---

[9] *Id.*

the applicable Texas law. It is reasonable to assume that a Texas court may not have that same handicap.

*Factor 2: The need to administer the bankruptcy case in an orderly and efficient manner*

In its papers, Houston Refining argues that a Tax Determination conducted by me is necessary to administer the Debtors' cases in an orderly and efficient manner—contending that it would bring certainty to the amount of property taxes payable with respect to the Refinery and because the Texas Proceedings could take several years to conclude. That might be true, and I'll assume that it is. But I'm not sure if I could do materially better. Houston Refining has not demonstrated that a Tax Determination by me, with appeals likely ensuing, would provide a more orderly, efficient or prompt resolution.

*Factors 3 and 4: The burden on the court's docket, and the length of time which would be required for trial and decision*

Since the length of time that would be required for trial and decision directly affects my ability to hear the case and the burden on my docket, I consider these factors to be so closely related that I should consider them together.

My docket is already stressed near the breaking point, in large part because of the matters already before me in the Lyondell cases. For example, the upcoming months will be filled with plan confirmation matters and hearings on the LBO litigation (only part of which was settled), many of which may be lengthy evidentiary hearings. I also have several other multi-billion dollar cases on my watch, which have had to compete for judicial time with the Lyondell cases. Having been a bankruptcy judge for 10 years and a litigator for 30 years before that, my experience tells me that I should not assume, as suggested, that I could conduct a billion dollar valuation hearing in only two days. And

-7-

with that much money on the line, I can only assume that whoever loses will wish to appeal—requiring a written opinion to lay out the matters for appellate review.

In short, it would be unreasonable to assume that this case could be easily tried and decided in this Court, especially in light of the other matters, in the Lyondell cases and others, that are already on my watch.

*Factor 5: The asset and liability structure of the debtor*

I assume that unfavorable valuation, whether by me or by a court in Texas, will be so prejudicial to creditors here that it will trigger an appeal by Houston Refining. I also assume that if Harris County loses, it will wish to appeal. Nevertheless, a completed Tax Determination is not likely to be essential for the Debtors in these chapter 11 cases to confirm a plan of reorganization. Although the full amount of Harris County's claim is in excess of $19 million, the issues here will most likely involve about a $10.6 million swing. And under Texas law, Houston Refining may pay the portion of the tax which is not in dispute and withhold payment of the balance.

To put the magnitude of Harris County's claim in perspective in this case, creditors in these cases have asserted very roughly $20 billion in claims against the Debtors. A claim of $10 million is a lot of money and could have a dilutive effect on creditor recoveries. But it still is not so large as to prevent the Debtors from reorganizing or confirming a reorganization plan.

*Factor 6: Prejudice to the debtor and potential prejudice to the taxing authorities*

My abstention in this matter would not result in prejudice to Houston Refining—as it would, for example, if Houston Refining were to be without a forum where it could seek and obtain judicial review of its assessment. Houston Refining can still obtain

judicial review of its assessment in Texas.[10]  Houston Refining advised me at oral argument that it took the necessary steps to preserve their rights in the Texas courts.  And Harris County, which has a significant incentive to resolve this matter quickly, represented that it will cooperate with Houston Refining to get a prompt result in the Texas Proceedings.

Also, Houston Refining has not alleged, nor, of course, established, that the Texas courts have acted or can be expected to act "in a manner which is arbitrary and capricious, discriminatory, or violative of state or local statutes or rules."[11]

Based on the foregoing, I'm exercising my abstention authority under section 505(a) of the Bankruptcy Code and 28 U.S.C. § 1334(c)(1).  Houston Refining's motion is denied.

SO ORDERED.

Dated: New York, New York          *s/Robert E. Gerber*
       April 19, 2010              United States Bankruptcy Judge

---

[10] This is such an important factor, in my view, that if Houston Refining would, in fact, be foreclosed from obtaining judicial review of the tax determination *anywhere*, it may move for reargument on this motion.

[11] *Metromedia*, 299 B.R. at 283.