UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LYONDELL CHEMICAL COMPANY, *et al.*, | ) |  |
|  | ) | Case No. 09-10023 (REG) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |

BENCH DECISION[1] AND ORDER ON REQUEST FOR
ADMINISTRATIVE STATUS, PURSUANT TO
BANKRUPTCY CODE SECTION 1114, FOR PRIVATE
ANNUITY CONTRACT (REGINA JAHNKE)

APPEARANCES:

CADWALADER, WICKERSHAM & TAFT, LLP
*Counsel for Lyondell Chemical Company, et al.*
One World Financial Center
New York, New York  10281
By:    Deryck A. Palmer, Esq.
       John J. Rapisardi, Esq.
       George A. Davis, Esq.
       Andrew Troop, Esq.
       Christopher R. Mirick, Esq. (argued)
       Joshua R. Weiss, Esq.

WACHTEL & MASYER, LLP
*Counsel for Regina Jahnke*
110 East 59th Street
New York, New York 10022
By:    Steven J. Cohen, Esq. (argued)

NATHAN SOMMERS JACOBS, PC
*Counsel for Regina Jahnke*
2800 Post Oak Blvd., 61st Floor
Houston, TX 77056
By:    Gretchen G. McCord, Esq.

---

[1] I use bench decisions to lay out in writing decisions that are too long, or too important, to dictate in open court, but where the circumstances do not permit more leisurely drafting or more extensive or polished discussion. Because they often start as scripts for decisions to be dictated in open court, they typically have a more conversational tone.

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

In this contested matter in the jointly administered chapter 11 cases of Lyondell Chemical Company ("**Lyondell**") and its affiliates (collectively, the "**Debtors**"), Mrs. Regina Jahnke seeks administrative expense status, under section 1114 of the Code, for payments due to her under a private prepetition contract between her late husband and his employer, a Lyondell predecessor. Lyondell contends that the contract is not covered by section 1114, and thus that the payments due under its terms, like those under most prepetition contracts, are general unsecured claims.

For the reasons articulated below, I agree with Lyondell, and deny the motion. My Findings of Fact and Conclusions of Law in connection with this determination follow.

## Findings of Fact[2]

Mrs. Jahnke is the widow of Ernst G. Jahnke, Jr. ("**Mr. Jahnke**").[3] Mr. Jahnke was an employee at ARCO Chemical Company ("**ARCO**"), a Lyondell predecessor, for 35 years.[4] In 1998, ARCO offered Mr. Jahnke a "Special Retirement Allowance" by private contract (the "**Contract**") in lieu of his continued coverage under the ARCO Key Management Life Insurance Plan (the "**Insurance Plan**").[5] On March 25, 1998, Mr. Jahnke accepted ARCO's offer, and signed the Contract.[6] Pursuant to the Contract, Mr. Jahnke retired.

The Contract provides that Mr. Jahnke retire early (as of signing).[7] It further provides that he shall receive a "special retirement allowance in the amount of $200.07 per month" for

---

[2] Pursuant to the parties' agreement and the provisions of Case Management Order #1, all of the facts (but not necessarily arguments and conclusions) in the declarations submitted to me have been taken as true. To shorten this Decision, I've limited factual citations and detail to the most significant matters.

[3] Jahnke Motion ¶ 2.

[4] *Id.*

[5] Jahnke Motion, Ex. A.

[6] *Id*.

[7] *Id*.

-1-

190 months, payable to Mr. Jahnke or his designated beneficiary, Mrs. Jahnke, should he die. Under the Contract, these monthly payments are adjusted to reflect ARCO's current tax rate. The Contract additionally provides for an "Additional Annual Allowance" of "18,700.00, prior to any adjustment, payable in monthly installments for ten (10) years" to be paid to Mrs. Jahnke should Mr. Jahnke die prior to the age of 65.

The Contract itself consists of a single page, and states that it is a replacement of the ARCO Chemical Company Key Management Life Insurance Plan (later assumed through acquisition). The Contract further states that Mr. Jahnke "expressly waives any right to receive benefits under the Key Management Life Insurance Plan" and any benefit he receives from the Contract shall be "in lieu of . . . life coverage under the Key Management Life Insurance Plan."[8]

In July 1998, Lyondell acquired ARCO. From 1998 through 2004, Lyondell paid Mr. Jahnke monthly benefits of approximately $307.00, in accordance with the Contract.

Mr. Jahnke died in March of 2004, at which time he was 63 years old, and had been retired for 6 years. In April of 2004, Lyondell sent a letter to Mrs. Jahnke explaining that "Lyondell Disbursements" would pay her annuity benefits due to her husband's death. The benefits, under the Contract, amounted to $3,716.78 per month for 120 months, *i.e.*, 10 more years.

The Debtors filed for chapter 11 bankruptcy protection on January 6, 2009. Mrs. Jahnke had received monthly annuity payments of $3,716.78 from May 2004 until January 2009, when the payments stopped. In June 2009, Mr. Jahnke filed a proof of claim for $237,873.72, based on her calculation of the remaining annuity payments under the Contract. Mrs. Jahnke states that she is owed an Additional Monthly Allowance of $2,3797.44, based on her calculations, though

---

[8] Jahnke Motion, Ex. A.

the parties are in dispute as to whether the annual annuity payments made to Mrs. Jahnke also include the Additional Monthly Allowance payments. But I do not need to resolve this factual dispute now, as doing so isn't necessary to rule on whether payments under the Contract will be allowed as administrative expense.

Based on the foregoing, I make certain findings of fact relevant to factors that determine whether allegations of this character fall within section 1114. The Contract is a stand-alone annuity contract between the late Mr. Jahnke and his beneficiary Mrs. Jahnke, and ARCO and its successor Lyondell. It does not incorporate continued coverage under the Insurance Plan. The Contract does not involve Lyondell's "administrative scheme" as used in the caselaw as discussed below or any administration at all. It merely requires honoring the contractual obligations.

## Discussion

Mrs. Jahnke seeks administrative expense status for her claims—arguing in substance that the Contract should not be treated as prepetition contract claims generally are, and instead that her claim should receive the favored treatment to which certain benefits are entitled under section 1114. While she recognizes that her claims aren't for health or disability benefits, she seeks to satisfy the requirements of section 1114 by arguing that her claim qualifies as a "payment[] for retired employees and their spouses and dependents, for . . . benefits in the event of . . . death under any plan, fund, or program."[9]

The Debtors object, contending that the Contract does not qualify as a "plan, fund, or program" for the provision of the "retiree benefits" pursuant to section 1114.

Ultimately, I must agree with the Debtors.

---

[9] 11 U.S.C. § 1114(a).

-3-

As usual, I begin with textual analysis.[10]  Section 1114 of the Code provides in relevant part:

> (a) For purposes of this section, the term "retiree benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.
>
> . . .
>
> (e)(2) Any payment for retiree benefits required to be made before a plan confirmed under section 1129 of this title is effective has the status of an allowed administrative expense as provided in section 503 of this title.[11]

Thus, section 1114(e)(2) provides for administrative expense status for certain kinds of employee benefits, but only if and to the extent that they're "retiree benefits" within the meaning of section 1114(a). That requires a court to consider (1) whether the benefits in question are delivered "under any plan, fund, or program," and (2) whether they're of the type covered under section 1114(a) in the first place.

1. *"Plan, Fund, or Program"*

The expression "plan, fund, or program" is not defined in the Code, nor are its individual components.[12]  But courts have looked to the definition of an employee benefit "plan, fund, or

---

[10] *See, e.g., In re Adelphia Communications Corp*, 441 B.R. 6, 12 (Bankr. S.D.N.Y. 2010); *In re General Motors Corp.*, 407 B.R. 463, 486 (Bankr. S.D.N.Y. 2009), *appeal dismissed and aff'd*, 428 B.R. 43 (S.D.N.Y. 2010) and 430 B.R. 65 (S.D.N.Y. 2010).

[11] 11 U.S.C. § 1114 (emphasis added).

[12] Of course, the word "plan" has several different meanings under the Code—including, besides a plan of the type here, a plan of reorganization. But while the Code provides definitions for other aspects of the issues presented here (*i.e.*, for "retiree benefits"), it doesn't do so for "plan," or, likewise, for "fund" or "program." But the three words in that list, especially when taken together, provide a sense of the Congressional intent. *See In re Motors Liquidation Co.*, --- B.R. ---, 2011 Bankr. LEXIS 11, *13, 2011 WL 18945, *4 (Bankr. S.D.N.Y. 2011) ("words grouped in a list should be given related meaning" citing *Dole*

program" under the Employee Retirement Income Security Act ("**ERISA**")[13], where these same words are used, to determine what qualifies as a benefit plan under section 1114.[14] I'm cognizant of Mrs. Jahnke's point that the Supreme Court, in *Howard Delivery Services v. Zurich Insurance Company*,[15] effectively ruled that ERISA definitions shouldn't necessarily be used to "fill in the blanks in a Bankruptcy Code provision,"[16] at least where other Code goals need to be considered. But in the absence of competing bankruptcy goals here, and here in the face of a mere contractual obligation, I see no reason to reject the assistance from ERISA, or the other bankruptcy caselaw that has looked to ERISA as well.[17] A plan under ERISA requires an "ongoing administrative program to meet the employer's obligations," and generally does not cover private contracts which provide for single payments triggered by a single event.[18]

The Second Circuit uses a three prong test to determine whether there is an ongoing program sufficient to constitute a plan under ERISA. In *Kosakow v. New Rochelle Radiology*

---

    *v. USW*, 494 U.S. 26, 36 (1990)). They collectively suggest something more than a mere contractual obligation.

[13]   29 U.S.C. §§ 1001, *et. seq*. *See, in particular,* 29 U.S.C. § 1002(1).

[14]   *See, e.g.*, *In re N.Y. Trap Rock*, 126 B.R. 19, 22 (Bankr. S.D.N.Y. 1991) (using ERISA's definition of "plan, fund or program" to analyze section 1114(a)'s requirements for a "plan, fund, or program"). *See also In re Certified Air Techs, Inc.*, 300 B.R. 355, 371 (Bankr. C.D. Cal 2003) (explaining that "Congress did not define the phrase 'any plan, fund or program' in section 1114. However, the term is used in Section 1002(1) of ERISA, which defines an 'employee welfare benefit plan' . . .").

[15]   547 U.S. 651 (2006) (to decide the issue there presented, looking instead to the essential character of the payments in question).

[16]   *Id.* at 652.

[17]   *See* n.14 above.

[18]   *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11-12 (1987) (explaining that a state statute requiring employers to provide a one-time severance payment to workers in the event of a plant's closing or relocation did not constitute a benefit plan under ERISA because "[t]he requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation").

*Associates, P.C.*[19] the Second Circuit explained that an ongoing administrative program may exist:

> (1) where an employer's undertaking requires managerial discretion, that is, where the undertaking could not be fulfilled without ongoing, particularized, administrative analysis of each case, . . . (2) where a reasonable employee would perceive an ongoing commitment by the employer to provide some employee benefits; and (3) where the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria.[20]

Applying these factors to the Contract, I must conclude that the Contract cannot be construed as a "plan, fund, or program" under ERISA. First, while the Contract is an annuity and thus not a single lump-sum payment, it is much closer in concept to a single payment than to a complex plan. An annuity contract does not require an "ongoing, particularized, administrative analysis" or any "managerial discretion" after it is formalized. An annuity is simply a stream of payments actuarially equivalent to lump-sum payment, which is then distributed over time in a pre-determined fashion. While the Contract's annuity payments must be adjusted for ARCO's (now Lyondell's) annual tax rate, the adjustment is a simple calculation, and is in substance a ministerial act. It does not require discretion or analysis.

Second, a reasonable employee could not construe the Contract as providing an ongoing commitment to provide employee benefits in an insurance context. As previously noted, the Contract, an incentive for early retirement, was effectuated in lieu of continued coverage under the Insurance Plan; it is not itself an insurance plan. The Contract merely provided for payment of the annuity according to its terms; there was no ongoing relationship aside from these

---

[19] 274 F.3d 706 (2d Cir 2001).

[20] *Id*. at 737 (citing *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 76 (2d Cir.1996)) (internal quotations deleted).

payments. Typically when the only interaction between employer and employee is the distribution of checks, there is no "ongoing relationship" under ERISA.[21] Thus there is no "ongoing relationship" as far as benefits or insurance is concerned.

The third factor likewise is not satisfied here, as the subject of this contested matter is a private contract between Mr. Jahnke (and his beneficiaries) and ARCO, not a multifaceted plan involving administration for many employees.

*2. "Retiree Benefits"*

I also must agree with Lyondell's contention that even if Mrs. Jahnke's entitlement were under a "plan, fund, or program," it wouldn't be for "retiree benefits." These are defined under section 1114(a), previously quoted, as meaning payments for the purpose of providing "medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death…."[22] Pension benefits or benefits that provide for annual payments upon retirement are not "retiree benefits."[23] And the feature of the annuity arrangement to provide contingency payments to Mr. Jahnke's beneficiary upon death does not change that.[24]

---

[21] *See Nowak v. Int'l Fund Servs. (N.A.), LLC.*, 2009 U.S. Dist. LEXIS 69097, *6 (S.D.N.Y August 7, 2009). (there was no "ongoing commitment to provide benefits" where the defendant employer "had no ongoing responsibilities under the agreements other than sending checks and [p]laintiffs had no obligations to [defendant employer]").

[23] *See McMillam v. LTV Steel Inc.*, 555 F.3d 218, 226 (6th Cir 2009) ("§ 1114 does not apply to [debtor's] benefit program directed at administering pensions); *In re WorldCom, Inc.*, 364 B.R. 538, 549-550 (Bankr. S.D.N.Y. 2007) (employee's deferred compensation plan does not constitute "retiree benefits" within the meaning of Section 1114(a)); *In re Farmland Indus. Inc.*, 294 B.R. 903, 919 (Bankr. W.D.Mo. 2003) (benefit plans providing deferred compensation or benefits due upon retirement are not "retiree benefits" under Section 1114).

[24] *See In re Exide Techs.*, 378 B.R. 762, 768 (Bankr. D. Del 2007) (annual retirement payments under a supplemental executive retirement plan were not "retiree benefits" under Section 1114, notwithstanding the contingency of a death benefit payment to participant's beneficiary).

-7-

Conclusion

I'm here presented with a simple contractual obligation that does not rise to the level of a "plan, fund, or program," and that is not for "retiree benefits" as defined in section 1114(a). Thus, Mrs. Jahnke's claims under the Contract do not rise to the level of an administrative status under section 1114, and she has only a general unsecured claim.

Accordingly, the Motion must be, and is, denied.

SO ORDERED.

Dated: New York, New York       *s/Robert E. Gerber*
       March **30**, 2011              United States Bankruptcy Judge